ROBBINS GELLER RUDMAN
  & DOWD LLP
NATHAN R. LINDELL (248668)
KEVIN S. SCIARANI (301411)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
nlindell@rgrdlaw.com
ksciarani@rgrdlaw.com

Counsel for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| KENNETH S. GROSSMAN, Individually and on Behalf of All Others Similarly Situated,<br><br>              Plaintiff,<br><br>   vs.<br><br>DAVID SIN, et al.,<br><br>              Defendants. | Case No. 2:23-cv-09501-SVW-MAA<br><br><u>CLASS ACTION</u><br><br>PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS<br><br>DATE:    February 12, 2024<br>TIME:    1:30 p.m.<br>CTRM:   10A<br>JUDGE:  Hon. Stephen V. Wilson |

4874-8223-2479.v1

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................... 1

II.    FACTUAL BACKGROUND ......................................................................... 3

       A.    Rockley's Operations .......................................................................... 3

       B.    The Merger ........................................................................................... 4

       C.    Defendants' Concealment of Material Risks Concerning
             Rockley's Joint Venture ...................................................................... 5

       D.    Defendants' Misrepresentations Concerning the Commercial
             Prospects of Its Consumer Wearables Technology ........................... 6

       E.    Defendants Continue to Mislead the Market as the Truth Is
             Revealed ............................................................................................... 7

III.   ARGUMENT ................................................................................................. 9

       A.    The Complaint Alleges Actionable Misrepresentations .................... 10

             1.    Defendants Concealed Material Known Risks Regarding
                   the Joint Venture ....................................................................... 10

             2.    Defendants Materially Misled Investors Regarding
                   Rockley's Customer Relationships and Commercial
                   Prospects .................................................................................... 13

             3.    Defendants' Purported Forward-Looking Statements
                   Contained Representations of Present Facts .............................. 14

             4.    Defendants' Optimistic Statements Were Materially
                   Misleading .................................................................................. 15

       B.    The Complaint Alleges a Strong Inference of Scienter ..................... 16

       C.    The Complaint Alleges Actionable Claims Under §20(a) ................. 21

IV.    CONCLUSION ............................................................................................. 22

- i -

4874-8223-2479.v1

**TABLE OF AUTHORITIES**

**Page**

CASES

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S. Ct. 1937,
173 L. Ed. 868 (2009)...............................................................................................9, 10

*Batwin v. Occam Networks, Inc.*,
2008 WL 2676364 (C.D. Cal. July 1, 2008) ...............................................21, 22

*Berson v. Applied Signal Tech., Inc.*,
527 F.3d 982 (9th Cir. 2008).......................................................................10, 21

*Caiola v. Citibank, N.A., N.Y.*,
295 F.3d 312 (2d Cir. 2002) ...............................................................................10

*Eminence Cap., LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003)...........................................................................22

*ESG Cap. Partners, LP v. Stratos*,
828 F.3d 1023 (9th Cir. 2016)...........................................................................17

*Frank v. Dana Corp.*,
646 F.3d 954 (6th Cir. 2011)......................................................................18, 19

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*,
63 F.4th 747 (9th Cir. 2023)..............................................................................10

*Hevesi v. Citigroup Inc.*,
366 F.3d 70 (2d Cir. 2004) ...................................................................................1

*Howard v. Arconic Inc.*,
2021 WL 2561895 (W.D. Pa. 2021) ..................................................................10

*HsingChing Hsu v. Puma Biotechnology, Inc.*,
2017 WL 3205774 (C.D. Cal. July 25, 2017) ...................................................12

*In re China Med. Sec. Litig.*,
2012 WL 5713399 (C.D. Cal. May 10, 2012)....................................................19

4874-8223-2479.v1

**Page**

*In re CV Therapeutics, Inc.*,
    2004 WL 1753251 (N.D. Cal. Aug. 5, 2004) ......................................................15

*In re Impac Mortg. Holdings, Inc. Sec. Litig.*,
    554 F. Supp. 2d 1083 (C.D. Cal. 2008) .............................................................15

*In re MannKind Sec. Actions*,
    835 F. Supp. 2d 797 (C.D. Cal. 2011) ........................................................13, 14

*In re Mattel, Inc. Sec. Litig.*,
    2021 WL 1259405 (C.D. Cal. Jan. 26, 2021) ....................................................19

*In re Quality Sys., Inc. Sec. Litig.*,
    865 F.3d 1130 (9th Cir. 2017) ....................................................................14, 15

*In re QuantumScape Sec. Class Action Litig.*,
    580 F. Supp. 3d 714 (N.D. Cal. 2022) .........................................................18, 20

*In re Snap Inc. Sec. Litig.*,
    2018 WL 2972528 (C.D. Cal. June 7, 2018) ..........................................9, 11, 19

*In re UTStarcom, Inc. Sec. Litig.*,
    617 F. Supp. 2d 964 (N.D. Cal. 2009) ..............................................................19

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) ............................................................................10

*Loritz v. Exide Techs.*,
    2014 WL 4058752 (C.D. Cal. Aug. 7, 2014) ....................................................12

*Mulligan v. Impax Labs., Inc.*,
    36 F. Supp. 3d 942 (N.D. Cal. 2014) ................................................................15

*Nguyen v. Radient Pharm. Corp.*,
    2011 WL 5041959 (C.D. Cal. Oct. 20, 2011) ...................................................11

*Plumbers Union Local No. 12 Pension Fund v. Ambassador's Grp.*,
    717 F. Supp. 2d 1170 (E.D. Wash. 2010) ........................................................21

- iii -

4874-8223-2479.v1

**Page**

*Reese v. Malone*,
   747 F.3d 557 (9th Cir. 2014)..........................................................................*passim*

*Roberti v. OSI Sys., Inc.*,
   2015 WL 1985562 (C.D. Cal. Feb. 27, 2015).........................................16, 18, 19

