PILLSBURY WINTHROP SHAW PITTMAN LLP
BRUCE A. ERICSON (76342)
bruce.ericson@pillsburylaw.com
Four Embarcadero Center, 22nd Floor
San Francisco, CA 94111-5998
Telephone:  415.983.1000
Facsimile:  415.983.1200

PILLSBURY WINTHROP SHAW PITTMAN LLP
ARI M. BERMAN (Pro hac vice)
ari.berman@pillsburylaw.com
31 West 52nd Street
New York, NY 10019-6131
Telephone:  212.858.1000
Facsimile:   212.858.1500

Attorneys for Defendants Andrew Rickman, Mahesh Karanth
and Chad Becker

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| KENNETH S. GROSSMAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>DAVID SIN, ANGELO JOHN COLOMA, ANDREW RICKMAN, MAHESH KARANTH, CHAD BECKER, SC HEALTH HOLDINGS LIMITED, SC HEALTH GROUP LIMITED, and SIN CAPITAL GROUP PTE. LTD.,<br><br>Defendants. | Case No. 2:23-cv-09501-SVW-MAA<br><br>CLASS ACTION<br><br>**REPLY IN SUPPORT OF MOTION OF DEFENDANTS RICKMAN, BECKER AND KARANTH TO DISMISS COMPLAINT**<br><br>Date:        February 12, 2024<br>Time:        1:30 p.m.<br>Courtroom:   10A, 350 West First St. |

**TABLE OF CONTENTS**

Page

I.    PRELIMINARY STATEMENT ........................................................... 1

II.   ARGUMENT ..................................................................................... 2

      A.   The Complaint does not adequately allege falsity ................... 2

           1.   The allegations about Rockley's Hengtong joint venture are not actionable ................................................................ 2

           2.   The allegations about Rockley's customer prospects are not actionable ................................................................ 3

      B.   The Complaint does not adequately allege scienter ................ 7

      C.   The Complaint does not allege any claim against Defendant Becker ..... 10

      D.   The Complaint's control person claims do not suffice ........... 11

III.  CONCLUSION ................................................................................ 11

-ii-

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Anshen v. Facebook*,
No. 2:17-cv-00679-SVW-AGR, 2017 WL 5635021 (C.D. Cal. Oct. 4, 2017) .................................................................................................................10

*City of Dearborn Heights Act 345 Police & Firefighter Ret. Sys. v. Align Tech., Inc.*,
856 F.3d 605 (9th Cir. 2017) ...........................................................................9

*Gammel v. Hewlett-Packard Co.*,
905 F. Supp. 2d 1052 (C.D. Cal. 2012).........................................................8

*Heliotrope Gen., Inc. v. Ford Motor Co.*,
189 F.3d 971 (9th Cir. 1999) ..........................................................................2

*In re Intel Corp. Sec. Litig.*,
No. 5:20-cv-05194-EJD, 2023 WL 2767779 (N.D. Cal. Mar. 31, 2023) ............................................................................................................8

*In re MannKind Securities Actions*,
835 F. Supp. 2d 797 (C.D. Cal. 2011)...........................................................5

*In re Quality Sys., Inc. Sec. Litig.*,
865 F.3d 1130 (9th Cir. 2017) .....................................................................5, 6

*In re QuantumScape Sec. Class Action Litig.*,
580 F. Supp. 3d 714 (N.D. Cal. 2022).............................................................8

*In re Rigel Pharms., Inc. Sec. Litig.*,
697 F.3d 869 (9th Cir. 2012) .........................................................................10

*Kauffman v. Nat. Health Trends Corp.*,
No. 19-cv-163-MWF, 2019 WL 7165921 (C.D. Cal. Dec. 20, 2019) ...............2

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .........................................................................11

*Kong v. Fluidigm Corp.*,
No. 22-15396, 2023 WL 2134394 (9th Cir. Feb. 21, 2023)...............................6

-iii-

*Macomb Cnty. Employees' Ret. Sys. v. Align Tech., Inc.*,
   39 F.4th 1092 (9th Cir. 2022) ...................................................................6

*Mulligan v. Impax Labs., Inc.*,
   36 F. Supp. 3d 942 (N.D. Cal. 2014) ......................................................6, 7

*Roberti v. OSI Sys., Inc.*,
   No. CV 13-9174-MWF (VBKx), 2015 WL 1985562 (C.D. Cal. Feb.
   27, 2015) ..................................................................................................7

