PILLSBURY WINTHROP SHAW PITTMAN LLP
BRUCE A. ERICSON (76342)
bruce.ericson@pillsburylaw.com
Four Embarcadero Center, 22nd Floor
San Francisco, CA 94111-5998
Telephone: 415.983.1000
Facsimile: 415.983.1200

PILLSBURY WINTHROP SHAW PITTMAN LLP
ARI M. BERMAN (*Pro hac vice*)
ari.berman@pillsburylaw.com
31 West 52nd Street
New York, NY 10019-6131
Telephone: 212.858.1000
Facsimile: 212.858.1500

Attorneys for Defendants Andrew Rickman,
Mahesh Karanth and Richard Meier

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| KENNETH S. GROSSMAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>DAVID SIN, ANGELO JOHN COLOMA, ANDREW RICKMAN, MAHESH KARANTH, RICHARD MEIER, and SIN CAPITAL GROUP PTE. LTD.,<br><br>Defendants. | Case No. 2:23-cv-09501-MRA-MAA<br><br>CLASS ACTION<br><br>**MOTION OF DEFENDANTS RICKMAN, KARANTH, AND MEIER TO DISMISS AMENDED COMPLAINT; AND SUPPORTING MEMORANDUM**<br><br>Date: May 30, 2024<br>Time: 1:30 p.m.<br>Courtroom: 10B<br><br>Submitted herewith:<br>1. Request for Judicial Notice<br>2. Proposed Order |

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that, on May 30, 2024, at 1:30 p.m. – a date set by agreement with counsel for Lead Plaintiffs – before the Honorable Mónica Ramírez Almadani, United States District Judge for the Central District of California, in Courtroom 10B, on the 10th Floor, 350 West First Street, Los Angeles, California 90012, Defendants Andrew Rickman, Mahesh Karanth and Richard Meier ("Rickman," "Karanth," "Meier" and, collectively, the "Rockley Defendants") will and hereby do move the Court for an order dismissing the Amended Complaint for Violations of the Federal Securities Laws, filed February 28, 2024 ("Amended Complaint" or "AC") (ECF No. 56), for failure to state a claim upon which relief can be granted.

**Basis of motion.** This motion is made and based on Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995 ("PSLRA") on the grounds that the Amended Complaint does not state a claim upon which relief can be granted and fails to satisfy the PSLRA's heightened pleading standards. Plaintiffs allege two theories: that Rockley Photonics Holdings Limited ("Rockley") and the Rockley Defendants (Rockley officers) intentionally misrepresented or omitted material facts concerning (i) Rockley's joint venture with Hengtong, and (ii) Rockley's projections and forward-looking statements about anticipated future business and revenues. But the Amended Complaint does not allege falsity or scienter with respect to either in a manner that satisfies the PSLRA.

**Falsity.** Plaintiffs do not adequately allege falsity. The facts allegedly omitted about the Hengtong JV were publicly disclosed, and there is no allegation that Rockley or the Rockley Defendants knew these facts before they were disclosed by the U.S. Government or the World Bank. The facts allegedly stated about Rockley's projections are not shown to be false; rather, the Complaint alleges fraud-by-hindsight: that the statements about projections must have been false because Rockley later entered (and emerged from) Chapter 11. What the Complaint lacks are any allegations of fact showing that these statements were false or misleading when made. Beyond this, the

Complaint attacks statements that are forward-looking and accompanied by cautionary statements, puffery, statements of opinions, and statements that were not false when made. As a matter of law, none of these is actionable.

**Scienter.** The Amended Complaint's scienter allegations fall short of pleading a strong inference of fraud – they are the usual boilerplate about executives having information about the company and being glad to see their company go public. There are no allegations of insider trading or anything else suggesting that the Rockley Defendants had any motives that differentiated them from other investors hoping to see Rockley succeed.

This motion is based upon this notice of motion and motion, the memorandum that follows this motion, the proposed order attached to this motion, Defendants' request for judicial notice ("RJN") filed concurrently with this motion, any further papers that may be filed in connection with this motion, and all the pleadings and record filed in this action.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on March 13, 2024.

Dated: March 20, 2024 PILLSBURY WINTHROP SHAW PITTMAN LLP

*/s/ Bruce A. Ericson*
Bruce A. Ericson
A Member of Pillsbury Winthrop Shaw Pittman LLP

Attorneys for Defendants Andrew Rickman, Mahesh Karanth and Richard Meier

# TABLE OF CONTENTS

Page


NOTICE OF MOTION AND MOTION ........ I

TABLE OF AUTHORITIES ........ V

SUPPORTING MEMORANDUM ........ 1

I. INTRODUCTION AND SUMMARY OF ARGUMENT ........ 1

II. STATEMENT OF THE CASE ........ 2

- A. The parties ........ 2
- B. The Amended Complaint's allegations of misstatements and omissions ........ 3
  - 1. The allegations about the Hengtong joint venture ........ 3
  - 2. The allegations about Rockley's projections ........ 4

III. LEGAL STANDARDS APPLICABLE TO THIS MOTION ........ 6

IV. ARGUMENT ........ 7

- A. The Amended Complaint does not adequately allege falsity: material misrepresentations or omissions ........ 7
  - 1. The allegations about Rockley's Hengtong joint venture are not actionable ........ 7
  - 2. The allegations about Rockley's projections are not actionable ........ 9
    - a. The statements about product development are not actionable ........ 9
    - b. The statements about Apple are not actionable ........ 14
    - c. The confidential witnesses are not reliable ........ 16
- B. The Amended Complaint does not adequately allege scienter ........ 17
  - 1. The access to information theory does not support scienter ........ 17
  - 2. The core operations theory does not support scienter ........ 19
  - 3. The "temporal proximity" theory does not support scienter ........ 19
  - 4. The executive departures do not support scienter ........ 19
  - 5. Allegations of motive and opportunity do not support scienter ........ 20
- C. The Amended Complaint's control person claims do not suffice ........ 20

V. CONCLUSION ........................................................................................ 21
CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6.2 .......................... 22

