UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| KENNETH S. GROSSMAN, Individually and on Behalf of All Others Similarly Situated,<br><br>                   Plaintiff,<br><br>vs.<br><br>DAVID SIN, et al.,<br><br>                 Defendants. | Case No. 2:23-cv-09501-MRA-MAA<br><br>CLASS ACTION<br><br>[PROPOSED] ORDER DENYING MOTION OF DEFENDANTS RICKMAN, KARANTH, AND MEIER TO DISMISS AMENDED COMPLAINT AND REQUEST FOR JUDICIAL NOTICE [ECF 64-65] |

4865-9675-7942.v1

On February 28, 2024, Lead Plaintiffs Jonathan Lottner and Federico Huergo ("Plaintiffs") filed an amended complaint (the "Complaint") (ECF 56), asserting claims arising under §§10(b) and 20(a) of the Securities and Exchange Act of 1934, 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. §240.10b-5. The claims are asserted on behalf of all investors who, between March 19, 2021 and January 23, 2023, inclusive (the "Class Period"), purchased or otherwise acquired publicly traded warrants or Class A ordinary shares of SC Health, ordinary shares of Rockley, or publicly traded Rockley warrants, and were harmed thereby (the "Class"). On March 20, 2024, certain defendants, Andrew Rickman ("Rickman"), Mahesh Karanth ("Karanth"), and Richard Meier (collectively, the "Defendants"), filed a motion to dismiss (the "Motion") (ECF 64), challenging the elements of falsity and scienter, along with a request for judicial notice (the "RJN") (ECF 65) concerning 26 separate exhibits spanning more than 2,700 pages.

## I.    BACKGROUND

Rockley is a technology company specializing in the development silicon photonics chipsets. ¶3. On August 11, 2021, Rockley completed a de-SPAC merger (the "Merger") with a blank-check company (or SPAC) by the name of SC Health, which resulted in Rockley becoming a publicly traded company and SC Health shares being exchanged for Rockley shares. ¶¶1-3, 58. Leading up to the Merger, Rockley's stated business plan was to initially target the consumer health and wellness markets by selling Rockley's chipset modules to original equipment manufacturers ("OEMs") of consumer wearable devices, such as Apple, Fitbit, and Samsung, for incorporation into such customers' end product offerings, such as smartwatches or wristbands. ¶3. Plaintiffs have allege that, in connection with the Merger and throughout the Class Period, Defendants made materially false and misleading statements regarding the status of Rockley's product development. ¶¶5-9. Among other things, Defendants are alleged to have falsely or misleadingly

represented that: (i) the commercialization of Rockley's consumer wearable products was "not a future story," but was in fact "happening now" (¶130); (ii) Rockley's products were "validated by leading blue-chip customers" (¶¶127-128, 162); (iii) there were no "meaningful hurdles remain[ing] from a technology standpoint" (¶¶153-154, 170); and (iv) Rockley had secured "deep design wins and commitments" and was "negotiating, volume [purchase orders]" from its consumer wearable customers (¶162). Based on these representations, Defendants claimed that Rockley expected to begin commercial sales in late 2022, which would be followed by an estimated $426 million in revenue in 2023 and over a billion dollars in 2024. ¶¶124-130. In contrast to Defendants' representations, however, Plaintiffs allege that Rockley's consumer wearable products were nowhere near ready for commercialization at the start of the Class Period – or at any point during it.

Specifically, Plaintiffs allege that, by the start of the Class Period, Rockley had yet to even begin its efforts to develop a critical new application-specific integrated circuit ("ASIC") chipset for its consumer wearables chipset module. ¶8. This new chipset was allegedly essential to Rockley's efforts to create a commercially viable consumer wearables product that could fit inside existing devices from consumer wearable OEMs, and it required at least 15-24 months to develop, after which the completed product would need to be subjected to multiple rounds of human studies, qualified by consumer wearable OEM customers, and then incorporated into such customers' own product designs, before Rockley's product could be included in any such customers' product launches. *Id.* Yet, Rockley did not even hire the person responsible for architecting the new ASIC chipset until December 2021 (*id.*) – more than eight months after Rickman told investors "this is not a future story – this is happening now, and we have strong visibility on our numbers in close partnership with our customers" (¶130). These allegations are based, in part, upon information provided by the former Rockley employee who was hired to architect the new ASIC chipset. ¶¶98-103.

