ROBBINS GELLER RUDMAN
  & DOWD LLP
NATHAN R. LINDELL (248668)
KEVIN S. SCIARANI (301411)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
nlindell@rgrdlaw.com
ksciarani@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| KENNETH S. GROSSMAN, Individually and on Behalf of All Others Similarly Situated,<br><br>                 Plaintiff,<br><br>   vs.<br><br>DAVID SIN, et al.,<br><br>                 Defendants. | Case No. 2:23-cv-09501-MRA-MAA<br><br><u>CLASS ACTION</u><br><br>LEAD PLAINTIFFS' OPPOSITION TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE<br><br>DATE:     May 30, 2024<br>TIME:     1:30 p.m.<br>CTRM:   10B<br>JUDGE:  Hon. Mónica Ramírez Almadani |

4866-2713-6437.v1

Defendants Andrew Rickman, Mahesh Karanth, and Richard Meier's (collectively, "Defendants") Request for Judicial Notice (the "RJN") (ECF 65) inundates the Court with a request to inject over 2,700 pages of documents outside the pleadings into their Motion to Dismiss Amended Complaint (the "Motion" or "Mot.") (ECF 64). Lead Plaintiffs Jonathan Lottner and Federico Huergo ("Plaintiffs") respectfully request that the Court deny the RJN in its entirety. Broadly speaking, the submission of documents en masse in connection with a motion to dismiss is highly disfavored in the Ninth Circuit, and Defendants otherwise fail to satisfy the requirements for judicial notice or the incorporation-by-reference doctrine. Specifically, Plaintiffs object to Defendants' submission of documents that are intended to improperly dispute facts alleged in the Amended Complaint for Violations of the Federal Securities Laws (the "Complaint") (ECF 56) or to argue that the Court should draw factual inferences in Defendants' favor.[1]

## I.  The "En Masse" Use of Judicial Notice Is Highly Disfavored in the Ninth Circuit

Defendants have moved for judicial notice of 26 separate exhibits, spanning over 2,700 pages. Although in principle there can be a legitimate purpose for seeking judicial notice, here Defendants join the "concerning pattern in securities cases" of "exploiting the[] procedures [for judicial notice and the incorporation-by-reference doctrine] improperly to defeat what would otherwise constitute adequately stated claims at the pleading stage." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). In spite of the Ninth Circuit's admonition, Defendants fail to identify the specific ***facts*** they are requesting judicial notice for, and instead only generally reference the submitted documents in their Motion, if at all. Indeed, Exhibits 3-4, 9, 13-14, 17-21, and 23-26 are not even cited in the Motion. Through

---

[1]  All "¶__" or "¶¶__" references throughout are to the Complaint. "Exhibits," "Exs. __," or "RJN Ex. __" references are to exhibits attached to the RJN. Unless otherwise noted, emphasis is added and citations and footnotes are omitted.

- 1 -

4866-2713-6437.v1

the RJN, Defendants attempt to shoehorn thousands of pages of extraneous facts into the Motion to serve as purported proof of an alternative version of facts to those pled in the Complaint.  Just two weeks ago, a similar gambit spanning over 1,100 pages was rejected in this District.  *In re Green Dot Corp. Sec. Litig.*, 2024 WL 1356253, at *3 (C.D. Cal. Mar. 29, 2024).  Accordingly, the RJN should be denied in full.

## II.    If the Court Does Not Reject the RJN in Its Entirety, It Should Limit Defendants' Requests

"Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Khoja*, 899 F.3d at 998.  There are two limited exceptions to this rule.  First, courts may take judicial notice of matters of public record "not subject to reasonable dispute" pursuant to Federal Rule of Evidence 201. Fed. R. Evid. 201(b).  A fact is "not subject to reasonable dispute" if it is "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(1)-(2).  When taking judicial notice, the court must "consider – and identify – ***which fact or facts it is noticing***." *Khoja*, 899 F.3d at 999.  Significantly, however, "a court cannot take judicial notice of disputed facts contained in such public records." *Id.*

The Ninth Circuit has further criticized the practice of "submitting documents not mentioned in the complaint to create a defense," noting:

> [It] is nothing more than another way of disputing the factual allegations in the complaint, but with a perverse added benefit: unless the district court converts the defendant's motion to dismiss into a motion for summary judgment, the plaintiff receives no opportunity to respond to the defendant's new version of the facts.

*Khoja*, 899 F.3d at 1003; *see also Hsu v. Puma Biotechnology, Inc.*, 213 F. Supp. 3d 1275, 1282-83 (C.D. Cal. 2016) (describing how the expansion of requests for judicial notice at the motion to dismiss stage is a "particularly troubling" "trend[]").

- 2 -

Second, courts may consider documents under the "incorporation-by-reference doctrine." *Khoja*, 899 F.3d at 998. Unlike rule-established judicial notice, incorporation by reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself if "'the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.'" *Id.* at 1002. However, "if the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint." *Id.* "Otherwise, defendants could use the doctrine to insert their own version of events into the complaint to defeat otherwise cognizable claims." *Id.* (citing, *inter alia*, *In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 995-96 (S.D. Cal. 2005) (declining to incorporate numerous exhibits in a U.S. Securities and Exchange Commission ("SEC") action where the defendants "'offer[ed] the documents as evidence that Defendants did not commit a securities violation'")). Moreover, "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Id.* at 1003.

