PILLSBURY WINTHROP SHAW PITTMAN LLP
BRUCE A. ERICSON (76342)
bruce.ericson@pillsburylaw.com
Four Embarcadero Center, 22nd Floor
San Francisco, CA 94111-5998
Telephone:  415.983.1000
Facsimile:  415.983.1200

PILLSBURY WINTHROP SHAW PITTMAN LLP
ARI M. BERMAN (*Pro hac vice*)
ari.berman@pillsburylaw.com
31 West 52nd Street
New York, NY 10019-6131
Telephone:  212.858.1000
Facsimile:  212.858.1500

Attorneys for Defendants Andrew Rickman,
Mahesh Karanth and Richard Meier

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| KENNETH S. GROSSMAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>DAVID SIN, ANGELO JOHN COLOMA, ANDREW RICKMAN, MAHESH KARANTH, RICHARD MEIER, and SIN CAPITAL GROUP PTE. LTD.,<br><br>Defendants. | Case No. 2:23-cv-09501-MRA-MAA<br><br>CLASS ACTION<br><br>**REPLY IN SUPPORT OF MOTION OF DEFENDANTS RICKMAN, KARANTH, AND MEIER TO DISMISS AMENDED COMPLAINT**<br><br>Date:         May 30, 2024<br>Time:        1:30 p.m.<br>Courtroom:  10B |

**TABLE OF CONTENTS**

Page

I.     PRELIMINARY STATEMENT ...........................................................................1

II.    LEGAL STANDARD ........................................................................................1

III.   ARGUMENT.....................................................................................................2

    A.   The Amended Complaint does not adequately allege falsity ..................2

        1.   The allegations about Rockley's Hengtong joint venture are not actionable ..........................................................................................2

        2.   The allegations about Apple are not actionable..............................3

        3.   The allegations about Rockley's projections are not actionable .....3

            a.   The alleged misstatements of present fact are not actionable ...............................................................................3

            b.   The forward-looking statements are protected by the safe harbor.........................................................................6

            c.   The expressions of optimism were inactionable puffery ......8

            d.   The statements of opinion were neither false nor disbelieved when made.........................................................9

        4.   The confidential witnesses are not reliable...................................10

    B.   The Amended Complaint does not adequately allege scienter ................12

    C.   The Amended Complaint's control person claims do not suffice ...........17

IV.    CONCLUSION ...............................................................................................17

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Anshen v. Facebook*,
No. 2:17-cv-00679-SVW-AGR, 2017 WL 5635021 (C.D. Cal. Oct. 4, 2017) ..............................................................................................................16

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
856 F.3d 605 (9th Cir. 2017) ..................................................................9

*City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*,
No. 18-cv-04844-BLF, 2019 WL 6877195 (N.D. Cal. Dec. 17, 2019) ..............9

*Cupat v. Palantir Techs., Inc.*,
No. 22-cv-02384, 2024 WL 1374903 (D. Colo. Mar. 31, 2024) ....................4, 5

*Espy v. J2 Global, Inc.*,
___ F.4th ___, No. 22-55829, 2024 WL 1689091 (9th Cir. Apr. 19, 2024) ..............................................................................................11, 12, 16

*Gammel v. Hewlett-Packard Co.*,
905 F. Supp. 2d 1052 (C.D. Cal. 2012) ......................................................14

*Glazer Cpt. Mgmt., L.P. v. Forescout Techs., Inc.*,
63 F.4th 747 (9th Cir. 2023) ..............................................................2, 3, 8

*Heliotrope Gen., Inc. v. Ford Motor Co.*,
189 F.3d 971 (9th Cir. 1999) ..................................................................2

*In re Align Tech., Inc. Sec. Litig.*,
No. 20-cv-02897-MMC, 2021 WL 1176642 (N.D. Cal. Mar. 29, 2021) ..............................................................................................................9

*In re Daou Sys., Inc.*,
411 F.3d 1006 (9th Cir. 2005),
*abrogated on other grounds by Matrixx Initiatives, Inc. v. Siracusano*,
563 U.S. 27, 37-49 (2011) ......................................................................11

*In re Leapfrog Enter., Inc. Sec. Litig.*,
237 F. Supp. 3d 943 (N.D. Cal. 2017)........................................................1

*In re Mattel, Inc. Sec. Litig.*,
No. 2:19-cv-10860-MCS-PLA, 2021 WL 1259405 (C.D. Cal. Jan. 26, 2021) ...............................................................................................................15

*In re Quality Sys., Inc. Sec. Litig.*,
865 F.3d 1130 (9th Cir. 2017) .................................................................7, 8

*In re QuantumScape Sec. Class Action Litig.*,
580 F. Supp. 3d 714 (N.D. Cal. 2022)...................................................12

*In re Rigel Pharms., Inc. Sec. Litig.*,
697 F.3d 869 (9th Cir. 2012) ...............................................................4, 13

*In re Terayon Communications Systems, Inc.*,
No. C 00-01967, 2002 WL 989480 (N.D. Cal. Mar. 29, 2002) ...............16

*In re VeriFone Holdings, Inc. Sec. Litig.*,
704 F.3d 694 (9th Cir. 2012) ..................................................................17

*Nguyen v. Endologix, Inc.*,
962 F.3d 405 (9th Cir. 2020) .....................................................................1

