**HOLMES, ATHEY, COWAN & MERMELSTEIN LLP**
Mark Mermelstein (SBN: 208055)
mmermelstein@holmesathey.com
Joel Athey (SBN: 214399)
joel.athey@holmesathey.com
811 Wilshire Boulevard, Suite 1460
Los Angeles, California 90017
Tel: (213) 985-2200
Fax: (213) 973-6282

*Attorneys for Defendant*
ANGELO COLOMA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH S. GROSSMAN, Individually and on Behalf of All Others Similarly Situated<br><br>Plaintiff,<br><br>vs.<br><br>DAVID SIN; ANGELO JOHN COLOMA, ANDREW RICKMAN, MAHESH KARANTH, RICHARD MEIER, and SIN CAPITAL GROUP PTE. LTD.<br><br>Defendants. | Case No. 2:23-cv-09501-MRA (MAAx)<br><br>CLASS ACTION<br><br>**NOTICE OF MOTION AND MOTION OF DEFENDANT ANGELO COLOMA TO DISMISS AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Request for Judicial Notice; and [Proposed] Order filed concurrently herewith]<br><br>Date: November 21, 2024<br>Time: 1:30 p.m.<br>Courtroom: 10B |

**TO THE COURT AND THE PARTIES PLEASE TAKE NOTICE**:

**PLEASE TAKE NOTICE** that, on November 21, 2024, at 1:30 p.m. -- a date set by agreement with counsel for Lead Plaintiffs -- before the Honorable Mónica Ramírez Almadani, United States District Judge for the Central District of California, in Courtroom 10B, on the 10th Floor, 350 West First Street, Los Angeles, California 90012, Defendant Angelo Coloma ("Coloma") will and hereby does move the Court for an order dismissing the Amended Complaint for Violations of the Federal Securities Laws, filed February 28, 2024 ("AC") [ECF No. 56], for failure to state a claim against him upon which relief can be granted.

**Basis of motion --** This motion is made and based on Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), on the grounds that the AC does not state a claim upon which relief can be granted and fails to satisfy the heightened pleading standards of Rule 9(b) and the PSLRA.

Plaintiffs' allegations against Coloma are in two Categories: (1) a lone statement by Coloma during a March 19, 2021 conference call announcing the merger of SC Health Corporation ("SCH") and Rockley Photonics that SCH "believed" Rockley was poised for "imminent" growth; and (2) two SCH, pre-Merger securities filings signed by Coloma that included revenue projections provided by Rockley.

**<u>Category 1</u>** -- Coloma's statement is not actionable for the following reasons:

**1. Puffery** -- Coloma's "unverifiable", "feel-good", "vague statement of optimism" that Rockley was poised for growth is puffery rather than securities fraud. His statement was not verifiable one way or the other (as it did not include specific Rockley growth targets, revenues, or timelines), so cannot be evaluated for falsity. Courts routinely hold that vague statements of optimism about growth are not grounds for securities fraud claims.

**2. Future Events** -- generically optimistic statements about future events are not actionable unless the speaker did not believe them. The AC does not adequately allege that Coloma believed Rockley would not grow when he made the statement.

**3. Opinion** -- a statement of opinion is not fraudulent absent alleged facts showing the speaker did not believe it at the time it was made *and* the statement was objectively untrue. The AC does not adequately allege that Coloma believed Rockley would not grow when he made the statement.

**4. Scienter** -- under the PSLRA, Plaintiffs must plead scienter with particularity by alleging facts establishing a "strong inference" that Coloma acted with fraudulent intent. The AC's allegations fail to meet that burden.

**Category 2** -- SC Health's pre-Merger securities filings were not fraudulent:

**1. PSLRA Safe Harbor Applies To Forward-Looking Statements Accompanied By Cautionary Language** -- the PSLRA's safe harbor applies to SCH's securities filings because they: (i) identified Rockley's revenue projections, growth opportunities, customer relationships, and product-development timelines as forward-looking statements; (ii) disclosed the potential risks by which Rockley might not achieve its projections and timelines; and (iii) provided cautionary language about the impact on Rockley's business if those risks occurred.

**2. PSLRA Safe Harbor Applies to Forward-Looking Statements Absent Allegations Coloma Knew They Were False** -- Coloma separately qualifies for the PSLRA's safe harbor because the SCH filings made statements of present fact and there are no allegations to support an inference that Coloma knew "at the time they were made" that such statements were false or misleading.

**3. Puffery** -- the AC identifies one statement in SCH's pre-Merger securities filings (made by someone other than Coloma) about Rockley was working "closely and deeply" with large consumer electronics customers. A company expressing general optimism about the state of its customer relationships is the sort of "feel

good moniker[]" and "vague statement of optimism" that is not "objectively verifiable" and which courts routinely hold is non-actionable puffery.

➢ **Scienter** -- the AC offers nine theories to suggest scienter, but only two as to Coloma, namely that: (i) he had a financial motive to see the de-SPAC transaction completed; and (ii) SCH told its shareholders it would perform due diligence on any target, and failed to do so. Both theories fail. First, bare bones allegations about financial motive are insufficient to "meet the PSLRA's high burden for pleading scienter . . .", and the AC fails to allege anything more concrete about Coloma. Second, the parties' securities filings show that SCH performed due diligence about Rockley as part of a collective working group that included two international law firms, Bank of America Securities, and Ernst & Young. The AC fails to allege that SCH or Coloma received any different information from the rest of that working group, or more generally that they were notified of any "red flags" about Rockley's inability to meet revenue forecasts.

This motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Proposed Order attached to this motion, Coloma's Request for Judicial Notice and the exhibits thereto ("RJN"), which were filed concurrently with this motion, any further papers that may be filed in connection with this motion, all arguments of counsel, and all the pleadings and records filed in this action.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on August 19, 2024.

