**HOLMES, ATHEY, COWAN & MERMELSTEIN LLP**
Mark Mermelstein (SBN: 208055)
    mmermelstein@holmesathey.com
Joel Athey (SBN: 214399)
    joel.athey@holmesathey.com
811 Wilshire Boulevard, Suite 1460
Los Angeles, California 90017
Tel:  (213) 985-2200
Fax: (213) 973-6282

*Attorneys for Defendant*
ANGELO COLOMA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH S. GROSSMAN, Individually and on Behalf of All Others Similarly Situated<br><br>    Plaintiff,<br><br>    vs.<br><br>DAVID SIN; ANGELO JOHN COLOMA, ANDREW RICKMAN, MAHESH KARANTH, RICHARD MEIER, and SIN CAPITAL GROUP PTE. LTD.<br><br>    Defendants. | Case No. 2:23-cv-09501-MRA (MAAx)<br><br>CLASS ACTION<br><br>**DEFENDANT ANGELO COLOMA'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT** |

# **TABLE OF CONTENTS**

**Page(s)**

I.  INTRODUCTION .................................................................................. 6

II.  COLOMA'S ALLEGED STATEMENTS ............................................. 7

    A.  The AC Did Not Adequately Identify Coloma's Alleged Statements ..................................................................................... 8

    B.  Plaintiffs' "Newfound" Statements ................................................ 10

    C.  Statements 2 - 5 Do Not Support A Sect. 10b-5 Claim ................. 11

        1.  Statements 2 & 3 Offer No Specifics An Investor Would Depend On ............................................................................ 11

        2.  The AC Concedes Statement 4 Was True, So It Cannot Be Misleading ...................................................................... 13

        3.  Statements 5 (a) Through (e) Cannot Be Attributed To Coloma ................................................................................. 13

III.  STATEMENTS 1 & 6 DO NOT PLEAD A SECT. 10B-5 VIOLATION ...................................................................................... 16

    A.  Statement 1 Does Not State A Sect. 10b-5 Violation ..................... 16

        1.  Statement 1 Falls Within The PSLRA's Safe Harbor .............. 16

            a.  Statement 1 Was Forward-Looking ........................... 16

            b.  Prong 1 -- The Investor Call Included Cautionary Language ................................................ 17

            c.  Prong 2 -- The AC Does Not Adequately Plead That Coloma Actually Knew In March 2021 Statement 1 Was False ............................................ 20

        2.  Statement 1 Was Puffery ......................................................... 23

        3.  Statement 1 Was An Opinion .................................................. 24

    B.  Statements 6 (a) & (b) Are Not Attributable To Coloma ............... 24

        1.  An Outsider Like Coloma Signing The Proxy Statement Does Not Make Him Responsible For The Accuracy Of Every Statement In It ............................................................. 24

DEFENDANT ANGELO COLOMA'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

2.  Statements 6 (a) & (b) Qualify For The PSLRA Safe Harbor ........................................................................25

a.   Statements 6 (a) & (b) Are Forward-Looking............25

b.   Prong 1 -- Statements 6 (a) & (b) Were Accompanied By Cautionary Language ....................26

c.   Prong 2 -- The AC Does Not Adequately Plead Coloma Actually Knew In July 2021 That Statements 6 (a) & (b) Were False ............................27

IV.   CONCLUSION ...............................................................................27

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6.2.................28

DEFENDANT ANGELO COLOMA'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Barry v. Colony NorthStar Inc.*, Case No. CV 18-2888-GW(MRWx) 2019 WL 132237710 (C.D. Cal. Jan. 24, 2019)......................................................23

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605 (9th Cir. 2017)..................................................................24

*Farhar v. Ontrak, Inc.*, 714 F.Supp.3d 1198 (C.D. Cal. 2024) ...........................23

*Glazer Cap. Mgmt.*, 63 F.4th 747 (9th Cir. 2023) ................................................16

*In re Align Tech., Inc. Sec. Litig.*, Case No. 20-cv-02897-MMC 2021 WL 1176642 (N.D. Cal. Mar. 29, 2021) ...............................................................23

*In re Cutera Sec. Litig.*, 610 F.3d 1103 (9th Cir. 2010) ...............................20, 27

*In re DDi Corp. Sec. Litig.*, Master File No. CV 03-7063 NM (SJHx) 2005 WL 8157394 (C.D. Cal. Jan. 7, 2005)....................................................15

*In re GledFed Inc. Sec. Litig.*, 60 F.3d 591 (9th Cir. 1995) ...............................14

*In re Gupta Corp. Sec. Litig.*, 900 F.Supp. 1217 (N.D. Cal. 1994) ....................25

*In re Lockheed Martin Corp. Sec. Litig.*, 272 F.Supp.2d 928 (C.D. Cal. 2002) ..................................................................................................................14

*In re New Century,* 568 F.Supp.2d 1206 (C.D. Cal. 2008) ................................14

*In re Peregrine Systems Inc. Sec. Litig.*, Case No. 02CV870-BEN (RBB) 2005 WL 8158825 (S.D.Ca Mar. 30, 2005)......................................................15

*In re Prudential Sec. Inc. Ltd. P'Ships Litig.*, 930 F.Supp. 68 (S.D.N.Y. 1996) ..................................................................................................................20

*In re Ross Sys. Sec. Litig.*, No. C-94-0017-DLJ 1994 WL 583114 (N.D. Cal. July 21, 1994)..........................................................................................25

*In re Wet Seal Inc. Sec. Litig.*, 518 F.Supp.2d 1148 (C.D. Ca 2007)..............9, 21

*Kong v. Fluidigm Corp.*, No. 22-15396 2023 WL 2134394 (9th Cir. Feb. 21, 2023) .............................................................................................................23

*Nguyen v. Endologix, Inc.*, 962 F.3d 405 (9th Cir. 2020) .............................12, 13

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West Holding Corp.*, 320 F.3d 920 (9th Cir. 2003)...............................9, 16, 25