*Siracusano v. Matrixx Initiatives, Inc.*,
   585 F.3d 1167 (9th Cir. 2009),
   *aff'd sub nom.* 563 U.S. 27, 131 S. Ct. 1309,
   179 L. Ed. 2d 398 (2011).................................................................................10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308, 127 S. Ct. 2799,
   168 L. Ed. 2d 179 (2007)...........................................................................17, 20

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
   §78t(a)................................................................................................................21
   §78u-4(a) .............................................................................................................1

17 C.F.R.
   §240.10b-5 ..........................................................................................................1

Federal Rules of Civil Procedure
   Rule 8(a) ...........................................................................................................21
   Rule 10b-5 ...........................................................................................................1
   Rule 15(a)(2).......................................................................................................1

4874-8223-2479.v1

Plaintiff Kenneth S. Grossman ("Plaintiff") respectfully submits this memorandum in opposition to the motion to dismiss filed by defendants Andrew Rickman, Mahesh Karanth, and Chad Becker ("Rickman," "Karanth," "Becker," and collectively, "Defendants") ("Motion" or "Mot.") (ECF 33).[1]

## I.   INTRODUCTION

At its core, this case is about a company whose top executives misrepresented the status of its products and customer base and concealed imminent risks to its financial viability in order to keep their precarious dreams of success alive.  As detailed in the Complaint, prior to the start of the Class Period, Rockley was a company aiming to "revolutionize consumer health and wellness" through the application of chipsets that would supposedly enable continuous and noninvasive monitoring of multiple biomarkers – but which the Company had yet to successfully develop or commercialize.  And it was also a company with a history of recurring losses and a significant accumulated deficit.

In early 2021, Defendants received an opportunity to obtain over $150 million in desperately needed funding and secure lucrative executive roles in a publicly traded company through a proposed business combination (the "Merger") with a "blank check company," also known as a special purpose acquisition vehicle, or

---

[1]  Plaintiff's Complaint for Violations of the Federal Securities Laws (ECF 1) ("Complaint") asserts claims under §§10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission ("SEC"), 17 C.F.R. §240.10b-5, on behalf of a putative class of investors.  ECF 1, ¶¶1, 4.  As such, this action is governed by the provisions of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), which "requires a district court to appoint a person or persons to serve as lead plaintiff before proceeding with the adjudication of a private suit under the federal securities laws." *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 81 (2d Cir. 2004); *see also* 15 U.S.C. §78u-4(a).  Plaintiff did not move for appointment as lead plaintiff prior to the January 8, 2024 deadline for doing so, and no lead plaintiff has been appointed to date.  On January 12, 2024, Plaintiff, Defendants, and the only timely lead plaintiff movants filed with the Court a joint stipulation (ECF 43) ("Stipulation") requesting that the Motion be taken off calendar in light of the sole lead plaintiff movants' intention to file an amended complaint following their appointment.  The Stipulation also provided Defendants' written consent to such amendment, pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure.

- 1 -

"SPAC." To ensure that the Merger would be approved, Defendants overstated the commercial prospects of their "revolutionary" technology and the nature of their supposed commitments from "leading blue-chip customers," while also concealing known material risks regarding one of only two real revenue streams the Company had at the time.

Specifically, Defendants told investors at the time that "***this is not a future story – this is happening now and we have strong visibility on our numbers in close partnership with our customers***." ¶52.[2] Those numbers conveyed that Defendants expected to commercialize Rockley's products by the second half of 2022, resulting in sky-rocketing revenue increases for 2023 and beyond. In the meantime, Rockley would depend heavily upon revenue received from a joint venture it had formed in 2017 with a company by the name of Hengtong. Defendants, however, concealed that Rockley faced an imminent risk of losing that revenue due to the likelihood that U.S. regulators would soon preclude Hengtong from doing business with U.S. companies.

Throughout the Class Period, Defendants continued to portray Rockley's prospects – particularly with regard to the Company's "wearables" technology – as exceedingly rosy, repeatedly boasting about the ever-growing number of customers Rockley had "engaged or contracted" with, who had supposedly "validated" Rockley's technology. ¶¶53-54, 64, 71, 73. These representations, however, would ultimately prove to be completely unfounded.

On December 21, 2021, the concealed risks regarding Rockley's joint venture materialized when Hengtong was, in fact, prohibited from doing business with U.S. companies, thereby eliminating a vital source of revenue for the Company. Following this news, Defendants assured investors all was well by highlighting the

---

[2] Unless otherwise noted, all "¶__" and "¶¶__" references are to the Complaint, all emphasis is added, and citations are omitted.

- 2 -

4874-8223-2479.v1

"tremendous progress" Rockley had made "in product development and with our customers," and affirming in May 2022 that Rockley's "development programs" for its wearables technology "remain[ed] on track" to support Rockley's "planned move into production in the second half of 2022." ¶¶73, 78.

But less than three months later, following the departure of CFO Karanth, Rockley stunningly announced that it was *completely withdrawing* its 2023 revenue guidance and effectively *abandoning* the wearables market, confirming that the glowing reports Defendants had consistently touted over the past year had been baseless. ¶¶80-83. Rickman effectively confirmed as much when asked by an analyst what had changed over that time, admitting: "*I don't think anything has changed*." ¶88. In other words, the same state of affairs that caused Defendants to withdraw Rockley's 2023 revenue guidance and abandon the wearables market it previously touted had been present the whole time.

Rickman, however, continued his attempts to keep the dream alive by claiming that, despite these developments, Rockley's "overall business prospects" were "*actually stronger than they have ever been*." ¶87. But these representations also proved illusory. Within months, Rickman resigned from his role as CEO, and by January 23, 2023, Rockley had filed for Chapter 11 bankruptcy, wiping out all existing shareholders and causing significant losses to investors as a result.