*S. Ferry LP, No. 2 v. Killinger*,
   542 F.3d 776 (9th Cir. 2008) ..................................................................10

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ....................................................................9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ..................................................................................7

*Weston Fam. P'ship LLLP v. Twitter, Inc.*,
   29 F.4th 611 (9th Cir. 2022) ....................................................................11

*Wochos v. Tesla, Inc.*,
   985 F.3d 1180 (9th Cir. 2021) ...................................................................6

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009), *as amended* (Feb. 10, 2009) ......................9

**Statutes and Codes**

United States Code,
   Title 15, Section 78t(a) ...........................................................................11
   Title 15, Section 78u-5 .............................................................................2

-iv-

## I.    PRELIMINARY STATEMENT

In his own words, Plaintiff's Opposition rests on the proposition that, "at its core," the Complaint is "about a company whose top executives misrepresented the status of its products and customer base and concealed imminent risks to its financial viability in order to keep their precarious dreams of success alive."  ECF 46, at 1:6-8. But despite a contentious judicial reorganization process (in which Plaintiff was an active participant and represented by counsel), Plaintiff still cannot identify <u>any specific facts</u> regarding Rockley's "products" and "customer base" that were false when made, let alone any "imminent risks" to Rockley's "financial viability" that the Rockley Defendants knowingly concealed.  Plaintiff's Opposition also rests on the nebulous notion that the "state of affairs that caused Defendants to withdraw Rockley's 2023 revenue guidance and abandon the wearables market it previously touted had been present the whole time."  ECF 46, at 3:11-13.  Save for its vague reference to a "state of affairs," Plaintiff's Opposition again fails to identify <u>any specific facts</u> alleged to have been intentionally misrepresented or omitted.

The Opposition cannot change the Complaint's failure to allege falsity with any particularity as to either the Hengtong JV or Rockley's customer prospects.  The facts allegedly omitted about the Hengtong JV were publicly disclosed; there is no allegation that the Rockley Defendants knew these facts even a minute before the U.S. Government and the World Bank announced their sanctions against Rockley's joint venture partner.  Plaintiff's Opposition does not point to <u>any specific statements</u> about customer relationships and sales prospects that were known to be false when made. Instead, the Opposition argues that the statements about customer engagement must have been false because Rockley later entered (and successfully emerged from) a Chapter 11 reorganization.

This kind of fraud-by-hindsight falls far short of satisfying the PSLRA's rigorous pleading standards, which is why courts routinely dismiss complaints relying on it.  This Court should do likewise here.

**II.    ARGUMENT**

**A.    The Complaint does not adequately allege falsity**

**1.    The allegations about Rockley's Hengtong joint venture are not actionable**

The Opposition's arguments about the Hengtong JV (ECF 46, at 10:12-12:28) fail to establish any misstatement or actionable omission.  Plaintiff argues that the Rockley Defendants were required to predict that the Hengtong Group's acquisition of Huawei Marine would imperil Rockley's revenues from the Hengtong JV.  But Plaintiff has not explained how the Rockley Defendants were supposed to know that the Hengtong Group's acquisition of Huawei Marine would ultimately result in the U.S. Government placing Hengtong itself on the banned Entity List.

Absent an allegation that the Rockley Defendants knew what the U.S. Government was going to do before the Government did it, Plaintiff's argument boils down to the assertion that the Rockley Defendants had some legal obligation to speculate about possible governmental action before it occurred.  But that's not the law.  "[N]o disclosure [is] required when [an] event is contingent or speculative in nature."  *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 980 (9th Cir. 1999).

Plaintiff asserts without support that the Hengtong JV was "imminently at risk" due to the fact that Rockley's joint venture partner's parent company acquired an entity on the banned Entity List.  ECF 46, at 11:1-14.  But Plaintiff has not cited any case holding that the Rockley Defendants had a legal obligation to speculate publicly that Hengtong itself would be added to the banned Entity List.  The securities laws allow issuers to predict the future if they so choose (and to some extent protect such predictions through the PSLRA's safe-harbor for forward-looking statements, *see* 15 U.S.C. § 78u-5), but the securities laws do not <u>require</u> soothsaying.  "[C]ourts have routinely held that the existence, and even knowledge, of illegal activities at a company is not a sufficient basis to state a securities claim without allegations that there was a realistic risk that those activities would cause losses to the company."  *Kauffman v. Nat. Health Trends Corp.*, No. 19-cv-163-MWF (JPRx), 2019 WL

7165921, at *5 (C.D. Cal. Dec. 20, 2019) (collecting cases). If a company has no duty to speculate about the consequences of its own, known wrongdoing, it surely has no duty to speculate about anything as attenuated as the possible consequences of alleged illegality by an entity that the parent of a foreign joint venturer had acquired.