## TABLE OF AUTHORITIES

Page

**Cases**

*Anshen v. Facebook*,
No. 2:17-cv-00679-SVW-AGR, 2017 WL 5635021 (C.D. Cal. Oct. 4, 2017)....... 19

*Brody v. Transitional Hosps. Corp.*,
280 F.3d 997 (9th Cir. 2002) .......................................................................... 7

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
856 F.3d 605 (9th Cir. 2017) ..................................................................... 12, 20

*Gammel v. Hewlett-Packard Co.*,
905 F. Supp. 2d 1052 (C.D. Cal. 2012) ......................................................... 19

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*,
63 F.4th 747 (9th Cir. 2023) ...................................................................... 10, 17

*Glazer Cap. Mgmt., LP v. Magistri*,
549 F.3d 736 (9th Cir. 2008) .......................................................................... 20

*Heliotrope Gen., Inc. v. Ford Motor Co.*,
189 F.3d 971 (9th Cir. 1999) ............................................................................ 8

*In re Alphabet, Inc. Sec. Litig.*,
1 F.4th 687 (9th Cir. 2021) ............................................................................... 7

*In re Autodesk, Inc. Sec. Litig.*,
132 F. Supp. 2d 833 (N.D. Cal. 2000) ............................................................ 18

*In re Cutera Sec. Litig.*,
610 F.3d 1103 (9th Cir. 2010) ........................................................................ 12

*In re Daou Sys., Inc.*,
411 F.3d 1006 (9th Cir. 2005), *abrogated on other grounds by Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011) ......................................................... 16, 17

*In re Intel Corp. Sec. Litig.*,
No. 5:20-cv-05194-EJD, 2023 WL 2767779 (N.D. Cal. Mar. 31, 2023) ............... 19

*In re Quality Sys., Inc. Sec. Litig.*,
865 F.3d 1130 (9th Cir. 2017) ........................................................................ 10

*In re Rigel Pharms., Inc. Sec. Litig.*,
697 F.3d 869 (9th Cir. 2012) .......... 13

*In re Verifone Sec. Litig.*,
11 F.3d 865 (9th Cir. 1993) .......... 20

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .......... 13

*Macomb Cnty. Emps.' Ret. Sys. v. Align Tech., Inc.*,
39 F.4th 1092 (9th Cir. 2022) .......... 12

*Nguyen v. Endologix, Inc.*,
962 F.3d 405 (9th Cir. 2020) .......... 6

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015) .......... 12

*Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
774 F.3d 598 (9th Cir. 2014) .......... 6

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
759 F.3d 1051 (9th Cir. 2014) .......... 12

*Prodanova v. H.C. Wainwright & Co., LLC*,
993 F.3d 1097 (9th Cir. 2021) .......... 20

*Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*,
845 F.3d 1268 (9th Cir. 2017) .......... 12

*S. Ferry LP, No. 2 v. Killinger*,
542 F.3d 776 (9th Cir. 2008) .......... 19

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) .......... 17

*Weston Fam. P'ship LLLP v. Twitter, Inc.*,
29 F.4th 611 (9th Cir. 2022) .......... 20

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009) .......... 16, 20

## Statutes and Codes

Private Securities Litigation Reform Act of 1995 .......... passim

Securities Exchange Act of 1934
- Section 10(b) .......... 6, 20
- Section 20(a) .......... 20

United States Code
- Title 15 Section 78t(a) .......... 20
- Title 15 Section 78u-4(b)(1) .......... 6
- Title 15 Section 78u-4(b)(2)(A) .......... 6, 17
- Title 15 Section 78u-5(c)(1) .......... 10
- Title 15 Section 78u-5(i) .......... 10, 15
- Title 15 Section 78u-5(i)(1)(B) .......... 10

## Rules and Regulations

Federal Rules of Civil Procedure
- Rule 9(b) .......... i, 6, 13
- Rule 12(b)(6) .......... i

## SUPPORTING MEMORANDUM

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs allege that the Rockley Defendants intentionally (i) omitted material facts about Rockley's Hengtong joint venture (the "Hengtong JV") and (ii) misrepresented or omitted material facts about Rockley's projections for the future. The Amended Complaint is long on block quotes but short on particularized facts detailing the falsity of anything the Rockley Defendants said or creating a strong inference that they spoke with scienter.

Plaintiffs acknowledge that Rockley – whose fortunes depended on developing cutting-edge silicon photonics technology for use in medical devices – had "a history of recurring losses, and a significant accumulated deficit" and acknowledge Rockley's repeated warnings to investors that it "did not expect to reach cash flow break-even until 2023." AC ¶¶ 49, 67. Plaintiffs nonetheless allege – without factual specificity – that investors were intentionally misled into believing they had invested in something other than a speculative early-stage business yet to commercialize its first product.

**Falsity.** Plaintiffs do not allege falsity with particularity as to either the Hengtong JV or Rockley's projections. The facts allegedly omitted about the Hengtong JV were all publicly disclosed. There is no allegation that the Rockley Defendants knew these facts before they were disclosed by the U.S. Government. The Rockley Defendants were not required to speculate about what the U.S. Government might do. Plaintiffs have not shown that the alleged misstatements about Rockley's projections are false; rather, Plaintiffs allege fraud-by-hindsight: that certain identified statements must have been false because Rockley later reorganized under Chapter 11. Many of Plaintiffs' allegations are about forward-looking statements accompanied by disclosures warning of the very risks that came to fruition. Other statements constitute puffery, opinions, or statements that were not false when made. Rockley's projections about its relationship with Apple were accompanied by cautionary language; Plaintiffs have not alleged that Rockley was required to disclose anything more. The alleged statements of

Confidential Witnesses lack the specificity and indicia of reliability to pass muster.

**Scienter.** The Amended Complaint's scienter allegations are the usual boilerplate about executives having information about the company and being glad to see their company go public. There are no allegations of insider trading or anything suggesting the Rockley Defendants had any desires that differentiated them from other investors. In short, the Amended Complaint fails to allege anything creating a strong inference that the Rockley Defendants acted with the requisite fraudulent intent.