- 2 -

4865-9675-7942.v1

Because Rockley did not even begin the process of developing its essential new ASIC chipset until December 2021, Plaintiffs allege that there was no commercially viable consumer wearables product for Rockley's customers to "validate" at any point during the Class Period, and there was never a basis for Defendants' stated expectations of commercially launching their consumer wearable products in 2022 and realizing a significant revenue ramp from those products in 2023. ¶9. Nonetheless, throughout the Class Period, Defendants told investors that their development plans remained "on track," that there were no "meaningful hurdles" to commercial adoption of Rockley's consumer wearable products in 2023, and that Rockley had secured "deep design wins and commitments" from its consumer wearable customers, with whom Rockley was supposedly negotiating "volume [purchase orders]." *Id.* Plaintiffs allege that these, and other statements Defendants made during the Class Period, were materially false and misleading, because Rockley never had a commercially viable consumer wearables product at any point during the Class Period – or any realistic hope of developing one by the start of 2023. *Id.*

In addition, Plaintiffs allege that Defendants concealed from investors known material risks regarding the only two actual revenue streams Rockley purportedly had, both of which were critical to funding Rockley's operations and product development efforts.  ¶¶10, 71-80, 84-91.  Specifically, Defendants allegedly concealed that Rockley's revenues from its joint venture, HRT, were at imminent risk of going away, due to the likelihood that U.S. regulators would soon preclude Rockley's joint venture partner, Hengtong, from doing business with U.S. companies, as a result of Hengtong's 2020 acquisition of a company that had previously been placed on the U.S. government's banned "Entity List."  ¶¶71-80. Additionally, Defendants allegedly concealed that Rockley's relationship with Apple had become strained during 2021 due to Rockley's public disclosure of the notoriously secretive Apple as its largest customer, and Apple's dissatisfaction with

- 3 -

Rockley's chip yield rates.  ¶¶84-91.  The allegations regarding Apple are based, in part, upon information provided by another former Rockley employee who allegedly performed work for the Apple account.  ¶¶86-89.

Plaintiffs identify seven sets of allegations that they claim support a strong inference of scienter, when taken collectively and viewed holistically: (1) Defendants made detailed factual statements regarding the precise matters that were allegedly misrepresented and omitted (¶¶128, 140-143, 148-156, 162-163, 169-170, 173-174, 179, 192, 207-208); (2)  Defendants had access to, and direct knowledge of, the allegedly misrepresented and omitted facts (¶¶202-216); (3) Rickman and Karanth were both heavily incentivized to make material misstatements (¶¶49-52, 228); (4) there was a close temporal proximity between Defendants' material misrepresentations and the disclosure of information undermining those representations (¶¶71-82, 145, 173, 177-187, 221); (5) the resignations of Karanth and Rickman were accompanied by suspicious circumstances (¶¶28, 114-117, 223-225); (6) Rickman gave evasive responses to multiple analyst questions concerning the allegedly misrepresented and omitted facts (¶¶181-187, 193-196); and (7) the alleged misrepresentations concerned the core operations of the company (¶¶217-220).

For the reasons stated herein, the Motion and RJN are DENIED.

## II.  DISCUSSION

### A.  Defendants' Request for Judicial Notice

As an initial matter, upon a review of Defendants' submission for judicial notice, the Court concludes that Defendants have failed to establish that judicial notice or incorporation by reference is appropriate under Ninth Circuit authority.  In large part, the Motion seeks to rely upon the documents at issue in the RJN for the improper purpose of disputing facts alleged in the Complaint.  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).  Accordingly, Defendants' RJN is DENIED.

- 4 -

4865-9675-7942.v1

### B.   Standard of Review

To defeat the Motion, the Complaint "'must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."'" *In re Snap Inc. Sec. Litig.*, 2018 WL 2972528, at *3 (C.D. Cal. June 7, 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).[1]  "In deciding a 12(b)(6) motion, the Court must accept all allegations of material fact stated in the complaint as true . . . [and] draw all reasonable inferences in favor of the nonmoving party."  *Id.* at *4.

"To state a securities fraud claim, plaintiff must plead: '(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.'"  *Reese v. Malone*, 747 F.3d 557, 567 (9th Cir. 2014), *overruled on other grounds by City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605 (9th Cir. 2017).  Defendants' Motion challenges only the first two of these elements, falsity and scienter.