Defendants' RJN seeks to vastly exceed the limitations of judicial notice and the incorporation-by-reference doctrine. Thus, to the extent the Court declines to reject the RJN in its entirety, it should appropriately limit the materials it considers in connection with the Motion – and purposes for which it considers such materials – as set forth below.

**A.    The RJN Exceeds the Permissible Scope and Use of the Incorporation-by-Reference Doctrine**

The RJN purports to seek incorporation by reference of several documents based on Defendants' claim that "the Complaint specifically refers to or quotes portions of" such documents. RJN at 1. In order to properly incorporate by reference, however, such materials must be "'extensively'" referred to in the Complaint or "'form[] the basis'" of Plaintiffs' claims. *Khoja*, 899 F.3d at 1002.

- 3 -

Here, five documents submitted by Defendants – Exhibits 1, 4, 5, 15, and 23 – fail to satisfy this requirement, as they are only briefly referred to in passing, or not mentioned at all, in the Complaint.  *See* ¶¶30, 52, 132, 158.  Thus, such documents should not be incorporated by reference.  Moreover, as further detailed *infra*, Defendants' Motion attempts to use several of the documents that may properly be incorporated by reference for the improper purpose of "assum[ing] the truth of [such] document[s] . . . to dispute facts stated in [the Complaint]."  *Khoja*, 899 F.3d at 1003.  These attempts should be rejected.

### B. The RJN Improperly Seeks Judicial Notice

The RJN seeks to submit several documents (Exhibits 1-2, 4-6, 8, 10-11, and 15) that are not properly subject to the incorporation-by-reference doctrine by requesting that the Court take judicial notice of such documents.  RJN at 2-3.  Several of these documents span hundreds of pages.  *See* Exs. 5, 10-11.  Yet, for all of these documents, Defendants fail to satisfy *Khoja*'s requirement that they identify the ***specific facts*** they are requesting to be judicially noticed.  *See Khoja*, 899 F.3d at 999 ("A court must also consider – and identify – which fact or facts it is noticing from such a [document].").  As such, Defendants' request for judicial notice of such documents should be rejected.  Moreover, as further detailed *infra*, Defendants' Motion attempts to use several of these documents for the improper purpose of establishing the truth of "disputed facts contained in such public records."  *Id.*  These attempts should be rejected.

### C. Exhibits 1, 5, 6, 7, 8, 10, 11, 12, 15, 16, and 22 Are Submitted for the Improper Purpose of Disputing Facts Alleged in the Complaint

Defendants' Motion confirms that several of the documents at issue in the RJN are being submitted for the improper purpose of attempting to establish the truth of disputed facts asserted within such documents.  Consistent with the Ninth Circuit's guidance in *Khoja*, these improper attempts to exploit judicial notice and the incorporation-by-reference doctrine must be rejected.  *See Khoja*, 899 F.3d at

- 4 -

4866-2713-6437.v1

998-1007; *see also Maiman v. Talbott*, 2010 WL 11421950, at *7 (C.D. Cal. Aug. 9, 2010) ("while it may be appropriate to judicially notice the existence of SEC filings and their contents, judicial notice should not be taken of the truth of their contents"); *United States v. Corinthian Colls.*, 655 F.3d 984, 999 (9th Cir. 2011) ("[W]e may not, on the basis of [judicially noticeable] reports, draw inferences or take notice of facts that might reasonably be disputed.").

Specifically, the following passages from Defendants' Motion rely on exhibits attached to the RJN to improperly dispute the following factual assertions from the Complaint:

- "[I]n 2021 its JV partner Hengtong fell afoul of U.S. export controls, which caused Rockley to abandon the Hengtong JV. But none of this was concealed; rather, Rockley very promptly disclosed it. RJN Ex. 16." Mot. at 4. This misstates the Complaint's allegations by claiming that Hengtong did not fall afoul of U.S. export controls until late 2021, contrary to the Complaint's allegations that the activities which exposed Hengtong to U.S. security scrutiny began in 2020. ¶¶74-76.

- "But Rockley disclosed that these projections were not sure things: Rockley said Apple 'does not have any minimum or binding purchase obligations to Rockley under this agreement and could elect to discontinue or reduce making purchases from Rockley with little or no notice.' RJN Ex. 5, at 276; Ex. 7, at 1049; Ex. 8, at 1871; Ex. 10, at 1939; Ex. 11, at 2218; Ex. 12, at 2521." Mot. at 5. This does not comport with Plaintiffs' allegations because the earliest purported disclosure cited by Defendants is dated April 2, 2021, weeks ***after*** the first alleged misrepresentation regarding Apple's purported "commitment" to Rockley. ¶¶125, 127-128. Defendants also imply that the purported disclosure covers the "expected [non-NRE commercial sales] revenue from Apple . . . for 2023 and 2024" (Mot. at

- 5 -

5), which was not alleged to be part of the purported $70 million commitment.  *See* ¶125.