*Okla. Police Pension & Ret. Sys. v. Boulder Brands, Inc.*,
No. 15-cv-00679, 2017 WL 1148689 (D. Colo. Mar. 28, 2017) ...............4

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015).................................................................................9

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
759 F.3d 1051 (9th Cir. 2014) ...................................................................9

*Roberti v. OSI Systems, Inc.*,
No. CV 13-9174, 2015 WL 1985562 (C.D. Cal. Feb. 27, 2015) ...........9, 12

*Roberts v. Zuora, Inc.*,
No. 19-cv-03422-SI, 2020 WL 2042244 (N.D. Cal. Apr. 28, 2020) .........11

*S. Ferry LP, No. 2 v. Killinger*,
542 F.3d 776 (9th Cir. 2008) ...................................................................16

*Schechter v. Smith*,
No. EDCV-09-1653 MJG, 2011 WL 13174954 (C.D. Cal. Dec. 6, 2011) .....................................................................................................13

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001),
*opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001) ................14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)...................................................................................12

*Todd v. STAAR Surgical Co.*,
No. CV-14-05263-MWF-RZ, 2016 WL 6699284 (C.D. Cal. Apr. 12,
2016) .........................................................................................................10

*Weston Fam. P'ship LLLP v. Twitter, Inc.*,
29 F.4th 611 (9th Cir. 2022) ......................................................................17

*Wochos v. Tesla, Inc.*,
985 F.3d 1180 (9th Cir. 2021) ......................................................................9

**Statutes**

United States Code
Title 15, Section 78t(a) ...............................................................................17
Title 15, Section 78u-4 ................................................................................1

**Rules**

Federal Rules of Civil Procedure
Rule 8 ..................................................................................................1, 4
Rule 9(b) ...................................................................................................1

## I.    PRELIMINARY STATEMENT

Despite multiple opportunities to develop their allegations, and despite having the benefit of a prior fully briefed motion to dismiss, Plaintiffs have not met the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4. Instead, the Amended Complaint advances 264 paragraphs of statements not shown to be false when made (as opposed to wrong in hindsight), opinions, forward-looking statements, and corporate optimism, none of which is actionable under the securities laws.  Plaintiffs' Opposition (ECF 67) does not demonstrate that the Rockley Defendants concealed any information that they were required to disclose.  Instead, it argues that the Rockley Defendants were required to read the minds of the U.S. Government and Apple, and then share their mind-reading with investors.  While the failure to allege an actionable misstatement or omission by itself justifies the dismissal of the Amended Complaint, Plaintiffs' miscellany of speculative theories are not sufficient to raise a strong inference of scienter, whether considered individually or holistically.  The Court therefore should dismiss the Amended Complaint.

## II.    LEGAL STANDARD

Plaintiffs' statement of the Legal Standard, *see* ECF 67, at 6:8-20; ECF 67-1, at 5:1-15, treats this motion as if it were a Rule 8 motion subject only to the plausibility standard of *Twombly* and *Iqbal*.  But "because Plaintiffs' claims are predicated on securities fraud, more than just the *Twombly*/*Iqbal* standard must be met." *In re Leapfrog Enter., Inc. Sec. Litig.*, 237 F. Supp. 3d 943, 949-50 (N.D. Cal. 2017).  "Under the PSLRA, 'the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.'" *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 414 (9th Cir. 2020)  (quoting 15 U.S.C. § 78u-4(b)(1)). The Amended Complaint does not do this.

## III.    ARGUMENT

### A.    The Amended Complaint does not adequately allege falsity

#### 1.    The allegations about Rockley's Hengtong joint venture are not actionable

Plaintiffs now concede that the Rockley Defendants did not know in advance that the U.S. Government would place Hengtong on the banned Entity List.  ECF 67, at 14:15.  They nevertheless argue that the Rockley Defendants should have speculated that the Hengtong Group's acquisition of Huawei Marine would lead to such a result.  ECF 67, at 14:12-15:7.  But the case they cite – *Glazer Cpt. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747 (9th Cir. 2023) – does not support their argument.  In *Glazer*, the defendants said "[w]e looked forward to completing our pending transaction" *three days* after the counterparty had told the defendants that it "was considering not closing the merger."  *Id.* at 757.  In that context, *Glazer* held that the omission was misleading because the defendant "was aware of a significant likelihood that the risk would materialize."  *Id.* at 781.  *Glazer* might be on point if the Department of Commerce BIS had called Rockley and said the BIS was considering adding Hengtong to the Entity List.  But the Amended Complaint does not allege anything like that, or any facts showing that the Rockley Defendants even knew there was a significant likelihood that the BIS would add Hengtong to the Entity List.  "[N]o disclosure [is] required when [an] event is contingent or speculative in nature."  *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 980 (9th Cir. 1999).