Dated: August 26, 2024

HOLMES, ATHEY, COWAN & MERMELSTEIN LLP

By: /s/ Joel M. Athey
Joel M. Athey

*Attorneys for Defendant*
Angelo Coloma

# TABLE OF CONTENTS


Page(s)

MEMORANDUM OF POINTS & AUTHORITIES .......... 8

I. INTRODUCTION .......... 8

II. FACTUAL BACKGROUND .......... 9

III. ARGUMENT .......... 11

A. LEGAL STANDARD .......... 11

B. COLOMA'S ONLY ALLEGED AFFIRMATIVE STATEMENT IS NOT ACTIONABLE .......... 12

C. SCH'S SECURITIES FILINGS DO NOT SUPPORT SECURITIES FRAUD CLAIMS AGAINST COLOMA .......... 15

1. The AC's Alleged Misrepresentations .......... 17

2. The Three Alleged Issues Are Not Securities Violations By Coloma .......... 18

a. Forward-Looking Statements About Rockley's Revenue And Growth Projections Qualify For PSLRA's Safe Harbor Because Cautionary Language Was Used and Risks Disclosed .......... 18

b. PSLRA's Safe Harbor Also Applies Because SCH's Filings Were Statements Of Present Fact And There Are No Allegations That Coloma Knew They Were False When Made .......... 25

c. The Alleged Statement About Rockley's Customer Relationships Was Puffery .......... 28

d. The AC Fails To Adequately Allege Coloma's Scienter .......... 28

D. BECAUSE THERE WAS NO PRIMARY VIOLATION BY SCH, THERE IS NO SECONDARY LIABILITY FOR COLOMA AS A "CONTROL PERSON" .......... 30

IV. CONCLUSION .......... 30

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6.2 .......... 31

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Baker v. Twitter*, No. 2:22-cv-06525-MCS-E, 2024 WL 1178168 (C.D.Cal. Mar. 5, 2024) ..... 13, 14, 28

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605 (9th Cir. 2017) ..... 14

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242 (9th Cir. 1990) ..... 13

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747 (9th Cir. 2023) ..... 14, 19, 28

*Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971 (9th Cir. 1999) ..... 26

*In re Apple Computer Sec. Litig.*, 886 F.2d 1109 (9th Cir. 1989) ..... 14

*In re Cutera Sec. Litig.*, 610 F.3d 1103 (9th Cir. 2010) ..... 12

*In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869 (9th Cir. 2012) ..... 25

*In re Syntex Corp. Sec. Litig.*, 95 F.3d 922 (9th Cir. 1996) ..... 12

*In Re Syntex Corp. Securities Litigation*, 855 F. Supp. 1086 (N.D. Cal. 1994) ..... 13

*In re Verifone Sec. Litig.*, 784 F.Supp. 1471 (N.D. Cal. 1992) ..... 14, 30

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018) ..... 25

*Kong v. Fluidigm Corp.*, No. 22-15396, 2023 WL 2134394 (9th Cir. Feb. 21, 2023) ..... 13

*Macomb Cnty. Emps.' Ret. Sys. v. Align Tech., Inc.*, 39 F.4th 1092 (9th Cir. 2022) ..... 12

*Macquarie Infrastructure Corp., et al. v. Moab Partners, L.P., et al.*, 601 U.S. 257 (2024) ..... 12

*Melot v. JAKKS Pacific, Inc.*, No. LA CV13-05388 JAK (SSx), 2016 WL 6902093 (C.D.Cal. Nov. 18, 2016) ..... 13, 28

*Nguyen v. Endologix, Inc.*, 962 F.3d 405 (9th Cir. 2020) ..... 11, 12

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051 (9th Cir. 2014) .......... passim

*Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097 (9th Cir. 2021) .......... 29

*Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611 (9th Cir. 2022) .......... 30

**STATUTES**

15 U.S.C. § 78j(b) .......... 9, 10, 29

15 U.S.C. § 78t .......... 29

15 U.S.C. § 78u-4 .......... 11

15 U.S.C. § 78u-5 .......... 18, 21, 25

17 CFR § 240.10b-5 .......... 9, 10, 11

**RULES**

Fed. R. Civ. P. 9(b) .......... passim

Fed. R. Civ. P. 12(b)(6) .......... 2, 12

# MEMORANDUM OF POINTS & AUTHORITIES

## I. INTRODUCTION

Angelo Coloma is being sued for securities fraud based on a single statement he made during a conference call announcing the proposed merger between the SPAC (SC Health Corporation) for which he was CEO and a private company named Rockley Photonics. On the call, Coloma said that SC Health ("SCH") believed Rockley was poised for "imminent commercial growth." That's it. That's what the case against Coloma is about. To say this statement falls woefully short of securities fraud is a spectacular understatement.

First, it is the sort of "unverifiable", "feel-good", "vague statement of optimism" that is considered corporate puffery rather than securities fraud. Second, generically optimistic statements about future events are not actionable unless the speaker did not believe them, and Plaintiffs do not allege that Coloma had reason to believe Rockley would not grow. Third, it is a statement of opinion, which is not fraudulent absent alleged facts showing the speaker did not believe it *and* the statement was objectively untrue, which is not alleged here. Finally, Plaintiffs fall far short of the Private Securities Litigation Reform Act's ("PSLRA") requirements to plead scienter with particularity by alleging facts establishing a "strong inference" (at least 50-50) that Coloma acted with fraudulent intent. The Amended Complaint's ("AC") meager allegations that Coloma was financially motivated to close the SPAC transaction do not even come close (all business executives are generally motivated to close deals, which does not make them fraudsters).

Under general notice pleading standards, FRCP 9(b), and PSLRA, Coloma should not have to guess why he is being sued for securities fraud. Plaintiffs must spell it out with particularity. But outside of the lone statement above, the only other basis for fraud claims against Coloma is that he signed SCH's two pre-Merger filings, which included Rockley's revenue and growth forecasts. Even if Rockley's forecasts were inaccurate, it does not support personal fraud claims against Coloma.

First, the forecasts came from Rockley based on its historical financials (which were audited by Ernst & Young) and Rockley's internal knowledge about its product development and customer relationships. SCH did not come up with them, and nowhere do Plaintiffs allege that Coloma received information showing the forecasts were unachievable. Second, SCH was part of a working group of professionals who collectively performed due diligence on Rockley (including Bank of America, Ernst & Young, and two international law firms). Plaintiffs never allege that SCH (or Coloma) got different or better information about Rockley than other professionals received, or were received any "red flags" about Rockley's forecasts. Third, "classic growth and revenue projections" are indisputably "forward-looking on their face" and shielded by the PSLRA's safe harbor provision. *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1058 (9th Cir. 2014). This lawsuit is in the "heartland" of such cases because, stripped to its essence, it features garden-variety allegations that a company missed its growth and revenue forecasts. Such cases are routinely dismissed at the outset, as this one should be as to Coloma.