DEFENDANT ANGELO COLOMA'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

*Pittleman v. Impac Mortg. Holdings, Inc.*, No. SACV 07-0970AG(MLGx) 2008 WL 4809962 (C.D. Cal. Oct. 6, 2008)......................14

*Police Ret. Sys. of St. Louis v. Intuitive Surgical Inc.*, 759 F.3d 1051 (9th Cir. 2014)..................................................................................23

*SEC v. DeFrancesco*, 683 F.Supp.3d 367 (S.D.N.Y. 2023).........................19, 20

*Warshaw v. Xoma Corp.*, 74 F.3d 955 (9th Cir. 1996) ......................................23

*Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981........................................9

**STATUTES**

15 U.S.C. § 78u-4 ..........................................................................................9, 13

15 U.S.C. § 78u-5 ........................................................................................16, 21

**OTHER AUTHORITIES**

*Poised*, CAMBRIDGE ADVANCED LEARNER'S DICTIONARY (4th ed. 2013)...........17

DEFENDANT ANGELO COLOMA'S REPLY IN SUPPORT OF MOTION TO DISMISS
AMENDED COMPLAINT

## I.   INTRODUCTION

The Amended Complaint ("AC") in this case is 108 pages long.  Its 264 paragraphs include only _six_ describing what Angelo Coloma allegedly did or said.  That is hardly surprising because this case is not about Coloma.  It is about Rockley Photonics, and whether Rockley mislead its investors about the strength of its customer relationships and the achievability of its product-development timelines and projected revenues.  But Coloma did not work for Rockley.  He was a director of SC Health Corporation ("SCH") a SPAC that later acquired Rockley.  The securities filings make abundantly clear that SCH was one cog in a working group of professionals who collectively performed due diligence on Rockley (including Bank of America, Ernst & Young, and two international law firms).  The AC never alleges that SCH or Coloma got different or better information about Rockley than the other professionals received, or that he received any "red flags" about Rockley's customer relationships, product-development timelines, or financial projections.

Nevertheless, Plaintiffs sued Coloma for securities fraud.  The Opposition's overall thrust is that Coloma "should have known" about Rockley's alleged issues because he was part of the acquiror's due diligence efforts.  Yet the AC makes no specific allegations about what Coloma actually knew.  It offers no documents showing that he was told about problems.  It cites to no confidential witness who talked to Coloma.  It provides no specifics about what information Coloma actually received.  In a sense, the AC treats Coloma like an auditor who was negligent in not spotting "red flags" and includes him in the lawsuit until discovery can sort out whether he actually knew them or not.  But that is not how the PSLRA works.  Plaintiffs need to "have the goods" at the beginning and be able to allege facts with sufficient particularity to create a strong inference that Coloma knew about Rockley's alleged issues and still told investors everything was fine.  Plaintiffs cannot back into it by identifying Coloma's general involvement with a de-SPAC

DEFENDANT ANGELO COLOMA'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

transaction and then assume "must have known" enough to make his statements into material misrepresentations.

The AC only attributes a single statement to Coloma -- a March 19, 2021 comment during an investor call announcing the proposed merger in which Coloma said SCH "believe[d]" that Rockley was "poised" for "imminent commercial growth." Coloma's Motion to Dismiss ("Motion") focused on that statement since it is all the AC alleged he said, explaining that it was a forward-looking statement protected by the PSLRA's safe harbor, an opinion, and corporate puffery.

But Plaintiffs' Opposition ("Opp.") went beyond discussing that lone statement. Instead, Plaintiffs scoured through thousands of pages of securities filings (none of which they filed with the AC) looking for other statements by Coloma that are not alleged in the AC. And Plaintiffs now seek, for the first time, to attribute to Coloma every statement made in (i) an unsigned, 57-slide Investor Presentation, and (ii) the 832-page Proxy Statement. But an opposition brief cannot masquerade as an amended pleading. The inescapable conclusion is that the AC said virtually nothing about Coloma (attributing only a single statement to him) while the Opposition desperately tried to "fix" that flaw. Like an air crew duct taping the wing while the plane is already airborne, Plaintiffs' efforts are too little, too late. And Plaintiffs' "newfound" statements do not change anything because they are either not misleading, factually true, or not properly attributable to Coloma.

The Court should reject Plaintiffs' efforts to "shadow" amend the AC via its Opposition and focus instead on the lone statement the AC actually alleges Coloma made. When viewed through that lens, it is an easy call that this statement does not support Sect. 10b-5 liability.

## II.   COLOMA'S ALLEGED STATEMENTS

The AC only alleges a single statement made by Coloma. The Opposition express disbelief that Coloma did not know that Plaintiffs really meant to say lots of other things too, which they try to correct by citing those things from various

DEFENDANT ANGELO COLOMA'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

sources. This issue is of singular importance because the Court cannot determine whether the AC adequately plead that Coloma's statements were securities fraud until it is clear what statements he made. It is, therefore, important to pull back the curtain on the lengthy AC to determine what Coloma allegedly said.

➢ Statement 1 -- the only statement in the AC that can be fairly attributed to Coloma was that SCH "believed" Rockley was "poised" for "imminent commercial growth." AC ¶¶ 5, 129.

Plaintiffs offer various theories on why Statement 1 was an actionable misrepresentation, which are addressed in Sect. III.A., *infra* and the Motion (ECF 84, at Sect. III.B.). But more importantly, Statement 1 is the ***only statement in the AC that is actually attributed to Coloma***. When Coloma pointed this out in the Motion, Plaintiffs used a blunderbuss approach in the Opposition by harvesting all sorts of other statements from the voluminous securities filings of SCH and Rockley that they try attributing to Coloma, even though the AC's plain language does not do so. Plaintiffs now want the Court to consider and evaluate these "newfound" statements. As discussed below, they should play no part in the Court's analysis because they are either not attributable to Coloma or do not support a securities fraud claim against him.

**A.      The AC Did Not Adequately Identify Coloma's Alleged Statements**

As a threshold matter, Coloma should not have to comb through thousands of pages of securities filings to discern the statements that Plaintiffs allege he made. Nor should he have to read an opposition brief to his motion to dismiss to learn for the first time what statements he supposedly made.