## II.    FACTUAL BACKGROUND

### A.    Rockley's Operations

Rockley Photonics Limited, a subsidiary of Rockley Photonics Holdings Limited (collectively, "Rockley" or the "Company"), is a technology company specializing in the development of silicon photonics chipsets. Leading up to the Class Period, the Company was purportedly developing a health monitoring platform that aimed to provide continuous non-invasive monitoring of multiple biomarkers, such as blood pressure and glucose. ¶¶30, 32. According to Defendants, Rockley's "unique sensing platform" was well positioned to "revolutionize

- 3 -

4874-8223-2479.v1

consumer health and wellness." ¶46. During the Class Period, Rockley was purportedly developing two different product lines to address two different markets: (i) the VitalSpex line of products, which targeted the consumer health and wellness markets by offering a sensor that could supposedly be incorporated into a wearable device, such as a watch or wristband ("wearables"); and (ii) the Bioptx line of products, which sought to incorporate Rockley's monitoring platform into devices used by medical professionals ("medtech"). ¶31. Throughout the majority of the Class Period, Rockley was primarily focused on the prospects of its wearables market, which Defendants touted to investors as "happening now," "validated by leading blue-chip customers," and supported by customer "commitments" and "volume [purchase orders]." ¶¶33, 52-53, 71.

### B.    The Merger

In March 2021, Rockley received an opportunity to "accelerate the commercial launch" of its products when it was identified by a SPAC, SC Health, for the proposed Merger, which would infuse the Company with over $150 million of funding and result in Rockley becoming a publicly traded company.[3] ¶¶26-29, 46. To sell the proposed Merger to SC Health investors, Defendants claimed that Rockley's consumer electronics customers were primed to purchase Rockley's wearable technology by late 2022, which would purportedly drive exponential revenue growth culminating in $427 million of projected revenue in 2023 and over a billion dollars in 2024. ¶48. To justify these revenue projections and the Company's $1.2 billion valuation (¶46), Defendants overstated the development of Rockley's products and its customer base, in addition to concealing known material

---

[3] SC Health was sponsored by defendants SC Health Holdings Limited, SC Health Group Limited, and SIN Capital Group Pte. Ltd., which were controlled by defendants David Sin and Angelo John Coloma (collectively, the "Sponsor Defendants"). The Sponsor Defendants are not at issue in the Motion. Upon information and belief, they are domiciled outside of the United States and have yet to be successfully served in this action.

- 4 -

4874-8223-2479.v1

risks concerning the viability of Rockley's joint venture, Hengtong Rockley Technology Co., Ltd. ("HRT"), which provided Rockley a vital source of non-recurring engineering ("NRE") revenue needed to fund the Company's development efforts in 2021 and 2022.  ¶¶57-58.

### C.    Defendants' Concealment of Material Risks Concerning Rockley's Joint Venture

Because Rockley did not plan on realizing significant revenue from its wearables products until at least the second half of 2022, the funding of its operations – and thus, the viability of the Company – relied heavily on NRE revenue from HRT in 2021 and 2022.  ¶¶33-36, 57-58.  Indeed, HRT was one of only two paying customers Rockley had in 2021.  ¶58.  But the HRT revenues were subject to significant risks that were known to Defendants by the start of the Class Period. Specifically, prior to the Merger announcement, Rockley's joint venture partner, Hengtong, was at risk of scrutiny by the U.S. government due to its acquisition of Huawei Marine Networks, Co., Ltd. ("Huawei Marine"), a company the U.S. Bureau of Industry and Security ("BIS") had already placed on its banned "Entity List," preventing U.S. based companies from doing business with it.  ¶¶38-39.  Hengtong's acquisition and rebrand of Huawei Marine to HMN Technologies Co. ("HMN Tech") did not quell the scrutiny on the company, which had an undersea data transmission cable contract invalidated by the World Bank, on the U.S.'s urging, in February 2021, just weeks before the Merger was announced.  ¶¶40-41.  Despite Rockley's stated reliance on HRT revenue, Defendants concealed their knowledge that the joint venture was at risk due to Hengtong's ownership of HMN Tech, disclosing only generic warnings that Rockley was subject to "export and import control laws and regulations."  ¶59.  Defendants' concealment of this known threat to Rockley's critical NRE revenues materially misled investors as to the Company's financial prospects.

4874-8223-2479.v1

These risks materialized on December 21, 2021, when Rockley disclosed that it would no longer transact with HRT – and lowered its 2021 and 2022 revenue guidance as a result – due to Hengtong's placement on the Entity List.  ¶66.  The loss of this vital revenue stream constrained Rockley's ability to fund product development, and thus, had a material impact on the Company's financial viability.

**D.    Defendants' Misrepresentations Concerning the Commercial Prospects of Its Consumer Wearables Technology**

During the March 19, 2021 investor presentation announcing the proposed Merger, Defendants repeatedly highlighted the supposedly groundbreaking nature of Rockley's technology and its purportedly imminent commercialization. Specifically, with regard to the commercialization timeline for Rockley's wearables products, Rickman told investors "***this is happening now***" and claimed Rockley had "***strong visibility on our numbers in close partnership with our customers***."  ¶52.

Rickman further asserted that Rockley was "currently engaged or ***contracted*** with six companies," a number that would grow to 17 during the Class Period.  ¶53; *see also* ¶72.  To demonstrate the strength of Rockley's relationships with its purported "customers," Rickman claimed that "[Rockley's] technology and business model [we]re ***validated by leading blue chip customers***."  ¶53; *see also* ¶64.

Throughout the Class Period, Defendants claimed Rockley was "mak[ing] outstanding progress" in the "development and commercialization" of its products. ¶70; *see also* ¶63 (press release signed by Karanth announcing that Rockley had "sign[ed] multiple partnerships across key markets").  On January 13, 2022, Rickman highlighted that Rockley had "***contracted*** with . . . 12 . . . [g]lobal consumer electronics companies or leading consumer companies," which he described as "***commitments***" for which Rockley was negotiating "***volume [purchase orders]***." ¶71.  And on March 8, 2022, Defendants assured investors they had built upon the ambitious prospects announced a year prior, specifically claiming "we made ***tremendous progress in product development and with our customers***, exceeding

- 6 -

4874-8223-2479.v1

many of our goals for the year" and that the Company had "significantly expan[ded]" its "footprint in the **consumer wearables market** by signing **new agreements** with six global consumer electronics manufacturers." ¶73. As further detailed below, however, these representations proved to be completely unfounded.