While the Rockley Defendants did not speculate about possible future governmental action, they did make appropriate and timely risk disclosures. Contrary to Plaintiff's argument (ECF 46, at 12:4-28), Rockley repeatedly disclosed in SEC filings that it "currently depends on a few large customers for a substantial portion of its revenue. The loss of, or a significant reduction in, orders from Rockley's customers . . . could significantly reduce its revenue and adversely impact Rockley's operating results." Compl. ¶¶ 58, 62; RJN Ex. 6, at 943; Ex. 7, at 1765; Ex. 8, at 1816; Ex. 9, at 2095; Ex. 10, at 2436. And Rockley identified the Hengtong JV as one of these large customers. *See id.* The Rockley Defendants also disclosed that Rockley was subject to governmental export and import control laws and regulations, including the U.S. Export Administration Regulations. *See* Compl. ¶¶ 58-59, 62; RJN Ex. 6, at 946. Plaintiff argues that the Rockley Defendants "failed to warn of the specific material risks known to [them]." ECF 46, at 12:8-13. But no well-pleaded facts show that the Rockley Defendants knew beforehand that Hengtong would be added to the banned Entity List. What we do know is that once Hengtong was added to the banned Entity List, the Rockley Defendants promptly issued a press release specifically disclosing the ban and providing updated revenue guidance. RJN Ex. 12. The securities laws require nothing more.

**2.     The allegations about Rockley's customer prospects are not actionable**

The Opposition repeats many of the alleged misstatements quoted in the Complaint but cannot point to well-pleaded facts showing that the challenged statements were false when made.

**Statements about customer prospects.** Plaintiff points to several statements in arguing that the Rockley Defendants misstated Rockley's customer relationships

-3-

and commercial prospects.  ECF 46, at 13:1-14:17.  For example, Plaintiff makes much of the fact that Rockley stated that its technology and business model were "validated" and that customers were "committed."  ECF 46, at 13:7-9.  These words were found in the following statements from a March 2021 investor presentation:

- *Validated* by Leading Blue-Chip Customers: Engaged or contracted with 4 customers collectively holding >55% of smartphone and >50% of wearables markets and 2 MedTech customers including one of the largest medical device players globally; $70M+ NRE *committed* by a leading developer[.]

- Our technology and business model are *validated* by leading blue-chip customers as we are currently engaged or contracted with six customers collectively holding over 50% of the smartphone and wearables markets.

- This opportunity is *validated* by leading blue-chip customers, of which we currently have six that are engaged or contracted . . . ."

Compl. ¶¶ 50, 53 (emphasis added).  These statements say that Rockley was "engaged or contracted" with six customers, and that the six had big shares of their own markets.  Nowhere does Plaintiff assert that these assertions were false when made (or, for that matter, false ever).  The same is true of statements that Rockley was "negotiating" orders with customers and that the wearables technology was "happening now."  ECF 46, at 13:5-10.  Plaintiff does not allege a single fact suggesting Rockley was not then engaged or contracted with six customers.

Having not alleged facts showing these statements from March 2021 were false when made, Plaintiff instead offers speculation that Rockley's later cash-flow issues – resulting in its Chapter 11 reorganization in 2023 – somehow proves that Rockley had not "engaged or contracted" with six customers in 2021 and 2022.  ECF 46, at 13:13-18.  But speculation such as this does not satisfy the PSLRA's strict pleading requirements.  And Rockley, after its Chapter 11 reorganization, continues to develop its products, indicating, contrary to Plaintiff's argument (ECF 46, at 14:8-12), that the investors who funded the reorganization believe there is a viable commercial

opportunity in the technology Rockley is developing.

This case is a far cry from *In re MannKind Securities Actions*, 835 F. Supp. 2d 797 (C.D. Cal. 2011).  ECF 46, at 13:19-14:12.  MannKind applied for FDA approval of a combination drug product – an inhalable insulin drug plus an inhaler.  Trial studies were completed using a first-generation version of the inhaler, but MannKind later sought to use a newer model inhaler.  To obtain FDA approval, MannKind needed to show "bioequivalence" between the original and newer inhalers.  *Id.* at 801-02.  The defendants stated they had completed a study showing bioequivalence and that the study design had been "vetted" with the FDA, which had given its "blessing," "agreement," and "approv[al]."  *Id.* at 802-03, 806-07.  But later the defendants admitted that the FDA had merely given them "advice."  *Id.* at 809.  In fact, the FDA required further studies and rejected the newer model inhaler.  On this record, Judge Feess had no difficulty finding that the "blessing," "agreement," and "approv[al]" statements were false.  *Id.* at 810-12.  But that case is not our case.