## II. STATEMENT OF THE CASE

### A. The parties

**Non-parties Rockley and Rockley Private:** This action is about securities in Rockley Photonics Holdings Limited ("Rockley"). AC ¶ 40. Rockley was the parent of Rockley Photonics Limited ("Rockley Private"). AC ¶ 39. Rockley Private researched and developed silicon photonics (a system that combines optical and electronic components onto a single silicon microchip). It hoped to use this technology to monitor biomarkers such as blood oxygen levels, blood pressure, glucose, heart rate and respiratory rate, all non-invasively (no needles, no blood). Some chips under development could be used directly by patients (as part of a smartwatch or other wearable device); others would be used by medical professionals in offices or hospitals.

Like most early-stage businesses yet to launch a product commercially, Rockley had – and fully disclosed – "a history of recurring loses, and a significant accumulated deficit." AC ¶ 49. Rockley did not expect to "reach cash flow break-even until 2023, at which time it expected to be generating substantial revenues from sale to consumer wearable [original equipment manufacturers]." AC ¶ 67. But by late 2022, Rockley had not fully developed and commercialized any products. AC ¶ 117. In January 2023, Rockley entered reorganization under Chapter 11 of the Bankruptcy Code. AC ¶ 40.

**The Defendants:** The Defendants fall into two categories. The "Rockley Defendants" have appeared in this action and are filing this motion. The "SC Health Defendants" have not appeared, will need separate counsel if they do appear, and no

longer have any affiliation with Rockley or the Rockley Defendants.

**The Rockley Defendants** – Rickman, Karanth, and Meier served as Rockley executives during the Class Period. Rickman founded Rockley Private and served as Chief Executive Officer and Executive Chairman at various times during and after the Class Period. AC ¶ 28. Karanth served as Rockley's Chief Financial Officer until his resignation in June 2022. AC ¶ 29. Meier became Rockley's CFO in October 2022, was promoted to CEO in December 2022, and resigned in May 2023. AC ¶ 30.

**The SC Health Defendants** are Sin, Coloma, and SIN Capital Group PTE, Ltd. AC ¶¶ 26-27, 34, 36-38. All are allegedly affiliated with non-party SC Health Corporation, a publicly traded "blank-check company," called a special purpose acquisition vehicle or "SPAC." AC ¶ 41. Through a business combination among SC Heath, Rockley, and Rockley Private called a "de-SPAC merger," Rockley became a public company. AC ¶¶ 1, 57-58. (In a "de-SPAC merger," a public blank-check company acquires a private company, which becomes the surviving public entity.) The combination was announced in March 2021. AC ¶ 49. It was completed on August 11, 2021; Rockley's securities began trading on the NYSE the next day. AC ¶ 58. The SC Health Defendants have not appeared in this action.

**Lead Plaintiffs** are Jonathan Lottner and Federico Huergo. AC ¶¶ 24-25. They own investment funds that invested in Rockley. *Id.* They were appointed Lead Plaintiffs following their unopposed motion for appointment. ECF 53. The original Complaint was filed by Ken Grossman, who did not seek appointment as lead plaintiff.

### B. The Amended Complaint's allegations of misstatements and omissions

The Amended Complaint's allegations fall into two categories: (1) allegations about Rockley's former joint venture with a Chinese company called Hengtong, and (2) allegations about Rockley's projections of future business.

#### 1. The allegations about the Hengtong joint venture

In 2017, Rockley Private formed the Hengtong JV with Jiangsu Hengtong Optic-Electric Co., Ltd. ("Hengtong"), a subsidiary of Hengtong Group Co., Ltd. ("Hengtong

Group"). AC ¶ 68. Hengtong invested millions of dollars in Rockley Private; in return, Hengtong JV was to purchase chipsets from Rockley – not for health products but for data transmission. AC ¶¶ 69-70. Hengtong manufactures undersea fiber-optic cables for data transmission. AC ¶ 68. Rockley repeatedly disclosed the nature and importance of the Hengtong JV in SEC filings before and after the de-SPAC merger. *See* RJN Ex. 5, at 276, 467; Ex. 7, at 1049, 1260; Ex. 8, at 1871; Ex. 10, at 1939, 2035; Ex. 11, at 2218, 2317; Ex. 12, at 2521.

Unfortunately for Rockley, in 2021 its JV partner Hengtong fell afoul of U.S. export controls, which caused Rockley to abandon the Hengtong JV. But none of this was concealed; rather, Rockley very promptly disclosed it. RJN Ex. 16.

In June 2019, the Chinese telecommunications company Huawei announced it was selling a subsidiary, Huawei Marine, to Hengtong Group. AC ¶ 74; *see* RJN Ex. 2. A month earlier, Huawei and 68 of its affiliates, including Huawei Marine, had been placed on the banned "Entity List" maintained by the U.S. Commerce Department's Bureau of Industry and Security ("BIS"). AC ¶ 73; RJN Ex. 1. U.S. businesses cannot provide products and technologies to organizations on the "Entity List" without prior government authorization. AC ¶ 73.

On Friday, December 17, 2021, the U.S. BIS placed Hengtong and HMN Tech (f/k/a Huawei Marine) on the "Entity List." *See* AC ¶ 81; RJN Ex. 15. Four days later, Rockley issued a press release saying it would not proceed with its sale of data-communications IP to the Hengtong JV because Hengtong had been added to the "Entity List." AC ¶¶ 81, 158; RJN Ex. 16. Plaintiffs allege that the Rockley Defendants should have disclosed the risk that Hengtong might be placed on the "Entity List" before it happened but do not allege that the Rockley Defendants knew the U.S. BIS would add Hengtong to the "Entity List" *before* the BIS acted. *See* AC ¶¶ 71-82.

**2. The allegations about Rockley's projections**

Plaintiffs' remaining allegations involve projections that Rockley made, including projections about revenue from its relationship with Apple and projections

about the anticipated speed of its product development. AC ¶¶ 83-103.