### C.   The Complaint Adequately Pleads Falsity

To plead falsity, Plaintiffs must "'specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading.'"  *Reese*, 747 F.3d at 568.  Such allegations, however, need only satisfy "the reasonable inference standard of plausibility set out in *Twombly* and *Iqbal*."  *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 766 (9th Cir. 2023).  Thus, falsity is adequately pled where Plaintiffs allege "sufficient factual matter, accepted as true . . . [to] allow[] the court to draw the reasonable inference that the defendant [made a misleading statement]."  *Ashcroft*, 556 U.S. at 678.  In the Ninth Circuit, "[a] statement is misleading if it would give a reasonable investor the 'impression of

---

[1]   Unless otherwise noted, citations are omitted.

- 5 -

a state of affairs that differs in a material way from the one that actually exists.'" *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985 (9th Cir. 2008).

### 1.    The Development Status and Commercialization Prospects Allegations

Construing the allegations in the light most favorable to Plaintiffs, the Complaint alleges that: it was impossible for Rockley's customers to have "validated" the actual products they would ultimately be purchasing; Rockley was not in a position to secure "deep design wins and commitments" or negotiate "volume [purchase orders]"; meaningful technology hurdles did remain; and the commercialization of Rockley's consumer wearable products was absolutely not "happening now."   Defendants do not specifically address these statements. Accordingly, the Court finds that Plaintiffs have alleged that Defendants' statements gave investors "the 'impression of a state of affairs that differ[ed] in a material way from the one that actually exist[ed].'" *Berson*, 527 F.3d at 985.

Defendants' arguments to the contrary are unavailing. As an initial matter, they contest that allegations sourced from the two former Rockley employees are unreliable.   The Complaint, however, adequately alleges reliability under Ninth Circuit precedent by "provid[ing] each witness's job title, description, and responsibilities." *Police Ret. Sys. of St. Louis v. Granite Constr. Inc.*, 2020 WL 2559939, at *4 (N.D. Cal. May 20, 2020); *see also* ¶¶86, 88, 98.

Defendants' next argument is that certain statements are forward-looking revenue projections or plans, which are purportedly immunized by the PSLRA safe harbor.   This argument fails because each misstatement was either: (i) not forward-looking; or (ii) allegedly made with actual knowledge of its false or misleading nature, and not accompanied by adequate cautionary language.  *See In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1141-42, 1148 (9th Cir. 2017).

Defendants also contend that certain alleged statements are nonactionable puffery.  But "'general statements of optimism, when taken in context, may form a

- 6 -

4865-9675-7942.v1

basis for a securities fraud claim' when those statements address specific aspects of a company's operation that the speaker knows to be performing poorly." *Quality Sys.*, 865 F.3d at 1143. Reviewing the alleged misstatements in context, the Court concludes they conveyed a concrete state of affairs that materially differed from the one that actually existed, *i.e.*, that Rockley was not in position to overcome significant technological hurdles in time to commercialize its consumer wearables chipset module in 2023.

Defendants' argument regarding their purported "statements of opinion" also fails. Even assuming charitably that these are opinions, the Complaint alleges that such statements did "not 'fairly align[] with the information in [defendants'] possession at the time,'" given the Defendants' allegedly awareness of information concerning the development timeline for Rockley's consumer wearable products. *Glazer*, 63 F.4th at 771, 779 (some alterations original).

### 2.      The NRE Revenue Allegations

Plaintiffs also adequately allege that Defendants misled investors by touting the importance of Rockley's NRE revenue streams from HRT and Apple, while at the same time concealing known material risks that substantially imperiled the viability of those critical revenue streams. *See Khoja*, 899 F.3d at 1009 ("'[O]nce defendants [choose] to tout positive information to the market, they [are] bound to do so in a manner that wouldn't mislead investors, including disclosing adverse information that cuts against the positive information.'" (alterations original)). Defendants fail to address the substance of Plaintiffs' allegations by recasting them as a failure to disclose, in advance, both the Hengtong blacklisting and Apple's withdrawal of NRE work.

### D.      The Complaint Alleges a Strong Inference of Scienter

"To adequately plead scienter, the complaint must 'state with particularity facts giving rise to **a strong inference** that the defendant acted with the required state of mind.'" *Reese*, 747 F.3d at 568 (emphasis original). In the Ninth Circuit, "[t]he

- 7 -

4865-9675-7942.v1

inference must be that 'the defendant[] made false or misleading statements either *intentionally* or with *deliberate recklessness*.'" *Id.* at 569 (emphasis and some alterations original). "'[A]n actor is [deliberately] reckless if he had reasonable grounds to believe material facts existed that were misstated or omitted, but nonetheless failed to obtain and disclose such facts although he could have done so without extraordinary effort.'" *Id.* (alterations in original).