- "But as Rockley disclosed, it planned to sell its silicon photonic chips to half a dozen technology companies (such as Apple) that would incorporate the chips into their own consumer wearables products (such as the Apple Watch), using their own ASIC chipsets.  RJN Ex. 10, at 1971, 2001."  Mot. at 5-6; *see also id.* at 14.  Defendants insert this fact to dispute allegations in the Complaint that the ASIC chipset development was critical to Rockley's commercialization efforts, by claiming that Plaintiffs' theory is somehow inconsistent with Rockley's plan to "sell its silicon photonic chips to half a dozen technology companies (such as Apple) that would incorporate the chips into their own consumer wearables products (such as the Apple Watch)," because Rockley purportedly "did not need to complete an ASIC chipset to sell its silicon photonic chips to companies making consumer wearables."  *Id.*  But Plaintiffs' allegations are ***premised*** upon that plan, not contradicted by it.  Indeed, the entire basis for Plaintiffs' claim that Rockley was unable to develop a commercially viable consumer wearables product during the Class Period rests upon the allegation that the new ASIC chipset "was essential to Rockley's efforts to create a commercially viable consumer wearables product ***that could fit inside existing devices from consumer wearable OEMs***."  ¶8; *see also* ¶¶63, 93-94, 98.  Moreover, the materials cited by Defendants do not support the contention that "Rockley did not need to complete an ASIC chipset to sell its silicon photonic chips to companies making consumer wearables."  Mot. at 6; *cf.* RJN Ex. 10 at 2001 ("***Application-specific integrated circuits ("ASICs")***: The design of electronic ICs to

- 6 -

4866-2713-6437.v1

complement our PICs and facilitate their integration into a specific end product ***is the second key component of our platform offering***.").

- Huawei's addition to the Entity list was "widely publicized. RJN Ex. 1." Mot. at 7. The inference (in Defendants' favor) that an entry buried in the tens of thousands of pages in the 2019 Federal Register is "widely publicized" is subject to multiple interpretations and thus is not a judicially noticeable fact.

- The invalidation of Huawei Marine's bid "was publicly announced and widely known. RJN Ex. 6." Mot. at 8. The inference that such invalidation was widely known amongst Rockley and SC Health Corporation investors is an issue of fact that contradicts the allegations in the Complaint and thus is not judicially noticeable.

- "Rockley sought to sell the IP because it wanted to exit the data transmission field to focus on its health-focused products. *See* RJN Ex. 16." Mot. at 8. Defendants impermissibly dispute the Complaint by raising an ex-post facto explanation of its prior motivations in the press release announcing the Hengtong blacklisting to create an inference, in Defendants' favor, of the state of affairs pre-dating the press release.

- "When Rockley named Apple, it did so in highly-vetted documents such as its S-1 prospectus. RJN Ex. 10, at 1939. No well-pleaded facts suggest that these documents were filed over Apple's objections or without Apple's approval." Mot. at 15. Defendants again ask the Court to take notice of facts not alleged in the Complaint to dispute Plaintiffs' allegations, such as a factual claim that Apple approved Rockley's SEC filings, and to draw inferences to dispute Plaintiffs' allegations that Apple was displeased with Rockley. ¶88.

- "And when the timetable for wearables did start to slip, Rockley informed investors and pivoted to the medical device market. *See* AC

- 7 -

4866-2713-6437.v1

¶179; RJN Ex. 22." Mot. at 16. Defendants attempt to contest facts in the Complaint by claiming Rockley's true consumer wearables commercialization timeline changed sometime around the August 11, 2022 conference call. The Complaint alleges, however, that the commercialization timetable for wearables had always been unattainable, and conditions did not change mid-2022 that caused the timeline to slip. ¶¶94-95, 98-102, 185-186. In addition, the RJN does not identify which purported fact it seeks to be noticed from the conference call.

These factual assertions are made by Defendants without giving Plaintiffs opportunity to test them in discovery due to the Private Securities Litigation Reform Act of 1995 discovery stay. *See Khoja*, 899 F.3d at 1003. Given Defendants' repeated attempts to impermissibly inject disputes of fact into the Motion and their suggestions that the Court improperly draw inferences in Defendants' favor, the Court should, at a minimum, deny the RJN for the Exhibits referenced above.

DATED: April 10, 2024

ROBBINS GELLER RUDMAN
 & DOWD LLP
NATHAN R. LINDELL
KEVIN S. SCIARANI

s/ Nathan R. Lindell
NATHAN R. LINDELL

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
nlindell@rgrdlaw.com
ksciarani@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

- 8 -

4866-2713-6437.v1

## LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Lead Plaintiffs Jonathan Lottner and Federico Huergo, certifies that this brief contains 2,360 words, which complies with the word limit of L.R. 11-6.1.

DATED:  April 10, 2024

        s/ Nathan R. Lindell

NATHAN R. LINDELL

- 9 -

4866-2713-6437.v1