Plaintiffs argue that the Rockley Defendants are making a veiled "truth-on-the-market" defense, which is not properly decided on a motion to dismiss.  ECF 67, at 14:21-15:7.  But this is not the case.  While Hengtong's dealings with Huawei and Hengtong's trouble with the World Bank were matters of public knowledge, *see* ECF 64, at 7:25-8:7; RJN Exs. 2, 6; AC ¶¶ 76-77, the Court need not rely on these undisputed facts because the Rockley Defendants simply had no obligation to speculate whether these facts might cause the Government to place Hengtong on the Entity List.  In any event, Rockley did disclose, repeatedly, that export restrictions, if imposed, could harm

-2-

its business.  RJN Ex. 5, at 278-79, 413; Ex. 7, at 1052, 1201; Ex. 8, at 1873-74; Ex. 10, at 1942, 2011; Ex. 11, at 2221, 2292; Ex. 12, at 2524.  Those disclosures were enough.

**2.    The allegations about Apple are not actionable**

The Opposition's argument about Apple, *see* ECF 67, at 13:19-14:11, 15:8-14, fails to establish any misstatement or actionable omission.  The Motion to Dismiss demonstrated that Rockley disclosed the very information that Plaintiffs allege was omitted:  that Apple did "not have any minimum or binding purchase obligations to Rockley."  ECF 64, at 14:27-15:4.  Plaintiffs argue that this disclosure was made after the alleged misrepresentation.  ECF 67, at 15:8-11 (citing AC ¶ 128).  The disclosure was made as early as April 2, 2021, *see* RJN Ex. 5, at 276, just after the March 19, 2021 conference call in which Rickman mentioned the NRE revenue from an unnamed technology company, *see* AC ¶ 128, and many months before the de-SPAC closed and Rockley's stock began to trade publicly, *see* AC ¶ 58.  The other occasions on which Plaintiffs allege Defendants should have disclosed that Rockley's NRE revenues were at risk of not materializing all occurred *after* the April 2021 disclosure.  *See, e.g.*, AC ¶¶ 138(d) (July 2021), 144(d) (August 2021), 157(j) (November 2021), 161 (December 2021), 171(c) (March 2022), 175(c) (May 2022).  And Plaintiffs do not answer the argument that the Rockley Defendants were not required to disclose speculation about the mood of a customer (Apple).  *See* ECF 64, at 16:2-9.

**3.    The allegations about Rockley's projections are not actionable**

The Opposition does not point to well-pleaded facts showing that the challenged statements were false when made.  Plaintiffs assert that allegations of falsity "need only satisfy 'the reasonable inference standard of plausibility set out in *Twombly* and *Iqbal*,'" *see* ECF 67, at 8:6-9 (quoting *Glazer*, 63 F.4th at 766); ECF 67-1, at 5:19-21 (same), but they neglect to mention that "[f]alsity is subject to a particularity requirement." *Glazer*, 63 F.4th at 766.  *See* cases cited in part II above.

**a.    The alleged misstatements of present fact are not actionable**

The Opposition argues that the Rockley Defendants misstated Rockley's product

development and commercialization prospects.  ECF 67, at 8:18-15:2 (citing AC ¶¶ 130, 127-128, 162, 153-154, 170).  But Plaintiffs fail to identify "why the statements were false or misleading at the time they were made."  *See In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th Cir. 2012) (emphasis added) (citation omitted). Plaintiffs argue only that these statements must have been false because Rockley was not close to completing its development of a commercially viable consumer wearables product.  ECF 67, at 6:1-10.  But this conclusory assertion – based solely on the unreliable allegations of the confidential witnesses – does not demonstrate that these statements were false when made.  Rather, they reflect inactionable hindsight about an innovative technology that took longer and cost more to develop than had been anticipated.

Plaintiffs argue that the Rockley Defendants waived the ability to challenge the falsity of these statements because their moving papers do not cite every paragraph in which these statements are to be found.  *See* ECF 67, at 1:11-13, 9:11-15.  But the Motion to Dismiss does cite many of the paragraphs identified by Plaintiffs.  *See* ECF 64, at 13:11-17 (citing AC ¶¶ 128, 162).  The others are largely repetitive of those cited. And the arguments made in the Motion to Dismiss regarding statements of present fact, *see* ECF 64, at 13:2-14:23, apply to all of these statements—Rockley is not making any new argument in this reply.

The vice here is not some failure to cite every repetition of repetitive allegations; the vice is the length and repetitiveness of this 264-paragraph Amended Complaint. While lengthy and repetitive complaints have unfortunately become commonplace in securities litigation, increasingly courts are dismissing such complaints for violating the requirement under Rule 8 that a complaint contain "a short and plain statement of the claim."  *See Cupat v. Palantir Techs., Inc.*, No. 22-cv-02384, 2024 WL 1374903, at *1 (D. Colo. Mar. 31, 2024) (dismissing a 212-page, 494-paragraph complaint); *see also Okla. Police Pension & Ret. Sys. v. Boulder Brands, Inc.*, No. 15-cv-00679, 2017 WL 1148689, at *3 (D. Colo. Mar. 28, 2017) (dismissing as prolix a 69-page, 178-paragraph

complaint).  As *Cupat* states, "unnecessary prolixity in a pleading places an unjustified burden on the . . . party who must respond to it."  *Cupat*, 2024 WL 1374903, at *1 (citation omitted).

Let's look at the alleged misstatements cited by the Opposition one by one.

*First*, the statement that "this is happening now" was not false when made.  *See* ECF 67, at 8:21-22 (citing AC ¶ 130).  Read in context, the statement says that Rockley was actively working on its technology and "engaged" and "contracted" with customers; the statement did not say the product was "now complete."  RJN Ex. 3, at 79-81.  No well-pleaded allegations show the statement to be untrue when made.