## II. FACTUAL BACKGROUND

Coloma was CEO and a director of SCH. AC ¶ 27. SC Health was a "blank check" company, known as a special purpose acquisition company ("SPAC"), based in Singapore. AC ¶ 1. It did not have any operations or business of its own, but was formed to raise money from investors through an initial public offering ("IPO"), and use those funds to take a private business public via a "de-SPAC transaction." AC ¶¶ 1, 36, 41. SCH's IPO took place in July 2019. AC ¶ 42. SCH then researched suitable private companies for a de-SPAC transaction. In December 2020, SCH identified Rockley Photonics, Limited ("Rockley") as a merger candidate. Request for Judicial Notice ("RJN") Ex. 4, at 214.[1] On January 5, 2021, SCH announced entering into a non-binding letter of intent for a de-SPAC transaction. AC ¶ 47.

[1] The RJN exhibits are sequentially numbered with references to the RJN page number rather than to the internal page number within any particular exhibit.

On March 19, 2021, SCH entered into Merger Agreement with Rockley ("Merger"). Rockley developed silicon photonics chipsets and chipset modules for sensors and communication products. AC ¶¶ 3, 59. Rockley was developing devices to project lasers through the skin to measure and detect biomarkers (like blood pressure and blood glucose), creating a "clinic-on-the-wrist" through a line of consumer wearables. AC ¶¶ 59, 61.

**Coloma Had No Role in Rockley After August 11, 2021**

On July 12, 2021, Rockley filed an amended Form S-4 Registration Statement, identifying Rockley's post-Merger officers and directors (which did not include Coloma). RJN Ex. 5, at 1090. On August 11, 2021, the Merger was completed. AC ¶ 58. On August 17, 2021, Rockley filed a Form 8-K: (i) noting that SCH's officers and directors stopped serving in those capacities at SCH upon the Merger's closing; and (ii) identifying Rockley's post-Merger officers and directors (which did not include Coloma). RJN Ex. 7, at 2519. It is indisputable that Coloma had no role in SCH or Rockley after the Merger, meaning he has no liability under Sect. 10(b) or Rule 10b-5 for statements, omissions, or acts after his exit.

Plaintiffs primarily make allegations about Rockley's post-Merger statements, omissions, and acts. But the Court must view any claims against Coloma only through the prism of things he said or did in the narrow, five-month window between March 19, 2021, and August 11, 2021. And as outlined below, Plaintiffs allege virtually nothing about Coloma's pre-Merger acts or statements. Plaintiffs appear to focus on: (i) a single comment by Coloma during a March 19, 2021 conference call announcing the Merger; and (ii) two SCH pre-Merger filings. Notably, Coloma did not sign Rockley's Registration Statements (Form S-4) or its amendments.

**SCH's Securities Filings Included Cautionary Language**

The AC appears to focus on two pre-Merger SCH filings signed by Coloma. First, on March 19, 2021, SCH filed a Form 8-K announcing the de-SPAC transaction with Rockley, including as exhibits: (i) the Merger Agreement; (ii) a

transcript of a March 19, 2021 conference call; (iii) a power point Investor Presentation; (iv) a press release; and (v) a Summary of Risk Factors. The Investor Presentation, press release, and Summary of Risk Factors included comprehensive cautionary language (discussed below) identifying the risks Plaintiffs allege in the AC. Second, SCH's July 22, 2021 Proxy Statement also contained cautionary language about the Merger (discussed below).

The takeaway from this cautionary language was that: (i) SCH relied on Rockley to provide all revenue and growth projections; (ii) those projections were forward-looking and subject to many variables; (iii) Rockley might not be able to develop products within the forecasted timeline; (iv) Rockley's customers might decide to curtail their purchase orders; (v) regulatory acts or trade sanctions might impact Rockley's international customers; and (vi) because Rockley was dependent on a few large customers, if it lost them, its revenues would materially suffer.

## III. ARGUMENT

### A. Legal Standard

"To plead a claim under § 10(b) [of the Securities Exchange Act] and Rule 10b-5, a plaintiff must allege (1) a material misrepresentation or omission; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation." *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 413 (9th Cir. 2020) (citation and quotation omitted).

Rule 9(b) and the PSLRA enacted heightened pleading requirements for securities fraud cases. Rule 9(b) requires plaintiffs to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The PSLRA imposes even "more exacting pleading requirements" than Rule 9(b). *Police Ret. Sys.*, 759 F.3d at 1058. To plead a securities fraud claim, plaintiffs must meet the standards of both Rule 9(b) and the PSLRA. *Id.* at 1057. "Under the PSLRA, 'the complaint shall specify each statement alleged to have been misleading [and] the reason or reasons

why the statement is misleading. . . .'" *Nguyen*, 962 F.3d at 414 (quoting 15 U.S.C. § 78u-4(b)(1)).

The Supreme Court recently held that pure omissions are not actionable in private securities litigation because Rule 10b-5 requires plaintiffs to identify affirmative statements, *i.e.*, a "statement made," before determining if other facts are needed to make statements "not misleading." *Macquarie Infrastructure Corp., et al. v. Moab Partners, L.P., et al.*, 601 U.S. 257, 263 (2024). Since Plaintiffs' allegations about SCH's securities filings seem to imply omissions, this standard applies.

### B. COLOMA'S ONLY ALLEGED AFFIRMATIVE STATEMENT IS NOT ACTIONABLE

Plaintiffs only identify a single statement by Coloma, from a March 19, 2021 conference call announcing the Merger, where he said, "[w]e believe [Rockley] is poised for substantial and imminent commercial growth, which is why we are happy to bring Rockley to the listed markets now rather than later." AC ¶ 129. This statement inadequately pleads securities fraud for several reasons.