The AC's plain language makes evident that the **only** statement actually alleged as being made by Coloma was Statement 1. The other "newfound" statements that Plaintiffs now want to attribute to Coloma were identified for the first time in the Opp., and were not alleged in the AC. This is inadequate. It is black-letter law that to properly allege falsity in the context of a Sect. 10b-5

DEFENDANT ANGELO COLOMA'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

violation, a securities fraud complaint must "specify *each statement alleged to have been misleading* [and] the reason or reasons why the statement is misleading . . ." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990-91 (emphasis added) (quoting 15 U.S.C. § 78u-4(b)(1)).

And to adequately plead scienter, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Zucco*, 552 F.3d at 991 (quoting 15 U.S.C. § 78u-4(b)(2))). "[A] complaint may properly be rejected if it fails to allege contemporaneous facts in sufficient detail and in a manner that would create a strong inference that the alleged adverse facts *were known at the time of the challenged statements*." *In re Wet Seal Inc. Sec. Litig.*, 518 F.Supp.2d 1148, 1156 (C.D. Ca 2007) (emphasis added) (citation and quotation omitted). Moreover, while the AC's allegations are considered as a whole, the Court must "analyze scienter *separately for each alleged misrepresentation* and *each defendant*." *Id.* at 1157 (emphasis added). In short, the AC must allege each and every statement attributable to Coloma, explain why it was materially misleading, and allege facts showing a strong inference that Coloma knew that each statement was misleading.

The AC fails to meet this standard because it does not separately allege the specific statements made by Coloma that were allegedly misleading. Instead, Plaintiffs now retroactively claim in the Opp. that "newfound" statements were made by or attributable to Coloma. But the AC offers no particularized facts that would allow the Court to evaluate whether these "newfound" statements were made by Coloma, if they were misleading, and if so, whether Coloma made them with intent or "deliberate or conscious" recklessness. *See No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West Holding Corp.*, 320 F.3d 920, 931 (9th Cir. 2003) ("In this Circuit the required state of mind is one of deliberate or conscious recklessness.") (quotation omitted). Without adequately identifying each

DEFENDANT ANGELO COLOMA'S REPLY IN SUPPORT OF MOTION TO DISMISS
AMENDED COMPLAINT

of Coloma's alleged misrepresentations in the AC, the Court cannot evaluate whether they are actionable and Plaintiffs have not met their burden.

**B.      Plaintiffs' "Newfound" Statements**

Nonetheless, Plaintiffs try to dazzle the Court into thinking that Coloma personally said a lot of things.  But a closer review shows that is inaccurate.  The Opp. claims the following "newfound" statements are attributable to Coloma:

➢ Statement 2 -- during the March 19, 2021 joint investor call by SCH and Rockley announcing the proposed merger -- the transcript of which was attached as Exhibit 99.2 to the Form 8-K and filed with co-defendants' Request for Judicial Notice ("RJN") as ECF 65-3 ("Investor Call") -- Coloma said Rockley had developed technology that "we believe is transformational versus existing technology in terms of its range, accuracy, and efficiency, among other things, but its applications in health and wellness . . .".  Opp., 5:24-6:2.

➢ Statement 3 -- in the March 19, 2021 joint press release from SCH and Rockley announcing the proposed merger -- attached as Exhibit 99.1 to the Form 8-K and filed with Coloma's RJN as ECF 85-1 ("Press Release") -- Coloma said SCH "very quickly understood the transformational nature of Rockley's technology" and viewed Rockley as "one of the most compelling opportunities in the entire healthcare space."  Opp., 5:13-19.

➢ Statement 4 -- during the Investor Call, Coloma said Rockley's "strategic partnerships" included "one of the largest technology companies in the world, that [has] stated that it views health and wellness as critical to their product offerings." Opp., 6:3-6.

➢ Statements 5 (a) to (e) -- the March 19, 2021 slide presentation issued with the proposed merger announcement -- attached as Exhibit 99.3 to the Form 8-K and filed with Coloma's RJN as ECF 85-2 ("Investor Presentation") -- includes misrepresentations that: (a) Rockley would launch its consumer wearable chipset module in 2022; (b) Rockley would have significant revenue increases from 2023

onwards; (c) provided Rockley's revenue projections for 2022 to 2024; (d) Rockley's technology was "validated" by customers; and (e) Rockley had committed non-recurring engineering ("NRE") revenues from Apple for 2021/2022.  Opp., 6:10-7:2.

➢ Statements 6 (a) & (b) -- the 832-page July 22, 2021 Proxy Statement -- filed with Coloma's RJN as ECF 85-6 ("Proxy Statement") -- misrepresented: (a) Rockley's projected revenues for 2022, 2023, and 2024 (which were identical to the figures given in the Investor Presentation); and (b) Rockley's plan to start delivering final samples of its chipset module to customers in the first half of 2022 with production ramping up in the second half of 2022.  Opp., 8:15-20.

Coloma should not have to learn for the first time in an opposition brief what misleading statements he allegedly made because they were not in the AC.  The Motion should be granted on that basis alone.  Regardless, these "newfound" statements are not a proper basis for Sect. 10b-5 claims against Coloma.

**C.    Statements 2 - 5 Do Not Support A Sect. 10b-5 Claim**

**1. Statements 2 & 3 Offer No Specifics An Investor Would Depend On**

➢ Statement 2 -- saying SCH "believe[d]" Rockley's technology was "transformational" compared to existing technology is not an actionable statement. **First**, it is prefaced with the comment "we believe," which makes it a statement of opinion.  As discussed in Sect. III.A.3, *infra*, matters of opinion do not support a Sect. 10b-5 claim unless facts are alleged that Coloma did not hold the belief professed and the belief was objectively untrue (which the AC does not).  How can it be objectively untrue for SCH to say that it "believes" Rockley's technology is better than existing technology?  How could that be proven wrong?  What misrepresentation is in that statement?