### E.    Defendants Continue to Mislead the Market as the Truth Is Revealed

On the heels of Hengtong's inclusion on the Entity List, Rickman reassured investors by stating "[w]e continue to make outstanding progress" in the "development and commercialization of [Rockley's] sensing platform." ¶70. On May 12, 2022, Rockley slashed its revenue guidance for 2023 from $427 million to $300-$320 million, but Defendants continued to sing a positive tune, with Rickman reassuring investors that Rockley's "product development programs" for its wearables technology "***remain[ed] on track***" to support Rockley's "***planned move into production in the second half of 2022***." ¶78.

But Defendants quickly pulled an about-face in the following months. First, on June 15, 2022, the Company announced the departure of its CFO Karanth. ¶9; *see also* ECF 34-10 at 2516. Then, less than two months later, Defendants stunned investors on August 11, 2022, by ***completely withdrawing*** Rockley's 2023 revenue guidance and disclosing that they were effectively ***abandoning*** the wearables market, confirming that the glowing reports Defendants had consistently touted over the past year, including as recently as May 2022, were unfounded. ¶¶80-83.

Simply put, there is no plausible way to reconcile these developments with Defendants' previous statements regarding the development and commercialization of Rockley's wearables technology. Indeed, Defendants had previously represented that those products were "***validated*** by leading blue-chip customers" and that Rockley was negotiating "***volume [purchase orders]***" with a stable of "***12 consumer electronics customers***." ¶¶53, 71, 73. And as recently as May 8, 2022, Rickman told investors that the "development programs" for those specific products

- 7 -

"*remain[ed] on track*," for Rockley's "*planned move into production in the second half of 2022*."    ¶78.    If these statements were true at the time, it is simply inconceivable that Rockley would then abandon that market and completely withdraw its 2023 revenue guidance within a matter of months.

And Rickman essentially admitted as much during an August 11, 2022 investor call, by stating – in response to analyst questions attempting to reconcile Defendants' previous statements with the sudden shift away from wearables and the withdrawal of 2023 revenue guidance – that "*I don't think anything has changed*." ¶88.  As such, Rickman effectively confirmed that the state of affairs at that time – when Rockley had no meaningful prospects for its wearables technology and no basis to provide any revenue guidance for 2023 – was no different than it had been throughout the Class Period when Defendants repeatedly touted the commercial prospects of those same products and provided substantial revenue projections for 2023.

Despite these shocking developments, however, Defendants continued to paint Rockley's outlook as promising, describing the shift away from the market they had repeatedly touted as a *good* sign for the Company.  ¶¶85-88.  Specifically, Defendants claimed that shifting Rockley's focus to the medtech market had resulted in its "overall business prospects" being "*stronger than they have ever been*."  ¶87. To support this assertion, Defendants claimed to have "signed a supply agreement and received our first commercial purchase order" from "a top 10, global medtech company," while stating that "Rockley expects to ship the bands to the customer in the fourth quarter [of] 2022, with volume production ramping in 2023." ¶85.

But these representations also proved illusory.  On December 12, 2022, Rickman resigned from his role as CEO.  ECF 34-10 at 2555.  Shortly thereafter,

- 8 -

Rockley filed for Chapter 11 bankruptcy on January 23, 2023, wiping out all existing shareholders and causing significant losses to investors as a result.  ¶92.[4]

## III.    ARGUMENT

To defeat the Motion, the Complaint "'must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."'" *In re Snap Inc. Sec. Litig.*, 2018 WL 2972528, at *3 (C.D. Cal. June 7, 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 868 (2009)).  "In deciding a 12(b)(6) motion, the Court must accept all allegations of material fact stated in the complaint as true . . . [and] draw all reasonable inferences in favor of the nonmoving party." *Id*. at *4.

"To state a securities fraud claim, plaintiff must plead: '(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.'"  *Reese v. Malone*, 747 F.3d 557, 567 (9th Cir. 2014).  Defendants' Motion challenges only the first two of these elements, falsity and scienter.  Mot. at 6.  These elements are subject to heightened pleading standards, as detailed below.

---

[4]  Defendants' assertion that positions purportedly advanced by Plaintiff in connection with Rockley's bankruptcy proceeding are somehow relevant to this action impermissibly seeks to rely upon judicially noticed documents to prove the truth of disputed matters asserted therein, and more importantly, is a complete red herring for purposes of the Motion.  Mot. at 3-4.  Plaintiff's positions regarding the *future* valuation of Rockley's technology during post-Class Period bankruptcy proceedings have no bearing whatsoever on whether Defendants' Class Period statements regarding the Company's joint venture, the then-current nature of its customer relationships, and the then-current status of its product development and commercialization were materially false and misleading.  As such, the Court should disregard Defendants' assertions regarding Plaintiff's positions in the bankruptcy proceedings and decline to take judicial of the documents upon which those assertions rely.  *See* Plaintiff's Opposition to Defendants' Request for Judicial Notice, filed concurrently herewith.

- 9 -

4874-8223-2479.v1

**A.    The Complaint Alleges Actionable Misrepresentations**

To plead falsity, the Complaint must "'specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading.'" *Reese*, 747 F.3d at 568.  While falsity is subject to a particularity requirement, such allegations need only satisfy "the ***reasonable inference*** standard of plausibility set out in *Twombly* and *Iqbal*." *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 766 (9th Cir. 2023).  "[A] statement is misleading if it would give a reasonable investor the 'impression of a state of affairs that differs in a material way from the one that actually exists.'" *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985 (9th Cir. 2008).  As described below, the Complaint satisfies the above standards for alleging falsity.