**Forward-looking statements.**  The Opposition argues that the Rockley Defendants' forward-looking statements (revenue projections) are not protected because they were based on allegedly misleading statements of present fact about customer "engagements or contracts" and "visibility" on Rockley's numbers.  ECF 46, at 14:18-15:11.  Like a house of cards, this argument falls.

To start, the allegedly misleading statements of present fact are not actionable, for the reasons stated above.  But even if the statements of present fact were actionable, they do not taint genuinely forward-looking statements such as revenue projections.  The case Plaintiff cites provides only that "where defendants make mixed statements containing non-forward-looking statements as well as forward-looking statements, *the non-forward-looking statements* are not protected by the safe harbor of the PSLRA."  *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1142 (9th Cir. 2017) (emphasis added).  "In the context of such 'mixed' statements, only the forward-looking aspects could be immunized from liability . . . ."  *Wochos v. Tesla, Inc.*,

985 F.3d 1180, 1190 (9th Cir. 2021) (citing *In re Quality Sys.*, 865 F.3d at 1141-42). The forward-looking portions of the statements are thus protected.

**Puffery.**  The Opposition claims that even the statements that constitute classic examples of puffery are actionable.  ECF 46, at 15:12-16:14.  Plaintiff takes issue with the Rockley Defendants' statements about their "outstanding" and "tremendous" progress.  ECF 46, at 15:27-16:1.  But courts have held that statements involving both of these words constitute puffery.  *See, e.g.*, *Kong v. Fluidigm Corp.*, No. 22-15396, 2023 WL 2134394, at *2 (9th Cir. Feb. 21, 2023) (outstanding); *Macomb Cnty. Emps.' Ret. Sys. v. Align Tech., Inc.*, 39 F.4th 1092, 1099 (9th Cir. 2022) (tremendous).  Plaintiff argues that the Rockley Defendants should have disclosed that Rockley was making "little-to-no progress with its product development and commercial relationships" (ECF 46, at 16:4-8) but offers no well-pleaded factual allegations that this was the case.  Similarly, Plaintiff argues that statements about "working closely and deeply" cannot be reconciled with Rockley's withdrawal of its 2023 revenue guidance (ECF 46, at 16:8-14), but Plaintiff does not allege facts showing that customers were not close to signing purchase orders, and any reasonable investor knows that "working closely and deeply" does not guarantee "contract signed, done deal, sale closed."  In the immortal words that Yogi Berra may or may not actually have uttered, "It ain't over 'til it's over."

Plaintiff points to several cases arguing that the statements of puffery are actionable because they were about aspects of the company's operations that the speaker knew were performing poorly.  ECF 46, at 15:15-25.  But these cases only serve to emphasize that the puffery here is not actionable.  In *In re Quality Systems*, a company said its pipeline had grown every quarter for three years and was growing to "record levels," adding "[t]here is nothing drying up and there is nothing slowing down."  865 F.3d at 1142-43.  The company projected earnings per share growth of 20-25% and then weeks later announced a 19% drop in earnings per share.  *Id.* at 1137-38.  And in *Mulligan v. Impax Labs., Inc.,* 36 F. Supp. 3d 942 (N.D. Cal. 2014),

-6-

a company disclosing FDA warning letters asserted that "significant" quality control improvements had been already been made – an assertion rebutted by thirteen confidential witnesses identified in the complaint. *Id.* at 953-56, 962-63, 966-68. Here, in stark contrast, Plaintiff alleges no well-pleaded facts suggesting Rockley was not making progress when the identified statements were made.

**B.      The Complaint does not adequately allege scienter**

Plaintiff argues that five sets of allegations give rise to a strong inference of scienter. ECF 46, at 16:15-21:23. Because Plaintiff has not alleged any misstatement or actionable omission, the Court can dismiss the claim without reaching scienter. Nonetheless, whether considered individually or holistically, *see Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 326 (2007), these allegations do not suffice.