At the beginning of the Class Period, Apple was Rockley's largest customer. AC ¶ 83. Apple paid Rockley for non-recurring engineering ("NRE") services – one-time payments for developing designs specific to Apple. AC ¶¶ 6, 83. Rockley included expected revenue from Apple (among others) in its revenue projections for 2023 and 2024. AC ¶ 125. But Rockley disclosed that these projections were not sure things: Rockley said Apple "does not have any minimum or binding purchase obligations to Rockley under this agreement and could elect to discontinue or reduce making purchases from Rockley with little or no notice." RJN Ex. 5, at 276; Ex. 7, at 1049; Ex. 8, at 1871; Ex. 10, at 1939; Ex. 11, at 2218; Ex. 12, at 2521.

The Amended Complaint includes allegations from a Confidential Witness – called the "Former Process Engineer" – about the Apple relationship. AC ¶¶ 85-91. He says that in 2021, another process engineer told him that the NRE work for Apple was for a product expected to go to market in approximately five years. AC ¶ 86. He also says that the Apple relationship became strained during 2021 for two reasons. First, Apple allegedly was displeased that Rockley revealed Apple to be one of its primary customers; the Engineer says Rockley employees were told to refer to Apple as the "Secret Customer." AC ¶ 88. Second, Apple allegedly was not satisfied with the yield rates for chips; the Engineer inferred this because Apple requested information about the yield rates. AC ¶ 89.

The Amended Complaint also alleges that Rockley's revenue projections and projections about product development timelines were false and misleading, based on the statements of another Confidential Witness, the "Former Chip Designer," about the timeline for developing an Application-Specific Integrated Circuit (or "ASIC") chipset. AC ¶¶ 99-100. This rests on the assumption, unsupported by factual allegations, that Rockley's revenue projections were based on sales of its own consumer wearables product. *See* AC ¶ 102. But as Rockley disclosed, it planned to sell its silicon photonic chips to half a dozen technology companies (such as Apple) that would incorporate the

chips into their own consumer wearables products (such as the Apple Watch), using their own ASIC chipsets. RJN Ex. 10, at 1971, 2001. Rockley did not need to complete an ASIC chipset to sell its silicon photonic chips to companies making consumer wearables.

## III. LEGAL STANDARDS APPLICABLE TO THIS MOTION

"To plead a claim under § 10(b) [of the Securities Exchange Act] and Rule 10b-5, a plaintiff must allege '(1) a material misrepresentation or omission; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation.'" *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 413 (9th Cir. 2020) (quoting *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 603 (9th Cir. 2014)).

Rule 9(b) and the PSLRA set heightened pleading requirements for securities fraud cases. Under Rule 9(b), a plaintiff must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "Under the PSLRA, 'the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.'" *Nguyen*, 962 F.3d at 414 (quoting 15 U.S.C. § 78u-4(b)(1)). "[T]he complaint must also 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Id.* (quoting 15 U.S.C. § 78u-4(b)(2)(A)).

Many of the alleged misstatements are forward-looking statements. The PSLRA has special, higher pleading standards for forward-looking statements, which are discussed in part IV.A.2 below.

As shown below, the Complaint does not satisfy these heightened standards with respect to element (1), material misrepresentation or omission, or element (2), scienter.

## IV. ARGUMENT

### A. The Amended Complaint does not adequately allege falsity: material misrepresentations or omissions

#### 1. The allegations about Rockley's Hengtong joint venture are not actionable

Plaintiffs admit that Rockley and the Rockley Defendants promptly disclosed that Hengtong had been placed on the U.S. BIS "Entity List" once it happened. AC ¶ 81; RJN Ex. 16. Plaintiffs allege nothing to support an inference that the Rockley Defendants knew in advance that Hengtong would be added to the "Entity List," or that they said anything misleading about this subject. What Rockley did say was that non-compliance with export controls could hurt Rockley. *See* RJN Ex. 7, at 1052. Despite the lack of any misstatement, or any statement needing correction, Plaintiffs allege that the Rockley Defendants had a legal obligation to discuss the *risk* of the U.S. BIS adding Hengtong to the "Entity List" before it actually happened.

Plaintiffs allege omissions, not misstatements, about Hengtong. AC ¶¶ 131(g), 138(d)-(e), 144(d)-(e), 157(h), (j). To plead an actionable omission, a plaintiff "must prove both that the omission is misleading and that it is material." *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 699 (9th Cir. 2021). "To be actionable under the securities laws, an omission must be misleading; in other words it must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). But Plaintiffs allege nothing supporting the conclusion that Rockley omitted material information about events preceding BIS's addition of Hengtong to the "Entity List."

**Huawei's addition to the "Entity List":** This happened in May 2019. AC ¶ 73. It was publicly disclosed and widely publicized. RJN Ex. 1.

**Hengtong Group's acquisition of Huawei Marine:** This was publicly announced in June 2019. RJN Ex. 2. Plaintiffs do not allege that this acquisition – as opposed to the later addition of Hengtong to the "Entity List" – harmed the Hengtong JV.

**Invalidation of Huawei Marine bid:** The World Bank invalidated Huawei Marine's bid to build an undersea cable in East Micronesia in 2021. *See* AC ¶ 76. This was publicly announced and widely known. RJN Ex. 6. The Amended Complaint offers no plausible explanation as to why Rockley should have said anything more to its investors. There is no allegation that the invalidation of Huawei Marine's bid had any impact on the Hengtong JV or Rockley's business, or that it would result in Hengtong, itself, being placed on the "Entity List." *See* AC ¶¶ 76-77.

**Rockley's attempted IP sale:** The Hengtong JV purchased chipsets from Rockley for data transmission—not health products—and licensed the underlying IP. AC ¶ 69. In 2021, Rockley sought to sell the underlying IP to the Hengtong JV. AC ¶ 79. Rockley sought to sell the IP because it wanted to exit the data transmission field to focus on its health-focused products. *See* RJN Ex. 16. No allegation suggests that Rockley sought to sell the IP because someone had foreknowledge that BIS would add Hengtong to the "Entity List."

**Hengtong's addition to the "Entity List":** There is no allegation that Rockley had any indication Hengtong would be added to the "Entity List" before BIS publicly announced that on December 17, 2021.

Absent an allegation that the Rockley Defendants knew what the U.S. Government was going to do before the Government did it, Plaintiffs' argument boils down to the assertion that the Rockley Defendants had some legal obligation to speculate about possible governmental action before it occurred. That's not the law. "[N]o disclosure [is] required when [an] event is contingent or speculative in nature." *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 980 (9th Cir. 1999).