When assessing the element of scienter, "a court must first accept all factual allegations in the complaint as true" and "'review all the allegations holistically.'" *Id.* at 568-69. The "relevant inquiry" is then "'whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard.'" *Id.* at 569 (emphasis original). A strong inference of scienter is one that is "'cogent and at least as compelling as any opposing inference of nonfraudulent intent.'" *Id.* "[I]f two possible inferences – one fraudulent and the other nonfraudulent – are equally compelling, a plaintiff has demonstrated a strong inference of scienter." *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1033 (9th Cir. 2016).

Plaintiffs allege numerous facts that – taken collectively – clearly give rise to a strong inference of scienter. Defendants fail to address scienter holistically, and thus their disjointed criticisms of the indicia of scienter are insufficient to suggest a compelling opposing inference of non-fraudulent intent.

***First***, the allegations that Defendants made numerous detailed factual statements regarding the precise matters that were allegedly misrepresented and omitted weighs in favor of finding a strong inference of scienter. The Complaint details multiple instances of Rickman describing the details and status of Rockley's technology that were "completely at odds" with the fact that the technology was not close to completion. *QuantumScape*, 580 F. Supp. 3d at 741.

***Second***, allegations that Defendants had access to, and direct knowledge of, the allegedly misrepresented and omitted facts adds additional support for a strong

- 8 -

inference of scienter.  Among other things, Plaintiffs allege that Rickman received from multiple sources information about the necessity and status of the ASIC chip.

**Third**, Plaintiffs' allegations that significant financial incentives motivated Rickman and Karanth to mislead investors in order to successfully close the Merger also weigh in favor of a finding of scienter.  *Tellabs*, 551 U.S. at 325.

**Fourth**, the allegations concerning the temporal proximity between Defendants' alleged misstatements and the disclosure of information undermining those statements provides further support to finding a strong inference of scienter. *Roberti v. OSI Sys., Inc.*, 2015 WL 1985562, at *11 (C.D. Cal. Feb. 27, 2015).

**Fifth**, the Court finds the circumstances surrounding the resignations of Karanth and Rickman sufficiently suspicious to support a finding of scienter.  Both resignations preceded serious negative events in the company, *i.e.*, the evaporation of over $300 million in estimated revenue and the company's bankruptcy, respectively, and allowed them to avoid scrutiny for previously providing incorrect information.  Therefore, the resignations add further weight in support of a finding of scienter.

**Sixth**, the Court finds that Rickman's blatantly evasive responses to multiple pointed analyst questions concerning the alleged misrepresented facts further exhibits an awareness of his fraudulent intent, and thus adds to the strong inference of scienter.

**Finally**, the strong inference of scienter is further supported by the fact that Defendants' statements concerned the most critical aspects of Rockley's business, operations, and general wellbeing.  As such, it would be absurd to think that Rockley's senior most executives, who were responsible for overseeing the company's day-to-day operation and regularly spoke to investors about such issues, were unaware of the alleged misrepresented and omitted information.  *Reese*, 747 F.3d at 569.

4865-9675-7942.v1

Defendants' arguments that, taken individually, none of these factors would support a strong inference of scienter may have some superficial appeal. But their argument fails because they do not challenge the allegations holistically. The Court thus finds that, when viewed holistically, the number and the strength of the alleged factors suggest a strong inference of scienter that is "'cogent and at least as compelling as any opposing inference of nonfraudulent intent.'" *Reese*, 747 F.3d at 568-69.

**E.      The Complaint Adequately Alleges Section 20(a) Claims**

Defendants only challenge Plaintiffs' §20(a) claims for failing to allege a predicate violation of §10(b). As the Court has found that Plaintiffs have adequately alleged primary §10(b) violations, it DENIES Defendants' motion to dismiss the §20(a) claim.

The Court, having considered Defendants' Motion, hereby DENIES the Motion and ORDERS as follows:

1.      Defendants' Request for Judicial Notice is DENIED; and

2.      Defendants' Motion to Dismiss is DENIED.

IT IS SO ORDERED.

DATED: _____      _____
HON. MÓNICA RAMÍREZ ALMADANI
UNITED STATES DISTRICT JUDGE

- 10 -

4865-9675-7942.v1