*Second*, the statements that the products were "validated" were not false when made.  *See* ECF 67, at 8:23-24 (citing AC ¶¶ 127-128, 162).  Rickman stated: "Our technology and business model are validated by leading blue-chip customers as we are currently engaged or contracted with six customers collectively holding over 50% of the smartphone and wearables markets."  AC ¶ 128; RJN Ex. 3, at 81.  And the March 2021 Investor Presentation stated: "Validated by Leading Blue Chip Customers: Engaged or contracted with 4 customers collectively holding >55% of smartphone and >50% of wearables market."  AC ¶ 127; RJN Ex. 3, at 44.  In this context, Rockley was using the word "validated" to reflect customer engagement.  *See* AC ¶ 128.  Plaintiffs have not alleged that Rockley was not "engaged or contracted with" customers, especially as those terms were defined in its disclosures.  *See* ECF 64, at 13:13-27.  Although Plaintiffs allege that the relationship with Apple later cooled, it is undisputed that, at the time of this statement, Rockley had an active relationship with Apple.  *See* RJN Ex. 10, at 1939.

*Third*, Rickman's answer of "no" to the question of whether any "meaningful hurdles" remained was not false when made.  *See* ECF 67, at 8:24-25(citing AC ¶¶ 153-154, 170).  This statement is in reference to "the miniaturized spectrophotometer chip format."  *See* AC ¶ 153.  Plaintiffs have not alleged any problems with that technology.

*Fourth*, the statements that Rockley had secured "deep design wins and

-5-

commitments" and was "negotiating, volume [purchase orders]" were not false when made. ECF 67, at 8:25-27 (citing AC ¶ 162). Plaintiffs do not allege facts suggesting that such negotiations were not underway or that design wins had not occurred.

Unable to allege facts showing these statements were untrue when made, Plaintiffs speculate that they could not have been true because it would take Rockley too long to develop an application-specific integrated circuit, or ASIC, without which "there was no chance that Rockley could launch a commercially viable consumer wearables product anytime in 2022." AC ¶ 102; *see* ECF 67, at 9:16-10:2. This misses the point. While Rockley could not launch its *own* consumer wearables product without an ASIC chipset, Rockley's stated plan was to sell a silicon photonic chip for use in other companies' consumer wearables products, for which the customers would likely insist on supplying their own ASICs. *See* RJN Ex. 10, at 1971, 2001.

**b.      The forward-looking statements are protected by the safe harbor**

The Opposition argues that the Rockley Defendants' statements are not protected by the PSLRA safe harbor. ECF 67, at 10:4-12:11. This is wrong for several reasons.

**Plaintiffs' erroneous arguments about "mixed" statements:** Plaintiffs argue that several of the "forward-looking statements" are actually "mixed statements" that contain both forward-looking and non-forward-looking statements. ECF 67, at 10:6-11:6. Attacking a straw man, Plaintiffs argue that the non-forward-looking portions of mixed statements are not protected. *See* ECF 67, at 10:6-22. But the Rockley Defendants do not argue otherwise, nor could they. For example, Plaintiffs cite to AC ¶ 128, which includes the statement that Rockley was "currently engaged or contracted with" customers who had "validated Rockley's products." *Id.* at 10:9-15. The Motion to Dismiss does not argue that the statements in AC ¶ 128 are protected as forward-looking statements, *see* ECF 64, at 9:12-12:23, but instead identifies AC ¶ 128 to include statements of present fact not alleged to be false when made and statements of opinion not shown to be both objectively and subjectively false, *see id.* at 12:11-14:1.

Plaintiffs' argument that "Defendants cannot avoid liability for such statements

simply by combining them with revenue projections," ECF 67, at 10:14-17, is another straw man. Defendants do not argue that AC ¶ 140 (*see* ECF 67, at 10 n.2) is a forward-looking statement. *See* ECF 64, at 9:12-11:23. The Motion to Dismiss argues that the non-forward-looking portions of AC ¶¶ 167 and 173 (*see* ECF 67, at 10 n.2) should be dismissed not because they are forward-looking statements, but because they are puffery, statements of opinion, or statements of present fact not shown to be actionable. *See* ECF 64, at 11:28 (AC ¶ 167 includes puffery), 12:12, 20 (AC ¶ 173 includes a statement of opinion), 13:13, 17 (AC ¶ 167 includes statements of present fact).

Plaintiffs also argue that the forward-looking portions of mixed statements are not protected because they lack adequate cautionary language. ECF 67, at 10:23-11:6. Plaintiffs do not specify which forward-looking statements within mixed statements lack cautionary language, but, regardless, the argument fails. Plaintiffs argue that, for a forward-looking portion of a mixed statement to be protected, "virtually no cautionary language short of an outright admission that the non-forward-looking statements were materially false or misleading would have been adequate," and Defendants did not provide such information. *See* ECF 67, at 11:3-6 (quoting *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1148 (9th Cir. 2017)). But our case is distinguishable. In *Quality Systems*, the defendants "repeatedly told investors that they could rely on predictions of growth in revenue and earnings because the current state of QSI's sales pipeline was consistent with, or better than, the state of the pipeline in previous quarters." *Id.* Those statements about the current state of the pipeline were untrue. Therefore, held the court, they tainted the predictions of future growth despite boilerplate cautionary language about projections being subject to risks and uncertainties. *Id.* Here, in contrast, Plaintiffs have not adequately alleged that the non-forward-looking portions of any mixed statements were materially false or misleading; therefore, there was nothing the Rockley Defendants had to admit, outright or otherwise. Further, "[e]ven if a forward-looking statement is not accompanied by adequate cautionary language, it is protected by the PSLRA's safe harbor if the speaker did not have 'actual knowledge' that the

statement was false or misleading." *In re Quality Sys.*, 865 F.3d at 1149. Here, Plaintiffs have not adequately alleged that the Rockley Defendants had actual knowledge that any of their forward-looking statements were false.