**First**, it is puffery. "Statements of mere corporate puffery, vague statements of optimism like 'good,' 'well-regarded,' or other feel good monikers, are not actionable because professional investors, and most amateur investors as well, know how to devalue the optimism of corporate executives." *Police Ret. Sys.*, 759 F.3d at 1060 (citations and quotations omitted). "Corporate puffing involves expressing an opinion that is not capable of objective verification." *Macomb Cnty. Emps.' Ret. Sys. v. Align Tech., Inc.*, 39 F.4th 1092, 1097-98 (9th Cir. 2022) (citation and quotation omitted); *see also In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111 (9th Cir. 2010) ("optimistic, subjective assessment hardly amounts to a securities violation" with puffery examples like "everything is clicking" and "old products are doing very well"); *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 934 (9th Cir. 1996) (general statements of optimism were "inactionable forecasts").

The Court is permitted to determine puffery at this early stage. "District Courts often resolve whether a statement is puffery when considering a motion to

dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 245 (9th Cir. 1990).

Coloma's statement that Rockley was poised to grow is the sort of "vague statement of optimism" or "feel good moniker" that is not a securities violation. *See Police Ret. Sys.*, 759 F.3d at 1060; *Baker v. Twitter*, No. 2:22-cv-06525-MCS-E, 2024 WL 1178168, *5 (C.D.Cal. Mar. 5, 2024) (dismissing securities class action). Examples of phrases courts found to be non-actionable puffery include:

- "I think we have a great future" and "I am optimistic about Syntex's performance during this decade". *Syntex*, 855 F.Supp. at 1095;
- General comments about "anticipated product line growth", such as "growing," "showing strong momentum," "off to a positive start," "off to a good start," and "off to a solid start". *Melot v. JAKKS Pacific, Inc.*, No. LA CV13-05388 JAK (SSx), 2016 WL 6902093, *19 (C.D.Cal. Nov. 18, 2016) (dismissing securities class action);
- "[A product's] adoption is robust" and "thriving;" "the [product's] portfolio has done outstanding;" "the [product's] franchise has grown extremely strongly;" and that "the funnel is, on the whole, very deep." *Kong v. Fluidigm Corp.*, No. 22-15396, 2023 WL 2134394, *2 (9th Cir. Feb. 21, 2023) (affirming dismissal of securities class action).

The statement attributed to Coloma is hopelessly vague and unspecific to be securities fraud because he did not promise anything concrete in terms of Rockley's growth/revenue metrics or timeline. He simply said that SCH believed Rockley was positioned to grow in the future. He made no statement that was verifiable one way or the other (such as specific growth targets, revenues, or timelines), meaning it is incapable of being evaluated for falsity. In short, Coloma's tepid statement of general optimism about Rockley's future growth was not a securities violation.

**<u>Second</u>**, whether Rockley would have substantial growth down the road was a statement about a future event, which is also not a securities violation. *In re*

*Verifone Sec. Litig.*, 784 F.Supp. 1471, (N.D. Cal. 1992) considered a company executive who offered generalized predictions about the company's future success and held that "general statements of optimism do not imply a misleading projection of future results."[2] *Id.* at 1481; *In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1118-19 (9th Cir. 1989) (general, optimistic statements about the future are not actionable unless speaker did not believe statements when made). Coloma's vague comment that SCH thought Rockley would grow well in the future is exactly the sort of statement about future events that courts have held is not securities fraud.

**Third**, it was a statement of opinion. Coloma said SCH "believes" that Rockley was poised for growth. To plead the falsity of opinions, "the plaintiff must allege both that the speaker did not hold the belief she professed and that the belief is objectively untrue." *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615-16 (9th Cir. 2017) (citation and quotation omitted). There is no allegation that Coloma did not believe his statement that SCH "believed" Rockley was poised for future growth.

**Finally**, there are no specific allegations of scienter that Coloma knew his statement was false when made. *See Baker*, 2024 WL 1178168, FN10 (dismissal proper where plaintiff offered no facts supporting inference defendant knew statement was false or misleading when made). "To plead *scienter* adequately under the PSLRA, the complaint must state with particularity facts giving rise to a *strong inference* that the defendant acted with the required state of mind." *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 766 (9th Cir. 2023) (emphases

[2] The court said investors need "hard" information, like historical sales data, which is "rarely subject to misinterpretation, even if the disclosure is accompanied by generally optimistic statements about the future by corporate officers." *Verifone,* 784 F.Supp. at 1481. The court noted that corporate executives are "not likely to be the most reliable source of projections of future corporate performance" as they may be biased by personal goals in evaluating the company's prospects, meaning professional analysts and investors are in "at least as good and probably a better position" to predict the company's future if given accurate historical data. *Id.*

in original) (citation and quotation omitted). "A strong inference exists if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* (citation and quotation omitted). Plaintiffs do not allege with specificity that Coloma received information that would have led him to believe that Rockley was not poised for growth when he made the March 2021 statement. And the dubious theories by which Plaintiffs ask the Court to infer scienter against Coloma are wholly insufficient, as discussed more fully in Sect. III.C.2.d, *infra*.

### C. SCH's Securities Filings Do Not Support Securities Fraud Claims Against Coloma

Having addressed the only statement actually attributed to him, Coloma is now left to do what no defendant should have to do, namely, figure out for himself what else he supposedly did wrong because the AC does not say (which is sufficient grounds to grant the Motion). Not only does the AC fail to satisfy general notice pleading requirements, but it falls miles short of the particularized pleading requirements of Rule 9(b) and the PSLRA for fraud allegations.

Coloma can only theorize about additional allegations against him. One inference is that Plaintiffs' fraud claim is based on two SCH securities filings on (i) March 19, 2021 (announcing the Merger) and (ii) July 22, 2021 (Proxy statement soliciting SCH's shareholders' vote on Merger), which included Rockley's revenue projections for 2021-2024. Plaintiffs seemingly seek to hold Coloma personally responsible not for *SCH's projections* but rather for the accuracy of *Rockley's projections* even though he made no affirmative statements about them. Before addressing why SCH's filings did not violate securities laws, three general observations are offered.

**First**, most of Plaintiffs' allegations pertain to post-Merger statements by Rockley and its executives (in its Form 10-Q, Form 10-K, Form 8-K, and on earnings calls), but the Court can only evaluate Coloma's conduct during the **five**

**months** from March 19, 2021, to August 11, 2021. Allegations about Rockley's post-Merger conduct cannot establish liability against Coloma since he was gone.