**Second**, as discussed in Sect. III.A.2, *infra*, vague statements of optimism (like "transformational") that are not "objectively verifiable" are non-actionable puffery because investors would not rely on them.  How could an investor ever

DEFENDANT ANGELO COLOMA'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

measure whether Rockley's technology was "transformational" as compared to existing technology in SCH's view?

**Third**, and most importantly, Statement 2 does nothing more than offer a vague explanation about why SCH thought Rockley would be a good merger candidate.  It offers no information an investor could or would depend on in making an investment decision.  It provides no information about Rockley's technology, customer relationships, product-development timelines, regulatory issues, revenues, historical sales, future projections, or financials.  It just says Rockley's technology is "transformational" without saying why or trying to define what that meant.  As such, it does not include any material misrepresentation as required to state a Sect. 10b-5 violation.  *See Nguyen v. Endologix, Inc.*, 962 F.3d 405, 413 (9th Cir. 2020).

➤ Statement 3 -- Coloma said that SCH thought Rockley's technology was "transformational" and SCH "view[ed]" it as a "compelling" opportunity.  This statement does not support a securities fraud claim.  **First**, Coloma is simply stating SCH's "view" of a market opportunity, which is a matter of opinion that does not support a Sect. 10b-5 claim unless facts are alleged that Coloma did not hold the belief professed and the belief was objectively untrue (which the AC does not).  There is no way to prove that SCH's subjective belief was "objectively untrue."

**Second**, as discussed in Sect. III.A.2, *infra*, vague statements of optimism (like "transformational" and "compelling") that are not "objectively verifiable" are non-actionable puffery.

**Third**, and most importantly, the statement indistinctly discusses why SCH was interested in Rockley as a potential merger candidate.  It offers no information that an investor could or would depend on in making an investment decision.  It provides no information about Rockley's technology, customer relationships, product-development timelines, regulatory issues, revenues, historical sales, future projections, or financials.  As such, it includes no material misrepresentation.

DEFENDANT ANGELO COLOMA'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

In short, there is nothing in Statements 2 or 3 that could possibly be construed as materially misleading, as required to allege a primary violation of Sect. 10b-5. *See Nguyen*, 962 F.3d at 413.  And there is certainly nothing that could meet the heightened pleading standards of the PSLRA, which requires the AC to "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading. . . ."  *Id.*, at 414 (quoting 15 U.S.C. § 78u-4(b)(1)).  The Court should disregard Statements 2 and 3 as any basis for a claim against Coloma.

**2.  The AC Concedes Statement 4 Was True, So It Cannot Be Misleading**

Statement 4 alleges that Coloma said Rockley's "strategic partnerships" included Apple.  But Plaintiffs confirmed Statement 4 was true in the AC, which alleges that Apple was one of Rockley's most important customers.  *See* AC ¶ 66 ("In 2019 and 2020 . . . Rockley's two largest customers, Apple and HRT, collectively accounted for 99.6% and 100% of Rockley's revenues, respectively.").  It also alleges that, before the Class Period began, Apple was Rockley's "one paying consumer wearables customer."  *Id.*, ¶ 83.  Accordingly, there was nothing untrue about Statement 4, in which Coloma simply stated what the AC already confirmed, namely, that Apple was an active and important Rockley customer at the time of the proposed merger.  Because there was no material misrepresentation, there can be no Sect. 10b-5 liability.  *See Nguyen*, 962 F.3d at 413.  The Court should disregard Statement 4 as any basis for a claim against Coloma.

**3.  Statements 5 (a) Through (e) Cannot Be Attributed To Coloma**

The Investor Presentation is arguably the centerpiece of Plaintiffs' "newfound" statements.  Sprinkled within its 57 slides, Plaintiffs identify Statements 5 (a) through (e) in the Opp. as misrepresentations for which Coloma must be held accountable, though the AC does not allege he made any of them.

But the Investor Presentation is unsigned (*see* ECF 85-2), so how can Plaintiffs claim that each statement in it is attributable to Coloma?  Plaintiffs argue that SCH's logo appears in the slide presentation and Coloma was identified as one

13

of four presenters so he is accountable for every statement.  Opp., 11:12-15.  But neither is a basis for attributing Statements 5 (a) through (e) to Coloma.

Without saying it, what Plaintiffs really mean is that Coloma is responsible for everything said in the Investor Presentation pursuant to the "group-published information" doctrine, which was used in pre-PSLRA securities litigations to tag officers and directors with responsibility for every statement in a group-published document.  "Group pleading arguably allows plaintiffs to name, as defendants, people or corporations who cannot be tied by specific facts to allegedly false or misleading statements without discovery." *In re Lockheed Martin Corp. Sec. Litig.*, 272 F.Supp.2d 928, 935 (C.D. Cal. 2002).  It was a way to get more obliquely-involved officers and directors into a litigation through their connection to a group-produced document that allegedly made misrepresentations, and then sort out later through discovery whether they really belonged or not.

But the PSLRA changed all of that, and this doctrine is no longer accepted in the Central District of California.[1]  *Id.* ("Under no circumstances does the group-published information doctrine relieve plaintiffs of their burden to plead scienter under [the PSLRA]"); *see also In re New Century,* 568 F.Supp.2d 1206, 1223 (C.D. Cal. 2008) ("the Court holds that group pleading is no longer viable under the PSLRA."); *Pittleman v. Impac Mortg. Holdings, Inc.*, No. SACV 07-0970AG (MLGx) 2008 WL 4809962, *3 (C.D. Cal. Oct. 6, 2008) ("Other courts in the Central District have overwhelmingly rejected the group pleading exception in the wake of the PSLRA."); *In re DDi Corp. Sec. Litig.*, Master File No. CV 03-7063

---

[1] Even if the Central District still applied the group pleading doctrine, in order to rely on it, the "complaint must contain allegations that...[the defendant] either participated in the day-to-day corporate activities or had a special relationship with the corporation, such as participation in preparing or communicating group information at particular times." *In re GledFed Inc. Sec. Litig.*, 60 F.3d 591, 593 (9th Cir. 1995).  The AC does not allege Coloma was part of Rockley's day-to-day activities sufficient to understand its customer relationships, product-development timelines, or financial projections.