**1.    Defendants Concealed Material Known Risks Regarding the Joint Venture**

Defendants' representations regarding Rockley's joint venture omitted material known facts necessary to make Defendants' statements not misleading. When a defendant "'[chooses] to tout positive information to the market, they [are] bound to do so in a manner that wouldn't mislead investors, including disclosing adverse information that cuts against the positive information.'" *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1009 (9th Cir. 2018); *see also Caiola v. Citibank, N.A., N.Y.*, 295 F.3d 312, 331 (2d Cir. 2002) ("upon choosing to speak, one must speak truthfully about material issues").  Moreover, a risk disclosure is, itself, actionable where it fails to disclose risks that "already have come to fruition" or raises generic risks that omit information necessary to make the disclosure not misleading. *Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167, 1181 (9th Cir. 2009), *aff'd sub nom.* 563 U.S. 27, 131 S. Ct. 1309, 179 L. Ed. 2d 398 (2011); *see also Howard v. Arconic Inc.*, 2021 WL 2561895, at *6 (W.D. Pa. 2021) (warnings of "risks could plausibly be found to have been misleading" by omitting information that "increased the likelihood of that risk materializing in a serious way").

- 10 -

Defendants were required to disclose that Hengtong's acquisition of Huawei Marine imperiled Rockley's HRT revenues for two reasons. First, by highlighting the positive impact of the HRT joint venture on Rockley's 2021 and 2022 revenue projections and its importance to funding Rockley's operations, Defendants were duty-bound to disclose the adverse fact that those revenues were imminently at risk due to Hengtong's acquisition of a company on the Entity List, which placed Hengtong at significant risk of being blacklisted as well – which would, and ultimately did, eliminate Rockley's HRT revenue. Second, Rockley's risk disclosures regarding "export and import control laws and regulations" were, themselves, materially misleading because they omitted the specific risks pertaining to HRT, which were known to Defendants at the time. Moreover, these known risks were material because HRT was one of only two paying customers Rockley had at the time, and once Rockley ceased doing business with HRT, its 2021 revenue estimates decreased by approximately 73%. ¶¶58-59, 68.

Defendants primarily contest this allegation by noting that facts regarding Huawei's addition to the Entity List, Hengtong's acquisition of Huawei Marine, and the invalidation of Huawei Marine's bid were (separately) available to the public. Mot. at 7-8. But for this kind of "truth-on-the-market" defense, Defendants must "'show that the information was transmitted to the public with a degree of intensity and credibility sufficient to effectively counterbalance any misleading impression created' by the alleged false or misleading statements." *Snap*, 2018 WL 2972528, at \*7. Further, "the truth-on-the-market defense is intensely fact-specific, so courts rarely dismiss a complaint on this basis." *Nguyen v. Radient Pharm. Corp.*, 2011 WL 5041959, at \*7 (C.D. Cal. Oct. 20, 2011).

Here, Defendants fail to establish that the specific omitted information – the risk to HRT's viability – was transmitted to the market with the requisite intensity. Indeed, **Rockley's** connection to the national security scrutiny placed on Hengtong is not disclosed anywhere in the materials Defendants cite. And Defendants' claim

- 11 -

4874-8223-2479.v1

that Rockley investors were meaningfully cautioned through news reports unrelated to the Company is, at most, a fact-intensive inquiry that cannot be resolved as a matter of law.

Defendants' reference to boilerplate risk disclosures fares no better, as those disclosures made no reference to the connection between Huawei Marine and Hengtong or the viability of HRT. *See* Mot. at 8-9. Nor did they accurately describe the gravity of the risk to Rockley, *i.e.*, the loss of one of only two available revenue streams. Instead, the disclosures focused on generic risks associated with "export and import control laws and regulations" (¶59), which failed to warn of the specific material risks known to Defendants. *See Loritz v. Exide Techs.*, 2014 WL 4058752, at *7 (C.D. Cal. Aug. 7, 2014) (finding that it is "difficult to see a logical stopping point to the ability of companies to 'disclose' serious . . . problems to investors through vague, general or boilerplate statements").

Even if Rockley's risk disclosures fairly warned investors of the risk posed by Rockley's connection to Hengtong (which they did not), relevant events such as the Huawei Marine acquisition and the World Bank's invalidation of Huawei Marine's bid had already come to fruition prior to the Class Period. These events significantly increased the risks to HRT, and thus, should have been specifically disclosed. *See HsingChing Hsu v. Puma Biotechnology, Inc.*, 2017 WL 3205774, at *4 (C.D. Cal. July 25, 2017) (finding cautionary language cannot be meaningful when "such language would itself be 'misleading in light of historical fact[s]'").[5]

---

[5] Defendants further argue that Plaintiff "does not allege that Rockley Defendants knew [about the BIS listing] before they occurred." Mot at 5. But Defendants mischaracterize Plaintiff's allegation, which is that Defendants omitted the specific and material ***risk*** that Hengtong would likely be blacklisted and the significant negative impact that would have on Rockley, which was known to Defendants prior to the Class Period. ¶¶38-41.

- 12 -

4874-8223-2479.v1

2. **Defendants Materially Misled Investors Regarding Rockley's Customer Relationships and Commercial Prospects**

Defendants repeatedly misstated the imminent production and commercialization of its products, overstated the commitments of its customers, and used those false assumptions to create patently unsupportable revenue estimates. For example, Rickman claimed at the start of the Class Period that Rockley's wearables technology was "***not a future story***" but was instead "***happening now***." ¶52. To support this narrative, Defendants misleadingly stated that the "***technology and business model [we]re validated***," that customers were "***committed***," and that Rockley was negotiating "***volume [purchase orders]***." ¶¶50, 53, 64, 71-72. These statements portrayed Rockley as being on the cusp of realizing revenue from paying customers primed to incorporate Rockley products into their consumer offerings.

The truth, however, was that Rockley did ***not*** have the customer commitments it touted, and to date, has never sold a commercial scale product. ¶¶44, 80. As detailed *supra*, these facts are confirmed by the irreconcilable nature of Defendants' statements with their sudden abandonment of the wearables market, their complete withdrawal of 2023 revenue guidance, Rickman's admission at that time that nothing had changed, and the Company's quick collapse into bankruptcy.