*First*, Plaintiff argues that the Court can infer scienter because the Rockley Defendants made "detailed factual statements" about Rockley's customer engagement and sales prospects. ECF 46, at 17:14-18:18. These are the same statements discussed in Section II.A.2 above about customers being "engaged or contracted" and customer interest showing that Rockley's technology and business model were "validated," plus statements that development programs "remain on track," that "ongoing human studies are going well," and that this progress supported the planned move into production. ECF 46, at 17:15-25. Plaintiff also vaguely mentions "detailed factual representations about" the Hengtong JV, although they do not specify which statements. ECF 46, at 17:25-27.

To start, these statements are not "detailed"; words such as "engaged," "on track" and "going well" are the opposite of "detailed." Further, unlike in the cases cited by Plaintiff (ECF 46, at 18:4-14), the Complaint alleges nothing showing that these statements were false when made. Our case is not a case like *Roberti v. OSI Systems, Inc.*, No. CV 13-9174-MWF (VBKx), 2015 WL 1985562, at *2, *7-9, *11-12 (C.D. Cal. Feb. 27, 2015), where falsity was clear: the defendants admitted they knew of issues with their software "months ago" yet previously had stated the

-7-

software "was in final testing" and "'we've completed our side' of development"; confidential witness also alleged that the company "never even got close to having the issue solved," "'cherry-picked' machines during testing," and "manipulated" data.

Plaintiff cites a case holding that statements "completely at odds with reality" can demonstrate scienter. ECF 46, at 18:8-11 (citing *In re QuantumScape Sec. Class Action Litig.*, 580 F. Supp. 3d 714, 741 (N.D. Cal. 2022)). But that case is nothing like this case. QuantumScape told investors many times that it used uncompromised testing conditions then issued disclosures saying the opposite – that it used compromised testing conditions. Because there was no middle ground between those two positions, the court held the most cogent inference was of scienter. *Id.* at 741. Here, Plaintiff does not allege or argue that the Rockley Defendants made any contrary statements indicating that the challenged statements were untrue.

*Second*, Plaintiff's arguments as to "temporal proximity" likewise do not demonstrate falsity let alone scienter. ECF 46, at 18:19-19:13. Plaintiff points to the time frames between certain statements and the announcement about the Hengtong JV, the withdrawal of revenue guidance, and the Chapter 11 reorganization. ECF 46, at 18:21-19:4. But "while temporal proximity can 'bolster' the inference that a misstatement was intentional, mere proximity is insufficient to establish that Defendants knowingly lied." *Gammel v. Hewlett-Packard Co.*, 905 F. Supp. 2d 1052, 1077 (C.D. Cal. 2012) (citations omitted); *see also In re Intel Corp. Sec. Litig.*, No. 5:20-cv-05194-EJD, 2023 WL 2767779, at *26 (N.D. Cal. Mar. 31, 2023) ("[T]emporal proximity cannot establish scienter by itself.").

As one example, Plaintiff notes that in May 2022, Defendant Rickman stated that he believed Rockley's "product development programs remain on track," noting that Rockley had shipped its technology to an early-access, tier-1 consumer wearables customer, but then in August 2022, Plaintiff alleges that Rockley announced it was withdrawing revenue guidance and "effectively abandoning" the wearables market. ECF 46, at 18:25-19:2 (citing Compl. ¶¶ 78, 80-83). Plaintiff does not suggest that the

REPLY ISO MOTION TO DISMISS COMPLAINT
Case No. 2:23-cv-09501-SVW-MAA

May 2022 statement was false.  And the earnings conference call Plaintiff cites does not say Rockley had *abandoned* its consumer wearables market; far from it, the statement is that, as of August 2022, there was "a huge amount of activity and design-in activity going on in that area" but that, at present, Rockley was focusing on the medical device market because it had little control over the timing of the "launch program" of the companies expected to launch consumer wearables incorporating Rockley's photonics technology.  RJN Ex. 16, at 2542-43.  The Court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

*Third*, Plaintiff's arguments about the resignations of Karanth and Rickman do not support an inference of scienter.  ECF 46, at 19:14-28.  To start, the resignations were half a year apart – Karanth resigned in June 2022 and Rickman in December 2022.  For resignations during the class period to have significance, "a plaintiff must allege sufficient information to differentiate between a suspicious change in personnel and a benign one.  Mere conclusory allegations that a financial manager resigns or retires during the class period . . ., without more, cannot support a strong inference of scienter."  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1002 (9th Cir. 2009), *as amended* (Feb. 10, 2009).  A plaintiff must allege that the resignation "was uncharacteristic when compared to the defendant's typical hiring and termination patterns or was accompanied by suspicious circumstances."  *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 622 (9th Cir. 2017) (quoting *Zucco*, 552 F.3d at 1002).  Plaintiff has not even attempted to make such allegations here.  And in all of the cases cited by Plaintiff, there were allegations supporting scienter beyond just the resignations.  ECF 46, at 19:25-28.