No well-pleaded facts show that the Rockley Defendants knew beforehand that BIS would add Hengtong to the "Entity List." Once BIS did so, the Rockley Defendants promptly issued a press release disclosing the ban and providing updated revenue guidance. *See* AC ¶¶ 81, 158; RJN Ex. 16. The securities laws require nothing more.

**2. The allegations about Rockley's projections are not actionable**

Plaintiffs challenge Rockley's projections about (a) product development and revenue and (b) Rockley's future relations with Apple. For the reasons discussed below, these projections are not actionable under the PSLRA.

**a. The statements about product development are not actionable**

Plaintiffs quote snippets of statements, often without providing any context or acknowledging the cautionary language that accompanied these statements. Fairly considered, these statements are not actionable for several reasons: because they were forward-looking and are protected by the PSLRA's safe harbor; or because they were obvious puffery and therefore not actionable; or because no well-pleaded facts show that they were anything but true, or true expressions of belief, when made.

**Forward-looking statements:** Many of the alleged statements are forward-looking statements, identified as such, and protected by the PSLRA safe harbor. *See, e.g.*, AC ¶¶ 124, 125, 133, 135, 148, 149, 156, 167, 173, 177, 178. Some are revenue projections – e.g., a graph titled "Total Revenue Outlook," itemizing the sources of expected revenue for 2021 through 2024. *See* AC ¶¶ 124, 125, 133. Others are forward-looking statements about product development and commercialization. The Proxy stated: "[W]e plan to start delivering final samples to customers in the first half of 2022 with productions ramp of these products commencing in the second half of 2022." AC ¶ 135. On the Third Quarter 2021 earnings call, Rickman stated that for customers that had "signed up," the next year (2022) Rockley would provide units for their qualification processes, which would then prepare those companies to launch their products in 2023. AC ¶ 148; *see also* AC ¶ 149. In March 2022, Rockley issued a press release stating that its first commercial products were expected to be available as early as the second half of 2022, with a volume ramp expected in 2023. AC ¶ 167. The First Quarter 2022 press release stated that Rockley "planned" to move into production in the second half of 2022. AC ¶ 173. And the Second Quarter 2022 press release stated that Rockley expected to ship bands to a medical device company to the fourth quarter

of 2022, with volume production ramping in 2023. AC ¶ 178.

The PSLRA protects forward-looking statements, which "include 'statement[s] of the plans and objectives of management for future operations, including plans or objectives relating to the products or services of the issuer.'" *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 767 (9th Cir. 2023) (quoting 15 U.S.C. § 78u-5(i)(1)(B)). Under the PSLRA, someone who makes a forward-looking statement is not liable for it if,

> "(A) the statement is 'identified as a forward-looking statement, and is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement'; or (B) the plaintiff fails to prove that the statement 'was made with actual knowledge . . . that the statement was false or misleading.'"

*Id.* (quoting 15 U.S.C. § 78u-5(c)(1)). A defendant is not liable "for a false or misleading statement if it is forward-looking and *either* is accompanied by cautionary language *or* is made without actual knowledge that it is false or misleading.'" *Id.* (emphases in original) (quoting *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1141 (9th Cir. 2017)). The PSLRA safe harbor protects "statement[s] containing a projection of revenues." *See* 15 U.S.C. § 78u–5(i).

These forward-looking statements were accompanied by cautionary language, which disclosed many of the exact risks that Plaintiffs allege ultimately came to fruition:

- Rockley's "[m]arket opportunity estimates and growth forecasts are subject to significant uncertainty and are based on assumptions and estimates that may not prove to be accurate." RJN Ex. 5, at 222; Ex. 7, at 995; Ex. 8, at 1810; Ex. 10, at 1914; Ex. 11, at 2191; Ex. 12, at 2462.
- "[C]ommercialization of [Rockley's] silicon photonics chipsets . . . is not currently expected to begin until 2022; provided that any such commercialization may occur later than 2022 or not at all. Even if Rockley is able to successfully develop and sell its products, there can be no guarantee that it will do so within

its anticipated timeframe or that its products will be commercially successful." RJN Ex. 5, at 258; Ex. 7, at 1031; Ex. 8, at 1856; Ex. 10, at 1921; Ex. 11, at 2200; Ex. 12, at 2506.

- "Rockley's customers may be unable to fully develop and commercialize, or achieve widespread market acceptance of, their end products that incorporate Rockley's products. Further, these customers may not continue to incorporate Rockley's products into their end products either in the short or long term." RJN Ex. 5, at 259; Ex. 7, at 1032; Ex. 8, at 1857; Ex. 10, at 1922; Ex. 11, at 2201; Ex. 12, at 2507.
- "Rockley is currently developing products for use in its customers' end products, which are in varying stages of development. Many of these products . . . require extensive testing or qualification processes . . . . These qualification processes may continue for several months or longer. However, qualification of any of Rockley's products by a customer does not assure any sales of such product by Rockley to that customer. . . . [F]orecasts of Rockley's future results contained in this [filing] assume that Rockley will successfully commercialize its products and achieve significant market penetration in these sectors." RJN Ex. 5, at 259-60; Ex. 7, at 1032-33; Ex. 8, at 1857; Ex. 10, at 1922-23; Ex. 11, at 2201-02; Ex. 12, at 2507.

Rockley's forward-looking statements about revenue and product development timelines are not actionable. Rockley told investors that these projections were just that, and Rockley disclosed the risks that its projections would prove to be wrong. The PSLRA does not penalize people for having a less-than-perfect crystal ball.

**Puffery:** Many of the alleged statements were puffery, such as statements that Rockley was "working closely and deeply" with customers, it was making "substantial progress" with its human studies and "outstanding progress" in the health monitoring space, it made "tremendous progress" throughout 2021, and the medical device market was a "very big opportunity." *See, e.g.*, AC ¶¶ 122, 147, 159, 167, 179.