**Plaintiffs' erroneous arguments about cautionary language:** Plaintiffs argue that the purely forward-looking statements identified by the Rockley Defendants are not protected under the safe harbor because they had insufficient disclaimers or no cautionary language at all. ECF 67, at 11:7-12:11. But the statements in the paragraphs identified by Plaintiffs, *see* ECF 67, at 12:3-11, *were* accompanied by cautionary language. *See* RJN Ex. 3, at 32, 77; Ex. 9, at 1890; Ex. 14, at 2562; Ex. 17, at 2609; Ex. 19, at 2641; Ex. 22, at 2680; Ex. 25, at 2714. The disclosures quoted in the Motion to Dismiss are not boilerplate, but rather identify specific risks. ECF 64, at 13:19-14:19. And even if some cautionary statements were inadequate, Plaintiffs would still be required to demonstrate that these statements were "made with actual knowledge of their false or misleading nature," which they have failed to do. *See Glazer*, 63 F.4th at 767 ("[A] defendant will not be liable for a false or misleading statement if it is forward-looking and *either* is accompanied by cautionary language *or* is made without actual knowledge that it is false or misleading." (emphases in original) (quoting *In re Quality Sys.*, 865 F.3d at 1141)).

## c.    The expressions of optimism were inactionable puffery

The Opposition does not point to any specific statements improperly characterized as puffery. It instead argues generally that statements of optimism may form the basis for a securities law claim when they are about aspects of the company's operation that the speaker knew were performing poorly. ECF 67, at 12:13-22. But the cases Plaintiffs cite show that the puffery here is not actionable. In *In re Quality Systems*, 865 F.3d at 1142-43, a company said its pipeline had grown every quarter for three years and was growing to "record levels," adding "[t]here is nothing drying up and there is nothing slowing down." The company projected earnings per share growth of 20-25% and then weeks later announced a 19% drop in earnings per share. *Id.* at

1137-38. In *Roberti v. OSI Systems, Inc.*, No. CV 13-9174, 2015 WL 1985562, at \*9 (C.D. Cal. Feb. 27, 2015), the Court stated that *some* statements in the complaint "merely reflect corporate optimism," while "*other* alleged statements provide specific details to investors about the status of specific products"; only the latter were not puffery (emphasis added). The Motion to Dismiss identifies *specific* statements in the Amended Complaint that constitute puffery. ECF 64, at 11:24-12:10. Plaintiffs have not explained how any of *these* statements conveyed a concrete state of affairs that materially differed from the one that existed. *See* ECF 67, at 12:18-22.

Plaintiffs also argue that the Court should not determine whether statements are puffery on a motion to dismiss. ECF 67, at 12:24-13:3. But courts often dismiss vague and subjective claims, as opposed to specific factual assertions, as puffery at this stage. *See, e.g.*, *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1196 (9th Cir. 2021) (holding statement that "'great progress' was being made on battery production" was not actionable and "would potentially be an actionable false statement only if . . . [defendant] had been 'making no progress at all'"); *see also Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.,* 759 F.3d 1051, 1060-1061 (9th Cir. 2014); *City of Sunrise Firefighters' Pension Fund v. Oracle Corp.,* No. 18-cv-04844-BLF, 2019 WL 6877195, at \*9 (N.D. Cal. Dec. 17, 2019). Courts even dismiss statements as non-actionable puffery despite allegations that the plaintiffs relied on those statements. *In re Align Tech., Inc. Sec. Litig.*, No. 20-cv-02897-MMC, 2021 WL 1176642, at \*4 (N.D. Cal. Mar. 29, 2021).

**d.     The statements of opinion were neither false nor disbelieved when made**

The Opposition argues that statements of opinion are actionable if the opinion does not fairly align with information in Defendants' possession. ECF 67, at 13:5-17. That is not an accurate statement of the rule. To plead a false opinion, "the plaintiff must allege both that 'the speaker did not hold the belief she professed' and that the belief is objectively untrue." *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615-16 (9th Cir. 2017) (quoting *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 185-86 (2015)).