**Second**, the AC is completely vague about Coloma's personal role in any allegedly-fraudulent activity. Rather, in a totally conclusory way, Plaintiffs lump Coloma in with Rockley and its executives by speaking in broad generalities about what "Defendants" did. This approach is improper under Rule 9(b) and the PSLRA. Coloma's personal actions and statements must be identified and parsed out from those of other defendants, and in the AC they are not.

**Third**, there is no allegation that Coloma (or SCH) had any better access to Rockley's internal information than did the other professionals working on the de-SPAC transaction, such as: (i) outside counsel for Rockley (Pillsbury Winthrop) and SCH (Ropes & Gray); (ii) financial advisors for Rockley (Cowen & Company LLC) and SCH (BofA Securities); (iii) Rockley's accountants (Ernst & Young); and (iv) securities analysts.

Indeed, the securities filings make clear that SCH relied on **Rockley** to provide both its historical revenue data and projected revenues. RJN Ex. 3, at 59 & RJN Ex. 5, at 858. Rockley's historical financial information was audited by Ernst & Young for 2019 and 2020, whose April 2, 2021 opinion letter was included in the Form S-4 Registration Statement filed on the same date. RJN, Ex. 4, at 358, 363. Moreover, the securities filings thoroughly chronicles SCH's negotiations with Rockley between December 2020 and March 2021. The timeline describes in minute detail the due diligence process, and makes clear that SCH was part of an overall working group that included BofA, Ropes & Gray, Pillsbury, E&Y, Rockley, and Cowen & Co. working together. RJN Ex. 4, at 214-217. Plaintiffs offer no allegations to support an inference that SCH (and Coloma) somehow knew more about "the truth" of Rockley's financials and operations as compared to the other professionals who worked on the deal and who conducted the same due diligence as

part of the same working group. Nor do Plaintiffs identify any "red flags" that would have come to SCH's attention about Rockley's forecasts.

**1. <u>The AC's Alleged Misrepresentations</u>**

In a broad nutshell, Plaintiffs divide alleged misrepresentations about Rockley's projected revenues into two categories and allege sub-issues within each category (which are numbered Issues 1-3 below).

**<u>Category A (2021/2022 NRE Revenues)</u>** -- allegations about Rockley's short-term revenues in 2021 and 2022 from its two clients who provided nearly all of Rockley's historical revenues, Apple and Hengtong Group Co., Ltd. AC ¶ 66. Rockley provided non-recurring engineering ("NRE") services for those clients, which were "one-off" services separate from Rockley's core "clinic-on-the-wrist" consumer wearables. *Id.* The two short-term NRE issues are:

- ***Issue 1 (Hengtong)*** -- Plaintiffs allege Defendants knew (and failed to adequately disclose the risk) that: (i) Hengtong would be banned by the U.S. government, (ii) meaning Rockley would not be able to sell Hengtong chips, (iii) thereby impacting Rockley's NRE revenues from an important customer. AC ¶¶ 71-82, 131, 138.
- ***Issue 2 (Apple)*** -- during the March 19, 2021 conference call, Rockley touted a $70 million commitment from a "large technology company" (implying Apple) over the next 18 months. AC ¶¶ 83-84. Plaintiffs claim Rockley misrepresented the strength of this commitment because, according to confidential witnesses, (i) Apple was upset that Rockley publicly identified it in securities filings as a customer; (ii) Apple was not happy with the yield rate of Rockley's chips; and (iii) materials Rockley was making for Apple would not be ready until 2026. AC ¶¶ 86-89. Plaintiffs allege these issues caused Apple NRE revenues to peter out in 2022. AC ¶ 91.

**<u>Category B (2023/2024 Consumer Wearables Revenues)</u>** -- allegations that Defendants knew Rockley's projected revenues in 2023 and 2024 from selling consumer wearable devices were unachievable.

- ***Issue 3 (Consumer Wearables Timeline)*** -- Rockley's projected revenues estimated significant increases in 2023 and 2024 based on sales of its consumer wearable technology. AC ¶¶ 5, 93, 102, 125. Plaintiffs claim Defendants knew it could not realistically sell high volumes of consumer wearable devices in 2023 and 2024 because it did not start developing the "key" photonic chip needed for those devices -- a process that took 15-24 months -- until late 2021 or early 2022. AC ¶¶ 8, 94, 99.

Rickman, Karanth, and Meier addressed these allegations in their motion to dismiss ("Rockley MTD"). ECF No. 64. Coloma will not repeat -- and incorporates by reference and joins in -- the Rockley MTD's arguments. Below, he summarizes why Plaintiffs' allegations against him, even if true, are insufficient to claim fraud.

**2. <u>The Three Alleged Issues Are Not Securities Violations By Coloma</u>**

Plaintiffs imply that Coloma knew enough about the three Issues to realize Rockley's revenue projections were unachievable. If that is Plaintiffs' argument, then it fails for multiple reasons.

**a. Forward-Looking Statements About Rockley's Revenue And Growth Projections Qualify For PSLRA's Safe Harbor Because Cautionary Language Was Used and Risks Disclosed**

The PSLRA's safe harbor exempts forward-looking statements, which are "any statement regarding (1) ***financial projections***, (2) plans and objectives of management for future operations, (3) ***future economic performance***, or (4) the assumptions underlying or related to any of these issues." *Police Ret. Sys.*, 759 F.3d at 1058 (emphasis added) (citation omitted). The PSLRA also protects "'statement[s] of the ***plans and objectives of management for future operations***,

including plans or objectives relating to the products or services of the issuer.'" *Glazer*, 63 F.4th at 767 (quoting 15 U.S.C. § 78u-5(i)(1)(B)) (emphasis added).

"Pursuant to the safe harbor, an issuer will not be liable with respect to any forward-looking statement if: (A) the statement is 'identified as a forward-looking statement, and is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement'; or (B) the plaintiff fails to prove that the statement 'was made with actual knowledge ... that the statement was false or misleading.'" *Glazer*, 63 F.4th at 767 (quoting 15 U.S.C. § 78u-5(c)(1)). "In other words, a defendant will not be liable for a false or misleading statement if it is forward-looking and *either* is accompanied by cautionary language *or* is made without actual knowledge that it is false or misleading." *Glazer*, 63 F.4th at 767 (emphasis in original) (citation and quotation omitted).

Coloma qualifies for the safe harbor under both provisions because the revenue and growth projections in SCH's securities filings were forward-looking statements and (i) were accompanied by cautionary language; AND (2) there are insufficient allegations that Coloma knew the projections were false or misleading when made.