14

DEFENDANT ANGELO COLOMA'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

NM (SJHx) 2005 WL 8157394, *21 (C.D. Cal. Jan. 7, 2005) ("Plaintiffs may not rely on the group pleading doctrine in lieu of pleading specific facts about each defendant named in their Exchange Act claims.").

Another court identified the reason why group-published pleading fails after the PSLRA's passage. "The group published doctrine permits an inference of wrongdoing not based on Defendant's conduct . . . in contravention of the PSLRA's pleading requirements. Under the PSLRA, a complaint seeking to attribute information published by an organization to an individual defendant should state, with particularity, facts indicating that the individual defendant was ***directly involved in the preparation of the allegedly misleading statements***." *In re Peregrine Systems Inc. Sec. Litig.*, Case No. 02CV870-BEN (RBB) 2005 WL 8158825, *31 (S.D.Ca Mar. 30, 2005) (emphasis added) (internal citations and quotation omitted).

Statements 5 (a) through (e) epitomize group pleading. The Investor Presentation is an unsigned document. There is no indication who prepared it, let alone who prepared what part of it. While Coloma is identified as a presenter, that does not mean that he wrote all (or any) of the slides. And the AC does not allege that Coloma personally verbalized any of the statements found in the Investor Presentation during the Investor Call. The AC's allegations can give the Court no confidence that Coloma made Statements 5 (a) through (e), let alone analyze if there is a "strong inference" that he prepared them or was aware that they were not true. Accordingly, the Court must disregard Statements 5 (a) through (e).[2]

---

[2] The Motion addressed why statements in the Investor Presentation were not false or misleading. *See* ECF 84, Sect. III.C. Coloma incorporates those arguments by reference but will not further "swing at a pitch in the dirt" by continuing to debate the point. Because statements in the Investor Presentation cannot be properly attributed to Coloma, they do not adequately plead a Sect. 10b-5 violation against him and must be disregarded without being considered.

DEFENDANT ANGELO COLOMA'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

### III. STATEMENTS 1 & 6 DO NOT PLEAD A SECT. 10b-5 VIOLATION

**A. Statement 1 Does Not State A Sect. 10b-5 Violation**

After the lengthy detour evaluating Plaintiffs' "newfound" statements, the Court can consider the only statement actually attributed to Coloma in the AC, namely, Statement 1 that SCH "believed" Rockley was poised for "imminent commercial growth." AC ¶¶ 5, 129.

#### 1. Statement 1 Falls Within The PSLRA's Safe Harbor

"Pursuant to the safe harbor, an issuer will not be liable with respect to any forward-looking statement if: (A) the statement is 'identified as a forward-looking statement, and is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement'; or (B) the plaintiff fails to prove that the statement 'was made with actual knowledge ... that the statement was false or misleading.'" *Glazer Cap. Mgmt.*, 63 F.4th 747, 767 (9th Cir. 2023) (quoting 15 U.S.C. § 78u-5(c)(1)). "In other words, a defendant will not be liable for a false or misleading statement if it is forward-looking and *either* is accompanied by cautionary language *or* is made without actual knowledge that it is false or misleading." *Glazer*, 63 F.4th at 767 (emphasis in original) (citation and quotation omitted).

##### a. Statement 1 Was Forward-Looking

"A forward looking statement is any statement regarding (1) financial projections, (2) plans and objectives of management for future operations, (3) future economic performance, or (4) the assumptions underlying or related to any of these issues." *No. 84 Employer-Teamster,* 320 F.3d at 936.

Statement 1 is a forward-looking statement. **First**, it offers a view about something that has not happened yet. Specifically, Coloma said that Rockley was "poised" to have commercial growth, meaning that such growth would happen *in the future*. "Poised" means "ready to move, or prepared and waiting for something to happen." *Poised*, CAMBRIDGE ADVANCED LEARNER'S DICTIONARY (4th ed.

DEFENDANT ANGELO COLOMA'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

2013).  A statement that Rockley was "poised" to experience future growth is one about "future economic performance."  **Second**, the cautionary language given at the beginning of the Investor Call said "[s]tatements we make during this call *that are not statements of historical facts* constitute forward-looking statements . . .".  ECF 65-3, p 77[3].  Describing a company as "poised" for future growth is not a statement of historical fact, meaning it was identified as a forward-looking statement.

### b.  Prong 1 -- The Investor Call Included Cautionary Language

Statement 1 was verbally made by Coloma during the Investor Call.  Before the Investor Call began, the following cautionary statements were read:

> ➤ "Statements we make during this call that are not statements of historical facts constitute forward-looking statements that are subject to risks, uncertainties and other factors that could cause our actual results to differ from historical results and/or from our forecast, including those set forth in [SCH's] Form 8-K filed today. For more information, please refer to the risks, uncertainties and other factors discussed in the SEC filings."  ECF 65-3, p 77.

> ➤ "All cautionary statements that we make during this call are applicable to any forward-looking statements we make whenever they appear. You should carefully consider the risks, uncertainties, and other factors discussed in [SCH's] SEC filings. Do not place undue reliance on forward-looking statements, which we assume no responsibility for updating."  *Id.*

The Investor Call included cautionary language about forward-looking statements.  That language also pointed investors to further cautionary language in the simultaneously-released Investor Presentation and Press Release:

> ➤ *Investor Presentation* -- "Any financial projections . . . are for illustrative purposes only and should not be relied upon as being necessarily indicative

---

[3] All page references are to the pagination made to exhibits by counsel and not to refer to any internal pagination of the subject documents.

17

of future results. . . . Information that is based on estimates, forecasts, [or] projections . . . is inherently subject to uncertainties and actual events or circumstances may differ materially from those contained in the prospective financial information. . . . Accordingly, there can be no assurance that the prospective results are indicative of future performance of SC Health [and] Rockley Photonics . . . after the proposed Business Combination or that actual results will not differ materially from those presented in the prospective financial information." ECF 85-2, p 14.