Defendants argue that Plaintiff alleges fraud by hindsight and that subsequent events do not show Defendants' statements were false when made. Mot at 10-11. But as courts in this district have recognized, "[f]raud is almost always detected after the fact, typically based on evidence developed subsequent to the allegedly fraudulent statements." *In re MannKind Sec. Actions*, 835 F. Supp. 2d 797, 809 (C.D. Cal. 2011).

Defendants' misrepresentations about Rockley's revolutionary products and their imminent commercialization are wholly incompatible with, and contradicted by, Rockley's sudden shift away from the wearables market it had repeatedly touted and the apparent evaporation of the purportedly deep wearables customer base

- 13 -

4874-8223-2479.v1

Defendants had consistently espoused, which supposedly accounted for 60% of the market through 12 consumer device customers.  ¶71.  If Rockley's "committed" customers had actually validated Rockley's products, at least some of them would have entered into purchase orders for 2023.  But none of them did because Rockley withdrew its entire 2023 revenue forecast in August of 2022.  *See MannKind*, 835 F. Supp. 2d at 810-11 (inferring that defendants' statements of the FDA "vetting" the company's technology were false when its product was rejected just several months later).  As such, the only plausible inference from Rockley's drastic shift in business strategy is that there never was a validated commercial opportunity in consumer wearables to begin with.  If there was, the purportedly diversified customer list Defendants touted would not have resulted in an absolute failure to sell any products whatsoever.

Indeed, Rickman essentially admitted as much by stating, after Rockley had disclaimed all of its estimated 2023 revenues and walked away from the wearables market, "***I don't think anything has changed***."  ¶88.  In other words, the same grim state of affairs that existed at that time had been there all along, but Defendants had simply concealed and misrepresented it through their falsely positive reports.

### 3. Defendants' Purported Forward-Looking Statements Contained Representations of Present Facts

Defendants also contend that their revenue projections are forward-looking statements protected by the safe harbor provisions of the PSLRA.  Mot at 13.  But statements about future conditions are not protected where defendants "make a materially false or misleading statement about current or past facts, and combine that statement with a forward-looking statement." *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1142 (9th Cir. 2017).  As the Ninth Circuit has confirmed, "knowingly mak[ing] materially false or misleading non-forward-looking statements about the state of [the company's] sales pipeline" mixed with projected revenue growth is

- 14 -

4874-8223-2479.v1

actionable and not protected by the safe harbor. *Id*. at 1142-43. Plaintiff has alleged nearly identical mixed statements here.

According to Rickman, Rockley's revenue projections were based upon its current "engage[ments] or contract[s]" with customers, which purportedly provided "strong visibility on [Rockley's] numbers." ¶¶52-53. As detailed above, however, that purported basis was unfounded and materially misleading, rendering Defendants' revenue projections materially misleading as well. "The fact that defendants used those inadequately disclosed historical facts to support unsound projections does not shield their alleged misrepresentations as forward-looking statements." *In re CV Therapeutics, Inc.*, 2004 WL 1753251, at *10 (N.D. Cal. Aug. 5, 2004).

### 4.    Defendants' Optimistic Statements Were Materially Misleading

Defendants argue that statements such as "'we made tremendous progress in product development and with our customers, exceeding many of our goals'" are nonactionable puffery. Mot at 14-15. But even "'general statements of optimism, when taken in context, may form a basis for a securities fraud claim'" when those statements address specific aspects of a company's operation that the speaker knows to be performing poorly." *Quality Sys.*, 865 F.3d at 1143. Accordingly, "determining whether a given statement is material [*i.e.*, not puffery] 'entail[s] fact-intensive assessments that are more properly left to the jury.'" *Mulligan v. Impax Labs., Inc.*, 36 F. Supp. 3d 942, 966 (N.D. Cal. 2014). A statement can only be characterized as puffery if it is "'so "exaggerated" or "vague" that no reasonable investor would rely on it when considering the total mix of available information.'" *In re Impac Mortg. Holdings, Inc. Sec. Litig.*, 554 F. Supp. 2d 1083, 1096 (C.D. Cal. 2008).

Here, Defendants' statements regarding their "outstanding" and "tremendous" progress conveyed a state of affairs that materially differed from the one that actually

- 15 -

4874-8223-2479.v1

existed, *i.e.*, a lack of meaningful advancement toward commercialization. *See Roberti v. OSI Sys., Inc.*, 2015 WL 1985562, at *9 (C.D. Cal. Feb. 27, 2015) (holding that certain statements "about the status of specific products" "were not vague and optimistic, but specific and materially misleading"). Indeed, if Defendants had accurately disclosed that Rockley was making little-to-no progress with its product development and customer relationships, investors would have come to learn early in the Class Period that Defendants' projections for a massive revenue ramp in late 2022 and beyond were unlikely to materialize. Similarly, statements about "working closely and deeply" with customers conveyed a state of affairs in which Defendants would have understood how close those customers were to signing purchase orders, which is inconsistent with Rockley's sudden withdrawal of its entire 2023 revenue guidance shortly after conveying to investors that its "product development programs" supported the Company's "planned move into production in the second half of 2022." ¶78.

### B.    The Complaint Alleges a Strong Inference of Scienter

"To adequately plead scienter, the complaint must 'state with particularity facts giving rise to *a strong inference* that the defendant acted with the required state of mind.'" *Reese*, 747 F.3d at 568 (emphasis in original). In the Ninth Circuit, "[t]he inference must be that 'the defendant[ ] made false or misleading statements either *intentionally* or with *deliberate recklessness*.'" *Id.* at 569 (emphasis in original). "'[A]n actor is [deliberately] reckless if he had reasonable grounds to believe material facts existed that were misstated or omitted, but nonetheless failed to obtain and disclose such facts although he could have done so without extraordinary effort.'" *Id.* (alterations in original).