*Fourth*, Plaintiff's arguments about motive make no sense.  ECF 46, at 20:1-11.  Rickman and Karanth could not have been motivated by high-ranking positions (ECF 46, at 20:4) because they were CEO and CFO, respectively, both before and after the de-SPAC merger.  Further, most of the Class Period occurred after Rockley became a

-9-

public company, at which point the Rockley Defendants would no longer be motivated by a desire to secure the de-SPAC merger.  ECF 46, at 20:3.

*Finally*, Plaintiff's reliance on the core operations theory fails.  ECF 46, at 20:12-21:20.  The core operations theory comes into play when a defendant says something demonstrably false, but an issue remains as to whether the defendant knew what he said was false when he said it.  *See, e.g.*, *Anshen v. Facebook*, No. 2:17-cv-00679-SVW-AGR, 2017 WL 5635021, at *3 (C.D. Cal. Oct. 4, 2017) (citing *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 785 (9th Cir. 2008)).  In such a situation, if the false statement concerned a core operation of the business over which the speaker had supervisory authority, then it makes sense to assume the speaker knew that what he said was false – he was, after all, speaking about his "day job."  But here that theory has no application.  Plaintiff has not alleged any facts showing that the Rockley Defendants' statements were false.  Plaintiff therefore is not entitled to a presumption that the speakers knew the statements were false.

**C.    The Complaint does not allege any claim against Defendant Becker**

The Opposition argues only that Becker misspoke when, at Rockley's Second Quarter earnings conference call in August 2022, he said that Rockley was withdrawing its 2023 revenue guidance and planned instead to release updated revenue guidance at its Third Quarter earnings call.  ECF 46, at 22:1-10; *see also* Compl. ¶¶ 80, 86; RJN Reply Ex. 1.  But Plaintiff does not show that either statement was wrong, let alone securities fraud.  Rockley *did* withdraw its 2023 revenue guidance, so that part of Becker's statement was true.  The statement that Rockley would issue new guidance a quarter later was a forward-looking statement; Plaintiff alleges nothing suggesting that Becker knew, when he spoke, that Rockley would not issue revised guidance three months later.  (Becker was no longer interim CFO for the Third Quarter earnings call as his tenure ended on October 20, 2022.  RJN Ex. 17, at 2550.)  The Complaint thus fails the Ninth Circuit's tests for alleging falsity and scienter.  *See In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th Cir. 2012)

(plaintiff must identify "why the statements were false or misleading at the time they were made"); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018) (alleged misstatement must "directly contradict what the defendant knew at that time").  Therefore, Becker should be dismissed from this case.

**D.    The Complaint's control person claims do not suffice**

Because Plaintiff has failed to state a claim for primary liability under section 10(b), the Court should dismiss Plaintiff's control person liability claims brought under section 20(a) against all the Rockley Defendants. 15 U.S.C. § 78t(a); *Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 623 (9th Cir. 2022).

**III.    CONCLUSION**

Plaintiff Grossman was a longtime investor in Rockley, dating back to before Rockley became a public company via the de-SPAC.  He also was an active participant in Rockley's Chapter 11 proceedings last year, arguing that Rockley was worth not less, but more, than Rockley's new management contended.  Plaintiff Grossman thus has had ample time to discover, develop and plead viable claims – but he has not.  Instead, he has taken himself out of the running to be lead plaintiff, ceding the field to two men from Argentina.

For each of the foregoing reasons, the Rockley Defendants respectfully request that the Court dismiss the Complaint as to them with prejudice.

Dated: January 29, 2023    PILLSBURY WINTHROP SHAW PITTMAN LLP

*Bruce A. Ericson*

Bruce A. Ericson
A Member of Pillsbury Winthrop Shaw Pittman LLP
Attorneys for Defendants Andrew Rickman, Mahesh Karanth and Chad Becker

-11-

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6.2**

The undersigned, counsel of record for Defendants Mahesh Karanth, Chad Becker and Andrew Rickman, certifies that this brief contains 3,637 words, which complies with the word limit of L.R. 11-6.1.

Dated:  January 29, 2023.

_____

Bruce A. Ericson

-12-