"Corporate 'puffing' involves 'expressing an opinion' that is not 'capable of objective verification.'" *Macomb Cnty. Emps.' Ret. Sys. v. Align Tech., Inc.*, 39 F.4th 1092, 1097-98 (9th Cir. 2022) (quoting *Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1275 (9th Cir. 2017)). "'[V]ague statements of optimism like good, well-regarded, or other feel good monikers,' are not actionable because 'professional investors, and most amateur investors as well, know how to devalue the optimism of corporate executives.'" *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1060 (9th Cir. 2014) (quoting *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111 (9th Cir. 2010)). Puffing about Rockley's progress and opportunities is not actionable under the securities laws.

**Statements of opinion:** Several alleged statements are statements of opinion. *See, e.g.*, AC ¶¶ 128, 136, 142, 173, 192. For example, Rickman said it was the power of this technology that Rockley "believe[d] has made us invaluable to one of the largest technology companies in the world." AC ¶ 128. The Proxy stated that "Rockley believes that its operating results for the foreseeable future will continue to depend to a significant extent on revenue attributable to a few large customers . . . ." AC ¶ 136. On an August 2021 call, Karanth stated "we believe that we remain on track with the production rollout plans of our announced customers." AC ¶ 142. In a May 2022 press release, Rickman stated, "I believe our product development programs remain on track." AC ¶ 173. And on the Third Quarter 2022 call, Meier stated, "I think the company is certainly in a position to move forward in an aggressive fashion." AC ¶ 192.

To plead the falsity of opinions, "the plaintiff must allege both that 'the speaker did not hold the belief she professed' and that the belief is objectively untrue." *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615-16 (9th Cir. 2017) (quoting *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 185-86 (2015)). Plaintiffs do not allege that the speaker did not actually hold the belief professed. Nor do they demonstrate that any of the

beliefs are objectively untrue. Therefore, these opinions are not actionable.

**Statements of present fact:** Plaintiffs allege some statements of present fact, but do not allege that these statements were false when made, let alone how Rockley or the Rockley Defendants knew "*at the time they were made*" that such statements were false or misleading. *See In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th Cir. 2012) (emphasis added) (citation omitted). This does not suffice. Rule 9(b) requires a plaintiff to identify "why the statements were false or misleading *at the time they were made*." *Id.* The allegedly false or misleading statement must "directly contradict what the defendant knew at that time." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018).

Plaintiffs point to statements about Rockley's customer discussions and commitments, but fail to allege how they were false or misleading when made. *See, e.g.*, AC ¶¶ 122, 127, 128, 147, 162, 167, 178. These include statements in which Rockley stated it had "engaged or contracted with" a certain number of customers, had entered "partnership agreements" with customers, was "actively working" with a certain number of customers, or had signed supply agreements. AC ¶¶ 127, 128, 147, 167, 178. Plaintiffs do not allege that Rockley did not have these discussions and commitments. And these statements were not misleading because Rockley explicitly disclosed the nature of these commitments:

> "Rockley views its current customer relationships in the following stages: (a) customers with whom it is "engaged," or in discussions with, regarding potential product features for incorporation into such customer's end products or (b) customers with whom it is 'contracted' where Rockley has non-binding MOUs or development and supply agreements. These non-binding MOUs and development and supply agreements provide a general framework for Rockley's transactions with the customer and typically provide that Rockley will develop and deliver new products meeting the customer's specifications. These agreements do not contain any minimum or binding purchase obligations."

RJN Ex. 7, at 1050; Ex. 8, at 1872; Ex. 10, at 1940; Ex. 11, at 2219; Ex. 12, at 2522. Because Rockley explained to investors the nature of these relationships, there were no

actionable misstatements.

Plaintiffs also allege that certain statements of present fact must have been false when made based on the statements of the "Former Chip Designer" regarding the timeline for developing an ASIC chipset. *See* AC ¶¶ 99-100. These allegations rest on the assumption, unsupported by factual allegations, that Rockley intended to create its own consumer wearables product. *See* AC ¶ 102. As Rockley disclosed, its plan was to sell its silicon photonic chips to technology companies that would incorporate the chips into their own consumer wearables products, using their own ASIC chipsets. Rockley did not need to complete an ASIC chipset to sell its silicon photonic chips to original equipment manufacturers ("OEMs"). Rockley mentioned ASICs as part of its eventual hoped-for product offering, but it did not suggest that an OEM would have to buy the ASICs to get the silicon photonics chipset, or that Rockley's revenue projections depended on selling ASICs to OEMs in addition to silicon photonics chipsets. *See, e.g.*, RJN Ex. 10, at 1971, 2001.

Other alleged statements of present fact also fail because the Amended Complaint does not allege facts showing these statements were false when made. This is true of statements in a press release about the results of Rockley's human studies. *See* AC ¶ 165. It also is true of statements about Rockley's pivot from prioritizing consumer wearables to prioritizing medical devices. For example, on the Second Quarter 2022 earnings call, Rickman noted the pivot toward medical devices and he explained why, noting that the consumer wearables market was "predicated on those customers [OEMs] launching their products." *See* AC ¶ 179, 183, 185. Plaintiffs do not allege anything showing that these statements were untrue.

**b. The statements about Apple are not actionable**

**Non-recurring engineering revenues:** Plaintiffs allege that Rockley misrepresented that it had a $70 million NRE "commitment" from Apple when the NRE payments were contingent on Rockley meeting certain milestones. AC ¶ 131(e). But Rockley explicitly *disclosed* this to investors, stating that Apple "does not have any

minimum or binding purchase obligations to Rockley under this agreement and could elect to discontinue or reduce making purchases from Rockley with little or no notice." RJN Ex. 5, at 276; Ex. 7, at 1049; Ex. 8, at 1871; Ex. 10, at 1939; Ex. 11, at 2218; Ex. 12, at 2521. Plaintiffs do not allege (nor could they truthfully) that Apple's actual NRE payments to Rockley fell materially short of the projected $70 million.