-9-

But Plaintiffs have not plausibly alleged anything suggesting the speakers did not believe what they said.  For example, Plaintiffs cite to AC ¶ 136, which is the statement in the Proxy that "Rockley believes that its operating results for the foreseeable future" would "depend to a significant extent on revenue attributable to a few large customers." ECF 67, at 13:6-7.  This was a cautionary statement completely consistent with Rockley's history to date; Rockley's SEC filings repeatedly cautioned that "Rockley's two largest customers collectively accounted for 100% and 99.6% of Rockley's revenue in 2020 and 2019, respectively."  RJN Ex. 5, at 276, 408, Ex. 7, at 1049, 1196, Ex. 8, at 1871, Ex. 12, at 2521.   Plaintiffs argue that Defendants were in possession of undisclosed material incompatible with this opinion, citing to AC ¶ 138(e).  ECF 67, at 13:13-16.  But AC ¶ 138(e) alleges that the statement in AC ¶ 136 failed to disclose the material facts described in AC ¶¶ 71-80, which are the allegations about the Hengtong Joint Venture.  *See* AC ¶¶ 71-80, 138(e).  These allegations about Hengtong, *see* AC ¶¶ 71-80, in no way contradict the opinion that Rockley's operating results would depend on revenue from a few large customers; if anything, those allegations suggest one of the two biggest customers (namely, the Hengtong Joint Venture) might be lost.

A case relied on by Plaintiffs shows an example of what is required for an opinion statement to be actionable.  In *Todd v. STAAR Surgical Co.*, No. CV-14-05263-MWF-RZ, 2016 WL 6699284, at *8-9 (C.D. Cal. Apr. 12, 2016), the company stated that it "believes it is substantially in compliance with the FDA's [regulations]" despite the fact that the FDA had "observed numerous violations of its regulations during a month-long inspection."  This case is a far cry from that one.

**4.   The confidential witnesses are not reliable**

Despite their arguments to the contrary, *see* ECF 67, at 6:21-8:2, Plaintiffs have not described the confidential witnesses with sufficient particularity to establish their reliability and personal knowledge or to support the probability that a person in the position occupied by the source would possess the information alleged.  *See Espy v. J2 Global, Inc.*, ___ F.4th ___, No. 22-55829, 2024 WL 1689091, at *4-*6 (9th Cir. Apr.

-10-

19, 2024); *In re Daou Sys., Inc.,* 411 F.3d 1006, 1015-1016 (9th Cir. 2005), *abrogated on other grounds by Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-49 (2011).

*Roberts v. Zuora, Inc.*, No. 19-cv-03422-SI, 2020 WL 2042244 (N.D. Cal. Apr. 28, 2020), cited by Plaintiffs, *see* ECF 67, at 7:5-7, demonstrates how Plaintiffs fail to establish the confidential witnesses' reliability. The plaintiffs in *Roberts* supported their allegations with statements by four confidential witnesses, each of which was alleged with particularity. Specifically, the plaintiffs did not name just the job titles, but rather detailed each witness's particular knowledge, who they reported to, and their responsibilities, and they identified how each witness's knowledge was tied directly to their position. *Id.* at *2-3. Further, three of the four confidential witnesses in *Roberts* reported directly to high-level officials, such as Vice Presidents and C-suite members, which indicated privity to sensitive information. *Id.* Here, in contrast, Plaintiffs fail to describe the Former Process Engineer's position, so it is unclear what exactly was the role of a Rockley "process engineer" located in the United Kingdom, especially given that Rockley's "primary operations" were in Pasadena, California. *See* AC ¶ 49. To make matters worse, Plaintiffs allege the Former Process Engineer's knowledge is based on hearsay statements. *See* AC ¶ 86. Plaintiffs offer no facts suggesting how an engineer would know Apple's *internal* product release timelines or Apple's thoughts on its relationship with Rockley, but this "knowledge" comes only from comments made by some other anonymous and ill-described employee during orientation. *Id.*

Plaintiffs describe the Former Chip Designer with even less detail, alleging only that he "worked remotely from Colorado from approximately December 2021 until Rockley's mass layoffs in February 2023." AC ¶ 88. That description does not satisfy the particularity standards of *Espy* or *In re Daou Systems, Inc. See* ECF 67, at 6:27-28.

Simply put, Plaintiffs' bland descriptions of both confidential witnesses do not describe their positions with particularity to demonstrate how they were in a position to possess the knowledge they claim to possess. Therefore, Plaintiffs' confidential witnesses are not reliable enough to satisfy the PSLRA.

**B.    The Amended Complaint does not adequately allege scienter**

Plaintiffs argue that seven sets of allegations give rise to a strong inference of scienter. ECF 67, at 15:15-22:21. Because Plaintiffs have not alleged any misstatement or actionable omission, the Court can dismiss the claim without reaching scienter. Nonetheless, whether considered individually or holistically, *see Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 326 (2007); *see also Espy*, 2024 WL 1689091, at *8, these allegations do not suffice.

*First*, Plaintiffs argue that the Court can infer scienter because the Rockley Defendants made "detailed factual statements" about matters that were misrepresented or omitted. ECF 67, at 16:10-17:14. Plaintiffs point to several statements by Rickman about Rockley's consumer wearables technology. ECF 67, at 16:20-17:5. Plaintiffs also mention that this argument applies to certain statements about Rockley's relationships with HRT and Apple. ECF 67, at 17 n.3. But unlike in the cases cited by Plaintiffs, *see* ECF 67, at 16:10-19, the Amended Complaint alleges nothing showing that these statements were false when made. Our case is not a case like *Roberti*, 2015 WL 1985562, at *2, *7-9, *11-12, where falsity was clear: the defendants admitted they knew of issues with their software "months ago" yet previously had stated the software "was in final testing" and "'we've completed our side' of development"; a confidential witness also alleged that the company "never even got close to having the issue solved" and "'cherry-picked' machines during testing."