On the first point, Plaintiffs allege misrepresentations about Rockley's projected growth and revenues and product-development timelines. AC ¶¶ 124-25, 133, 135. But SCH's filings that included these projections qualify for the safe harbor because they: (i) identified Rockley's revenue projections, growth opportunities, and product development timelines as forward-looking statements; (ii) disclosed potential risks by which Rockley might not achieve its projections; and (iii) provided cautionary language about the impact on Rockley's business if those risks occurred. Examples include:

- <u>*March 2021 Investor Presentation*</u> -- "Any financial projections . . . ***are for illustrative purposes only and should not be relied upon as***

***being necessarily indicative of future results***. . . . Information that is based on estimates, forecasts, [or] projections . . . is ***inherently subject to uncertainties and actual events or circumstances may differ materially from those contained in the prospective financial information***. . . . Accordingly, there can be ***no assurance that the prospective results are indicative of future performance*** of SC Health [and] Rockley Photonics . . . after the proposed Business Combination or that actual results will not differ materially from those presented in the prospective financial information." RJN Ex. 2, at 14 (emphasis added).

- *March 2021 Investor Presentation* -- "Actual future performance, outcomes and results may differ materially from those expressed in forward-looking statements as a result of a number of risks, uncertainties and assumptions. Forward-looking statements . . . may include . . . (ii) the ***anticipated development and commercialization timelines*** for Rockley Photonics' products and technologies . . . (iii) Rockley Photonics' ***customer relationships and ability to retain and expand customer relationships*** . . . (vi) ***Rockley Photonics' business strategies, business and financial outlook and financial projections*** . . . . No assurance can be given that future events will occur, that projections will be achieved, or that the assumptions contained herein are correct. Actual results may differ materially from those projected and you should not place undue reliance on forward-looking statements." RJN Ex. 2, at 14 (emphasis added).
- *March 2021 Press Release* -- "[A]ny statements that refer to SC Health's, Rockley's, or the combined company's future expectations, beliefs, plans, objectives, financial conditions, assumptions, ***performance***, ***projections***, ***forecasts***, or other

characterizations of future events or circumstances, including any underlying assumptions, are forward-looking statements. . . . There can be no assurance that future developments affecting SC Health and Rockley will be those that have been anticipated." RJN Ex. 1, at 8 (emphasis added).

- *March 2021 Summary of Risks & July 2021 Proxy Statement* -- "***Rockley's forecasts and projections are based upon assumptions, analyses, and internal estimates developed by Rockley's management***. If these assumptions, analyses, or estimates prove to be incorrect or inaccurate, Rockley's actual operating results may differ materially from those forecasted or projected." RJN Ex. 3, at 59 & RJN Ex. 5, at 858 (emphasis added).
- *March 2021 Summary of Risks & July 2021 Proxy Statement* -- "***Market opportunity estimates*** and ***growth forecasts*** are subject to significant uncertainty and are based on assumptions and estimates that may not prove to be accurate." RJN Ex. 3, at 59 & RJN Ex. 5, at 858 (emphasis added).
- *July 2021 Proxy Statement* -- "Forward-looking statements . . . may include, without limitation, statements regarding: . . . Rockley's ability to ***develop*** and commercially launch its products; . . . ***Rockley's projected financial information, anticipated growth rate, and market opportunity***; . . . the ***development status and anticipated timeline*** for commercial production of Rockley's products; . . . the status and expectations regarding Rockley's ***customer and potential customer relationships*** . . . ." RJN Ex. 6, at 1694-95 (emphasis added).
- *July 2021 Proxy Statement* -- "There can be no assurance that future developments affecting Rockley [] or SC Health will be those that

> Rockley [] or SC Health have anticipated. These forward-looking statements involve a number of risks, uncertainties (many of which are beyond Rockley's, [] or SC Health's control) or other assumptions that may cause actual results or performance to be materially different from those expressed or implied by these forward-looking statements." *Id.*

And the list goes on. It is clear that SCH made appropriate and robust disclosures that: (i) Rockley management provided all revenue and growth projections; (ii) those projections were just forecasts and not guarantees; and (iii) identified the potential risks that could materially impact performance.

Accordingly, any disclosures in SCH's pre-Merger securities filings about Rockley's revenue and growth projections (which seem to be the crux of Plaintiffs' lawsuit) qualify for the PSLRA's safe harbor because they were identified as forward-looking statements and accompanied by meaningful cautionary statements identifying the risks that could cause actual results to differ materially. *See Police Ret. Sys.*, 759 F.3d at 1058; 15 U.S.C. § 78u-5(c)(1)(A)(i)). That should really be the end of the analysis. But it is worth pointing out that SCH made additional disclosures specifically about each of the three Issues Plaintiffs claim create liability for Coloma:

***Issue 1 (Hengtong)*** -- Plaintiffs scold Defendants for not providing more warning about Hengtong. But SCH did disclose potential risks from adverse, regulatory action or trade sanctions, and what would happen if Rockley lost one of its largest customers like Hengtong.

- <u>*March 2021 Summary of Risks & July 2021 Proxy Statement*</u> -- "Rockley's international operations expose it to operational, financial, and ***regulatory risks, including possible unfavorable regulatory***, political, tax, and labor conditions, which could harm

Rockley's business." RJN Ex. 3, at 60 (emphasis added); see also & RJN Ex. 5, at 858.

- *July 2021 Proxy Statement* – "Certain of Rockley's products and services are subject to export control and import laws and regulations . . . and various ***economic and trade sanctions regulations*** . . . [that] prohibit the shipment of certain products and services to U.S. embargoed or sanctioned . . . persons. . . ." RJN Ex. 6, at 1754 (emphasis added).
- *July 2021 Proxy Statement* -- "Rockley believes that its operating results for the foreseeable future will continue to depend to a significant extent on revenue attributable to a few large customers, including Apple Inc., Rockley's largest customer, and Hengtong Rockley Technology Co., Ltd. ("HRT"), its second largest customer. Rockley's two largest customers collectively accounted for 100% and 99.6% of Rockley's revenue in 2020 and 2019, respectively." RJN Ex. 6, at 1751.
- *March 2021 Summary of Risks & July 2021 Proxy Statement* -- "Rockley currently depends on a few large customers for a substantial portion of its revenue. The loss of, or a significant reduction in, orders from Rockley's customers could significantly reduce its revenue and adversely impact Rockley's operating results." RJN Ex. 3, at 61; *see also* RJN Ex. 6, at 1697.