➢ *Investor Presentation* -- "Actual future performance, outcomes and results may differ materially from those expressed in forward-looking statements as a result of a number of risks, uncertainties and assumptions. Forward-looking statements . . . may include . . . (ii) the anticipated development and commercialization timelines for Rockley Photonics' products and technologies . . . (iii) Rockley Photonics' customer relationships and ability to retain and expand customer relationships . . . (vi) Rockley Photonics' business strategies, business and financial outlook and financial projections . . . . No assurance can be given that future events will occur, that projections will be achieved, or that the assumptions contained herein are correct. Actual results may differ materially from those projected and you should not place undue reliance on forward-looking statements." *Id.*

➢ *Press Release* -- "[A]ny statements that refer to SC Health's, Rockley's, or the combined company's future expectations, beliefs, plans, objectives, financial conditions, assumptions, performance, projections, forecasts, or other characterizations of future events or circumstances, including any underlying assumptions, are forward-looking statements. . . . There can be no assurance that future developments affecting SC Health and Rockley will be those that have been anticipated." ECF 85-1, p 8.

18

DEFENDANT ANGELO COLOMA'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

> *Summary of Risks*[4] -- "Rockley's forecasts and projections are based upon assumptions, analyses, and internal estimates developed by Rockley's management. If these assumptions, analyses, or estimates prove to be incorrect or inaccurate, Rockley's actual operating results may differ materially from those forecasted or projected."  ECF 85-3, p 59.

> *Summary of Risks* -- "Market opportunity estimates and growth forecasts are subject to significant uncertainty and are based on assumptions and estimates that may not prove to be accurate."  *Id.*

This robust language made clear to listeners on the Investor Call that discussions about Rockley's future growth or projected financial condition were forward-looking statements and subject to uncertainty.

Plaintiffs argue that the cautionary language was not "meaningful" because it did not identify specific factors that could cause actual results to differ.  Opp., 16:24-25.  But the language <u>did</u> warn about specific risks of things that could cause forecasts or projections to differ, including: (i) Rockley's customers are large corporations with substantial negotiating power and exacting standards meaning Rockley may not be able sell its products to those customers or enter agreements on favorable terms; (ii) Rockley depends on a few large customers for a substantial portion of its revenue and losing or reducing orders from those customers could significantly reduce revenue and impact operating results; (iii) financial condition could suffer if Rockley cannot expand its customer base; and (iv) customers can cancel or reduce orders on short notice.  *See* ECF 85-3, p 61.

There is probably no such thing as cautionary language sufficient to satisfy plaintiff's securities lawyers, but a fair reading of the language accompanying Statement 1 shows that it was robust and specific.  Plaintiffs cite *SEC v. DeFrancesco*, 683 F.Supp.3d 367, 374 (S.D.N.Y. 2023) for the proposition that "generic" risk warnings in cautionary language do not afford "safe harbor"

---

[4]  Filed with the Form 8-K on March 19, 2021 as Exhibit 99.4 (*see* ECF 85-3).

DEFENDANT ANGELO COLOMA'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

protection. But context is everything. In *DeFrancesco*, the court held that the risks were "couched as if they are future possibilities, when in fact they were already realized facts." *Id.*, citing *In re Prudential Sec. Inc. Ltd. P'Ships Litig.*, 930 F.Supp. 68, 72 (S.D.N.Y. 1996) (One may not "warn[ ] his hiking companion to walk slowly because there might be a ditch ahead when he knows with near certainty that the Grand Canyon lies one foot away."). In other words, *DeFrancesco* was not a "safe harbor" case at all because the court found the statements *were not forward-looking in the first place* but rather a discussion of existing fact. By contrast, Statement 1 was clearly forward-looking as it opined about Rockley's *future* growth. And since it was accompanied by meaningful cautionary language, the Court can stop its analysis at Prong 1 and determine that the "safe harbor" applies.

Unsatisfied with this outcome, and faced with the fact that Prong 1 is against them, Plaintiffs try to "muddy the waters" by suggesting the Court has to evaluate Prong 1 and Prong 2 together by evaluating what Coloma actually knew when he made Statement 1. That is an inaccurate recitation of the law. "[I]f a forward-looking statement is identified as such and accompanied by meaningful cautionary statements, then the state of mind of the individual making the statement is *irrelevant*, and the statement is not actionable *regardless of the plaintiff's showing of scienter*." *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1112 (9th Cir. 2010) (emphasis added). In other words, if Statement 1 was forward-looking and accompanied by cautionary language, the analysis ends.

### c. Prong 2 -- The AC Does Not Adequately Plead That Coloma Actually Knew In March 2021 That Statement 1 Was False

It is unclear whether Plaintiffs are arguing that Statement 1 was not forward-looking or that, under Prong 2, Coloma actually knew Rockley was not poised for "imminent commercial growth" when he made Statement 1. Plaintiffs must articulate their argument better for the Court's consideration, but in this case, the analysis ends up in the same place.

20

DEFENDANT ANGELO COLOMA'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

In Prong 2, a person may be liable for a forward-looking statement if they made it with "actual knowledge ... that the statement was false or misleading."  15 U.S.C. § 78u-5(c)(1)(B).  The AC must allege that Coloma actually knew, on March 19, 2021, that Rockley was not poised for imminent commercial growth.

The Opp. argues that Coloma knew various things to a certainty.  But to be clear, there is *not a single paragraph in the AC alleging what Coloma specifically knew about any particular topic at any particular time*.  Not one.  The Opp. does not point to any paragraph in the AC alleging that Coloma knew X fact on Y date, let alone how he knew it.  Plaintiffs fall back on the "group pleading doctrine" by arguing that all defendants "must have" known X, Y, and Z facts.  But that is not good enough for the PSLRA's heightened pleading requirements, particularly for scienter where the Court must "analyze scienter separately for each alleged misrepresentation and each defendant."  *In re Wet Seal*, 518 F.Supp.2d at 1157.

There is nothing in the AC alleging with sufficient particularity a strong inference that Coloma "actually knew" (which is the Prong 2 test) that Rockley was not poised for "imminent commercial growth" as of March 19, 2021.  That should be the end of the Court's analysis as to Prong 2.  But Plaintiffs' further arguments are equally unavailing.