When assessing the element of scienter, "a court must first accept all factual allegations in the complaint as true" and "'review all the allegations holistically.'" *Id.* at 568-569. The "relevant inquiry" is then "'whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, *not* whether any

- 16 -

4874-8223-2479.v1

individual allegation, scrutinized in isolation, meets that standard.'" *Id*. at 569 (emphasis added and in original). A strong inference of scienter is one that is "'cogent and at least as compelling as any opposing inference of nonfraudulent intent.'" *Id.* "[T]he fraudulent inference need ***not*** be more compelling than its nonfraudulent alternatives; if two possible inferences – one fraudulent and the other nonfraudulent – are ***equally compelling***, a plaintiff has demonstrated a strong inference of scienter." *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1033 (9th Cir. 2016); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S. Ct. 2799, 168 L. Ed. 2d 179 (2007) ("The inference that the defendant acted with scienter need not be irrefutable, *i.e.*, of the 'smoking gun' genre, or even the 'most plausible of competing inferences. . . .'").

Here, the Complaint alleges numerous facts that – taken collectively – give rise to a strong inference of scienter.

***First***, the Complaint alleges that Defendants made detailed factual statements regarding the precise matters that were allegedly misrepresented and omitted. For example, in March 2021, Rickman stated: "We are currently engaged or contracted with six companies across consumer electronics and MedTech which form the basis of our financial projections through 2024"; and that "[o]ur technology and business model are validated by leading blue-chip customers as we are currently engaged or contracted with six customers collectively holding over 50% of the smartphone and wearables markets." ¶53. Similarly, in May 2022, Rickman stated that the "development programs" for Rockley's consumer wearable products "remain on track," that "ongoing human studies are going well, achieving very compelling results," and that "[t]he progress that we've made supports our planned move into production in the second half of 2022." ¶78. In addition, Rickman and Karanth both signed documents filed with the SEC containing detailed factual representations regarding Rockley's joint venture, HRT. ¶¶58, 62.

- 17 -

As the Ninth Circuit and numerous other courts have recognized, detailed factual statements like those described above provide strong evidence that Defendants were aware of the misrepresented and omitted facts regarding the topics upon which they spoke. *See, e.g.*, *Roberti*, 2015 WL 1985562, at *12 ("As the Ninth Circuit has previously explained, an assertion that defendants were unaware of the alleged issues can be 'directly contradicted by the fact that [they] specifically addressed it in [their] statement[s].'") (citing *Reese*, 747 F.3d at 571) (alterations in original); *see also In re QuantumScape Sec. Class Action Litig.*, 580 F. Supp. 3d 714, 741 (N.D. Cal. 2022) (finding scienter adequately alleged where "the individual defendants personally reported facts about the company that are alleged to be completely at odds with reality"); *Frank v. Dana Corp.*, 646 F.3d 954, 961-62 (6th Cir. 2011) (finding scienter adequately alleged where it was "difficult to grasp the thought" that "the top two executives" who "reported gangbuster earnings" "really had no idea that [the company] was on the road to bankruptcy"). As such, Defendants' detailed factual statements regarding the basis for Rockley's financial projections, the current status of its purported customer relationships and product development, and the details of its joint venture provide strong indicia that they were aware of the allegedly misrepresented and omitted facts regarding those same topics.

***Second***, the temporal proximity between Defendants' material misrepresentations and the disclosure of information undermining those representations further supports a strong inference of scienter. For example, just ***one month*** after Defendants made detailed factual representations regarding HRT, ***without*** disclosing known material risks concerning HRT's future viability, Rockley disclosed that it would no longer be proceeding with sales to HRT, lowering its revenue guidance for 2021 and 2022 as a result. ¶¶58-59, 62, 66. Similarly, ***less than three months*** after Rickman made glowing representations regarding the current status of Rockley's consumer wearable products development and production, Rockley stunningly announced that it was effectively ***abandoning*** that

- 18 -

4874-8223-2479.v1

market and simultaneously withdrawing all revenue guidance for 2023. ¶¶78, 80-83. And just five months after Rickman represented that Rockley's "overall business prospects" were "***stronger than they have ever been***," Rockley filed for bankruptcy. ¶¶87, 92.

Numerous courts, including this Court and the Ninth Circuit, have found that "[t]emporal proximity of an allegedly fraudulent statement or omission and a later disclosure can be circumstantial evidence of scienter." *Reese*, 747 F.3d at 574-575 (finding inference of scienter "bolster[ed]" by fact that "the statements and the contradictory disclosures are separated by three to six months"); *see also*, *e.g.*, *Snap*, 2018 WL 2972528, at *5 (finding "the fact that Snap allegedly changed its position three months after it initially denied any engagement in growth hacking" to support an inference of scienter); *Roberti*, 2015 WL 1985562, at *11 (finding temporal proximity of "less than six months" to be "supportive of scienter").

***Third***, the strong inference of scienter is further supported by the suspiciously timed resignations of Rickman and Karanth. Karanth, Rockley's former CFO, resigned effective June 13, 2022 – less than two months before Rockley stunned investors by ***completely withdrawing*** the revenue guidance it had previously provided for 2023. ¶¶9, 80-83. As Rockley's CFO, Karanth was ultimately responsible for issuing revenue guidance, and thus his resignation immediately prior to the Company's complete retraction of that guidance is strong circumstantial evidence of his scienter. Shortly thereafter, Rickman, Rockley's founder and longtime leader, resigned from his role as CEO on December 12, 2022 – approximately ***one month*** before the Company filed for bankruptcy. Numerous courts have found that suspiciously timed corporate resignations, like those of Rickman and Karanth, add to the inference of scienter. *See, e.g.*, *Dana*, 646 F.3d at 960; *In re Mattel, Inc. Sec. Litig.*, 2021 WL 1259405, at *7 (C.D. Cal. Jan. 26, 2021); *In re UTStarcom, Inc. Sec. Litig.*, 617 F. Supp. 2d 964, 975-76 (N.D. Cal. 2009); *In re China Med. Sec. Litig.*, 2012 WL 5713399, at *4 (C.D. Cal. May 10, 2012).