Plaintiffs allege that Rockley should not have included revenue from Apple in its 2023 and 2024 revenue projections because Apple was not going to launch its technology until 2026. AC ¶¶ 138(c), 157(f). But the statement of one Former Employee, who was not in a position to know Apple's product development timeline, does not establish that Apple was not planning to launch the product until 2026 or that Rockley could not earn revenue from Apple before the product launched, as it had been doing for years already. Rockley had no control over when Apple launched the product, and it did its best to project when it would have revenue from Apple. The PSLRA's safe harbor protects such revenue projections. *See* 15 U.S.C. § 78u–5(i).

**The allegedly deteriorating relationship:** Plaintiffs allege that Rockley failed to disclose that the relationship with Apple was deteriorating because Rockley (i) disclosed too much information and (ii) was not hitting yield rates. *See* AC ¶¶ 138(d), 144(d), 157(j), 161, 171(c), 175(c), 189(g).

**(i)** Plaintiffs say two Former Employees stated that Apple was secretive. AC ¶ 88. But Apple's famously secretive nature does not create any negative inference. When Rockley named Apple, it did so in highly-vetted documents such as its S-1 prospectus. RJN Ex. 10, at 1939. No well-pleaded facts suggest that these documents were filed over Apple's objections or without Apple's approval.

**(ii)** There is no well-pleaded allegation that the NRE was contingent on Rockley meeting yield rates, as opposed to milestones. The only support for this allegation is the statement of a Former Process Engineer that Apple requested information on yield rates. AC ¶ 89. Plaintiffs do not explain how the Former Process Engineer was in a position to know why Apple requested information on the yield rates,

or that unhappiness was serious at the corporate level, as opposed to among engineers.

Even if Plaintiffs had alleged facts showing a deteriorating relationship, this is not an actionable omission. Securities laws do not require a company to disclose its own speculation about a customer's mood. There are no well-pleaded allegations that Apple did not pay all, or almost all, of the NRE payments. If Apple did not follow up with additional purchase orders, that was a risk Rockley had expressly disclosed. *See* RJN Ex. 5, at 276; Ex. 7, at 1049; Ex. 8, at 1871; Ex. 10, at 1939; Ex. 11, at 2218; Ex. 12, at 2521. And when the timetable for wearables did start to slip, Rockley informed investors and pivoted to the medical device market. *See* AC ¶ 179; RJN Ex. 22.

In sum, the Amended Complaint does not state a claim because it does not allege any facts that make anything the Rockley Defendants said untrue. Rather the Amended Complaint's core theory is classic "fraud by hindsight," which is not actionable. "Congress enacted the PSLRA to put an end to the practice of pleading 'fraud by hindsight.'" *In re Daou Sys., Inc.*, 411 F.3d 1006, 1021 (9th Cir. 2005), *abrogated on other grounds by Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-49 (2011) (citation omitted).

**c. The confidential witnesses are not reliable**

Courts credit confidential witness statements where the confidential witnesses are described "with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged and the complaint contains adequate corroborating details." *In re Daou Sys.*, 411 F.3d at 1015-1016. A complaint relying on statements from confidential witnesses must pass two hurdles. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009), *as amended* (Feb. 10, 2009). First, confidential witnesses must be described with sufficient particularity to establish their reliability and personal knowledge. *In re Daou Sys.,* 411 F.3d at 1015-1016. Second, the confidential witnesses' statements must themselves be indicative of scienter. *See id*. at 1022.

Neither Former Employee satisfies these requirements. The Former Process

Engineer's statements are about the relationship with Apple. *See* AC ¶¶ 86-89. Plaintiffs have not alleged how the Former Process Engineer was in a position to know Apple's internal product release timelines or how Apple "felt" about its relationship with Rockley. *See id*. The Former Process Engineer based his "knowledge" of the project timelines through hearsay statements of another anonymous engineer. *See* AC ¶ 86. While hearsay is not automatically disregarded, reliance on hearsay may indicate that a confidential witnesses' report is not sufficiently reliable, plausible, or coherent to warrant further consideration. *See In re Daou Sys.*, 411 F.3d at 1015.

Plaintiffs have not alleged how the Former Chip Designer, who was a remote worker in Colorado, was in a position to have personal knowledge as to how and in which products Rockley would use the ASIC chipset, or when the ASIC chipset would be completed. *See* AC ¶¶ 98-101. The Former Chip Designer gave only his opinions and estimates on the timeline of the ASIC chipset development, not a definitive determination of how long it would take or who would use it. *See* AC ¶ 99.

**B. The Amended Complaint does not adequately allege scienter**

"To plead *scienter* adequately under the PSLRA, the complaint must 'state with particularity facts giving rise to a *strong inference* that the defendant acted with the required state of mind.'" *Glazer*, 63 F.4th at 766 (emphases in original) (quoting 15 U.S.C. § 78u-4(b)(2)(A)). "A 'strong inference' exists 'if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'" *Id.* (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007)). Plaintiffs offer a smorgasbord of theories for inferring scienter. Whether considered individually or holistically, none creates the requisite strong inference.

**1. The access to information theory does not support scienter**

Plaintiffs allege that the Court can infer scienter because the Rockley Defendants had access to information about the Hengtong JV, Apple, and product development. AC ¶¶ 202-216. But "plaintiffs must do more than allege that these key officers

[including the CEO] had the requisite knowledge by virtue of their 'hands-on' positions, because that would eliminate the necessity for specially pleading scienter, as any corporate officer could be said to possess the requisite knowledge by virtue of his or her position." *In re Autodesk, Inc. Sec. Litig.*, 132 F. Supp. 2d 833, 844 (N.D. Cal. 2000).

**The Hengtong JV**: Allegations that Rickman and Karanth had access to information about risks facing the Hengtong JV (AC ¶¶ 202-04), that Rockley was embedded in the management of the Hengtong JV, and that Rickman signed the JV Agreement (AC ¶¶ 202-03) do nothing to address the fundamental issue: no well-pleaded allegation suggests that the U.S. Government tipped Rockley that Hengtong would be added to the banned "Entity List." Nor do allegations that Rockley attempted to sell its IP to the Hengtong JV in 2021 (AC ¶ 204) create a strong inference that Rockley had advance knowledge of what the U.S. Government would do. The more plausible inference is that Rockley sought to monetize its data communications assets to focus on healthcare, as Rockley told the market it would do. RJN Ex. 16.