Plaintiffs cite *In re QuantumScape Sec. Class Action Litig.*, 580 F. Supp. 3d 714, 741 (N.D. Cal. 2022), for the proposition that statements "completely at odds with reality" can demonstrate scienter. ECF 67, at 17:6-14. But that case is nothing like this case. QuantumScape told investors many times that it used uncompromised testing conditions then itself issued disclosures saying the opposite – that it used compromised testing conditions. Because there was no middle ground between those two positions, the court held the most cogent inference was of scienter. *In re QuantumScape*, 580 F. Supp. 3d at 741. Here, Plaintiffs do not allege or argue that the Rockley Defendants

-12-

made any contradictory statements indicating that their challenged statements were untrue.

*Second,* Plaintiffs argue – in a related vein – that the Court can infer scienter because the Rockley Defendants had access to information about the Hengtong JV, Apple, and product development. ECF 67, at 17:15-18:7. But the argument that Rickman was aware of Rockley's product development for the consumer wearables market, *see* ECF 67, at 17:15-25 (citing AC ¶ 211), does not suggest he knew that the product would take longer and cost more than forecast. These allegations rest on the unsupported theory, based on allegations from unreliable confidential witnesses, that Rockley – as opposed to the OEMs such as Apple – would develop an ASIC chipset for the OEMs' consumer wearables products. Further, the argument that Rickman signed the JV Agreement in 2017, *see* ECF 67, at 18:1-4 (citing AC ¶¶ 202-03), does not begin to establish that he knew that the U.S. Government would add Hengtong to the banned "Entity List" at the end of 2021.

*Third*, Plaintiff's arguments about motive are insufficient. *See* ECF 67, at 18:8-17. Plaintiffs assert that Rickman and Karanth were motivated by bonuses resulting from completing a merger. *Id.* But these payments do not raise a strong inference of scienter. *See Schechter v. Smith*, No. EDCV-09-1653 MJG, 2011 WL 13174954 at *17 (C.D. Cal. Dec. 6, 2011) ("While the Plaintiff's Complaint details the bonus payments received by Defendants . . . with relative specificity, this evidence of pecuniary motive for keeping the business out of bankruptcy is not enough to raise a strong inference of scienter."). The Ninth Circuit has recognized that "it is common for executive compensation, including . . . bonuses, to be based partly on the executive's success in achieving key corporate goals," so it "will not conclude that there is fraudulent intent merely because a defendant's compensation was based in part on such successes." *In re Rigel Pharms.*, 697 F.3d at 884.

*Fourth*, Plaintiffs' arguments as to "temporal proximity" do not demonstrate falsity, let alone scienter. ECF 67, at 18:18-19:16. Plaintiffs point to the time frames

between certain statements and the announcement about the Hengtong JV, the withdrawal of revenue guidance, and the Chapter 11 reorganization.  ECF 67, at 18:20-19:7.  But "while temporal proximity can 'bolster' the inference that a misstatement was intentional, mere proximity is insufficient to establish that Defendants knowingly lied."  *Gammel v. Hewlett-Packard Co.*, 905 F. Supp. 2d 1052, 1077 (C.D. Cal. 2012) (citations omitted).

As one example, Plaintiffs argue that in May 2022, Defendant Rickman stated that he believed Rockley's "product development programs remain on track," but then in August 2022, Rockley announced it was withdrawing revenue guidance and moving away from the consumer wearables market.  ECF 67, at 18:24-19:1 (citing AC ¶ 173).  The August 2022 earnings conference call Plaintiffs cite includes the statement that there was still "a huge amount of activity and design-in activity going on in that area" (consumer wearables) but that, at present, Rockley was focusing on the medical device market because Rockley had little control over the timing of the "launch program" of the companies expected to launch consumer wearables incorporating Rockley's photonics technology.  RJN Ex. 22, at 2684-86.  The Court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001).  The fact that Rockley was moving away from consumer wearables in August 2022 does not demonstrate that its product development programs were not on track as of May 2022, but rather that Rockley had not accurately predicted something beyond its control – its customers' launch timelines – and therefore was focusing more on things it could better control, such as products it would build itself.

Plaintiffs also argue that Defendants made detailed statements about HRT one month before announcing that Rockley would not proceed with the sale to HRT, an announcement made immediately after the U.S. Government added Hengtong to the Entity List.  ECF 67, at 18:20-24.  But during that month, Hengtong was added to the

Entity List.  Plaintiffs have not demonstrated how the Rockley Defendants could have been aware that Hengtong would be added to the Entity List even one day in advance of the announcement, so the fact that the Rockley Defendants spoke optimistically about the Hengtong Joint Venture a month before the Government made the Entity List announcement in no way contributes to an inference of scienter.  The more plausible inference is the opposite one:  the addition of Hengtong to the Entity List caught Rockley by surprise.  This would be a different case if, for example, in that month the Rockley Defendants had sold a lot of their Rockley stock ahead of bad news, but nothing like that is alleged here.  There is no basis to infer they knew what was coming.