SCH disclosed that regulators could take action that would negatively impact sales to an international customer like Hengtong, and that Rockley was highly dependent on Hengtong for its short-term revenues.

***Issue 2 (Apple)*** -- as shown above, SCH identified Apple as Rockley's largest customer, noted that Rockley was highly dependent on Apple for revenues in 2021

and 2022, and warned that if Apple reduced its orders, it would impact Rockley's revenues. The filings also disclosed:

- *April 2021 Form S-4* -- "[Apple] does not have any minimum or binding purchase obligations to Rockley under this agreement and could elect to discontinue or reduce making purchases from Rockley with little or no notice." RJN Ex. 4, at 149.
- *March 2021 Summary of Risks & July 2021 Proxy Statement* -- "Because Rockley does not anticipate long-term purchase commitments with its customers, orders may be cancelled, reduced, or rescheduled with little or no notice, which in turn exposes Rockley to inventory risk, and may cause its business and results of operations to suffer." RJN Ex. 3, at 61 & RJN Ex. 6, at 1697.

Taken together, these warnings informed investors that Apple was its most important customer, which did not have long-term purchase commitments, and could cancel orders or choose not to include Rockley's products at any time, resulting in material effects on Rockley's business.

***Issue 3 (Product Development Timeline)*** -- Plaintiffs allege that delays in developing a "key" chip needed to monetize Rockley's products meant the revenue projections for 2023 and 2024 were unachievable. AC ¶¶ 5, 93-94, 99, 102, 125 But SCH's securities filings addressed that possibility:

- *March 2021 Summary of Risks & July 2021 Proxy Statement* -- "***If Rockley does not fully develop or commercialize its products and services***, including its silicon photonics chipsets, or ***if such products and services experience significant delays***, Rockley's business, financial condition, and results of operation will be materially and adversely affected and Rockley may never achieve or sustain profitability." RJN Ex. 3, at 59 & RJN Ex. 6, at 1697 (emphasis added).

- *July 2021 Proxy Statement* -- "[C]ommercialization of [Rockley's] silicon photonics chipsets . . . is not currently expected to begin until 2022; provided that any such commercialization may occur later than 2022 or not at all. Even if Rockley is able to successfully develop and sell its products, there can be no guarantee that it will do so within its anticipated timeframe or that its products will be commercially successful." RJN Ex. 6, at 1733.

The potential risk of product development delay was identified and the potential impact on Rockley's business disclosed.

**b. PSLRA's Safe Harbor Also Applies Because SCH's Filings Were Statements Of Present Fact And There Are No Allegations That Coloma Knew They Were False When Made**

Coloma separately qualifies for the PSLRA's safe harbor because he made statements of present fact and there are no allegations to support an inference that Coloma knew "at the time they were made" that such statements were false or misleading. *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th Cir. 2012) (citation omitted). Rule 9(b) requires a plaintiff to identify "why the statements were false or misleading at the time they were made." *Id*. And any allegedly false or misleading statement must "directly contradict what the defendant knew at that time." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018). Statements qualify for PSLRA's safe harbor unless the speaker knew at the time the statement was made that it was false. 15 U.S.C. § 78u-5(c)(1)(A)(iii). Plaintiffs do not plead facts supporting an inference that Coloma knew SCH's securities filings were false or misleading when filed.

***Issue 1 (Hengtong)*** -- Nowhere do Plaintiffs allege that Coloma knew or had reason to know, before exiting on August 11, 2021, that Hengtong would be placed on a banned "Entity List" by the U.S. government five months later on December 17, 2021.

First, Coloma did not work for Rockley and had no significant history with the company. There is no alleged contact between Coloma and Hengtong (as contrasted to allegations that Rockley held seats on Hengtong's Board of Directors). SCH had only identified Rockley as a potential merger partner a few months before announcing the Merger, so had no deep history with the company. RJN Ex. 4, at 214. And SCH was part of a working group of professionals who all received the same due diligence information. RJN Ex. 4, at 214-217. Plaintiffs do not plead facts supporting an inference that SCH had unique information about Hengtong.

Second, there are no allegations that Coloma personally knew (or had reason to know) the U.S. government would ban Hengtong nearly six months after the Merger closed. And Coloma had no obligation to speculate about possible government action before it occurred. "[N]o disclosure [is] required when [an] event is contingent or speculative in nature." *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 980 (9th Cir. 1999).

Plaintiffs have not even come close to alleging that Coloma had some special insight that the government would ban Hengtong in December 2021 such that he knew Rockley's revenue forecasts in SCH's filings (which included Hengtong sales estimates) were false or misleading when made in March and July 2021.

***Issue 2 (Apple)*** -- Plaintiffs cite confidential witnesses who worked in the United Kingdom and Colorado to claim Apple was upset that Rockley identified it as a customer in the Merger filings and was unhappy about the "yield rates" of Rockley's chips. AC ¶¶ 86, 88.

First, Coloma joins in the arguments made in the Rockley MTD about why the AC contains no well-pleaded facts: (i) that Apple objected to being identified in the Merger filings; (ii) that Rockley's NRE revenues with Apple depended on yield rates rather than other metrics; and (iii) adequately supporting the confidential witness allegations. *See* ECF No. 64, pp 14-16.

Second, even if the AC had such well-pleaded facts, it lacks any allegation that Coloma, who lived and worked in Singapore, learned about anything from confidential witnesses in the United Kingdom or Colorado (or anyone else from Rockley) about Apple.

Third, SCH (and Coloma) relied on Rockley to provide information about its customer relationships and how that factored into revenue projections. RJN Ex. 3, at 59 & RJN Ex. 5, at 858. But there are no allegations that Coloma was made aware of any "red flags" about issues between Apple and Rockley, and thus no allegation that Coloma knew Rockley's revenue forecasts (which included Apple revenues) were false or misleading when included in SCH's securities filings.