➢ Plaintiffs claim Coloma "actually knew" that Rockley had not yet started designing its Chipset Module and would be unable to meet revenue targets for 2022 and beyond.  Opp., 17:11-14.[5]  But the AC never alleges that Coloma actually knew that in March 2021.  Plaintiffs want the Court to infer it.  From what?  They imply that Coloma took a three-hour "virtual lab tour and product demonstrations" but are just guessing that he did so.[6]  Coloma lived in Singapore, 6000 miles from Rockley.

---

[5] Coloma incorporates by reference his arguments on this point from the Motion (ECF 84, Sect. III.C.2.b) and those of the Rockley Defendants (ECF 64, 14:2-14).

[6] The AC does **not** allege that Coloma attended any such lab tour.  And the referenced Form S-4 (which was not an exhibit to the AC) states that "SC Health"

21

He never visited its facility nor met its personnel. There are no allegations he was part of Rockley's day-to-day operations. There are no allegations he was privy to its financial information or product-development timelines. By contrast, it is clear that SCH relied on (i) Rockley's historical revenue, sales, and customer data, as audited by E&Y through the end of 2020 (ECF 85-4, pp 358, 363); and (ii) projections and forecasts provided by Rockley management (ECF 85-3, p 59 & ECF 85-5, p 858).

➢ Plaintiffs claim Coloma "actually knew" that Apple would not start selling the product Rockley was designing for it until 2026. Opp., 17:14-15. But the AC never alleges that Coloma was privy to Rockley's internal product-development timelines or communications with Apple. And the AC never alleges that Coloma had any insight into when Apple would begin selling a particular Rockley product. Vague allegations that Coloma took a three-hour "virtual lab tour" (which is total guesswork) and agreed to do "thorough due diligence" of any merger partner (from a 2019 SCH Form S-4 filed a year before SCH knew about Rockley) are insufficient to establish that Coloma had actual knowledge about Rockley's product-development status for Apple in March 2021.

➢ Plaintiffs claim Coloma "actually knew" there was a serious risk that Rockley's revenues from Hengtong would disappear because U.S. regulators might ban it.[7] Opp., 17:15-19. But the AC never alleges how Coloma had a "crystal ball" to see into the future what U.S. regulators would do months later in December 2021. And there are no allegations that Coloma received any internal reports, analysis, or correspondence indicating that Hengtong might get banned by U.S. regulators.

---

attended a lab tour, without saying who. *See* ECF 85-4, p 216. Plaintiffs are just guessing that Coloma took the tour, so this allegation proves nothing.

[7] Coloma incorporates by reference the Motion's arguments on this point at ECF 84, 22:20-23:25 & 25:25-26:18.

DEFENDANT ANGELO COLOMA'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

The AC utterly failed to allege anything about what Coloma actually knew in March 2021 when he made Statement 1. Absent such allegations, Coloma qualifies for Prong 2 of the "safe harbor."

### 2. Statement 1 Was Puffery

"Vague statements of optimism" that are not "objectively verifiable" are non-actionable puffery. *Police Ret. Sys. of St. Louis v. Intuitive Surgical Inc.*, 759 F.3d 1051, 1060 (9th Cir. 2014); *Kong v. Fluidigm Corp.*, No. 22-15396 2023 WL 2134394, *2 (9th Cir. Feb. 21, 2023) (comments about product adoption being "robust" and "thriving", the portfolio doing "outstanding", the franchise growing "extremely strongly" the investment funnel being "on the whole, very deep" were puffery); *Farhar v. Ontrak, Inc.*, 714 F.Supp.3d 1198, 1209-10 (C.D. Cal. 2024) (statement that customer pipeline would "proceed into new heights" was puffery as there was no objective measure of "new heights"); *In re Align Tech., Inc. Sec. Litig.*, Case No. 20-cv-02897-MMC 2021 WL 1176642, *3 (N.D. Cal. Mar. 29, 2021) (statements that China was a "great growth market" with "tremendous growth" and "great economics" were puffery); *Barry v. Colony NorthStar Inc.*, Case No. CV 18-2888-GW(MRWx) 2019 WL 132237710, *14 (C.D. Cal. Jan. 24, 2019) (statement that company had "positive momentum" was puffery because no way to measure it). Coloma's statement that SCH believed Rockley was poised for "imminent commercial growth" was puffery since there was no way to objectively measure what that meant or if it was achieved.

There can be times when the word "imminent" is not puffery. In *Police Ret. Sys.*, the court found it was not puffery when the company stated that FDA approval of a drug was "imminent" when the company knew that it was not. 759 F.3d at 1060; *see also Warshaw v. Xoma Corp.*, 74 F.3d 955, 958 (9th Cir. 1996) (telling investors FDA approval was "going fine" when company knew it would never come was not puffery). But in those cases, it was not puffery because FDA approval of a specific drug was a readily-ascertainable, binary event. Either the FDA was about

to approve the drug or it was not.  By contrast, saying that Rockley's "commercial growth" was "imminent" is totally vague.  How was Rockley's "commercial growth" to be measured?  What metrics would be used to measure growth?  Over what period of time would growth have to happen before it was not "imminent"?  Like statements about "proceeding to new heights" and achieving "tremendous growth", this was puffery.

### 3.  Statement 1 Was An Opinion

To plead the falsity of opinions, "the plaintiff must allege both that the speaker did not hold the belief she professed and that the belief is objectively untrue."  *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615-16 (9th Cir. 2017) (citation and quotation omitted).  Statement 1 talks about "believing" something would happen in the future.  That is an opinion.  Further, there is no allegation that Coloma did not believe Statement 1.  Plaintiffs claim that Statement 1 was conveying concrete facts about Rockley's present state of affairs.  But Plaintiffs never explain how a statement about Rockley being poised for future growth could be a concrete fact about a present state of affairs.  As stated above, the AC does not adequately allege that Coloma actually knew Statement 1 was false.