- 19 -

4874-8223-2479.v1

***Fourth***, Defendants' strong inference of scienter is further bolstered by allegations of motive.  Specifically, Defendants were motivated to materially misrepresent Rockley's prospects in order to secure the Merger, which promised much needed funding and the appeal of high-ranking positions in a publicly traded company.  ¶¶25-29; *see also Tellabs*, 551 U.S. at 325 ("motive can be a relevant consideration, and personal financial gain may weigh heavily in favor of a scienter inference"); *QuantumScape*, 580 F. Supp. 3d at 741-42 (finding, in a case involving a SPAC transaction, that scienter was supported by defendant's motive to "raise[] hundreds of millions of dollars," which plausibly created a "financial incentive to represent that its [products] were farther along and less risky than they actually were").

***Finally***, the fact that the alleged misrepresentations concerned the most critical aspects of Rockley's financial prospects – namely, the Company's ability to continue receiving vital revenue from HRT and the current status of Rockley's customer base and product development – strongly support the inference of scienter. Indeed, the Ninth Circuit has recognized that it is "reasonable to conclude that high-ranking corporate officers have knowledge of the critical core operation of their companies." *See Reese*, 747 F.3d at 569.  As such, the Ninth Circuit has held that "[a]llegations regarding management's role may help satisfy the PSLRA scienter requirement in three circumstances:" (1) "the allegations may be viewed holistically, along with other allegations in the complaint, to raise a strong inference of scienter under the *Tellabs* standard"; (2) "the allegations 'may ***independently*** satisfy the PSLRA where they are particular and suggest that defendants had actual access to the disputed information'"; and (3) "such allegations may be sufficient, ***without accompanying particularized allegations***, where the nature of the relevant fact is of such prominence that it would be 'absurd' to suggest that management was without knowledge of the matter." *Id.* at 575-76.

- 20 -

Here, all three of the above circumstances apply.  As detailed above, the Complaint alleges other facts raising a strong inference of scienter when viewed holistically with the alleged facts regarding Defendants' roles within the Company. In addition, the Ninth Circuit has held that "'actual access to the disputed information'" can be found where Defendants' "statements are specific and reflect . . . access to the disputed information." *Id*. at 576-77.  As detailed above, Defendants made such statements here. *See, e.g.*, ¶¶53, 58, 62, 78.  And finally, the nature of the misrepresented and omitted information – which pertained to the Company's ability to continue receiving critical revenue from HRT and the current status of Rockley's customer base and product development – was so "fundamental to operations of [Rockley's] business," that it "would be 'absurd' to suggest that management was without knowledge of the matter[s]." *Reese*, 747 F.3d at 576; *see also Berson*, 527 F.3d at 987, 989 (finding scienter adequately alleged, despite the fact that "plaintiffs allege[d] no particular facts indicating that [defendants] actually knew about the [misrepresented information]," because the "facts were prominent enough that it would be 'absurd to suggest' that top management was unaware of them"); *Plumbers Union Local No. 12 Pension Fund v. Ambassador's Grp.*, 717 F. Supp. 2d 1170, 1178 (E.D. Wash. 2010) ("[S]ome events are so integral to the operations of a company that knowledge thereof cannot be denied by senior executives.").

Viewed holistically, the above allegations raise an inference of scienter that is "'cogent and at least as compelling as any opposing inference of nonfraudulent intent.'" *Reese*, 747 F.3d at 568-69.

### C.    The Complaint Alleges Actionable Claims Under §20(a)

To adequately allege a claim under §20(a), Plaintiff need only plead, under the notice pleading standards of Fed. R. Civ. P. Rule 8(a): (1) a primary violation of federal securities laws; and (2) that the defendant "'exercised actual power or control over the primary violator.'" *Batwin v. Occam Networks, Inc.*, 2008 WL 2676364, at

- 21 -

4874-8223-2479.v1

*24 (C.D. Cal. July 1, 2008).  As detailed above, Plaintiff has adequately alleged a primary violation for securities fraud.  Defendants' claim that Plaintiff has not alleged actual power or control by Becker is incorrect.  Mot. at 19.  In fact, the Complaint alleges that Becker served as the Company's CFO during a time when Defendants made alleged misrepresentations, including the complete retraction of Rockley's 2023 revenue guidance, which clearly falls under the purview of the Company's CFO.[6]  *See* ¶¶10, 80-91; *see also Batwin*, 2008 WL 2676364, at *25 ("The determination of who is a controlling person is 'an intensely factual question, involving scrutiny of the defendant's participation in the day-to-day affairs of the corporation and the defendant's power to control corporate actions.'").

## IV.  CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Motion be denied.  In the event the Court grants any portion of the Motion, Plaintiff respectfully requests that Plaintiff or the Court-appointed lead plaintiff(s) be granted leave to amend the Complaint in order to cure any pleading deficiencies identified by the Court.  *See Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("Dismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment . . . .  Adherence to these principles is especially important in the context of the PSLRA.").

---

[6]  In addition, Becker is alleged to have made a statement regarding Rockley's "'plan to issue revenue guidance on our Third Quarter earnings call,'" which the Company ultimately did not do.  ¶¶86, 90.  He also spoke during the conference call referenced in ¶¶81-88 (*see* ECF 34-10 at 2536-46), and signed the press release referenced in ¶80 (Defendants purport to attach the press release to their Request for Judicial Notice but appear to have inadvertently attached the wrong one; *see* ECF 34-10 at 2522).

- 22 -

4874-8223-2479.v1

DATED:  January 22, 2024

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
NATHAN R. LINDELL
KEVIN S. SCIARANI

s/ Nathan R. Lindell
NATHAN R. LINDELL

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
nlindell@rgrdlaw.com
ksciarani@rgrdlaw.com

Counsel for Plaintiff

## LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Kenneth S. Grossman, certifies that this brief contains 6,958 words, which complies with the word limit of L.R. 11-6.1.

DATED:  January 22, 2024

s/ Nathan R. Lindell
NATHAN R. LINDELL

- 23 -

4874-8223-2479.v1