**Forward-looking statements about product development and revenue projections:** Allegations that CEO Rickman was aware of Rockley's product development for the consumer wearables market (AC ¶¶ 205-11) do nothing to suggest he knew that product would take longer and cost more than forecast. These allegations rest on the unsupported theory that Rockley, as opposed to the OEMs, would develop an ASIC chipset for the OEMs' consumer wearables products.

**Apple:** The allegations that Rockley management understood that the non-recurring engineering revenue from Apple was contingent on meeting certain milestones, *see* AC ¶¶ 212-14, prove nothing; this was disclosed to investors, *see* RJN Ex. 5, at 276; Ex. 7, at 1049; Ex. 8, at 1871; Ex. 10, at 1939; Ex. 11, at 2218; Ex. 12, at 2521, and therefore cannot be indicative of scienter. The allegation that Rockley knew disclosing Apple as a customer would jeopardize the relationship, *see* AC ¶ 213, makes no sense; Apple was disclosed in Rockley's Form S-1 prospectus (RJN Ex. 10, at 1939) so any inference that this happened without Apple's approval is weaker than weak. The

Former Process Engineer's claim that he was privy to Apple's actual timetable and (by implication) knew whose ASIC Apple would use is simply not credible. *See* AC ¶ 216.

**2. The core operations theory does not support scienter**

The core operations theory, AC ¶¶ 217-20, comes into play when a defendant says something demonstrably false, but an issue remains as to whether the defendant knew what he said was false when he said it. *See, e.g.*, *Anshen v. Facebook*, No. 2:17-cv-00679-SVW-AGR, 2017 WL 5635021, at *3 (C.D. Cal. Oct. 4, 2017) (citing *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 785 (9th Cir. 2008)). If the false statement concerned a core operation of the business over which the speaker had supervisory authority, then it makes sense to assume the speaker knew that what he said was false – he was, after all, speaking about his "day job." But here that theory has no application. Plaintiff has not alleged any facts showing that the Rockley Defendants' statements were false when made. Plaintiffs therefore are not entitled to a presumption that the speakers knew the statements were false.

**3. The "temporal proximity" theory does not support scienter**

Plaintiffs allege that the Court can infer scienter based on the temporal proximity between Rockley's positive statements about the Hengtong JV and the U.S. Government's decision to put Hengtong on the "Entity List" and between Rockley's withdrawal of revenue guidance in August 2022 and Rockley's entry into Chapter 11 bankruptcy in January 2023. AC ¶ 221. But "while temporal proximity can 'bolster' the inference that a misstatement was intentional, mere proximity is insufficient to establish that Defendants knowingly lied." *Gammel v. Hewlett-Packard Co.*, 905 F. Supp. 2d 1052, 1077 (C.D. Cal. 2012) (citations omitted); *see also In re Intel Corp. Sec. Litig.*, No. 5:20-cv-05194-EJD, 2023 WL 2767779, at *26 (N.D. Cal. Mar. 31, 2023) ("[T]emporal proximity cannot establish scienter by itself."). Here, both inferences are weak, to put it mildly.

**4. The executive departures do not support scienter**

The Rockley Defendants' resignations were not close in time, nor probative of

scienter. *See* AC ¶¶ 223-25. Karanth resigned as CFO in June 2022; Rickman resigned as CEO but not as Executive Chairman in December 2022. AC ¶¶ 223-24. Meier took Rickman's place as CEO, and resigned six months later in May 2023. AC ¶ 224. For resignations during the class period to have significance, "a plaintiff must allege sufficient information to differentiate between a suspicious change in personnel and a benign one. Mere conclusory allegations that a financial manager resigns or retires during the class period . . . , without more, cannot support a strong inference of scienter." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1002 (9th Cir. 2009), *as amended* (Feb. 10, 2009). A plaintiff must allege that the resignation "was uncharacteristic when compared to the defendant's typical hiring and termination patterns or was accompanied by suspicious circumstances." *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 622 (9th Cir. 2017) (quoting *Zucco*, 552 F.3d at 1002). Plaintiffs do not make such allegations here.

**5. Allegations of motive and opportunity do not support scienter**

Plaintiffs allege that the Rockley Defendants had the motive and opportunity to commit fraud. AC ¶¶ 226-29. But "[t]o meet the PSLRA's high burden for pleading scienter, a complaint cannot rely on 'mere motive and opportunity or recklessness, but rather, must state specific facts indicating no less than a degree of recklessness that strongly suggests actual intent.'" *Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1108 (9th Cir. 2021) (citing *Glazer Cap. Mgmt., LP v. Magistri*, 549 F.3d 736, 743 (9th Cir. 2008)).

**C. The Amended Complaint's control person claims do not suffice**

The Court should dismiss Plaintiffs' control person liability claims against all the Rockley Defendants because Plaintiffs have failed to state a claim for primary liability. 15 U.S.C. § 78t(a); *Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 623 (9th Cir. 2022). Section 20(a) claims may be dismissed summarily if, as here, a plaintiff fails to adequately plead a primary violation of Section 10(b). *See In re Verifone Sec. Litig.*, 11 F.3d 865, 872 (9th Cir. 1993).

## V. CONCLUSION

While Lead Plaintiffs are new to this case, their counsel are not and had the benefit of full briefing on the Rockley Defendants' motion to dismiss the original complaint. Despite that, Lead Plaintiffs have failed to plead viable claims. For the foregoing reasons, the Rockley Defendants respectfully request that the Court dismiss the Amended Complaint as against them without leave to amend.

Dated: March 20, 2024 PILLSBURY WINTHROP SHAW PITTMAN LLP

*/s/ Bruce A. Ericson*
Bruce A. Ericson
A Member of Pillsbury Winthrop Shaw Pittman LLP
Attorneys for Defendants Andrew Rickman, Mahesh Karanth and Richard Meier

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6.2**

The undersigned, counsel of record for Defendants Mahesh Karanth, Richard Meier and Andrew Rickman, certifies that this brief contains 6,974 words, which complies with the word limit of L.R. 11-6.1.

Dated: March 20, 2024.

*/s/ Bruce A. Ericson*
Bruce A. Ericson