*Fifth*, Plaintiff's arguments about the resignations of Karanth and Rickman do not support an inference of scienter.  ECF 67, at 19:17-20:16.  Plaintiffs argue that the resignations of Rickman and Karanth were accompanied by suspicious circumstances.  *See id.* at 19:17-18.  But the two men left six months apart:  Karanth resigned as CFO in June 2022; Rickman resigned as CEO but not as Executive Chairman in December 2022.  AC ¶¶ 223-24; RJN Ex. 20, at 2658-63; Ex. 23, at 2692-97; Ex. 26, at 2735-40.  One resignation and one-half of a resignation six months apart raise no compelling inference of scienter.  The more compelling inference is the two departures were unrelated, especially because the man replacing Rickman as CEO as Rockley was going into bankruptcy was the CFO.  It is far from sinister to have a finance person take the top job in such circumstances.  And in all of the cases cited by Plaintiff, *see* ECF 67, at 20:11-16, there were allegations supporting scienter beyond just the resignations.  *See, e.g., In re Mattel, Inc. Sec. Litig.*, No. 2:19-cv-10860-MCS-PLA, 2021 WL 1259405, at *7 (C.D. Cal. Jan. 26, 2021) (finding scienter for misstated financial results where "the late-disclosed deficiencies [in the financial results] were obvious well before receipt of the whistleblower letter").

*Sixth*, Plaintiffs argue that the Court can infer scienter from Rickman based on his supposedly evasive answers to analyst questions during an investor conference call.  ECF 67, at 20:17-21:3.  But many of the paragraphs cited by Plaintiffs are statements

made not by Rickman, but by analysts on the calls. *See* AC ¶¶ 181, 182, 184, 186, 193, 195. The Opposition attempts to characterize Rickman's answers as "evasive" and "opaque," but in the Amended Complaint Plaintiffs characterize one of these *very same* answers as "a stunning admission." *See* ECF 67, at 20:17-25 (citing AC ¶ 187). Plaintiffs cannot have it both ways.

The case Plaintiffs rely on – *In re Terayon Communications Systems, Inc.*, No. C 00-01967, 2002 WL 989480 (N.D. Cal. Mar. 29, 2002) – presents a much different situation. ECF 67, at 21:1-3. There, a call-in participant asked a defendant whether he sold stock before telling shareholders he had received a cease and desist letter, and "[r]ather than respond, [the defendant] stated that he had already made enough comments on the subject." *Terayon*, 2002 WL 989480, at *12. The court explained that "failure to respond to the accusation is an adoptive admission by silence" and that the *insider sales* "serve[d] as a strong component of scienter." *Id.* Rickman answered the questions, and his answers are not an admission of anything, so *Terayon* does not apply. (By the way, nothing in the Amended Complaint suggests that any Rockley Defendant ever sold Rockley stock, let alone at a suspicious time.)

*Seventh*, Plaintiff's reliance on the core operations theory fails. ECF 67, at 21:4-22:21. This theory applies when a defendant says something false, but there is a question as to whether the defendant knew what he said was false when he said it. *See, e.g.*, *Anshen v. Facebook*, No. 2:17-cv-00679-SVW-AGR, 2017 WL 5635021, at *3 (C.D. Cal. Oct. 4, 2017) (citing *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 785 (9th Cir. 2008)). In such a situation, if the false statement concerned a core operation of the business over which the speaker admits to having supervisory authority or where it would be "absurd" for the speaker not to know, then it makes sense to assume the speaker knew that what he said was false. *Espy*, 2024 WL 1689091, at *7 (quoting *S. Ferry*, 542 F.3d at 785-86). Because Plaintiffs have not alleged facts showing that the statements were false, they are not entitled to a presumption that the speakers knew the statements were false.

Plaintiffs criticize the Rockley Defendants for addressing each theory of scienter in turn. *See* ECF 67, at 22:16-21. But these seven weak theories, even considered holistically, do not create a strong inference of scienter. *See In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 702 (9th Cir. 2012) ("[A]s a practical matter, some grouping and discussion of individualized allegations may be appropriate during a holistic analysis."). Whether analyzed one by one, or all piled up, these seven theories do not meet the PSLRA's standards for pleading scienter.

**C.    The Amended Complaint's control person claims do not suffice**

Because Plaintiffs have failed to state a claim for primary liability under section 10(b), the Court should dismiss Plaintiffs' control person liability claims brought under section 20(a) against all the Rockley Defendants. 15 U.S.C. § 78t(a); *Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 623 (9th Cir. 2022).

**IV.    CONCLUSION**

Lead Plaintiffs have failed to plead viable claims, despite this being their counsel's second opportunity to do so – an opportunity afforded them after a full set of briefing on their first complaint. The Rockley Defendants respectfully request that the Court dismiss the Amended Complaint as against them without leave to amend.

Dated: April 24, 2024          PILLSBURY WINTHROP SHAW PITTMAN LLP

_____
Bruce A. Ericson
A Member of Pillsbury Winthrop Shaw Pittman LLP
Attorneys for Defendants Andrew Rickman, Mahesh Karanth and Richard Meier

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6.2**

The undersigned, counsel of record for Defendants Andrew Rickman, Mahesh Karanth, and Richard Meier, certifies that this brief contains 6,781 words, which complies with the word limit of L.R. 11-6.1.

Dated:  April 24, 2024

Bruce A. Ericson

_____

Bruce A. Ericson

-18-