***Issue 3 (Product Development Timeline)*** -- Plaintiffs claim Rockley's revenue projections were unachievable because (i) it did not start developing a "key" chip until late 2021, (ii) it needed 15-24 months to make products after starting on the chip, (iii) so there was no way Rockley could sell enough consumer wearables in 2023 and 2024 with such a late start. AC ¶¶ 5, 93, 102, 125.

First, there is no allegation that, before August 11, 2021, Coloma knew Rockley had not started developing the "key" chip, so Plaintiffs cannot allege he made a false statement about Rockley's revenue forecasts by not factoring that in.

Second, Plaintiffs' timeline does not work. Even if Plaintiffs and their confidential witnesses are right that it would take Rockley 15-24 months to fully develop consumer wearables, from Coloma's perspective before his exit in August 2021, it was still realistic for that to happen in time for sales in 2023 and 2024. 15-24 months from August 2021 is October 2022 to July 2023. So even assuming that (i) Coloma knew Rockley had not developed a "key" chip by August 11, 2021, and (ii) it really took 15-24 months to develop a chip into a finished product, it would still be entirely plausible for Rockley to do so by late 2022 or early 2023, meaning it could generate significant consumer wearable sales in 2023 and 2024. So even

assuming all of Plaintiffs' theories were true, Coloma still made a statement of present fact before his exit.

Third, Coloma joins in the Rockley MTD's arguments that Plaintiffs improperly assume Rockley had to create its own consumer wearables in order to achieve sales in 2023 and 2024, when it disclosed in securities filings that it intended to sell its chips to customers who would install them in their own consumer wearables, meaning Rockley did not need to complete this supposedly-"key" chip to generate sales. *See* ECF 64, at 14:2-14.

**c. The Alleged Statement About Rockley's Customer Relationships Was Puffery**

Plaintiffs identified one statement in the March 19, 2021 press release that "Rockley is working closely and deeply with some of the world's largest consumer electronics and wearables companies to provide them with a full-stack solution." RJN Ex. 1, at 6. Plaintiffs claim this was a misrepresentation given the "issues" Rockley was having with Apple. AC ¶ 131.

This lone statement is puffery. A company expressing optimism about its customer relationships or saying it is "working closely" with customers is the sort of "feel good moniker[]" and "vague statement of optimism" that is not "objectively verifiable" and is non-actionable puffery. *Police Ret. Sys.*, 759 F.3d at 1060; *Baker*, 2024 WL 1178168, *5; *Melot*, 2016 WL 6902093, *19.

**d. The AC Fails To Adequately Allege Coloma's Scienter**

The PSLRA requires scienter to be plead with particularity by stating facts giving rise to a "strong inference" the defendant acted with the required state of mind, meaning a reasonable person would consider the inference of scienter just as compelling as not. *Glazer*, 63 F.4th at 766. The AC offers nine overall scienter theories, but only two as to Coloma: (1) he had a financial motive to see the de-SPAC transaction completed (AC ¶¶ 226-27); and (2) SCH promised to perform due

diligence on any target (AC ¶ 230). Neither theory establishes an inference of Coloma's scienter.

First, bare bones allegations about Coloma's financial motive are insufficient. "To meet the PSLRA's high burden for pleading scienter, a complaint cannot rely on mere motive and opportunity or recklessness, but rather, must state specific facts indicating no less than a degree of recklessness that strongly suggests actual intent." *Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1108 (9th Cir. 2021) (citation and quotation omitted). The AC fails to do that.

Second, Plaintiffs claim that SCH promised to do due diligence, which was inadequate as it failed to discover issues with Rockley's product development and customer relationships, thus supporting scienter. AC ¶ 230.

➢ SCH was entitled to rely on Rockley's historical revenue, sales, and customer data (RJN Ex. 3, at 59 & RJN Ex. 5, at 858), which were audited by Ernst & Young through the end of 2020 (RJN, Ex. 4, at 358, 363).

➢ SCH was part of a due diligence working group that included BofA, Cowen, Ropes, Pillsbury, and Ernst & Young. *See* RJN, Ex. 4, at 214-217. Plaintiffs offer no allegations that SCH received different information about Rockley's development timeline or customer relationships than others in this working group, or that SCH was notified of any "red flags" about Rockley's forecasts.

➢ Securities filings disclosed the material impact on Rockley's revenues if its large customers did not or could not place orders. *See* RJN Ex. 3, at 61 & RJN Ex. 6, at 1697.

➢ Plaintiffs' allegations show that Rockley's consumer wearables could have been ready for 2023 and 2024 sales even if "key" chips were not developed as of August 2021. *See* AC ¶¶ 5, 93, 102, 125

➢ SCH joins in the Rockley MTD's arguments about why Rockley could still record significant revenues in 2023 and 2024 even without its own wearable

products by selling chips to customers to put into their wearables. ECF No. 64, at 14:2-14.

### D. Because There Was No Primary Violation By SCH, There Is No Secondary Liability For Coloma As A "Control Person"

The Court should dismiss Plaintiffs' "control person" claim against Coloma because they failed to state a claim for primary liability against SCH, the entity Coloma allegedly controlled. 15 U.S.C. § 78t(a); *Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 623 (9th Cir. 2022). Section 20(a) claims may be dismissed if, as here, a plaintiff fails to adequately plead a primary violation of Section 10(b). *In re Verifone Sec. Litig.*, 11 F.3d 865, 872 (9th Cir. 1993).

## IV. CONCLUSION

The Court should dismiss all causes of action against Coloma. While this is Coloma's first motion to dismiss, Plaintiffs have already had two bites at the pleading apple and further amendment should not be permitted.

Dated: August 26, 2024

HOLMES, ATHEY, COWAN & MERMELSTEIN LLP

By: /s/ Joel M. Athey
Joel M. Athey

*Attorneys for Defendant*
Angelo Coloma

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6.2

The undersigned, counsel of record for Defendant Angelo John Coloma, certifies that the Memorandum of Points & Authorities contains 6981 words (excluding the caption, the table of contents, the table of authorities, the signature block, the certification required by L.R. 11-6.2, and any indices and exhibits), which complies with the word limit of L.R. 11-6.1.

Dated: August 26, 2024

HOLMES, ATHEY, COWAN & MERMELSTEIN LLP

By: /s/ Joel M. Athey
Joel M. Athey

*Attorneys for Defendant* Angelo Coloma