## B.      Statements 6 (a) & (b) Are Not Attributable To Coloma

Statements 6 (a) and (b) allege two misstatements from the Proxy Statement about: (a) Rockley's revenue projections for 2022 to 2024; and (b) Rockley's plan to start delivering final samples of its chipset module to customers in the 1H-2022 with production ramping up in the 2H-2022.  Plaintiffs' claim Coloma is responsible for every statement in the Proxy Statement because he signed it.  Opp., 11:15.

### 1.  An Outsider Like Coloma Signing The Proxy Statement Does Not Make Him Responsible For The Accuracy Of Every Statement In It

Plaintiffs cannot attribute every statement in the Proxy Statement to Coloma just because he signed it.  *In re Gupta Corp. Sec. Litig.*, 900 F.Supp. 1217, 1241

(N.D. Cal. 1994) considered allegations that directors were liable for misstatements in a Form 10-K because they signed it. The court disagreed, finding the claims were "conclusory allegations unsupported by assertions of specific day-to-day involvement" in Gupta's management and insufficient to sue outside directors and a minority shareholder. *Id.* "[T]he mere fact that an outside director signed a group published document does not make the outside director liable for the contents of the document." *Id.*, citing *In re Ross Sys. Sec. Litig.*, No. C-94-0017-DLJ 1994 WL 583114, *6 (N.D. Cal. July 21, 1994) (outside director not liable just because he signed Form 10–K).

The revenue projections and product-development timelines were Rockley's. But Coloma was neither a director nor officer of Rockley. He worked for SCH, a separate company that was in an arm's-length transaction with Rockley as its de-SPAC acquiror. As to the revenue projections of Statement 6 (a), the Proxy Statement makes clear that they were provided by ***Rockley's management***. *See* ECF 85-3, p 59 & ECH 85-5, p 858. And as to both Statements 6 (a) & (b), there are no allegations that Coloma had "specific day-to-day involvement" in Rockley's product development, customer interactions, or financial projections. Vague claims that he took a three-hour virtual tour (which are total guesswork) do not make him a Rockley insider. Accordingly, he is not liable for statements in the Proxy Statement that were provided by Rockley.

### 2. Statements 6 (a) & (b) Qualify For The PSLRA Safe Harbor

#### a. Statements 6 (a) & (b) Are Forward-Looking

Statement 6 (a) projects Rockley's revenue for 2022, 2023, and 2024. **<u>First</u>**, revenue projections are, by definition, forward-looking statements. *See No. 84 Employer-Teamster*, 320 F3d. at 936. **<u>Second</u>**, the Proxy Statement specifically identified revenue projections as forward-looking statements. "Forward-looking statements . . . may include, without limitation, statements regarding: . . . Rockley's projected financial information, anticipated growth rate, and market opportunity"

DEFENDANT ANGELO COLOMA'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

ECF 85-6, p 1695.  **Third**, there can be no question that a projection of revenues years into the future is a forward-looking statement.  For those reasons, Statement 6 (a) is indisputably a forward-looking statement.

Statement 6 (b) was also forward-looking.  **First**, whether Rockley would deliver samples of its chipset module more than one year after the Proxy Statement was filed was discussing a future event.  **Second**, the Proxy Statement specifically identified production timelines as forward-looking statements.  "Forward-looking statements . . . may include, without limitation, statements regarding: . . . the development status and anticipated timeline for commercial production of Rockley's products".  *Id.*

### b. Prong 1 -- Statements 6 (a) & (b) Were Accompanied By Cautionary Language

The Proxy Statement included robust cautionary language.

➢ "Rockley's forecasts and projections are based upon assumptions, analyses, and internal estimates developed by Rockley's management. If these assumptions, analyses, or estimates prove to be incorrect or inaccurate, Rockley's actual operating results may differ materially from those forecasted or projected."  ECF 85-6, p 1736.

➢ "Market opportunity estimates and growth forecasts are subject to significant uncertainty and are based on assumptions and estimates that may not prove to be accurate."  *Id.*, pp 1697, 1740.

➢ "There can be no assurance that future developments affecting Rockley [] or SC Health will be those that Rockley [] or SC Health have anticipated. These forward-looking statements involve a number of risks, uncertainties (many of which are beyond Rockley's, [] or SC Health's control) or other assumptions that may cause actual results or performance to be materially different from those expressed or implied by these forward-looking statements."  *Id.*, p 1695.

The Proxy Statement provides a two-page list of specific risks that could affect Rockley's performance, including impacts on financial projections and product-development timelines. *See id.*, pp 1697-98. In total, this is robust cautionary language identifying specific risks, which is sufficient to meet Prong 1 and forestall any need for a Prong 2 analysis as to Statements 6 (a) & (b). *See In re Cutera Sec. Litig.*, 610 F.3d at 1112.

### c. Prong 2 -- The AC Does Not Adequately Plead Coloma Actually Knew In July 2021 That Statements 6 (a) & (b) Were False

Coloma incorporates the arguments in Sect. III.A.1.b, *supra*, that there are no allegations in the AC indicating what Coloma actually knew and when.

## IV.   CONCLUSION

For the reasons stated herein and in the Motion, Coloma respectfully submits that the Motion should be granted with prejudice.

Dated:  December 2, 2024

HOLMES, ATHEY, COWAN & MERMELSTEIN LLP

By: /s/ Joel M. Athey
    Joel M. Athey

*Attorneys for Defendant*
Angelo Coloma

DEFENDANT ANGELO COLOMA'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6.2

The undersigned, counsel of record for Defendant Angelo John Coloma, certifies that this brief contains 6981 words (excluding the caption, the table of contents, the table of authorities, the signature block, the certification required by L.R. 11-6.2, and any indices and exhibits), which complies with the word limit of L.R. 11-6.1.

Dated:  December 2, 2024                    HOLMES, ATHEY, COWAN &
                                            MERMELSTEIN LLP

                                            By: /s/ Joel M. Athey
                                                Joel M. Athey

                                            *Attorneys for Defendant* Angelo Coloma

DEFENDANT ANGELO COLOMA'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT