UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

HONORABLE MONICA RAMIREZ ALMADANI

UNITED STATES DISTRICT JUDGE PRESIDING

– – –

KENNETH S. GROSSMAN,                )
                    PLAINTIFF,      )
                                    )
VS.                                 )   NO. CV 23–09501 MRA
                                    )
DAVID SIN, ET AL.,                  )
                    DEFENDANT,      )
_____)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

LOS ANGELES, CALIFORNIA

MONDAY, DECEMBER 16, 2024

_____

KATIE E. THIBODEAUX, CSR 9858
U.S. OFFICIAL COURT REPORTER
312 NORTH SPRING STREET, #436
LOS ANGELES, CALIFORNIA 90012

APPEARANCES OF COUNSEL:


FOR PLAINTIFF:

ROBBINS GELLER RUDMAN & DOWD LLP

BY:  NATHAN LINDELL

-AND- KEVIN SCIARANI

655 WEST BROADWAY

SUITE 1900

SAN DIEGO, CA  92101


FOR DEFENDANTS RICKMAN, KARANTH & MEIER:

PILLSBURY WINTHROP SHAW PITTMAN LLP

BY:  BRUCE A. ERICSON

4 EMBARCADERO CENTER

22ND FLOOR

SAN FRANCISCO, CA 94111


FOR DEFENDANT COLOMA:

HOLMES, ATHEY, COWAN & MERMELSTEIN LLP

BY:  JOEL ATHEY

811 WILSHIRE BOULEVARD

SUITE 1460

LOS ANGELES, CA 90017

LOS ANGELES, CALIFORNIA; MONDAY, DECEMBER 16, 2024

1:58 P.M.

- - - - -

THE CLERK:  CALLING CASE CV 23-9501, KENNETH S. GROSSMAN VERSUS DAVID SIN, ET AL.  COUNSEL, PLEASE STEP FORWARD AND STATE YOUR APPEARANCES.

MR. LINDELL:  GOOD AFTERNOON, YOUR HONOR.  NATHAN LINDELL FROM ROBBINS GELLER RUDMAN & DOWD ON BEHALF OF LEAD PLAINTIFFS.

MR. SCIARANI:  GOOD AFTERNOON, YOUR HONOR.  KEVIN SCIARINI FROM ROBBINS GELLER RUDMAN & DOWD ON BEHALF OF PLAINTIFFS.

MR. CORES:  MICHAEL CORES FROM ROBBINS GELLER.  I AM RUNNING THE TECH.

THE COURT:  GOOD AFTERNOON.

MR. ERICSON:  GOOD AFTERNOON, YOUR HONOR.  BRUCE ERICSON FOR DEFENDANTS RICKMAN, KARANTH AND MEIER.

MR. ATHEY:  AND GOOD AFTERNOON, YOUR HONOR.  JOEL ATHEY ON BEHALF OF DEFENDANT ANGELO COLOMA.

THE COURT:  GOOD AFTERNOON, EVERYONE.  THE ROCKLEY DEFENDANT'S MOTION TO DISMISS HAS BEEN PENDING FOR SEVERAL MONTHS.  UPON DEFENDANT COLOMA'S FILING OF HIS

MOTION TO DISMISS IN AUGUST, I DECIDED THAT IT WOULD BE MORE EFFICIENT TO HEAR AND DECIDE BOTH MOTIONS TO DISMISS TOGETHER.

I DO INTEND TO ISSUE A DECISION WITHIN THE NEXT 30 DAYS JUST SO BOTH PARTIES ARE AWARE OF THAT.

AS I READ THE FIRST AMENDED COMPLAINT, PLAINTIFFS ALLEGE SEVERAL FALSE AND/OR MISLEADING STATEMENTS THAT FALL INTO IT SEEMS THREE MAIN CATEGORIES. SO THERE ARE THE ALLEGED DECEPTIONS ABOUT THE HENGTONG JOINT VENTURE, MISREPRESENTATIONS ABOUT THE APPLE REVENUE ESTIMATES AND COMMERCIALIZATION PROSPECTS, AND THIRD, DECEPTIONS ABOUT ROCKLEY'S PRODUCT DEVELOPMENT AND COMMERCIALIZATION PROSPECTS.

IS THAT ACCURATE?

MR. LINDELL:  I THINK THAT IS FAIR, YOUR HONOR.

THE COURT:  BASED ON MY REVIEW OF THE STATEMENTS, MANY SEEM INACTIONABLE SUBJECT TO THE SAFE HARBOR PUFFERY OR OPINION STATEMENTS, BUT LET'S ASSUME SOME ARE ACTIONABLE.  I AM JUST NOT SURE THAT THE AMENDED COMPLAINT SUFFICIENTLY PLEADS SCIENTER FOR SECURITIES FRAUD.

AND SO WHAT I WOULD APPRECIATE IS FOR THE PLAINTIFFS TO IDENTIFY -- I KNOW THIS IS IN YOUR BRIEFING, BUT SUMMARIZE FOR ME WHAT PARTICULAR FACTS GIVE RISE TO A STRONG INFERENCE THAT DEFENDANTS ACTED WITH THE

REQUIRED STATE OF MIND.

AND SO I WANT TO BE ABLE TO UNDERSTAND THE WAY YOU ARE LOOKING AT THIS AND WHAT SPECIFIC STATEMENTS STAND OUT TO YOU AND HOW THE COURT IS SUPPOSED TO APPROACH THIS ISSUE OF LOOKING AT THE ALLEGATIONS SUPPORTING SCIENTER HOLISTICALLY.

THIS IS DEFENDANTS' MOTION, THOUGH, SO PERHAPS WE WILL START WITH DEFENDANTS AND THEN WE WILL LET PLAINTIFF RESPOND.

SO LET ME GIVE EACH OF YOU 10 MINUTES.

MR. ATHEY:  YOUR HONOR, JOEL ATHEY ON BEHALF OF ANGELO COLOMA.  MR. ERICSON AND I JUST FLIPPED A COIN AND DECIDED I WOULD GO FIRST.  SO HERE I AM.  I WON'T TAKE 10 MINUTES, I DON'T THINK.

LOOK, WE HAVE SUBMITTED I THINK 50 PAGES OF BRIEFING AND SEVERAL THOUSAND PAGES OF EXHIBITS.  THERE IS PROBABLY VERY LITTLE THAT I CAN SAY TO YOU, YOUR HONOR, THAT YOU HAVE NOT ALREADY DIGESTED AND THOUGHT ABOUT.

I WOULD REALLY LIKE TO LEAVE THE COURT WITH FOUR THOUGHTS AS IT PERTAINS TO OUR MOTION.  AND THIS IS JUST FOR MR. COLOMA.  MR. ERICSON IS GOING TO I THINK DIG DOWN A LITTLE BIT DEEPER INTO THE HENGTONG AND APPLE ISSUES.

THE FIRST ISSUE IS THAT AS PLEAD THERE IS

REALLY ONLY ONE STATEMENT THAT IS ALLEGED AS TO MY CLIENT MR. COLOMA.  THAT WAS A STATEMENT MADE AT THE VERY BEGINNING OF THE INVESTOR CALL THAT HIS COMPANY, WHICH WAS PROPOSING TO PURCHASE OR MERGE WITH ROCKLEY WAS POISED FOR IMMINENT GROWTH SOMEWHERE DOWN THE ROAD.

THE OPPOSITION BRIEF HAD SUGGESTED A NUMBER OF OTHER STATEMENTS THAT THE COURT SHOULD CONSIDER FOR MR. COLOMA, BUT THE FUNDAMENTAL PROBLEM WITH THAT, YOUR HONOR, IS THAT THOSE STATEMENTS WERE IDENTIFIED FOR THE FIRST TIME IN THE OPPOSITION BRIEF RATHER THAN IN THE AMENDED COMPLAINT ITSELF.  AND THAT IS NOT PROPER UNDER EITHER RULE 9 OF THE FEDERAL RULES OF CIVIL PROCEDURE OR THE PSLRA.  AND IT IS NOT PROPER FOR A COUPLE OF GOOD POLICY REASONS.

NUMBER ONE, AND WE CITED CASES FOR THIS, BUT JUST AT A HIGH LEVEL YOU CAN'T REPRESENT THAT A STATEMENT WAS FALSE UNTIL YOU HAVE IDENTIFIED WHAT THE STATEMENTS WERE.  AND NUMBER TWO, YOU CAN'T ESTABLISH SCIENTER, THE POINT THAT YOUR HONOR STARTED US OFF WITH, WITHOUT SEPARATELY AND SPECIFICALLY IDENTIFYING WHO MADE WHAT STATEMENT, WHAT THE STATEMENT WAS, WHY IT WASN'T TRUE, AND HOW WE CAN ESTABLISH A STRONG INFERENCE IF A PERSON KNEW IT WASN'T TRUE.

AND THE NINTH CIRCUIT CASE LAW THAT WE HAD CITED IS VERY CLEAR ON THE FACT THAT THE COURT HAS TO

EVALUATE AT THE VERY LEAST SCIENTER ON A STATEMENT BY STATEMENT, DEFENDANT BY DEFENDANT BASIS.  AND OF COURSE THE ENTRY POINT INTO THAT FUNNEL, IF YOU WILL, IS YOU HAVE TO HAVE THE STATEMENTS.

AND IN THE CASE OF THE AMENDED COMPLAINT THERE IS JUST ONE.  ALL THE OTHER STATEMENTS THAT WERE ARTICULATED IN THE OPPOSITION BRIEF I THINK SHOULD NOT BE CONSIDERED BY THE COURT BECAUSE THEY ARE IN THE OPPOSITION BRIEF.

SO WE ADDRESS THOSE STATEMENTS.  THE COURT HAS OUR ARGUMENTS ON THOSE.  I AM NOT GOING TO REPEAT THEM.

I WOULD LIKE TO JUST GO TO MY SECOND POINT THAT I WANTED TO LEAVE THE COURT WITH TODAY, AND THAT HAS TO DO WITH THE ONE STATEMENT ITSELF.  IT IS A FORWARD-LOOKING STATEMENT, YOUR HONOR.

HE SAID OUR COMPANY BELIEVES THAT ROCKLEY IS POISED FOR IMMINENT GROWTH.  THE WORD POISED AND THE WORD IMMINENT, ALTHOUGH I KNOW THAT MY COLLEAGUES ON THE OTHER SIDE THINK THAT IT HAS SOME SORT OF SPECIAL SIGNIFICANCE, MEANS IN THE FUTURE.  HAS NOT HAPPENED YET.

IT IS BY DEFINITION A FORWARD-LOOKING STATEMENT ABOUT FUTURE ECONOMIC PERFORMANCE, AND THE CASE LAW IS VERY CLEAR IN THE NINTH CIRCUIT THAT A STATEMENT ABOUT FUTURE ECONOMIC PERFORMANCE, JUST LIKE A STATEMENT ABOUT A FUTURE PROJECTION OF EARNINGS AND REVENUES IS

FORWARD-LOOKING.

THE STATEMENT WAS ALSO ACCOMPANIED BY CAUTIONARY LANGUAGE. THAT CAUTIONARY LANGUAGE APPEARS IN A NUMBER OF PLACES ON THE DATE IT WAS MADE.

SO THE DATE IN QUESTION WAS MARCH 19TH OF 2021. THAT WAS THE DATE ON WHICH THERE WAS AN INVESTOR CALL WHEN THIS STATEMENT WAS ALLEGEDLY MADE. THERE WERE ALSO OTHER FILINGS THAT CAME OUT THAT DAY THAT WERE ALL FILED TOGETHER IN ONE 8K, YOUR HONOR.

THERE WAS A TRANSCRIPT OF THE INVESTMENT CALL. THERE WAS A SUMMARY OF RISKS AND A STATEMENT THAT WAS PRESENTED. THERE WAS AN INVESTOR PRESENTATION AND THERE WAS A PRESS RELEASE. AND ALL FIVE OF THOSE DOCUMENTS, INCLUDING THE INVESTOR CALL TRANSCRIPT, INCLUDED CAUTIONARY LANGUAGE SAYING THAT IF SOMETHING IS NOT A STATEMENT OF HISTORICAL FACT THEN IT IS A FORWARD-LOOKING STATEMENT. AND IF IT IS A FORWARD-LOOKING STATEMENT, YOU NEED TO READ ALL THE RISK FACTORS THAT WE HAVE IDENTIFIED.

NOW, PLAINTIFF HAS SUGGESTED THOSE RISK FACTORS AREN'T GOOD ENOUGH OR THAT THE CAUTIONARY LANGUAGE ISN'T GOOD ENOUGH. I AM NOT SURE WHAT CAUTIONARY LANGUAGE WOULD HAVE BEEN SUFFICIENT FOR MY LEARNED COLLEAGUES, BUT IN THIS CASE, YOUR HONOR, LET'S JUST LOOK AT WHAT ARE THE THINGS THEY ARE COMPLAINING

ABOUT.

NUMBER ONE, THAT HENGTONG MIGHT GET BANNED SOMEWHERE DOWN THE ROAD BY U.S. REGULATORS. NUMBER TWO, THAT APPLE MIGHT PULL OUT AS A CUSTOMER AND NOT BUY AS MUCH FROM THEM. AND NUMBER THREE, THAT THEY MIGHT NOT BE ABLE TO GENERATE REVENUES IN 2023 AND 2024 FROM A CHIP THAT THEY HAVEN'T DEVELOPED YET.

SO IF YOU JUST LOOK AT THOSE REAL QUICKLY, THE CAUTIONARY LANGUAGE SAYS UP AND DOWN, AND ALL THE CITES -- BUT THEY ARE ALL IN THE BRIEFING, THAT CUSTOMER RELATIONSHIPS ARE SUBJECT TO REGULATORY RISK AND THAT HENGTONG WAS ONE OF THEIR MOST IMPORTANT CUSTOMERS.

SETTING ASIDE HOW IT IS THAT MR. COLOMA WOULD HAVE KNOWN THAT SIX MONTHS AFTER HE MADE A STATEMENT THE U.S. GOVERNMENT WOULD BAN HENGTONG -- I THINK THAT IS A BIG ISSUE, BUT SETTING THAT ASIDE, AS TO THE APPLE REVENUES, THE CAUTIONARY LANGUAGE MAKES VERY CLEAR THAT APPLE HAS NO MINIMUM ORDER. THEY CAN PULL OUT AT ANY TIME. AND IF THEY DO, THEY ARE OUR BIGGEST CUSTOMER AND THEY ARE GOING TO IMPACT OUR OPERATIONS AND REVENUES.

AND NUMBER THREE, ON THE PRODUCT TIMELINE -- AND THIS IS WHERE MY COLLEAGUE MR. ERICSON I THINK IS SMARTER ON THE ISSUE -- WELL, HE'S SMARTER ON A LOT OF ISSUES THAN ME, BUT ON THIS ONE IN PARTICULAR, IT SAYS THAT THEY WEREN'T EVEN GOING TO START TRYING TO

COMMERCIALIZE THIS CHIP SET MODULE UNTIL 2022.

MY CLIENT IS BEING SUED FOR SOMETHING HE SAID IN MARCH OF 2021. THEY ARE SAYING THAT IN MARCH OF 2021 HE KNEW THAT THEY WOULDN'T DO SOMETHING THAT THEY EVEN SAID THEY WEREN'T GOING TO TRY TO START DOING UNTIL 2022 AND WOULDN'T BE READY UNTIL 2023 OR '24.

YOUR HONOR, I CAN'T THINK OF A BETTER PARADIGM OF A FORWARD-LOOKING STATEMENT THAT -- THE THIRD THING I WOULD LIKE TO LEAVE THE COURT WITH HAS TO DO WITH SCIENTER. THAT HAS TO BE PLED VERY SPECIFICALLY. THERE HAVE TO BE FACTS CREATING A STRONG INFERENCE THAT MY CLIENT KNEW THAT THE ONE STATEMENT THAT HE MADE WASN'T TRUE WHEN HE MADE IT. AND THERE ARE NO ALLEGATIONS IN THE AMENDED COMPLAINT SPECIFIC TO SAYING ANGELO COLOMA KNEW ON X DATE THAT Y FACT WAS NOT TRUE.

THERE ARE SOME INFERENCES THAT THE GROUP OF DEFENDANTS COULDN'T POSSIBLY HAVE THOUGHT THAT SOMETHING WAS TRUE BECAUSE OF X, Y OR Z, BUT WHEN YOU START GOING DOWN THE ROAD OF SHOULD HAVE KNOWN OR COULDN'T POSSIBLY HAVE BELIEVED WHAT YOU ARE REALLY DOING IS SPECULATING.

AND THE PSLRA NO LONGER ALLOWS THAT. IT USED TO BE YOU COULD SUE PEOPLE FOR SECURITIES FRAUD FIGURING BASED ON THEIR POSITION IN THE COMPANY OR THEIR PART OF THE TRANSACTION THEY MUST HAVE KNOWN ABOUT IT AND THEN SORT IT OUT LATER IN DISCOVERY, WHO IS RIGHT AND WHO IS

WRONG.  BUT YOU CAN'T DO THAT ANYMORE.

AND I THINK THAT THE THIRD POINT I HAD IS THAT WITH RESPECT TO THE COMPLAINT AS TO MR. COLOMA, THERE ARE NO REAL CONCRETE FACTS ALLEGED THAT HE KNEW SOMETHING IN PARTICULAR WAS TRUE OR NOT TRUE AT A PARTICULAR MOMENT.

AND THEN THE LAST POINT, THE FOURTH ONE I WOULD LIKE TO LEAVE THE COURT WITH, AND THEN OF COURSE ANSWER ANY QUESTIONS YOU MAY HAVE, YOUR HONOR, IS THAT MR. COLOMA WAS NOT A ROCKLEY OFFICER.  HE WAS NOT A ROCKLEY DIRECTOR.  HE WAS NOT A ROCKLEY EMPLOYEE OR RESEARCHER.  HE WORKED FOR THE OTHER SIDE IN AN ARM'S LENGTH TRANSACTION WHERE COMPANY A WAS THINKING ABOUT MERGING WITH COMPANY B.

THE SECURITIES FILINGS MAKE IT CLEAR THAT HIS COMPANY, SC HEALTH, HIRED AN INTERNATIONAL LAW FIRM, ROPES & GRAY, TO REPRESENT THEM IN THE DILIGENCE.  HIRED A WELL-RESPECTED INVESTMENT BANK, BANK OF AMERICA, TO REPRESENT THEM IN THE DILIGENCE, HAD AUDITORS, AND WERE PART OF A WORKING GROUP THAT INCLUDED ERNST & YOUNG, WHO WERE ROCKLEY'S AUDITORS, PILLSBURY, WHO WERE THE LAWYERS FOR ROCKLEY, COHEN & COMPANY, WHO WERE THE INVESTMENT BANKERS.

THERE WAS AN ENTIRE WORKING GROUP OF PEOPLE WHO WERE RECEIVING INFORMATION FROM ROCKLEY MANAGEMENT. BUT WHAT IS CLEAR FROM THE FILINGS IS THAT AS TO

HISTORICAL DATA IN 2019 AND 2020, THAT HAD BEEN AUDITED LIKE LITERALLY THE MINUTE THAT MR. COLOMA WAS MAKING THE STATEMENT. SO HE WAS ENTITLED TO RELY ON THAT.

AND AS TO PROJECTIONS ABOUT WHAT WOULD HAPPEN IN THE FUTURE, ROCKLEY'S MANAGEMENT PROVIDED THOSE PROJECTIONS. IT SAYS IT ALL OVER THE SECURITIES FILINGS, YOUR HONOR, AND WE HAVE CITED TO A NUMBER OF THOSE IN OUR BRIEFING. AND SO MR. COLOMA WAS ONE COG, FOR LACK OF A BETTER WORD, IN A WORKING GROUP OF PEOPLE WHO WERE RECEIVING THE SAME INFORMATION FROM ROCKLEY AT THE SAME TIME.

AND THIS IS NOT ME POINTING FINGERS AT ROCKLEY. I DON'T KNOW WHETHER THE INFORMATION WAS RIGHT OR WRONG. WHAT I WOULD LIKE TO LEAVE THE COURT WITH IS THAT THERE IS NO ALLEGATION THAT MR. COLOMA HAD ANY BETTER OR DIFFERENT OR -- AND I AM PUTTING THIS IN AIR QUOTES FOR THE COURT REPORTER -- "TRUER INFORMATION" ABOUT WHAT WAS GOING ON WITH ROCKLEY'S PRODUCT DEVELOPMENT OR ITS CUSTOMER RELATIONSHIPS THAN WHAT YOU SEE THE ENTIRE GROUP OF PEOPLE DOING DUE DILIGENCE ON THIS DEAL PERFORMING.

SO I WILL LEAVE IT AT THAT. I AM HAPPY TO ANSWER QUESTIONS OR PERHAPS RESPOND TO WHATEVER PLAINTIFF HAS TO SAY ABOUT IT, BUT THOSE ARE THE FOUR THINGS I WOULD LIKE TO LEAVE THE COURT WITH.

THE COURT:  DOES THE AMENDED COMPLAINT ADDRESS THE INVESTOR PRESENTATION IN DETAIL?  I JUST DON'T REMEMBER.

MR. ATHEY:  THERE ARE SOME QUOTES, YOUR HONOR.  I THINK THAT THEY HAVE A COUPLE OF GRAPHS.

THE COURT:  AND MR. COLOMA WAS PART OF THAT PRESENTATION; CORRECT?

MR. ATHEY:  WELL, HE WAS PRESENT WHEN IT WAS MADE, AND I KNOW THAT PLAINTIFF HAS SUGGESTED THAT HE WAS ONE OF THE PRESENTERS.  I WASN'T THERE, BUT I WILL SAY THAT THAT DOCUMENT IS UNSIGNED, YOUR HONOR.  AND SO THERE IS NO EFFORT IN THE AMENDED COMPLAINT TO ISOLATE WHAT PARTS OF IT MR. COLOMA WROTE OR DIDN'T WRITE OR PRESENTED ON OR DIDN'T PRESENT ON.

THEY ARE SIMPLY TRYING TO STICK EVERYTHING IN THE INVESTOR PRESENTATION ON HIM BECAUSE HIS PICTURE IS ON IT.  THAT IS WHAT USED TO BE CALLED THE GROUP PLEADING DOCTRINE, WHERE A GROUP OF FOLKS WOULD PUT TOGETHER A DOCUMENT THAT WAS NOT ATTRIBUTABLE TO ANYBODY AND IT WAS POSSIBLE TO SUE THEM ALL IN THE THEORY THAT AGAIN WE WILL SORT IT OUT LATER.

HERE THERE IS NO EFFORT IN THE AMENDED COMPLAINT TO SAY THAT MR. COLOMA SAID THIS OR WROTE THIS STATEMENT AND KNEW THAT IT WASN'T TRUE.  AND I GUESS WHAT I WOULD SAY, AND HERE I RISK REPEATING MYSELF, THE REAL CORE OF THAT INVESTOR PRESENTATION THAT THEY MIGHT HAVE A

PROBLEM WITH AS IT PERTAINS TO MY CLIENT, AND AGAIN THEY DON'T ARTICULATE IN THE AMENDED COMPLAINT ANYTHING THEY SAID FROM IT, WOULD BE THE REVENUE PROJECTIONS.

AND IT IS VERY CLEAR IN THE CAUTIONARY LANGUAGE THAT THE REVENUE PROJECTIONS WERE PROVIDED BY ROCKLEY, NOT BY MR. COLOMA.

THE COURT:  WHAT ABOUT THE PROXY STATEMENT THAT HE DID SIGN?

MR. ATHEY:  YES.  HE DID SIGN THE PROXY STATEMENT. THAT IS EXACTLY RIGHT.  SO WE CITED A CASE, IN RE DELTA, WHICH IS A NORTHERN DISTRICT CASE, WHICH SAID THAT JUST BECAUSE YOU SIGNED AN 8K DOESN'T MEAN YOU ARE RESPONSIBLE FOR EVERYTHING IN IT.  AND THAT CASE PERTAINED TO OUTSIDE DIRECTORS OF THE COMPANY IN QUESTION.

THE INFORMATION IN THE PROXY STATEMENT WAS PRIMARILY ROCKLEY'S INFORMATION, INCLUDING OF COURSE THE KEY PROJECTIONS.  AGAIN, MR. COLOMA WAS NOT AN OFFICER OR A DIRECTOR OF ROCKLEY.  HE WAS AN OFFICER OF THE DE-SPAC PARTNER, SC HEALTH.

SO I THINK THAT THERE IS AN ARGUMENT TO BE MADE, AND I AM MAKING IT, THAT HE SHOULD NOT BE AUTOMATICALLY LIABLE FOR EVERYTHING THAT IS IN THAT STATEMENT EVEN IF HIS SIGNATURE IS ON IT.  BUT MORE IMPORTANTLY, YOUR HONOR -- LET'S SET THAT ASIDE FOR A MOMENT.

THAT IS AN INTERESTING ACADEMIC DEBATE. BUT I THINK THE MORE IMPORTANT POINT IS THAT THERE IS NOTHING IN THE AMENDED COMPLAINT THAT IDENTIFIES SPECIFIC STATEMENTS THAT MR. COLOMA MADE IN THE PROXY STATEMENT THAT THEY SAY ARE WRONG. AND MORE IMPORTANTLY, THERE ARE NOT SPECIFIC ALLEGATIONS IN THE AMENDED COMPLAINT ESTABLISHING SCIENTER, THAT MR. COLOMA KNEW THAT THIS TOPIC OR THAT TOPIC WAS NOT TRUE AT THE TIME HE MADE IT.

THE PROXY STATEMENT IS JUST A REHASH OF EVERYTHING THAT HAD COME BEFORE IT, WHICH WAS THAT MR. COLOMA WAS ONE COG IN A HUGE DUE DILIGENCE MACHINE. AND THERE IS NO ALLEGATION THAT HE RECEIVED ANY "DIFFERENT OR BETTER OR TRUER," AGAIN WITH THE AIR QUOTES, INFORMATION THAN ANYBODY ELSE. AND I THINK THAT --

THE COURT: WHY DID HE SIGN THE DOCUMENT?

MR. ATHEY: WHAT IS THAT?

THE COURT: WHY DID HE SIGN THE STATEMENT?

MR. ATHEY: WELL, HE WAS THE CEO OF DE-SPAC PARTNER SC HEALTH. SO SOMEBODY HAD TO SIGN IT. I MEAN, SC HEALTH WAS A SPECIAL PURPOSE ENTITY. IT ONLY HAD TWO PEOPLE AT IT. SO MAYBE HE FLIPPED A COIN AND LOST, I DON'T KNOW. BUT HE SIGNED IT BECAUSE IT HAD TO GO OUT UNDER SC HEALTH IN ORDER TO SOLICIT SC HEALTH'S INVESTORS TO DECIDE WHAT THEY WANTED TO DO ABOUT THE PROXY.

THE COURT:  AND WHEN WAS THAT SIGNED?

MR. ATHEY:  JULY OF 2021.  I DON'T HAVE THE EXACT DATE IN FRONT OF ME.  THE 21ST MAYBE.

SO REALLY NOT MUCH FURTHER DOWN THE ROAD THAN THE STATEMENT IN MARCH, WHICH IS TO SAY, HEY, YOUR PRODUCTS WON'T BE READY FOR 2024.  WELL, HOW WOULD HE HAVE KNOWN ANY BETTER IN JULY OF 2021 THAT WASN'T TRUE THAN HE KNEW IN MARCH.

THE ONLY REAL INFORMATION HE RECEIVED BETWEEN MARCH AND JULY WAS THE SAME INFORMATION THAT BANK OF AMERICA AND ROPES & GRAY AND EVERYBODY ELSE GOT.  AND THE AMENDED COMPLAINT DOESN'T SAY ANYTHING DIFFERENT.

THE COURT:  THANK YOU, COUNSEL.

MR. ERICSON:  THANK YOU, YOUR HONOR.  I GUESS I WILL JUST -- I DON'T KNOW IF --

THE COURT:  YES.  YOU WILL HAVE A CHANCE TO RESPOND AND I MAY HAVE MORE QUESTIONS FOR YOU.

MR. ERICSON:  GOOD AFTERNOON, YOUR HONOR.  BRUCE ERICSON FOR DEFENDANTS RICKMAN, KARANTH AND MEIR.

I AGREE WITH THE WAY YOUR HONOR CHARACTERIZED THE CASE, THAT THERE ARE ESSENTIALLY THREE SETS OF ALLEGED FALSE STATEMENTS.  AND I UNDERSTAND YOUR HONOR WOULD LIKE ME TO FOCUS ON SCIENTER, BUT I THINK THE BEST WAY TO APPROACH IT IS TO TALK A LITTLE ABOUT THE THREE AND THEN ANALYZE SCIENTER WITH RESPECT TO EACH.

SO LET'S START WITH HENGTONG.  I THINK THE IMPORTANT THING HERE IS TO FOCUS ON THE CONTEXT.  WHAT WE ARE TALKING ABOUT WITH HENGTONG IS AN ALLEGED OMISSION, THE OMISSION TO SAY THAT THE GOVERNMENT WAS GOING TO PUT HENGTONG ON THIS ENTITY LIST, THIS LIST OF BANNED COMPANIES.  IT IS AN OMISSION.  IT IS NOT A CLAIM THAT THERE IS A MISSTATEMENT.  IT'S A CLAIM OF AN OMISSION.  BUT WHAT DID THE MARKETPLACE KNOW.

THE MARKETPLACE KNEW THAT ROCKLEY WAS LARGELY DEPENDENT ON HENGTONG FOR REVENUES.  THIS WAS MADE VERY CLEAR IN REPEATED DISCLOSURES.  IT KNEW BECAUSE IT MADE CLEAR IN REPEATED DISCLOSURES THAT ROCKLEY WAS VULNERABLE TO EXPORT CONTROL ISSUES, THAT IF THERE WERE PROBLEMS WITH EXPORT CONTROL THIS IS COULD ADVERSELY AFFECT ROCKLEY.

AGAIN, THIS WAS STATED OVER AND OVER IN THE SECURITIES FILINGS.  THE MARKET KNEW THAT WHAT HUAWEI WAS ON THE ENTITY LIST.  THIS IS WHY THEY PUBLICIZED IT HAD BEEN ANNOUNCED BY THE GOVERNMENT IN THE FEDERAL REGISTER BACK IN 2019.  AND THE MARKET KNEW THAT WORLD BANK HAD BARRED HWN TECHNOLOGY, THE FORMER HUAWEI MARINE, FROM BIDDING ON THIS CABLE PROJECT IN THE SOUTH PACIFIC BECAUSE AGAIN THAT APPEARED IN MULTIPLE MEDIA, FOX NEWS AND MANY PUBLICATIONS.

NOW, THE PLAINTIFFS CONCEDE THAT DEFENDANT HAD

NO ADVANCED KNOWLEDGE THAT THE GOVERNMENT WAS GOING TO BAN HENGTONG.  EVERYONE KNEW THAT THE GOVERNMENT BANNED HUAWEI.  BUT THE DEFENDANTS HAD NO ADVANCED KNOWLEDGE THE GOVERNMENT WAS GOING TO BAN HENGTONG.

SO WHAT THE PLAINTIFF'S POSITION BOILS DOWN TO IS THE PROPOSITION THAT MY CLIENT SHOULD HAVE SPECULATED ABOUT THAT, SHOULD HAVE SPECULATED THAT MAYBE THE GOVERNMENT WOULD DO THIS TO HENGTONG.  AND THERE SIMPLY IS NO LEGAL BASIS FOR MY CLIENTS TO HAVE SPECULATED.  AND FOR FAILURE TO DO WHAT THE LAW DOESN'T REQUIRE YOU TO DO IN NO WAY IS INDICATIVE OF SCIENTER.  IT MAY INDICATE FALSITY, BUT IT IS CERTAINLY NOT INDICATIVE OF SCIENTER. SO THAT IS THE FIRST ONE.

SECONDLY, THE QUESTION OF RELATIONS WITH APPLE.  AGAIN, I THINK IT IS IMPORTANT TO FOCUS ON THE CONTEXT:  WHAT DID THE MARKET KNOW BECAUSE WHAT HAD THE MARKET BEEN TOLD.

HERE, AGAIN, OVER AND OVER AGAIN IN SECURITIES FILINGS, PROXY STATEMENTS, REGISTRATION STATEMENTS, QUARTERLY AND ANNUAL REPORTS, THINGS LIKE THIS ARE SAID. ROCKLEY SAID, "APPLE," AND I QUOTE, "DOES NOT HAVE ANY MINIMUM OR BINDING PURCHASE OBLIGATIONS TO ROCKLEY UNDER THIS AGREEMENT AND COULD ELECT TO DISCONTINUE OR REDUCE MAKING PURCHASES FROM ROCKLEY WITH LITTLE OR NO NOTICE," CLOSED QUOTE.

SO THE MARKET KNEW THIS WAS AN AT-WILL RELATIONSHIP AT BEST AND APPLE COULD WALK AWAY TOMORROW OR THE NEXT DAY FOR ANY REASON OR NO REASON.

WHAT MY CLIENTS ALSO DISCLOSED OVER AND OVER AGAIN WAS THAT THE NATURE OF THE RELATIONSHIP AT THIS POINT ARE WHAT ARE CALLED NONRECURRING ENGINEERING AGREEMENTS.

THE VERY NAME NONRECURRING TELLS YOU THIS ISN'T GOING ON FOREVER, FOLKS.  IT IS FOR NOW BUT MAYBE NOT FOR TOMORROW.  AND IT SAID, AND I QUOTE, "ROCKLEY HAS TO DATE GENERATED REVENUE PRIMARILY FROM NON-RECURRING ENGINEERING DEVELOPMENT SERVICES FOR CONSUMER-SPECIFIC DESIGNS OF SILICON PHOTONIC CHIPS AS PER INCORPORATION TO ITS CUSTOMERS AND PRODUCTS," CLOSED QUOTE.  SO AGAIN, THEY ARE TOLD IT IS FOR NOW, IT'S MAYBE NOT FOREVER.

AND THEN, THIRDLY, AND PERHAPS MOST IMPORTANTLY, AND AGAIN OVER AND OVER IN SECURITIES FILINGS WHAT MY CLIENTS SAID WAS, AND I QUOTE, "AS THESE PRODUCTS ARE STILL UNDER DEVELOPMENT, THERE COULD BE NO ASSURANCE THAT WE WILL BE SUCCESSFUL IN THESE PRODUCT DEVELOPMENT EFFORTS OR THAT EVEN IF DEVELOPED THAT SUCH PRODUCTS WILL ACHIEVE WIDESPREAD MARKET ACCEPTANCE."

AGAIN, THAT IS IN PROXY STATEMENTS.  IT IS IN REGISTRATION STATEMENTS.  THE MARKET HAS TOLD US OVER AND OVER AGAIN.  SO THE MARKET KNEW THIS ISN'T FOREVER.  THIS

IS NOW WE ARE WORKING WITH THESE PEOPLE.  WE HAVE HOPES. WE ARE MAKING PROJECTIONS BASED ON THOSE HOPES BUT WE ARE TELLING YOU THERE ARE NO GUARANTEES.  WE COULD BE DROPPED LIKE A ROCK TOMORROW.

SO, AGAIN, YOU THINK THAT FROM A SCIENTER POINT OF VIEW, WHERE IS THE MISSTATEMENT, WHERE IS THE -- WHERE IS SOMETHING THAT DISPLAYS A RECKLESSNESS WITH RESPECT TO THE TRUTH GIVEN THESE VERY, VERY EXPLICIT DISCLOSURES.  IT IS SIMPLY NOT THERE.

NOW, WHAT THE PLAINTIFF DOES POINT TO IS THEY POINT TO SOME OF THE PUFFIER SORTS OF STATEMENTS THAT MY CLIENTS MADE FROM TIME TO TIME WHERE THEY WERE EXPRESSING THEIR HOPES IN VARIOUS TERMS.  AND YES, THEY USED EXPRESSIONS LIKE HAPPENING NOW, VALIDATED, NO MEANINGFUL HURDLES AND SO ON.  BUT AGAIN, IF YOU LOOK AT THOSE IN CONTEXT WHAT YOU FIND IS WHAT THEY ARE SAYING IS EXPLAINED.

FOR INSTANCE, VALIDATED, THEY EXPLAIN IN SO MANY WORDS WHAT WE MEAN IS WE ARE TALKING TO APPLE AND OTHER PEOPLE.  THEY ARE INTERESTED IN WHAT WE ARE OFFERING THEM.  IT IS VALIDATED IN THE SENSE THAT WE ARE TALKING, NOT IN THE SENSE THAT WE HAVE A PRODUCT THAT IS READY TO GO, NOT IN THE SENSE THAT WE ARE ACTUALLY SELLING ANYTHING; IT IS VALIDATED ONLY IN THE SENSE THAT THEY ARE PAYING US FOR NONRECURRING ENGINEERING AND THEY

ARE TALKING TO US.

AND THIS IS EXPLAINED OVER AND OVER.  SO WORDS THAT IN ISOLATION MIGHT SEEM MISLEADING, READ IN CONTEXT, AND THEY ARE EXPLAINED IN THESE SECURITIES FILINGS, ARE NOT MISLEADING, ARE NOT WRONG.

THE COURT:  MR. ERICSON, THE PLAINTIFFS SEEMED TO FOCUS ON THE FACT THAT THE ASIC CHIP SET WAS NOT ACTUALLY BEING DEVELOPED IN 2021, AND THAT DEFENDANTS KNEW THAT THERE WASN'T PROGRESS, THAT, YOU KNOW, FOR EXAMPLE, THE ARCHITECT HAD NOT BEEN HIRED UNTIL THE END OF 2021.

SO HOW DO YOU ADDRESS THAT.

MR. ERICSON:  YES.  ASIC IS WHAT PEOPLE CALL IT. APPLICATION SPECIFIC INTEGRATED CIRCUIT.  IT IS NOT -- IT IS NOT A GENERIC CHIP BUT A CHIP THAT DOES SOMETHING IN PARTICULAR.  THAT IS WHAT IT MEANS.  WELL, AGAIN, GLAD YOU BROUGHT THAT UP, YOUR HONOR, BECAUSE THE STATEMENT -- THE LAST OF THE QUOTES -- I JUST READ THE ONE ABOUT PRODUCTS ARE STILL UNDER DEVELOPMENT -- WHEN YOU LOOK AT THAT IN THE CONTEXT OF THE SECURITIES FILINGS, THAT IS A STATEMENT MADE RIGHT AFTER THE DISCUSSION OF ASIC AMONG OTHER THINGS THAT WERE UNDER DEVELOPMENT.  AND AGAIN, IT IS MADE CLEAR THAT WE DON'T HAVE AN ASIC YET.  WE DON'T IN FACT HAVE ANY PRODUCT YET, ASIC INCLUDED.  THIS IS MADE CLEAR IN THE SEC FILING.

SO AGAIN IT WAS SOMETHING BEING WORKED ON.  IT

WAS SOMETHING THEY HOPED TO GET DEVELOPED ON SOME TIMEFRAME.  AND MAYBE SOME PEOPLE THOUGHT IT WOULD TAKE LONGER THAN OTHERS SUCH AS THEIR ALLEGED CONFIDENTIAL WITNESS.  BUT IT IS MADE VERY CLEAR TO THE INVESTING PUBLIC, THIS DOES NOT EXIST YET.  IT IS SOMETHING WE ARE WORKING ON.

THE OTHER POINT I MAKE IS THEY ASSUME WITHOUT ACTUALLY ALLEGING ANY FACTS -- THEY ASSUME THAT AN ASIC WAS NECESSARY FOR APPLE IN PARTICULAR TO USE THE PROTONIC PRODUCT.  BUT THERE IS NO BASIS FOR THAT ASSUMPTION.  THERE AREN'T ANY FACTS ALLEGED THAT THE THIRD PARTY THAT IS GOING TO INCORPORATE PHOTONICS INTO ITS PRODUCTS WOULD NEED AN ASIC FROM ROCKLEY AS OPPOSED TO DEVELOPING ITS OWN ASIC.

I MEAN, AN APPLE WATCH OR ANY PRODUCT OF THAT SORT DOES A BUNCH OF THINGS.  IT TELLS THE TIME.  IT TALKS TO YOU.  IT READS YOUR E-MAIL.  AND IT ALSO -- YOU KNOW, BLOOD PRESSURE AND CERTAIN THINGS.

AND THE HOPE WAS THAT THIS WOULD ENABLE TO DO EVEN MORE THINGS.  FOR INSTANCE, GLUCOSE LEVEL AND SO ON IT.  A PRODUCT I WOULD LIKELY BUY IF AND WHEN IT IS READY.  BUT THAT IS MY PROBLEM.

BUT THEY ALL HAVE TO WORK TOGETHER.  AND SO THE NOTION THAT ROCKLEY WOULD DEVELOP A CHIP THAT WOULD INTEGRATE ALL THOSE PRODUCTS IS NOT ALLEGED.  AND THERE

IS JUST NO BASIS FOR WHAT IS BASICALLY AN ASSUMPTION ON THEIR PART.

JUST TO WRAP UP HERE, THEY OFFER A LOT OF THEORIES, ALMOST A SMORGASBORD OF THEORIES FOR SCIENTER, BUT WE KICKED THEM OFF QUICKLY.  AND I DID THIS IN A REPLY SO I NEED NOT BELABOR THE POINT.  NONE OF THEM REALLY FIT HERE.  NONE OF THEM IMPROVE THE SITUATION FOR THEM IN TERMS OF ALLEGING SCIENTER.

THEY SAY, WELL, IF YOU SAY THINGS IN DETAIL, WELL, THAT RAISES AN INFERENCE THAT MAYBE IT IS UNTRUE, BUT HOW DOES THAT APPLY TO HENGTONG.

THE CLIENT SAID NOTHING ABOUT THE GOVERNMENT BANNING HENGTONG UNTIL THE GOVERNMENT BANNED HENGTONG, AND THEN THEY IMMEDIATELY DISCLOSED IT.

AS FOR APPLE, AS I'VE SAID, WHAT MY CLIENTS DID SAY OVER AND OVER, WE DON'T HAVE A PRODUCT HERE.  WE DON'T HAVE BINDING CONTRACT.  WE DON'T HAVE BINDING PURCHASE ORDERS.  WE ARE TALKING.  WE ARE TALKING.  THAT IS WHAT WE ARE DOING.

ACCESS TO INFORMATION.  MY CLIENT HAS HAD ACCESS TO SOME INFORMATION, BUT HE DIDN'T HAVE ACCESS TO WHAT THE GOVERNMENT WAS GOING TO DO.  HENGTONG, IT IS NOT AS IF UNCLE SAM HAD CALLED THEM UP AND GAVE THEM A LITTLE TIP:  WE ARE ABOUT TO BAN HENGTONG.  THERE IS NO ALLEGATION OF ANYTHING LIKE THAT.

THEY MENTION BONUSES THAT MY CLIENTS MIGHT HAVE BEEN ELIGIBLE TO RECEIVE.  SUGGEST THIS PROVIDES A MOTIVE.  THE CASE LAW IS VERY CLEAR.  THE SCHECTER CASE IN THIS DISTRICT IN RE RIGEL PHARMACEUTICALS IN THE NINTH CIRCUIT MAKES VERY CLEAR THAT BONUSES REALLY DO NOT MOVE THE NEEDLE ON SCIENTER.

TEMPORAL PROXIMITY THEY SAY, WELL, YOUR CFO RESIGNED AND LATER YOUR CEO RESIGNED.  WELL, YES, SIX MONTHS APART WHEN THE CEO RESIGNED, HE RESIGNED ONLY ONE OF TWO POSITIONS.  HE STEPPED DOWN AS CEO TEMPORARILY. HE CONTINUED TO BE CHAIRMAN OF THE BOARD.  SO WHAT INFERENCE IS TO BE DRAWN FROM THAT.  NONE THAT I CAN SEE.

CORE OPERATIONS, THE NOTION WITH CORE OPERATIONS DOCTRINE IS IF SOMEBODY SAYS SOMETHING THAT IS A LIE AND THEY SAY, WELL, I DIDN'T KNOW IT WAS A LIE OR I DIDN'T KNOW IT WAS UNTRUE, IT'S ABOUT CORE OPERATIONS AND THEY ARE A SENIOR OFFICIAL THAT BECOMES SUSPECT.  BUT WE DON'T HAVE ANY LIES HERE IN THE FIRST PLACE SO THERE IS NOTHING TO APPLY THE CORE OPERATIONS DOCTRINE TO.

WHEN YOU LOOK AT EACH OF THEIR VARIOUS THEORIES THEY LAY OUT, THEY REALLY DON'T MOVE THE NEEDLE FOR THEM.  AND AS I SAY, FOCUSING ON THE CONTEXT ON WHAT WAS SAID, THEY REALLY DON'T HAVE A CASE WE WOULD CONTEND EITHER AS TO FALSITY OR AS TO SCIENTER.

THE COURT:  THANK YOU, COUNSEL.  I WILL HEAR FROM

PLAINTIFFS.

MR. LINDELL:  GOOD AFTERNOON, YOUR HONOR.  NATHAN LINDELL FROM ROBBINS GELLER RUDMAN & DOWD FOR THE LEAD PLAINTIFFS.

SO I HAVE PREPARED A PRESENTATION THAT I AM HOPEFUL WILL BE HELPFUL TO KIND OF CRYSTALLIZE SOME OF THESE ISSUES.

THE COURT:  HOW LONG IS YOUR PRESENTATION?

MR. LINDELL:  I AM GOING TO TRY AND MAKE IT AS FAST AS I CAN, BUT I THINK IT IS IMPORTANT IF I CAN EXPLAIN.  AND IF AT ANY POINT YOU WANT ME TO SKIP AHEAD, I AM HAPPY TO DO WHATEVER THE COURT WISHES.  BUT I WILL SAY I THINK IT IS IMPORTANT IN A CASE LIKE THIS ESPECIALLY -- AND I AM GOING TO TRY TO RESPOND TO DEFENDANT'S SPECIFIC POINTS, CERTAINLY THE MAIN ONES, AND I DO APPRECIATE THE COURT'S INSIGHT YOU PROVIDED AT THE OUTSET OF THIS HEARING.  I THINK THAT WAS VERY HELPFUL.

AND I THINK I AM GOING TO GO THROUGH ALL THOSE POINTS, BUT GIVEN THE NATURE OF THIS CASE AND SOME OF THE POINTS THAT DEFENDANTS MAKE, I THINK IT IS REALLY IMPORTANT TO ACTUALLY LOOK AT WHAT WAS SAID, WHEN IT WAS SAID, AND WHO IT WAS SAID BY.  I THINK THERE IS SOME CONFUSION ON BEHALF OF DEFENDANT COLOMA AS TO THE SPECIFIC MISSTATEMENTS THAT WE ARE ALLEGING AGAINST HIM. AND I THINK THIS PRESENTATION WILL CLARIFY ALL OF THAT.

AND ALSO I THINK IT IS IMPORTANT TO SPEAK TO YOUR HONOR'S POINT ABOUT SCIENTER.

THE COURT:  I APOLOGIZE.  I WAS TRYING TO SHOW THE PRESENTATION ON MY COMPUTER AND I THINK I PRESSED SOMETHING.  MAYBE THE COURTROOM DEPUTY CAN FIX THAT.

MR. LINDELL:  I WILL TRY TO MAKE IT AS BRIEF AS POSSIBLE, BUT I DO THINK IT IS IMPORTANT, YOUR HONOR, ESPECIALLY SOME OF THE POINTS THEY MADE IN THE STATEMENTS, AND THEY HAD SOME BROAD CLAIMS.

THE OTHER SET OF FACTS THAT KIND OF PREDATE THE CLASS PERIOD THAT ARE IMPORTANT CONCERN THE JOINT VENTURE HENGTONG HRT WHICH BOTH OF MY OPPOSING COUNSEL TALKED ABOUT.  THE HRT WAS A JOINT VENTURE THAT ROCKLEY FORMED WITH A CHINESE COMPANY BY THE NAME OF HENGTONG. AND THEY FORMED THIS COMPANY DECEMBER 17TH, AND THEY HAD DISCLOSED WHICH I WILL GET INTO THAT WHILE THEY WERE DEVELOPING THEIR COMPANY OR THEIR PRODUCTS, THEIR REVENUES WERE GOING TO BE EXTREMELY DEPENDENT ON REVENUE FROM HRT AND APPLE.

AND PRIOR TO THE CLASS PERIOD, A FEW THINGS HAPPENED THAT PLACED THOSE REVENUES AT SIGNIFICANT RISK, AND I THINK IT IS IMPORTANT TO NOTE ABOUT THE JOINT VENTURE, YOUR HONOR, THAT THERE ARE SEVERAL FACTS THAT INDICATE THAT DEFENDANT RICKMAN AND THE OTHER ROCKLEY DEFENDANTS WERE HEAVILY INVOLVED IN THIS VENTURE BECAUSE

IT WAS EXTREMELY IMPORTANT TO THEIR ONGOING OPERATIONS.

SO FIRST THE JOINT VENTURE AGREEMENT WAS SIGNED BY DEFENDANT RICKMAN, AND IT REQUIRED HRT TO PURCHASE ROCKLEY CHIPS AND LICENSE UNDERLYING IP FROM ROCKLEY.  IT ALSO REQUIRED HRT TO ACTIVELY MONITOR EXPORT-RELATED ISSUES AND COMPLIANCE.

AND IT ESTABLISHED A SUBSTANTIAL ROCKLEY PRESENCE WITHIN HRT MANAGEMENT.  TWO OF FIVE DIRECTORS WERE APPOINTED BY ROCKLEY AND ONE OF TWO CORPORATE LEVEL SUPERVISORS.  AND IT IS ALSO IMPORTANT TO NOTE THAT, AS I MENTIONED, THESE REVENUES WERE EXTREMELY IMPORTANT TO ROCKLEY.  IN FACT, FOR THE YEARS 2019 AND 2020, ROCKLEY'S REVENUE DEPENDED ON 33 PERCENT FOR 2019 FROM HRT AND 34 PERCENT FROM HRT.

NOW, BEFORE THE START OF THE CLASS PERIOD SOME IMPORTANT ELEMENTS TOOK PLACE WHICH PLACED THE CONTINUED LIABILITY OF THOSE REVENUES FROM HRT AT SIGNIFICANT RISK. SPECIFICALLY, IN 2019, A COMPANY BY THE NAME OF HUAWEI MARINE WAS ADDED TO THE US BUREAU OF INDUSTRY AND STANDARDS BANNED ENTITY LIST WHICH PROHIBITS US COMPANIES FROM PROVIDING PRODUCTS OR TECHNOLOGY TO SUCH ORGANIZATIONS WITHOUT GOVERNMENT AUTHORIZATION.

IN 2020, HENGTONG, ROCKLEY'S JOINT VENTURE PARTNER, ACQUIRED HUAWEI MARINE AND SUBSEQUENTLY REBRANDED IT TO THE NAME HMT TECH.  NOW, WHAT IS

IMPORTANT ABOUT THAT IS BECAUSE, ALTHOUGH THE REBRANDING OF THE NAME DIDN'T CHANGE SCRUTINY THAT THE COMPANY WAS FACING, IT DID PUBLICLY OBFUSCATE IT.  IN FACT, THE ENTITY LIST WAS NOT UPDATED TO REFLECT THE NEW NAME OF HMT TECH UNTIL FEBRUARY OF 2022.

SO EVEN THOUGH THE COMPANY THAT HENGTONG ACQUIRED WAS OPERATING UNDER THAT NAME INVESTORS DIDN'T KNOW THAT COMPANY HAD BEEN ADDED TO THE LIST.  AND, IN ADDITION, THE ACQUISITION OF HUAWEI MARINE BY HENGTONG ADDED TO EXISTING SECURITY CONCERNS THAT ALREADY EXISTED REGARDING HENGTONG MAINLY DUE TO HENGTONG'S FOUNDERS' CLOSE TIES TO THE CHINESE GOVERNMENT.

AND THESE ONGOING SECURITY CONCERNS WERE CONFIRMED SHORTLY BEFORE THE CLASS PERIOD IN FEBRUARY OF 2021 WHEN THE WORLD BANK INVALIDATED A BID BY HMT TECH TO BUILD SOME UNDERSEA OPTICAL CABLES WHICH CONFIRMED THAT THE US AUTHORITY REMAINED FOCUSED ON HMN TECH FOLLOWING HENGTONG'S ACQUISITION WHICH ALSO SUBSTANTIALLY INCREASED THE RISK THAT HENGTONG ITSELF WOULD BE SOON ADDED TO THE ENTITY LIST.  NOW, GIVEN THE IMPORTANCE OF REVENUES TO ROCKLEY'S INVOLVEMENT WITH THE HENGTONG JOINT VENTURE, THAT IS OBVIOUSLY SOMETHING THAT THE ROCKLEY DEFENDANTS, THE MANAGEMENT OF THE COMPANY WAS CERTAINLY AWARE OF.

NOW, ONE OF THE THINGS THAT THE ROCKLEY DEFENDANTS ARGUE IS THAT ALL THIS INFORMATION WAS

PUBLICLY KNOWN, BUT THEY ARGUE KIND OF OUT OF BOTH SIDES OF THE MOUTH.  ON THIS ISSUE THEY SAY ALL THIS DISCLOSED BUT WE DON'T MAKE ANY ALLEGATIONS THAT ROCKLEY KNEW ABOUT THEM.  SO, ON ONE HAND, THEY WANT THE COURT TO ACCEPT THAT THE PUBLIC COULDN'T HAVE BEEN MISLEAD ABOUT THIS BECAUSE EVERYBODY KNEW ABOUT THIS, BUT WE ALSO HAVEN'T AC ALLEGED THAT THE ROCKLEY DEFENDANTS THEMSELVES KNEW ABOUT THIS.

SETTING ASIDE KIND OF THE PARADOXICAL NATURE OF THAT ASSERTION, IN ESSENCE, WHAT THEY ARE ALLEGING, WHAT THEY ARE ASSERTING IS A TRUTH ON THE MARKET DEFENSE WHICH IS NOT PROPER AT THIS STAGE.  IT IS AN INTENSIVE FACTUAL DISPUTE, AND IT IS DEPENDENT UPON THE FACTS THAT ARE PUBLICLY KNOWN BEING ANNOUNCED WITH ENOUGH FORCE AND ENOUGH PUBLICITY TO MAKE IT SO THAT NO INVESTOR WOULD HAVE POSSIBLY BEEN MISLEAD BY THE REPRESENTATIONS.

AND THAT IS NOT A FINDING THAT THE COURT CAN MAKE ON A MOTION TO DISMISS AND CERTAINLY DEFENDANTS HAVEN'T ESTABLISHED THAT IN THEIR PAPERS.  AND THEY CAN'T ESTABLISH IT HERE BECAUSE NONE OF THE PUBLIC INFORMATION THEY CITE TO PROVIDED ANY INFORMATION ABOUT ROCKLEY'S CONNECTION TO THIS SECURITIES CONCERNS PLACED ON HENGTONG OR EVEN MENTIONED ROCKLEY AT ALL.

THEY CITE TO A NUMBER OF ARTICLES THAT SAY HENGTONG ACQUIRED HUAWEI MARINE, BUT NONE OF THOSE PUBLIC

DISCLOSURES TIED THAT RISK TO ROCKLEY OR ITS REVENUES. SO IT WAS NOT SOMETHING THAT THE PUBLIC WAS MAKE THE CONNECTION ON.

SO AS I PREVIOUSLY MENTIONED, THE CLASS PERIOD STARTS ON MARCH 19TH, 2021.  THAT IS THE DATE WHEN THE DEFENDANTS JOINTLY, SC HEALTH AND ROCKLEY ANNOUNCED THE MERGER.  SO ON THAT DATE, YOUR HONOR, THERE IS A FEW IMPORTANT DISCLOSURES THAT ARE MADE, BUT I THINK IT IS FIRST IMPORTANT TO TALK ABOUT SOME OF THE FACTS THAT KIND OF SET THE BACKGROUND FOR THAT DATE.  AND THESE ARE ALL MENTIONED IN OUR COMPLAINT AND BRIEFING, BUT, FIRST THING TO KNOW, YOUR HONOR, IS THAT SC HEALTH HAD BEEN REQUIRED TO IDENTIFY -- BUT THEY DIDN'T DO SO.  AND THE REASON WHY THAT IS IMPORTANT, YOUR HONOR, IS BECAUSE IT PLACED ADDITIONAL PRESSURE ON SC HEALTH TO GET THIS APPROVED.

THEY KNEW THAT BECAUSE THEY HAD GOTTEN ONE EXTENSION ALREADY, THEY WEREN'T LIKELY TO GET ANOTHER ONE SO IF THE DEAL WITH ROCKLEY FELL APART, THEN THEY WERE LIKELY TO LOSE OUT ON THEIR FINANCIAL INCENTIVES, AND THOSE FINANCIAL INCENTIVES WERE EXTREMELY SIGNIFICANT.

FIRST WITH REGARD TO THE SPONSOR DEFENDANTS THEMSELVES IS THEY STOOD TO GAIN OVER $67 MILLION OF FINANCIAL BENEFITS FROM SUCCESSFULLY COMPLETING THE MERGER, AND THE IMPORTANT THING TO NOTE, YOUR HONOR, IS IF THIS SPECIFIC MERGER WAS NOT COMPLETEED, THOSE

BENEFITS WOULD EXPIRE WORTHLESS.  AND THEY WOULD ALSO HAVE TO RETURN ALL OF THE FUNDS THEY RAISED IN THE IPO TO THE INVESTORS WITH INTEREST.

IN ADDITION TO THE SPONSOR DEFENDANT'S MOTIONS, IF DEFENDANTS RICKMAN AND KARANTH WERE ALSO HIGHLY MOTIVATED TO GET THE DEAL APPROVED FOR A COUPLE OF REASONS BECAUSE ROCKLEY HAD A HISTORY OF INCURRING LOSSES, IT DESPERATELY NEEDED THE MORE THAN $150 MILLION OF CAPITAL.  IN ADDITION, RICKMAN AND KARANTH BOTH STOOD TO RECEIVE SIGNIFICANT SALARY INCREASES FOLLOWING THE MERGER, NEARLY 34 PERCENT FOR DEFENDANT RICKMAN AND APPROXIMATELY 45 PERCENT FOR MR. KARANTH.  IN ADDITION, MR. CAR STOOD TO RECEIVE A $775,000 BONUS, AND MR. RICKMAN STOOD TO RECEIVE AN AWARD WITH AN AGGREGATE VALUE OF 4.5 MILLION INCLUDING 1.5 MILLION IN CASH.

SO, AS A RESULT, ALL OF THE DEFENDANTS SPECIFICALLY MR. KARANTH, MR. RICKMAN AND MR. COLOMA WERE ALL HIGHLY MOTIVATED TO SAY AND DO WHATEVER THEY COULD TO ENSURE THIS DEAL WAS APPROVED BY THE SC HEALTH INVESTORS.

NOW, ON THE DAY OF THE MERGER, DEFENDANTS MADE A SERIES OF REPRESENTATIONS.  THEY RELEASED A JOINT PRESS RELEASE.  THEY HELD A JOINT CALL WITH INVESTORS, AND SC HEALTH FILED A FORM 8K WITH THE SEC WHICH WAS SIGNED BY DEFENDANT COLOMA.  AND ATTACHED TO THAT FORM 8K SIGNED BY DEFENDANT COLOMA WAS THE PRESS RELEASE, THE TRANSCRIPT OF

THE CALL, AND A COPY OF THE PRESENTATION USED DURING THE CALL.

AND THE REASON WHY -- AND YOUR HONOR ASKED COUNSEL FOR DEFENDANT COLOMA WHETHER THESE DOCUMENTS WERE -- HE WAS ASSOCIATED WITH THESE DOCUMENTS, AND THE REASON WHY SC HEALTH WAS THE ONE THAT FILED THESE DOCUMENTS IS SC HEALTH HAD BEEN ENTRUSTED BY THEIR INVESTORS TO SPEARHEAD THIS TRANSACTION.  THEY WERE THE ONES RUNNING THIS TRANSACTION.  THEY WERE THE ONES THAT HAD IDENTIFIED ROCKLEY.

THIS WAS SC HEALTH'S INVESTORS' ACTION THAT WAS LEADING THIS TRANSACTION.  SO SC HEALTH WAS THE ONE RUNNING IT, AND MR. COLOMA WAS THE ONE WHO SIGNED ALL THE DOCUMENTS.  HE SIGNED THE FORM 8K, HE SIGNED THE PRESS RELEASE, AND HIS NAME APPEARED ON THE PRESENTATION.  HE ALSO SPOKE AT THE MERGER ANNOUNCEMENT PRESENTATION.

AND, IN FACT, HERE IS WHAT HE TOLD INVESTORS DURING THE MERGER PRESENTATION.  HE SAID WE BELIEVE ROCKLEY IS POILSED FOR SUBSTANTIAL AND IMMIMENT COMMERCIAL GROWTH.  NOW, IN OUR OPPOSITION PAPER, AS COUNSEL FOR MR. COLOMA POINTED OUT, WE DO REFERENCE SOME OTHER STATEMENTS THAT MR. COLOMA MADE DURING THIS CALL. NOW, I WANT TO BE CLEAR, WE DO NOT ALLEGE THAT ANY STATEMENTS OTHER THAN THOSE SPECIFICALLY IDENTIFIED IN THE COMPLAINT ARE THE ALLEGED MISSTATEMENTS.

THE ADDITIONAL INFORMATION THAT WE PROVIDED IN OUR OPPOSITION WAS PROVIDED IN RESPONSE TO ARGUMENTS MADE BY DEFENDANT COLOMA TO PROVIDE CONTEXT AROUND THE STATEMENTS THAT HE MADE, TO SHOW THAT THIS STATEMENT WAS NOT JUST AN ISOLATED, ONE-OFF STATEMENT.  WHAT HE DID WAS SPOKE ABOUT THE BASIS FOR THIS CONCLUSION.  THIS STATEMENT WAS A CONCLUSION THAT HE PRESENTED TO INVESTORS BASED ON INVESTIGATION THAT HE HAD BEEN ENTRUSTED TO CONDUCT, AND HE SUPPORTED IT WITH SPECIFIC FACTS REGARDING HIS KNOWLEDGE AND HIS AWARENESS OF ROCKLEY'S TECHNICAL CAPABILITIES AND THEIR CLIENTS OR THEIR CUSTOMERS.

SO CONTRARY TO WHAT DEFENDANT COLOMA CLAIMED IN THEIR PAPERS, WE ARE NOT ASSERTING ANY NEW FOUND STATEMENTS.  WE JUST PROVIDE ADDITIONAL INFORMATION TO GIVE CONTEXT TO THE ALLEGED MISSTATEMENT THAT MR. COLOMA DID MAKE.

THE COURT:  BUT THAT CONTEXT WAS NOT IN THE AMENDED COMPLAINT.

MR. LINDELL:  THERE ARE CERTAIN STATEMENTS THAT WE REFERENCED FROM EXHIBITS THAT THEY ATTACHED TO THE COMPLAINT THAT IS -- THAT THEY ATTACHED TO THEIR MOTION WHICH IS WHICH ARE NOT INCLUDED IN THE COMPLAINT.

AND IT IS BASICALLY HIM PROVIDING -- SAYING THAT WE ARE EXCITED ABOUT THEIR TECHNOLOGY.  WE ARE

EXCITED ABOUT THEIR PARTNERSHIP WITH A REFERENCE TO APPLE.  SO IT SHOWS THAT HE HAS A BASIS FOR MAKING THIS STATEMENT.  IT IS NOT JUST AN UNSUPPORTED, VAGUE PUFFERY CLAIM.

IN ADDITION, DURING THE SAME CONFERENCE DEFENDANT RICKMAN TOLD INVESTORS THIS IS NOT A FUTURE STORY.  THIS IS HAPPENING NOW, AND WE HAVE STRONG VISIBILITY ON OUR NUMBERS BASED ON OUR CLOSE PARTNERSHIP WITH OUR CUSTOMERS.  DEFENDANTS ALSO SAID AT THE MERGER ANNOUNCEMENT BOTH IN THE PRESENTATION AND MR. RICKMAN SPECIFICALLY SAID IT DURING THE CALL THAT THE COMMERCIAL LAUNCH OF THE CONSUMER PRODUCTS WAS EXPECTED TO HAPPEN IN 2022.  THIS WAS A REPRESENTATION MADE BOTH IN THE PRESENTATION OF THE MATERIALS ITSELF AND REITERATED BY MR. RICKMAN DURING THE CALL THAT THE TECHNOLOGY AND THE BUSINESS MODEL WERE VALIDATED BY LEADING BLUE CHIP CUSTOMERS.

THEY ALSO NOTED THAT, AND THIS IS ANOTHER REPRESENTATION THAT WAS MADE BOTH IN THE PRESENTATION AND DURING THE CALL, THAT ROCKLEY HAD RECEIVED A $70 MILLION PLUS NRE COMMITMENT FROM ONE OF THE LARGEST TECHNOLOGY COMPANIES IN THE WORLD WHICH IS A REFERENCE TO APPLE AS IT WAS LATER REVEALED.

AND I WANT TO TALK ABOUT THAT REAL QUICK BECAUSE BOTH OF THE DEFENSE COUNSEL MENTIONED THAT THERE

WERE DISCLOSURES MADE THAT THOSE NRE COMMITMENTS WEREN'T ACTUALLY COMMITMENTS.  THE FIRST TIME THAT DISCLOSURE EVER APPEARED WAS IN APRIL OF 2021.  SO AT THE TIME THIS SPECIFIC REPRESENTATION WAS MADE IN MARCH OF 2021 THERE WAS NO SPECIFIC DISCLOSURE THAT APPLE DID NOT HAVE A COMMITMENT TO THEM.

AND, THEN, BASED ON ALL THE INFORMATION DISCLOSED TO INVESTORS DURING THE CALL, MR. RICKMAN SAID THAT ROCKLEY HAD VERY CONSERVATIVELY PROJECTED REVENUES TO EXCEED OR -- OF 426 MILLION IN 2023, AND 1.125 BILLION IN 2024.

AND THOSE REVENUES, THEY SPECIFICALLY SAID ON THIS CALL, WERE EXPECTED TO BE GENERATED ENTIRELY ON THE BACK OF THEIR CONSUMER WEARABLE CHIP SET MODULE.  SO THEY SAID -- AND MR. RICKMAN DESCRIBED IT IN DETAIL DURING THIS CALL THAT THEY WERE DEVELOPING A CONSUMER WEARABLE CHIP SET MODULE THAT WOULD GO INTO CONSUMER ELECTRONIC COMPANIES' WEARABLE DEVICES AND THEY EXPECTED THAT SPECIFIC PRODUCT TO PROVIDE THE ENTIRE BASIS OF THE 2023 AND 2024 REVENUE PROJECTIONS.

AND THEY ALSO SAID THAT FOR THOSE YEARS, THOSE SPECIFIC YEARS, 2023 AND 2024, SIGNIFICANT AMOUNTS OF THOSE REVENUES WERE SPECIFICALLY ATTRIBUTABLE TO APPLE. THEY SAID THAT -- AND THEY CALLED IT COMPANY A AT THIS POINT IN TIME, BUT THEY SAID THAT IN 2023 THEY EXPECTED

$124 MILLION WORTH OF REVENUE FROM THE CONSUMER WEARABLES PRODUCT FOR APPLE AND $307 MILLION IN 2024 FOR THE CONSUMER WEARABLES PRODUCT FOR APPLE.

NOW, WHAT THEY DIDN'T SAY DURING THIS INITIAL CALL AT THE START OF THE CLASS PERIOD IS THAT THERE WAS NO CONSUMER WEARABLES PRODUCT AVAILABLE FOR ROCKLEY'S CUSTOMERS TO VALIDATE, AND THAT IS BECAUSE THEY HAD YET TO BEGIN, EVEN BEGIN THE PROCESS OF DEVELOPING THE CRITICAL ASIC CHIP SET WHICH WE SPECIFICALLY ALLEGE WAS ESSENTIAL TO ROCKLEY'S EFFORTS TO CREATE A COMMERCIALLY VIABLE CONSUMER WEARABLES PRODUCT THAT COULD FIT INSIDE EXISTING DEVICES FROM CONSUMER WEARABLES COMPANIES SUCH AS APPLE.

SO, MR. ERICSON MENTIONED THAT OR HE CLAIMED THAT WE DO NOT ALLEGE ANY FACTS THAT THE ASIC CHIP SET WAS ACTUALLY ESSENTIAL TO THE DEVELOPMENT OF THIS CONSUMER WEARABLE CHIP SET MODULE, BUT, IN FACT, WE ALLEGE THAT IN GREAT DETAIL IN PARAGRAPHS 98 THROUGH 101 OF OUR COMPLAINT.  AND IT IS BASED ON THE FORMER CHIP DESIGNER'S ACCOUNT WHICH SPECIFICALLY EXPLAINS WHY THE ASIC CHIP SET WAS ESSENTIAL TO CREATING THIS PRODUCT THAT THEY KEPT TALKING ABOUT.

HE SAID THAT THEY COULD NOT CREATE A PRODUCT THAT WOULD FIT INTO OTHER CONSUMER ELECTRONICS EXISTING PRODUCTS WITHOUT THIS CHIP SET, THAT THE BATTERY LIFE OF

THEIR -- OF THE PRODUCT THEY WERE CURRENTLY WORKING ON WOULD NOT BE SUFFICIENT WITHOUT THIS ASIC CHIP SET AND THAT THE COST OF PRODUCING THE PROTOTYPE WAS PROHIBITIVE WITHOUT THIS ASIC CHIP SET.

AND HE ALSO SAID IN DETAIL EXPLAINING WHY THE ASIC CHIP SET DEVELOPMENT TAKES AT LEAST 15 TO 24 MONTHS TO DEVELOP BEFORE WHICH IT WOULD NEED THEN TO BE SUBJECT TO MULTIPLE ROUNDS OF HUMAN STUDIES, QUALIFIED BY CONSUMER WEARABLES OEMS AND THEN INCORPORATED INTO THOSE CUSTOMERS PRODUCT DESIGNS, AND THAT IS INFORMATION THAT DEFENDANT RICKMAN CONFIRMED THROUGHOUT THE CLASS PERIOD SPECIFICALLY TALKING ABOUT THESE PROCESSES, THAT IT WASN'T JUST THE DEVELOPMENT OF THE ASIC CHIP SETS WHICH ACCORDING TO THE FORMER CHIP DESIGNER WOULD TAKE AT LEAST 15 TO 24 MONTHS, BUT THERE WERE OTHER STEPS THEY NEEDED TO COMPLETE AFTER THAT.

AND SO GIVEN THAT TIMELINE, IT WAS NOT POSSIBLE TO LAUNCH -- AT THIS POINT IN MARCH, IT WAS ALREADY NOT POSSIBLE TO LAUNCH A COMMERCIALLY VIABLE PRODUCT IN 2023, AND IT WAS NOT POSSIBLE TO BE INCORPORATED INTO THE PRODUCT LAUNCHES FROM THESE CONSUMER COMPANIES AT THE START OF 2023.

THE OTHER FACT THEY DIDN'T DISCLOSE IS AT THIS POINT THE NRE COMMITMENT FROM APPLE WAS NOT A COMMITMENT AT ALL.  SO, AGAIN, THEY CLAIM THAT THEY DISCLOSED THAT

FACT, BUT THAT DISCLOSURE ABOUT APPLE WAS NOT FIRST MADE UNTIL APRIL SO A COUPLE OF WEEKS AFTER THIS ANNOUNCEMENT. THEY ALSO DIDN'T DISCLOSE THAT THE PRODUCT ROCKLEY WAS WORKING ON FOR APPLE WAS NOT EXPECTED TO HIT MARKET UNTIL 2026 WHICH CONTRADICTED THEIR REPRESENTATION THAT A SIGNIFICANT AMOUNT OF THEIR PROJECTED REVENUES WERE EXPECTED TO COME FROM APPLE.

A FEW WEEKS LATER, IN JULY, JULY 22ND OF 2021, SC HEALTH FILES THE PROXY STATEMENT, AND YOUR HONOR ASKED MR. COLOMA'S COUNSEL A LITTLE BIT ABOUT THE PROXY STATEMENT. YOU ASKED HIM WHY HE SIGNED IT, AND THE REASON WHY SC HEALTH SIGNED THAT IS BECAUSE AS I MENTIONED THEY WERE THE ONES SPEARHEADING THIS DEAL TO TAKE ROCKLEY PUBLIC BECAUSE THEY HAD A HUGE FINANCIAL INCENTIVE TO ACCOMPLISH THAT.

AND IT WAS THEIR INVESTORS, THE SC HEALTH INVESTORS, THE ONES WHO PARTICIPATED IN SC HEALTH'S IPO THAT WOULD DETERMINE THE FATE OF THIS MERGER BECAUSE THEY HAD INVESTED IN THE IPO UNDER THE HOPES THAT SC HEALTH WOULD IDENTIFY A SUITABLE TARGET, AND THEY COULD TAKE THAT TARGET PUBLIC.

AND SO IT WAS MR. COLOMA'S INVESTORS, SC HEALTH'S INVESTORS, THAT NEEDED TO APPROVE THIS MERGER, AND THEY ARE THE ONES INVESTING EQUITY AND TRUSTING IN MR. COLOMA AND THE OTHER SPONSORS TO CONDUCT DUE

DILIGENCE AND PROVIDE THEM WITH THE INFORMATION ABOUT ROCKLEY THAT WOULD DETERMINE WHETHER THIS MERGER SHOULD BE APPROVED. SO THAT IS WHY THEY SIGNED THIS DOCUMENT.

SO AND M. COLOMA'S COUNSEL MENTIONED THAT, YOU KNOW, ALL THE INFORMATION THAT CAME FROM ROCKLEY, WELL, THAT WAS THEIR PURPOSE IN THIS TRANSACTION WAS TO GET THE INFORMATION FROM ROCKLEY, TO VET IT, TO CONDUCT DUE DILIGENCE ON ROCKLEY, AND THEN PRESENT IT TO THEIR INVESTORS TO APPROVE THE MERGER.

AND, IN THAT PROXY STATEMENT, THEY REITERATED THE REVENUE GUIDELINES FOR 2022 AND 2023 AS WELL AS 2024. THEY ALSO STATED IN THE PROXY STATEMENT THAT THEY STARTED -- THEY PLANNED TO START DELIVERING FINAL SAMPLES OF THE CONSUMER WEARABLES CHIP SET MODULE IN THE FIRST HALF OF 2022 WITH PRODUCTION RAMP EXPECTED TO HAPPEN IN THE SECOND HALF OF 2022. SO THEY ARE BASICALLY SAYING, WITHIN 12 MONTHS, WE ARE GOING TO HAVE FINAL SAMPLES READY, AND, THEN, SHORTLY AFTER THAT, WE ARE GOING TO BE COMMENCING OUR PRODUCTION RAMP.

THEY ALSO IDENTIFIED APPLE AND ROCKLEY AS THE LARGEST CUSTOMERS AT THAT TIME, AND THEY SAID THAT OPERATING RESULTS FOR THE FORESEEABLE FUTURE WOULD CONTINUE TO DEPEND ON APPLE AND HRT. THEY FRAMED IT AS A LITTLE BIT OF A WARNING, BUT, REALLY, THE PURPOSE OF THOSE STATEMENTS WAS TO TELL INVESTORS THAT, OKAY, WE

HAVE TWO REALLY SECURE BIG REVENUE STREAMS FROM RELIABLE COMPANIES.  WE HAVE GOT ONE FROM APPLE, AND WE HAVE THIS OTHER RELIABLE ONE FROM HRT WHICH IS OUR JOINT VENTURE. WE HAVE SIGNIFICANT REVENUE FROM THEM IN THE PAST COUPLE OF YEARS.

THE PURPOSE OF THAT DISCLOSURE TO INVESTORS WAS TO SAY, EVEN THOUGH WE ARE DEVELOPING THESE PRODUCTS, WE HAVE SOME GOOD RELIABLE REVENUE THAT IS COMING IN OVER THE NEXT FEW YEARS.  THEY ALSO INCLUDED SOME BOILERPLATE EXPORT REGULATIONS WHICH REALLY JUST SAY, HEY, SOME OF OUR PRODUCTS ARE SUBJECT TO EXPORT LAWS, AND THERE COULD BE RISK ASSOCIATED WITH IT.  THEY DON'T DETAIL ANY OF THE SPECIFIC RISKS.  THEY DON'T SAY THAT THEY HAD A JOINT PARTNER WHO HAD ACQUIRED A COMPANY THAT WAS ON THE BANNED ENTITY LIST.

THEY JUST SAY IF ANY OF THESE EXPORT LAWS WERE IMPOSED ON US, IT WOULD BE VERY PROBLEMATIC FOR OUR COMPANY.  THEY DIDN'T DISCLOSE THE KNOWN RISKS THAT MADE THAT A REAL POSSIBILITY.

AGAIN, THEY CONTINUED TO CONCEAL THAT THEY HADN'T YET STARTED THE ASIC CHIP SET DEVELOPMENT WHICH WAS GOING TO TAKE AT LEAST 22 TO 24 MONTHS.  THEY DIDN'T DISCLOSE THEY HAD NO BASIS TO EXPECT CONSUMER WEARABLES REVENUE FROM APPLE BEFORE 2026, AND THEY DIDN'T DISCLOSE SIGNIFICANT RISKS THAT WERE THREATENING THE NEAR TERM NRE

REVENUES FROM HRT AND APPLE.

NOW, IN APRIL OR AUGUST 11, 2021, THE MERGER CLOSES, AND, IN NOVEMBER OF 2021, THEY HOLD THEIR 3Q 2021 EARNINGS, AND HERE IS WHERE A LOT OF THE REALLY CORE MISREPRESENTATIONS ABOUT THE PRODUCT DEVELOPMENT START BEING MADE.  FIRST ONE WAS MADE BY MR. RICKMAN DURING AN EARNINGS CALL WHERE HE SAID THAT THE FULL PRODUCTION VERSION OF THE CONSUMER WEARABLES CHIP SET MODULE WOULD BE COMPLETED BY THE MIDDLE OF NEXT YEAR MEANING THE MIDDLE OF 2022 MEANING NINE MONTHS FROM THE TIME HE MADE THIS STATEMENT AND THAT THEY WOULD BE GOING INTO THE END CUSTOMER LAUNCH PRODUCTS IN 2023 TO BE RAMPED UP IN Q4 OF 2022.

MR. RICKMAN ALSO SAID DURING THIS CALL THERE WAS NO CHANGE TO THE PREVIOUSLY ANNOUNCED, COMMERCIAL LAUNCH TIMELINE OR THE 2022 REVENUE GUIDANCE.  AND, IMPORTANTLY, YOUR HONOR, IN RESPONSE TO A SPECIFIC QUESTION FROM AN ANALYST, PAUL SILVERSTEIN, WHICH WE DETAIL IN OUR COMPLAINT, HE SAID THERE WERE NO MEANINGFUL HURDLES REMAINING FROM A TECHNOLOGY STANDPOINT AS IT RELATED TO THE CONSUMER WEARABLES CHIP SET MODULE.

THEY ALSO DISCLOSED THAT THEIR REVENUE GUIDANCE FOR 2021 WOULD DEPEND ON A SIGNIFICANT TECHNICAL SALE WHICH WAS A SALE TO HRT, BUT THEY CONTINUED TO SAY THEY WERE DEPENDENT UPON THE HRT AND APPLE REVENUES.

AGAIN, THE SAME FACTS WERE CONTINUED TO BE CONCEALED THAT THEY HADN'T STARTED THE PROCESS, THEY DIDN'T HAVE A BASIS TO EXPECT REVENUES FROM APPLE AND THAT THE NEAR TERM REVENUES WERE AT SIGNIFICANT RISK OF GOING AWAY.

IN DECEMBER OF 2021 IS WHEN THEY HIRE, FINALLY, THE FORMER CHIP DESIGNER TO ARCHITECT THIS ESSENTIAL ASIC CHIP SET, AND THE FORMER CHIP DESIGNER PROVIDED SEVERAL KEY FACTS DETAILED IN THE COMPLAINT. FIRST, ACCORDING TO THIS CHIP DESIGNER --

THE COURT:  SO IN THE INTERESTS OF TIME, IF YOU COULD JUST SUMMARIZE WHAT PARAGRAPHS YOU WANT ME TO FOCUS ON.  I APPRECIATE THIS, BUT WE DO HAVE ANOTHER HEARING AFTER THIS.

MR. LINDELL:  I UNDERSTAND.  AND I DO HAVE A COPY OF THIS THAT WE CAN PROVIDE TO COUNSEL AND YOURSELF IN WHICH IS CASE IT IS HELPFUL.  I DO THINK IT IS A CONCISE SUMMARY OF THE KEY POINTS.

MR. ERICSON:  WE WOULD OBJECT TO THAT, YOUR HONOR.

THE COURT:  ON WHAT BASIS?

MR. ERICSON:  THAT IT IS A LATE FILING OF SOME SORT, SOME SORT OF SUPPLEMENTAL BRIEFING TO THE --

THE COURT:  WELL, IT IS HIS PRESENTATION THAT HE IS GIVING IN COURT THAT HE HAS PREPARED FOR TODAY'S HEARING.

MR. ERICSON:  OBVIOUSLY.

MR. LINDELL:  WELL, IF YOU LIKE, YOUR HONOR, I CAN STEP FORWARD TO THE KEY FALSITIES.

THE COURT:  I WILL CONSIDER WHETHER I NEED THIS, BUT IF YOU COULD JUST FOCUS NOW ON THE KEY QUESTION HERE WHICH IS WHAT FACTS CAN YOU POINT TO THAT SHOW THAT THE DEFENDANTS ACTED HERE TO DECEIVE, TO MANIPULATE, TO DEFRAUD.

MR. LINDELL:  WELL, I THINK SO PART OF IT COMES FROM THE NATURE OF THE SPECIFIC MISREPRESENTATIONS THAT MR. RICKMAN MADE THROUGHOUT THE CLASS PERIOD AND WITH REGARD TO THE PRODUCT DEVELOPMENT.  SO I WILL TRY TO SKIP FORWARD AND JUST KIND OF HIGHLIGHT SOME OF THOSE.

FIRST OF ALL, THEY ARE SO DETAILED AND BLATANTLY FALSE THAT IT IS IMPOSSIBLE TO RATIONALIZE ANY WAY OTHER THAN AN INTENT TO DECEIVE.  A GOOD EXAMPLE OF THAT IS ON JANUARY 13TH, 2022, WHERE MR. RICKMAN GAVE A PRESENTATION AT THIS INVESTOR CONFERENCE.

AMONG OTHER THINGS, HE SAID AT THAT CONFERENCE THAT ROCKLEY HAD SECURED DEEP DESIGN WINS AND COMMITMENTS FROM ITS CONSUMER WEARABLES CUSTOMERS AND THAT THEY ARE THEY WERE NEGOTIATING VOLUME PURCHASE ORDERS AT THIS TIME.  HE ALSO SAID, AGAIN, AT THIS CONFERENCE, THAT EVERYTHING IS VALIDATED BY LEADING BLUE CHIP CUSTOMERS.

NOW, AT THIS POINT IN TIME, THEY WERE JUST STARTING THE ASIC CHIP SET DEVELOPMENT.  THEY HAD HIRED

THE PERSON RESPONSIBLE FOR ARCHITECTING IT A MONTH PRIOR. THEY HADN'T STARTED THE PROCESS IN EARNEST.  THEY KNEW IT HAD TO TAKE AT LEAST A YEAR, LIKELY LONGER TO DEVELOP THAT, AND HE IS TELLING INVESTORS THAT THEY HAVE ALREADY SECURED THESE DEEP DESIGN WINS, THEY ARE NEGOTIATING VOLUME PURCHASE ORDERS AND EVERYTHING IS VALIDATED.

NOW, IT IS INCONSISTENT WITH THE FACTS PROVIDED BY THE CHIP DESIGNER, AND IT IS ALSO PROVEN BY THE DEVELOPMENTS THAT HAPPENED THAT THERE WERE NO PURCHASE ORDERS AT THIS TIME, LIKE THERE WAS NOTHING -- BECAUSE WHEN THEY DECLARED BANKRUPTCY A YEAR LATER, WHEN THEY WITHDRAW THEIR REVENUE PROJECTIONS, EIGHT MONTHS LATER THEY DISCLOSE THAT THEY DON'T HAVE ANY ORDERS FOR THEIR CONSUMER WEARABLE CHIP SET, AND THAT MAKES SENSE BECAUSE THEY DIDN'T HAVE A CHIP SET.  THEY HAD JUST STARTED DEVELOPING IT.

AGAIN, IN MARCH, THEY REITERATE THAT THE PRODUCT DEVELOPMENT IS ON TRACK AND NO CHANGES TO THAT. IN MAY, THEY REITERATE THAT THEY ARE ON TRACK FOR PRODUCTION OF THEIR CONSUMER WEARABLES CHIP SET MODULE IN THE SECOND HALF OF 2022.  THEN, SHORTLY AFTER THIS REPRESENTATION WAS MADE IN MAY, THEY UNEXPECTEDLY ANNOUNCE THE RESIGNATION OF THEIR CFO DEFENDANT KARANTH, AND TWO MONTHS AFTER THAT, IN AUGUST, THEY WITHDRAW ALL REVENUE GUIDANCE FOR THEIR CONSUMER WEARABLES PRODUCT

THAT WAS PROJECTED FOR 2023.

SO THIS IS THREE MONTHS AFTER THEY JUST SAID WE ARE ON TRACK, IT IS EIGHT MONTHS AFTER THEY SAID WE ARE NEGOTIATING VOLUME PURCHASE ORDERS.  THEN, ALL OF A SUDDEN IN AUGUST, THEY SAY WE ARE WITHDRAWING OUR REVENUE PROJECTIONS ENTIRELY AND WE ARE SHIFTING OUR FOCUS AWAY FROM THIS CONSUMER WEARABLES CHIP SET MODULE THAT WE HAVE BEEN TALKING ABOUT EVER SINCE WE ANNOUNCED THE MERGER, AND WE ARE NOW FOCUSING ON MED TECH.  SO ALL THESE STATEMENTS THEY MADE ABOUT THE PROGRESS THEY WERE MAKING, ABOUT HOW THEY HAD ALREADY SECURED THE DESIGN WINS, THEY WERE GOING TO BE PRODUCING IT IN 2022.  THEN, ALL OF A SUDDEN IN AUGUST, THEY ARE JUST COMPLETELY DONE WITH IT.

AND AT THAT TIME, I THINK THIS IS A REALLY CRITICAL PART AS FAR AS BOTH SCIENTER AND FALSITY, AT THAT TIME WHEN THEY MAKE THAT ANNOUNCEMENT, AN ANALYST, PAUL SILVERSTEIN, THE SAME ONE THAT ASKED BACK IN NOVEMBER OF 2021 WHETHER THERE WERE ANY MEANINGFUL HURDLES TO OVERCOME WITH THE TECHNOLOGY.  HE PICKS UP ON THE FACT THAT THIS DOESN'T MAKE SENSE WITH EVERYTHING THEY HAVE BEEN TELLING THEM FOR THE PAST YEAR-AND-A-HALF, AND HE SAYS I AM NOT TRYING TO BE ARGUMENTATIVE, I AM CONFUSED.  YOU HAD 300 MILLION OF REVENUE GUIDANCE OUT THERE BASED ON CONSUMER WEARABLES.  BY TAKING IT AWAY, IT SOUNDS LIKE YOU DON'T HAVE ANY CONFIDENCE.  IF WE DIAL

BACK A CLOCK IN TIME, YOU ALL HAD STATED THAT THERE WERE NO MEANINGFUL HURDLES FROM A TECHNOLOGY STANDPOINT, THAT WERE REMAINING TO BE OVERCOME.  THE QUESTION IS WHAT HAS CHANGED, IS IT A TECHNOLOGY HURDLE ISSUE.

AND WHAT IS DETAILED IN THE COMPLAINT AND IN OUR BRIEFING, MR. SILVERSTEIN ASKS NUMEROUS POINTED, REPEATED QUESTIONS, AND MR. RICKMAN PROVIDES NOTHING BUT EVASIVE, NON-RESPONSIVE ANSWERS BEFORE FINALLY ADMITTING I DON'T THINK ANYTHING HAS CHANGED.  IN OTHER WORDS, AT THIS POINT IN TIME WHEN THEY HAVE WITHDRAWN ALL REVENUE GUIDANCE FOR THEIR CONSUMER WEARABLES CHIP SET, WHEN THEY HAVE SHIFTED THEIR FOCUS AWAY FROM THE CHIP SET AND THIS ANALYST IS ASKING HIM WHAT HAS HAPPENED, YOU JUST TOLD US THERE WERE NO HURDLES.  YOU HAVE BEEN PREDICTING ALL THIS REVENUE.  WHAT HAS CHANGED?  AND RICKMAN SAYS NOTHING HAS CHANGED.  IT IS THE SAME STATE OF AFFAIRS THAT HAS BEEN HERE ALL ALONG.  THEY CONTINUE THE LIES AT THAT POINT. THEY CONTINUE TO SAY THAT MED TECH IS LOOKING GREAT AND THAT OUR OVERALL BUSINESS PROSPECTS ARE STRONGER THAN EVER.

NOW, IN THE INTEREST OF TIME, THIS IS ALL SPELLED OUT IN THE COMPLAINT.  SO I WILL SKIP FORWARD OVER THIS, BUT I DO THINK IT IS IMPORTANT TO SEE KIND OF THE WAY THE MISREPRESENTATIONS EVOLVED THROUGHOUT THE CLASS PERIOD AND HOW THEY CONTINUE TO HAVE ANOTHER STORY

AFTER ANOTHER STORY, AND THEY CONTINUED TO, EVEN THROUGHOUT NOVEMBER WHEN THIS IS A FEW WEEKS BEFORE THEY INITIATE THEIR BANKRUPTCY PROCEEDINGS, THEY ARE STILL TELLING INVESTORS EVERYTHING IS FINE.

THEY ARE ASKED SPECIFIC QUESTIONS ABOUT -- ABOUT THE BALANCE SHEET AND THEIR CASH ON HAND, AND THEY CONTINUE TO TELL INVESTORS WE ARE CERTAINLY IN A POSITION TO MOVE FORWARD, EVERYTHING IS FINE.  AND THEY ARE ASKED AT THIS TIME ABOUT WHAT HAS HAPPENED TO ALL THIS NRE REVENUE YOU WERE TALKING ABOUT.  THERE WAS A $70 MILLION COMMITMENT, AND NOW YOU ARE SAYING YOU HAVE LESS THAN $5 MILLION ON HAND.  AND WE HAVEN'T SEEN ANY OF THAT COME IN, WHAT HAPPENED TO IT, AND THEY CONTINUE TO JUST SAY, NO, EVERYTHING -- MR. RICKMAN CONTINUES TO AVOID THE QUESTIONS AND CONTINUES TO SAY EVERYTHING IS FINE.

AND THEN A FEW WEEKS LATER, IN DECEMBER, THEY RECEIVE A NOTICE OF NONCOMPLIANCE, RICKMAN RESIGNS FROM HIS POSITION AS CEO, AND THEY BEGIN NEGOTIATING THEIR PREPLANNED OR PREPACKAGED PLAN OF REORGANIZATION, AND THIS IS JUST WEEKS AFTER THEY TOLD INVESTORS EVERYTHING IS FINE STILL, WE ARE DOING OKAY, CASH ON HAND.  THEN THEY FILE BANKRUPTCY IN JANUARY, AND THEY EMERGE AS A GOING CONCERN.  SHORTLY AFTER THAT, RICKMAN IS REAPPOINTED TO HIS POSITION OF CEO WITH A NEW EQUITY PLAN.  NOW, THAT IS KIND OF THE STORY.

THE COURT:  I THINK WE ARE GOING TO END THERE, COUNSEL.  THIS IS A VERY LONG PRESENTATION.  I APPRECIATE THAT YOU ARE TRYING TO ARTICULATE FOR THE COURT THE ENTIRE STORY.

MR. LINDELL:  I CAN JUST ADDRESS SOME OF THE POINTS THAT DEFENDANTS MADE.

THE COURT:  I AM GOING TO GIVE YOU THREE MINUTES TO DO THAT, EXACTLY THREE MINUTES.

MR. LINDELL:  OKAY.  WELL, I WILL SAY THAT THE SCIENTER FACTS AS TO MR. RICKMAN ARE SUMMARIZED -- OKAY. LET ME JUST TALK ABOUT FIRST OF ALL THE PURPORTED CAUTIONARY LANGUAGE.  THEY BOTH TALKED A LOT ABOUT THAT. THEY CLAIM THAT THEIR STATEMENTS ARE PROTECTED UNDER THE FORWARD-LOOKING SAFE HARBOR OF THE PLSRA, BUT THE PURPORTED CAUTIONARY LANGUAGE THEY POINT TO BASICALLY SAID NOTHING MORE THAN THERE IS RISKS ASSOCIATED WITH THIS.

THERE WERE WARNINGS SUCH AS THERE CAN BE NO ASSURANCE THAT THE PROSPECTIVE RESULTS WILL BE INDICATIVE OF FUTURE OUTCOMES OR THAT ANY FORWARD-LOOKING STATEMENTS WE MADE ARE SUBJECT TO A NUMBER OF RISKS, UNCERTAINTY AND ASSUMPTIONS.  THERE CAN BE NO ASSURANCE THAT FUTURE DEVELOPMENTS WILL BE AS WE ANTICIPATED, AND ACTUAL RESULTS MAY DIFFER FROM THOSE THAT WE FORECASTED.  THOSE AREN'T MEANINGFUL CAUTIONARY LANGUAGE WHICH IS WHAT THE

NINTH CIRCUIT REQUIRES TO BE COVERED BY THE FORWARD LOOKING -- TO BE COVERED BY THE FORWARD-LOOKING SAFE HARBOR.

I ALSO WANT TO TALK ABOUT ABOUT MR. COLOMA. THE ONLY SPECIFIC STATEMENTS THAT WE ALLEGE THAT HE MADE IS THE STATEMENT THAT THE COMPANY IS POISED FOR SUBSTANTIAL AND IMMINENT COMMERCIAL SUCCESS.

NOW, MR. COLOMA, FIRST OF ALL, I WOULD POINT OUT THAT IN HIS OPENING BRIEF, HE DID NOT CONTEND THAT STATEMENT WAS PROTECTED BY THE FORWARD-LOOKING SAFE HARBOR.  THAT WAS NEVER ASSERTED ANYWHERE IN THEIR OPENING BRIEF.  HE MADE THAT ASSERTION IN THE REPLY.

IN ANY EVEN, IT IS NOT A FORWARD-LOOKING STATEMENT.  THE STATEMENT IS THAT THE COMPANY IS POISED, PRESENT TENSE, IMPLIES CONCRETES FACTS ABOUT WHERE THE COMPANY IS RIGHT NOW, AND THE WORDS -- HE CHOSE TO USE THE WORDS SUBSTANTIAL AND IMMINENT COMMERCIAL GROWTH WHICH ARE NOT -- THEY ARE NOT PUFFERY, AND THEY ARE TALKING ABOUT CURRENT STATE OF AFFAIRS, THINGS THAT ARE HAPPENING RIGHT NOW.  THEY ARE POISED OR IMMINENT MEANING HAPPENING RIGHT NOW.

ALSO, IT IS NOT A STATEMENT, AN ACTUAL STATEMENT OF OPINION.  I WOULD LIKE TO -- SORRY.  IN THE INTEREST OF TIME I WILL SKIP FORWARD TO THE SCIENTER FACTS.  I KNOW YOUR HONOR HAD MENTIONED THAT.

BASICALLY WITH REGARD TO MR. RICKMAN, THE FIRST FACT THAT SUPPORTS HIS OPINION IS THAT IF YOU LOOK AT THE COMPLAINT, HE MADE NUMEROUS DETAILED FACTUAL STATEMENTS ABOUT THE VERY MATTERS THAT WE ALLEGE WERE MISREPRESENTED, ABOUT THE PRODUCT DEVELOPMENT, AND THE REASON WHY THAT IS SUPPORTIVE OF SCIENTER IS BECAUSE, AS THE NINTH CIRCUIT HAS RECOGNIZED, IF YOU ARE TALKING ABOUT A SPECIFIC MATTER, IT IS PRESUMED THAT YOU HAVE INFORMATION SUPPORTING THAT MATTER.

SO IF HE IS TALKING ABOUT THE TIMELINE FOR THESE PRODUCTS OVER AND OVER AGAIN, CLEARLY, HE HAS INFORMATION ABOUT THE PRODUCT DEVELOPMENT AND HE KNOWS THAT THAT INFORMATION WAS FALSE BECAUSE OF THE FACTS THAT WE HAVE ALLEGED FROM THE CHIP DESIGNER THAT THEY DIDN'T HAVE A PRODUCT THAT COULD BE VALIDATED, THAT THEY WEREN'T ANYWHERE CLOSE TO HAVING A COMMERCIAL PRODUCT.

SO THE FACT THAT HE GAVE THESE DETAILED UPDATES ABOUT THE PRODUCT IMPLIES THAT HE KNEW ABOUT THE PRODUCT DEVELOPMENT.  WE ALSO ALLEGE FROM THE CHIP DESIGNER THAT MR. RICKMAN RECEIVED DIRECT REPORTS REGARDING THE ASIC CHIP SET DEVELOPMENT.  THE FACT THAT HE WAS HIGHLY INCENTIVIZED ALSO SUPPORTS HIS SCIENTER.

NOW, COUNSEL FOR ROCKLEY POINTED OUT THAT ALONE IS NOT ENOUGH, BUT WE DON'T ALLEGE THAT ALONE.  WE ALLEGE THAT AS PART OF THE OVERALL FACTS SUPPORTING THE

SCIENTER, THE TEMPORAL PROXIMITY BETWEEN MISREPRESENTATIONS AND THE DISCLOSURE ALSO SUPPORTS IT, FOR EXAMPLE, SAYING IN MAY OF 2022, THAT WE ARE STILL ON TRACK TO PRODUCE OR TO GO TO PRODUCTION IN A FEW WEEKS WHEN THEY DIDN'T HAVE THE ASIC CHIP SET EVEN DEVELOPED YET, AND THEN THREE MONTHS LATER COMPLETELY WITHDRAW AND SAY WE ARE NOT DOING IT, THAT IS EVIDENCE THAT THEY HAD TO HAVE KNOWN THOSE STATEMENTS WERE FALSE WHEN THEY MADE THEM.  THE RESIGNATIONS ARE SUSPICIOUSLY TIMED.

AND I WOULD ASK THAT YOUR HONOR, AS YOU ARE CONSIDERING THESE, REALLY TAKE A LOOK AT THE PARAGRAPHS THAT WE HAVE CITED IN HERE, HIS RESPONSES IN AUGUST AND NOVEMBER.  THE QUESTIONS FROM THE ANALYST ARE VERY POINTED AND VERY DIRECT AND ADDRESS THE SPECIFIC MISSTATEMENTS.  THEY SAY THIS DOESN'T JIVE WITH WHAT YOU HAVE BEEN TELLING US, AND, IF YOU READ MR. RICKMAN'S RESPONSES WHICH WE INCLUDED IN GREAT DETAIL IN OUR COMPLAINT FOR THIS REASON, AS YOU READ THEM, THEY ARE NOT CONSISTENT WITH SOMEONE WHO IS TELLING THE TRUTH.

THE COURT:  COUNSEL, WE ARE GOING TO END YOUR ARGUMENT THERE.  LET ME ASK YOU THIS.  THIS PRESENTATION, DOES IT CONTAIN ANY CASES, ALLEGATIONS, ANY INFORMATION THAT IS NOT IN YOUR BRIEF?

MR. LINDELL:  IT DOES NOT, YOUR HONOR.

THE COURT:  AND YOU HAVE COPIES TO PROVIDE TO

DEFENSE COUNSEL AND TO THE COURT?

MR. LINDELL:  I DO.

THE COURT:  SO PLEASE GO AHEAD AND PROVIDE THOSE. IF DEFENSE COUNSEL WANTS TO OBJECT, YOU CAN FILE SOMETHING, BUT I SEE NO PROBLEM WITH THE COURT HAVING A COPY OF THE PRESENTATION.

MR. LINDELL:  WOULD YOU LIKE ME TO WALK UP AND HAND YOU ONE.

THE COURT:  YOU CAN GIVE IT TO THE COURTROOM DEPUTY.

MR. LINDELL:  AND I APOLOGIZE, YOUR HONOR, FOR TAKING UP TOO MUCH OF YOUR TIME TODAY.

THE COURT:  LET ME NOW TURN BACK TO DEFENSE COUNSEL, I KNOW A LOT WAS PRESENTED, BUT, AS I SAID, YOU WILL HAVE AN OPPORTUNITY TO RESPOND.

MR. ATHEY:  OKAY, YOUR HONOR.

WELL, THAT WAS A LOT.  I THINK YOU GET IT.  I DON'T KNOW IF THERE IS REALLY A LOT MORE THAT I NEED TO SAY.  I WOULD LIKE TO LEAVE YOU WITH THREE COMMENTS.

THE FIRST IS WITH RESPECT TO THE REVOLVING CAROUSEL OF STATEMENTS THAT MY CLIENT MADE, THE COMPLAINT JUST HAS ONE, AND THEN MORE GOT PUT IN THE OPPOSITION BRIEF.  AND, NOW, I AM HEARING WE DIDN'T REALLY MEAN THOSE STATEMENTS.  THAT WAS JUST CONTEXT.  HERE IS THE THING, YOUR HONOR.  I SHOULDN'T HAVE TO GUESS.  I

SHOULDN'T BE STANDING HERE IN FRONT OF YOU AT A 12(B)(6) HEARING STILL NOT KNOWING WHAT EXACTLY THE STATEMENTS ARE.  THAT IS A PROBLEM PROCEDURALLY, AND I THINK IT IS ONE THAT PERMEATES THE COMPLAINT WITH RESPECT TO MY CLIENT, MR. COLOMA.

NUMBER TWO, HE NEVER REALLY ANSWERED YOUR QUESTION AT LEAST AS APPLIED TO MY CLIENT WHICH WAS WHERE IS THE EVIDENCE OR THE ALLEGATIONS OF SCIENTER.  HE SAID A LOT ABOUT MR. RICKMAN, AND I WILL LEAVE IT TO MR. ERICSON TO TALK ABOUT THAT.  BUT WHERE ARE THE ALLEGATIONS THAT SAID THAT ANGELO COLOMA KNEW ON SUCH-A-SUCH A DATE THAT SUCH-AND-SUCH A FACT COULDN'T POSSIBLY BE TRUE.

LET'S NOT FORGET -- I HAVEN'T SEEN THE WHOLE POWERPOINT HERE, BUT THERE IS THIS TIMELINE.  AND PRETTY EARLY ON IN THE TIME LINE IS AUGUST OF 2021.  THAT IS WHEN MY CLIENT HEADS FOR THE SIDE DOOR, YOUR HONOR.  HE IS OUT IN AUGUST OF 2021.  EVERYTHING THAT HAPPENED AFTER THAT, NO ONE IS SAYING HE IS AT FAULT.

SO THE COURT REALLY CAN ANALYZE WHAT DID HE KNOW DURING THAT VERY BRIEF THREE OR FOUR-MONTH WINDOW OF TIME.  AND THE LAST THING I WOULD SAY IS THAT WE DID ARGUE THAT THE SAFE HARBOR APPLIED IN THE OPENING BRIEF.  IT IS SECTION 2 OR I SHOULD SAY 3C.  AT THE TIME I WROTE THE BRIEF, I THOUGHT THE ONLY STATEMENT WAS THE IMMINENT

GROWTH THING. AND SO I WENT THROUGH WHY THE IMMINENT GROWTH THING WAS A FORWARD-LOOKING STATEMENT WHEN YOU LOOKED AT THE SUB-ISSUES THAT THEY HAD IDENTIFIED WHICH WAS THE PROJECTIONS BEING WRONG BASED ON HENGTONG AND APPLE AND ALL THE REST OF IT.

AND I OUTLINED WHY THOSE WERE ALL FORWARD-LOOKING STATEMENTS THAT WERE ACCOMPANIED BY CAUTIONARY LANGUAGE, AND THERE WAS NO EVIDENCE OF SCIENTER. BUT YOU REALLY SHOULDN'T EVEN HAVE TO GET TO SCIENTER, YOUR HONOR, BECAUSE UNDER THE PSLRA, IF IT WAS A FORWARD-LOOKING STATEMENT AND IT WAS ACCOMPANIED BY CAUTIONARY LANGUAGE, THAT IS IT. YOU DON'T HAVE TO GET TO STEP TWO BECAUSE STEP ONE IS ENOUGH. SO I AGREE STEP TWO IS A BIG PROBLEM HERE, BUT, AS TO MY CLIENT, STEP ONE IS REALLY THE END OF THE ANALYSIS.

AND THOSE ARE THE ONLY THINGS I WANTED TO SAY, YOUR HONOR. THANKS FOR YOUR TIME.

THE COURT: THANK YOU, COUNSEL.

MR. ERICSON: I JUST WANT TO TICK OFF A COUPLE OF POINTS REAL QUICKLY.

COUNSEL ARGUES THAT THE CAUTIONARY LANGUAGE IS NOT MEANINGFUL. SERIOUSLY? YOUR HONOR WILL RECALL THE LANGUAGE I READ TO YOU DURING MY PRINCIPAL ARGUMENT WHERE HE SAID THE PRODUCTS ARE STILL UNDER DEVELOPMENT. THERE IS NO ASSURANCE WE WILL BE SUCCESSFUL. OUR REVENUES ARE

ALL FROM NON-RECURRING ENGINEERING CONTRACTS, NON-RECURRING WHERE THEY SAID APPLE DOES NOT HAVE ANY MINIMUM OR BINDING PURCHASE OBLIGATIONS.  THESE ARE NOT MEANINGLESS CAUTIONARY REMARKS.

NO PRODUCTS, NO BINDING CONTRACTS, NOTHING THAT APPLE CAN'T WALK AWAY FROM.  THAT IS MORE THAN MEANINGLESS HAPPY TALK.  THAT IS TELLING PEOPLE WHAT THE RISK IS VERY CLEARLY WHAT THE RISK IS.  SO I THINK THE CAUTIONARY LANGUAGE IS VERY MEANINGFUL.

AND I -- COUPLE OF OTHER POINTS QUICKLY, COUNSEL SAID THE DISCLOSURES MADE IN APRIL IN THE S4 OF APRIL COME TOO LATE.  WELL, ROCKLEY STOCK DIDN'T START PUBLICLY TRADING UNTIL AUGUST.  SO APRIL AND JULY DISCLOSURES ARE NOT TOO LATE.  THEY ARE BEFORE MY CLIENT'S STOCK STARTED TO TRADE.  THEY ARE NOT TOO LATE AT ALL.

QUICKLY, YOU KNOW, ABOUT DESIGN WINS INVALIDATING, I HAVE ALREADY EXPLAINED AS THOSE PHRASES WERE USED, THEY VERY CLEARLY EXPLAINED WHAT WAS MEANT BY THAT AND WHAT IT BOILED DOWN TO.  WE HAVE PEOPLE WHO ARE INTERESTED IN OUR PRODUCT.  NOTHING IS BINDING, BUT WE ARE TALKING, WORKING TOGETHER ON STUFF.  SO, AGAIN, THE DEAL WAS CLEARLY DISCLOSED WHERE THINGS STOOD, WHERE THEY DIDN'T STAND.

AND, FINALLY, COUNSEL ARGUES THAT, WELL,

MR. RICKMAN SAID THINGS, BUT LET'S LOOK AT WHAT HE SAID. COUNSEL SAYS, WELL, IN MAY, HE SAID THINGS WERE ON TRACK, AND THEN IN AUGUST HE WITHDREW GUIDANCE AND SAID WE ARE PIVOTING TO THE MEDTECH AS OPPOSED TO THE CONSUMER.  WHAT INFERENCE IS TO BE DRAWN FROM THAT WHEN THE FACTS CHANGE, THE DISCLOSURES CHANGE?  YOU CAN'T DRAW A NEGATIVE INFERENCE FROM THAT.  THE INFERENCE ONE CAN DRAW IS THE FACTS HAD CHANGED, TIMING WAS SLIPPING.  THEY WERE PIVOTING TO THE MEDTECH SO THERE IS NO INFERENCE TO BE DRAWN THAT SOMEBODY IS LYING.

THE ONLY INFERENCE TO BE DRAWN IS THAT, AS FACTS CHANGE, THE DISCLOSURES ARE CHANGING.  AGAIN, THERE IS NO FALSITY HERE, AND, THEREFORE, THERE COULD BE NO STRONG CASE FOR SCIENTER.  IT JUST ISN'T HERE, YOUR HONOR.

UNLESS YOUR HONOR HAS ANY QUESTIONS.

THE COURT:  NO.  THANK YOU.

THANK YOU TO ALL OF YOU.  I APPRECIATE HOW WELL PREPARED EVERYONE WAS FOR ARGUMENT TODAY.  IT IS A LOT OF INFORMATION DIGEST.  SO I APPRECIATE AGAIN THE DETAILED ARGUMENT.  THIS -- DID YOU HAVE SOMETHING ELSE?

MR. LINDELL:  I JUST WANTED -- I KNOW I HAVE TAKEN UP TOO MUCH OF YOUR HONOR'S TIME.  I APOLOGIZE FOR WASTING TOO MUCH TIME ON THE INITIAL PART OF THE FACTUAL BACKGROUND.  I THOUGHT IT WOULD BE HELPFUL TO YOUR HONOR,

BUT I DID JUST WANT TO CLARIFY IN RESPONSE TO

MR. COLOMA'S COUNSEL'S POINT --

THE COURT:  COUNSEL, WE ARE DONE WITH ARGUMENT.

MR. LINDELL:  OKAY.  I'M SORRY.

THE COURT:  WE ARE DONE WITH ARGUMENT.  SO, AGAIN,

I APPRECIATE EVERYONE'S PREPARATION.  BOTH MOTIONS STAND

SUBMITTED.

THANK YOU.

MR. LINDELL:  THANK YOU, YOUR HONOR.

MR. ZHANG:  THANK YOU, YOUR HONOR.

(PROCEEDINGS CONCLUDED.)

CERTIFICATE


I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28,

UNITED STATES CODE, THE FOREGOING IS A TRUE AND CORRECT

TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED PROCEEDINGS HELD

IN THE ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE

FORMAT IS IN CONFORMANCE WITH THE REGULATIONS OF THE

JUDICIAL CONFERENCE OF THE UNITED STATES.

DATE:  JANUARY 16, 2025


 /S/ KATIE THIBODEAUX, CSR NO. 9858, RPR, CRR

MR. ATHEY: [9]   3/21 5/11 13/3
13/7 14/9 15/17 15/19 16/2
52/16
MR. CORES: [1]   3/16
MR. ERICSON: [8]   3/19 16/14
16/18 21/12 42/18 42/20 42/25
54/19
MR. LINDELL: [18]   3/10 4/15
25/2 25/9 26/6 33/20 42/14
43/1 43/8 48/5 48/9 51/24 52/2
52/7 52/11 56/22 57/4 57/9
MR. SCIARANI: [1]   3/13
MR. ZHANG: [1]   57/10
THE CLERK: [1]   3/7
THE COURT: [31]

## $

$124 [1]   36/1
$124 MILLION [1]   36/1
$150 [1]   31/8
$150 MILLION [1]   31/8
$307 [1]   36/2
$307 MILLION [1]   36/2
$5 [1]   47/12
$5 MILLION [1]   47/12
$67 [1]   30/22
$67 MILLION [1]   30/22
$70 [2]   34/20 47/10
$70 MILLION [2]   34/20 47/10
$775,000 [1]   31/13

## '

'24 [1]   10/6

## —

—AND [1]   2/6

## /

/S [1]   58/12

## 0

09501 [1]   1/8

## 1

1.125 [1]   35/10
1.5 MILLION [1]   31/15
10 [2]   5/10 5/13
101 [1]   36/18
11 [1]   41/2
12 [2]   39/17 53/1
13TH [1]   43/16
1460 [1]   2/22
15 [2]   37/6 37/15
16 [3]   1/15 3/1 58/10
17TH [1]   26/15
1900 [1]   2/8
19TH [2]   8/5 30/5
1:58 [1]   3/2

## 2

2019 [5]   12/1 17/20 27/12
27/13 27/18

2020 [3]   12/1 27/12 27/23
2021 [20]   8/6 10/3 10/5 16/7
16/7 21/8 27/8 30/15 30/5
35/3 35/4 38/8 41/2 41/3 41/3
41/23 42/5 45/18 53/16 53/18
2022 [14]   10/1 10/5 28/5 34/13
39/11 39/15 39/16 41/10 41/13
41/16 43/16 44/21 45/12 51/3
2023 [11]   9/6 10/6 35/10 35/19
35/22 35/25 37/20 37/22 39/11
41/12 45/1
2024 [9]   1/15 3/1 9/6 16/6
35/11 35/20 35/22 36/2 39/11
2025 [1]   58/10
2026 [2]   38/5 40/24
21ST [1]   16/3
22 [1]   40/22
22ND [2]   2/15 38/8
23-09501 [1]   1/8
23-9501 [1]   3/7
24 [3]   37/6 37/15 40/22
28 [1]   58/4

## 3

30 [1]   4/5
300 MILLION [1]   45/23
312 [1]   1/20
33 PERCENT [1]   27/13
34 PERCENT [2]   27/14 31/11
3C [1]   53/24
3Q [1]   41/3

## 4

4.5 MILLION [1]   31/15
426 MILLION [1]   35/10
436 [1]   1/20
45 PERCENT [1]   31/12

## 5

50 [1]   5/15

## 6

655 [1]   2/7

## 7

753 [1]   58/4

## 8

811 [1]   2/21
8K [5]   8/9 14/12 31/23 31/24
32/14

## 9

90012 [1]   1/20
90017 [1]   2/23
92101 [1]   2/9
94111 [1]   2/16
9501 [1]   3/7
98 [1]   36/18
9858 [2]   1/19 58/12

## A

ABLE [2]   5/2 9/6

ABOUT [65]
ABOVE [1]   58/7
ABOVE-ENTITLED [1]   58/7
AC [1]   29/6
ACADEMIC [1]   15/1
ACCEPT [1]   29/4
ACCEPTANCE [1]   19/22
ACCESS [3]   23/20 23/21 23/21
ACCOMPANIED [3]   8/2 54/7 54/11
ACCOMPLISH [1]   38/15
ACCORDING [2]   37/14 42/9
ACCOUNT [1]   36/20
ACCURATE [1]   4/14
ACHIEVE [1]   19/22
ACQUIRED [4]   27/24 28/7 29/25
40/14
ACQUISITION [2]   28/9 28/18
ACTED [2]   4/25 43/6
ACTION [1]   32/11
ACTIONABLE [1]   4/19
ACTIVELY [1]   27/5
ACTUAL [2]   48/23 49/22
ACTUALLY [6]   20/23 21/7 22/8
25/21 35/2 36/16
ADDED [4]   27/19 28/8 28/10
28/19
ADDITION [5]   28/9 31/4 31/9
31/12 34/5
ADDITIONAL [3]   30/15 33/1
33/15
ADDRESS [5]   7/10 13/1 21/11
48/5 51/14
ADMITTING [1]   46/8
ADVANCED [2]   18/1 18/3
ADVERSELY [1]   17/14
AFFAIRS [2]   46/16 49/19
AFFECT [1]   17/14
AFTER [14]   9/14 21/20 37/16
38/2 39/18 42/13 44/21 44/24
45/2 45/3 47/1 47/20 47/23
53/18
AFTERNOON [8]   3/10 3/13 3/18
3/19 3/21 3/23 16/18 25/2
AGAIN [29]   13/19 14/1 14/17
15/13 17/16 17/23 18/15 18/18
18/18 19/5 19/14 19/17 19/23
19/25 20/5 20/15 21/15 21/21
21/25 37/25 40/20 42/1 43/22
44/17 50/11 55/22 56/12 56/20
57/5
AGAINST [1]   25/24
AGGREGATE [1]   31/14
AGREE [2]   16/20 54/13
AGREEMENT [2]   18/23 27/2
AGREEMENTS [1]   19/7
AHEAD [2]   25/11 52/3
AIR [2]   12/16 15/13
AL [2]   1/9 3/8
ALL [41]
ALLEGATION [3]   12/15 15/12
23/25
ALLEGATIONS [7]   5/5 10/13 15/6
29/3 51/22 53/8 53/11

**A**

ALLEGE [10]   4/7 32/23 36/9 36/15 36/18 49/5 50/4 50/19 50/24 50/25
ALLEGED [12]   4/9 6/1 11/4 16/22 17/3 22/3 22/11 22/25 29/7 32/25 33/16 50/14
ALLEGEDLY [1]   8/7
ALLEGING [4]   22/8 23/8 25/24 29/10
ALLOWS [1]   10/21
ALMADANI [1]   1/3
ALMOST [1]   23/4
ALONE [2]   50/24 50/24
ALONG [1]   46/17
ALREADY [7]   5/18 28/10 30/17 37/19 44/4 45/11 55/18
ALSO [29]   8/2 8/8 19/4 22/17 26/1 27/5 27/10 28/18 29/6 31/1 31/5 32/16 34/9 34/18 35/21 37/5 38/3 39/12 39/20 40/9 41/14 41/22 43/22 44/8 49/4 49/22 50/19 50/22 51/2
ALTHOUGH [2]   7/18 28/1
AM [17]   3/17 4/19 5/13 7/11 8/22 12/16 12/22 14/21 25/5 25/9 25/12 25/14 25/18 45/22 45/22 48/7 52/23
AMENDED [13]   4/6 4/19 6/11 7/5 10/14 13/1 13/11 13/21 14/2 15/3 15/6 16/12 33/19
AMERICA [2]   11/17 16/11
AMONG [2]   21/20 43/18
AMOUNT [1]   38/6
AMOUNTS [1]   35/22
ANALYSIS [1]   54/15
ANALYST [4]   41/18 45/16 46/13 51/13
ANALYZE [2]   16/25 53/20
ANGELES [4]   1/14 1/20 2/23 3/1
ANGELO [4]   3/22 5/12 10/14 53/11
ANNOUNCE [1]   44/23
ANNOUNCED [5]   17/19 29/14 30/6 41/15 45/8
ANNOUNCEMENT [4]   32/16 34/10 38/2 45/16
ANNUAL [1]   18/20
ANOTHER [5]   30/17 34/18 42/12 46/25 47/1
ANSWER [2]   11/8 12/23
ANSWERED [1]   53/6
ANSWERS [1]   46/8
ANTICIPATED [1]   48/23
ANY [31]
ANYBODY [2]   13/18 15/14
ANYMORE [1]   11/1
ANYTHING [5]   14/2 16/12 20/24 23/25 46/9
ANYWHERE [2]   49/11 50/16
APART [2]   24/9 30/18
APOLOGIZE [3]   26/3 52/11 56/23
APPEARANCES [2]   1/21 3/9

APPEARED [3]   17/23 32/15 35/3
APPEARS [1]   8/9
APPLE [34]
APPLICATION [1]   21/13
APPLIED [2]   53/7 53/23
APPLY [2]   23/11 24/19
APPOINTED [1]   27/9
APPRECIATE [7]   4/22 25/16 42/12 48/2 56/18 56/20 57/6
APPROACH [2]   5/5 16/24
APPROVE [2]   38/23 39/9
APPROVED [4]   30/15 31/6 31/19 39/3
APPROXIMATELY [1]   31/12
APRIL [6]   35/3 38/2 41/2 55/11 55/12 55/13
ARCHITECT [2]   21/10 42/6
ARCHITECTING [1]   44/1
ARE [121]
AREN'T [3]   8/21 22/11 48/25
ARGUE [3]   28/25 29/1 53/23
ARGUES [2]   54/21 55/25
ARGUMENT [7]   14/20 51/21 54/23 56/19 56/21 57/3 57/5
ARGUMENTATIVE [1]   45/22
ARGUMENTS [2]   7/11 33/2
ARM'S [1]   11/11
AROUND [1]   33/3
ARTICLES [1]   29/24
ARTICULATE [2]   14/2 48/3
ARTICULATED [1]   7/7
AS [56]
ASIC [20]   21/7 21/12 21/20 21/22 21/23 22/8 22/13 22/14 36/9 36/15 36/21 37/2 37/4 37/6 37/13 40/21 42/7 43/25 50/21 51/5
ASIDE [4]   9/13 9/16 14/24 29/9
ASK [2]   51/10 51/21
ASKED [6]   32/3 38/9 38/11 45/17 47/5 47/8
ASKING [1]   46/13
ASKS [1]   46/6
ASSERTED [1]   49/11
ASSERTING [2]   29/11 33/14
ASSERTION [2]   29/10 49/12
ASSOCIATED [3]   32/5 40/12 48/16
ASSUME [3]   4/18 22/7 22/8
ASSUMPTION [2]   22/10 23/1
ASSUMPTIONS [1]   48/22
ASSURANCE [4]   19/20 48/19 48/22 54/25
ATHEY [4]   2/19 2/20 3/22 5/11
ATTACHED [3]   31/24 33/21 33/22
ATTRIBUTABLE [2]   13/18 35/23
AUDITED [1]   12/1
AUDITORS [2]   11/18 11/20
AUGUST [10]   4/1 41/2 44/24 45/5 45/13 51/12 53/16 53/18 55/13 56/3
AUTHORITY [1]   28/17
AUTHORIZATION [1]   27/22

AUTOMATICALLY [1]   14/22
AVAILABLE [3]   36/6
AVOID [1]   47/14
AWARD [1]   31/14
AWARE [2]   4/5 28/23
AWARENESS [1]   33/10
AWAY [6]   19/2 42/4 45/6 45/24 46/12 55/6

**B**

BACK [5]   17/20 35/14 45/17 46/1 52/13
BACKGROUND [2]   30/10 56/25
BALANCE [1]   47/6
BAN [4]   9/15 18/2 18/4 23/24
BANK [5]   11/17 11/17 16/10 17/20 28/15
BANKERS [1]   11/22
BANKRUPTCY [3]   44/11 47/3 47/22
BANNED [6]   9/2 17/5 18/2 23/13 27/20 40/14
BANNING [1]   23/13
BARRED [1]   17/21
BASED [9]   4/16 10/23 20/2 33/8 34/8 35/7 36/19 45/24 54/4
BASICALLY [5]   23/1 33/24 39/16 48/15 50/1
BASIS [10]   7/2 18/9 22/10 23/1 33/6 34/2 35/19 40/23 42/2 42/19
BATTERY [1]   36/25
BE [52]
BECAUSE [27]   7/8 10/18 13/15 14/12 15/23 17/11 17/23 18/16 21/16 26/25 28/1 29/6 29/20 30/14 30/16 31/7 34/25 36/7 38/12 38/14 38/18 44/11 44/15 50/6 50/13 54/10 54/13
BECOMES [1]   24/17
BEEN [18]   3/24 8/23 12/1 17/19 18/17 21/10 24/2 28/8 29/5 29/16 30/12 32/7 33/8 45/8 45/21 46/14 46/16 51/16
BEFORE [8]   15/10 27/15 28/14 37/7 40/24 46/8 47/2 55/14
BEGIN [3]   36/8 36/8 47/18
BEGINNING [1]   6/3
BEHALF [5]   3/11 3/14 3/22 5/11 25/23
BEING [6]   10/2 21/8 21/25 29/14 41/6 54/4
BELABOR [1]   23/6
BELIEVE [1]   32/18
BELIEVED [1]   10/20
BELIEVES [1]   7/16
BENEFITS [2]   30/23 31/1
BEST [2]   16/23 19/2
BETTER [5]   10/7 12/9 12/16 15/13 16/7
BETWEEN [2]   16/9 51/1
BID [1]   28/15
BIDDING [1]   17/22

**B**

BIG [3]   9/16 40/1 54/14
BIGGEST [1]   9/19
BILLION [1]   35/10
BINDING [6]   18/22 23/17 23/17 55/3 55/5 55/21
BIT [3]   5/23 38/10 39/24
BLATANTLY [1]   43/14
BLOOD [1]   22/18
BLUE [2]   34/16 43/23
BOARD [1]   24/11
BOILED [1]   55/20
BOILERPLATE [1]   40/9
BOILS [1]   18/5
BONUS [1]   31/13
BONUSES [2]   24/1 24/5
BOTH [12]   4/2 4/5 26/12 29/1 31/9 34/10 34/13 34/19 34/25 45/15 48/12 57/6
BOULEVARD [1]   2/21
BRIEF [12]   6/6 6/10 7/7 7/9 26/6 49/9 49/12 51/23 52/23 53/21 53/23 53/25
BRIEFING [7]   4/24 5/16 9/10 12/8 30/11 42/21 46/6
BROAD [1]   26/9
BROADWAY [1]   2/7
BROUGHT [1]   21/16
BRUCE [3]   2/13 3/19 16/18
BUILD [1]   28/16
BUNCH [1]   22/16
BUREAU [1]   27/19
BUSINESS [2]   34/16 46/19
BUY [2]   9/4 22/21

**C**

CA [3]   2/9 2/16 2/23
CABLE [1]   17/22
CABLES [1]   28/16
CALIFORNIA [4]   1/2 1/14 1/20 3/1
CALL [18]   6/3 8/7 8/10 8/14 21/12 31/22 32/1 32/2 32/22 34/11 34/15 34/20 35/8 35/13 35/16 36/5 41/7 41/14
CALLED [4]   13/16 19/6 23/23 35/24
CALLING [1]   3/7
CAME [2]   8/8 39/5
CAN [18]   5/17 6/22 9/18 24/12 25/10 25/10 26/5 29/17 42/15 43/1 43/5 48/5 48/18 48/22 52/4 52/9 53/20 56/7
CAN'T [7]   6/16 6/18 10/7 11/1 29/19 55/6 56/6
CAPABILITIES [1]   33/11
CAPITAL [1]   31/9
CAR [1]   31/13
CAROUSEL [1]   52/21
CASE [16]   3/7 6/24 7/5 7/22 8/24 14/10 14/11 14/13 16/21 24/3 24/3 24/23 25/13 25/19 42/16 56/14

CASES [2]   6/15 51/22
CASH [3]   31/13 47/6 47/21
CATEGORIES [1]   24/8
CAUTIONARY [16]   8/3 8/3 8/15 8/21 8/23 9/9 9/17 14/4 48/12 48/15 48/25 54/8 54/12 54/21 55/4 55/9
CENTER [1]   2/14
CENTRAL [1]   1/2
CEO [6]   15/19 24/8 24/9 24/10 47/18 47/24
CERTAIN [2]   22/18 33/20
CERTAINLY [5]   18/12 25/15 28/23 29/18 47/7
CERTIFICATE [1]   57/13
CERTIFY [1]   58/4
CFO [2]   24/7 44/23
CHAIRMAN [1]   24/11
CHANCE [1]   16/16
CHANGE [5]   28/2 41/15 56/5 56/6 56/12
CHANGED [5]   46/4 46/9 46/15 46/16 56/8
CHANGES [1]   44/18
CHANGING [1]   56/12
CHARACTERIZED [1]   16/20
CHINESE [2]   26/14 28/12
CHIP [41]
CHIPS [2]   19/13 27/4
CHOSE [1]   49/16
CIRCUIT [6]   6/24 7/23 21/13 24/5 49/1 50/7
CITE [2]   29/21 29/24
CITED [5]   6/15 6/25 12/7 14/10 51/12
CITES [1]   9/10
CIVIL [1]   6/12
CLAIM [5]   17/6 17/7 34/4 37/25 48/13
CLAIMED [2]   33/13 36/14
CLAIMS [1]   26/9
CLARIFY [2]   25/25 57/1
CLASS [9]   26/11 26/20 27/15 28/14 30/4 36/5 37/11 43/10 46/25
CLEAR [14]   6/25 7/23 9/17 11/14 11/25 14/4 17/11 17/12 21/22 21/24 22/4 24/3 24/5 32/23
CLEARLY [4]   50/11 55/8 55/19 55/23
CLIENT [12]   6/1 10/2 10/12 14/1 18/6 23/12 23/20 52/21 53/5 53/7 53/17 54/14
CLIENT'S [1]   55/15
CLIENTS [7]   18/9 19/4 19/18 20/12 23/15 24/1 33/11
CLOCK [1]   46/1
CLOSE [3]   28/12 34/8 50/16
CLOSED [2]   18/25 19/14
CLOSES [1]   41/3
CODE [1]   58/5
COG [2]   12/8 15/11

COHEN [1]   11/21
COIN [2]   9/12 15/22
COLLEAGUE [1]   9/22
COLLEAGUES [2]   7/18 8/24
COLOMA [37]
COLOMA'S [5]   3/25 38/10 38/22 39/4 57/2
COME [4]   15/10 38/7 47/12 55/12
COMES [1]   43/8
COMING [1]   40/8
COMMENCING [1]   39/19
COMMENTS [1]   52/19
COMMERCIAL [6]   32/20 34/11 41/15 49/7 49/17 50/16
COMMERCIALIZATION [2]   4/11 4/13
COMMERCIALIZE [1]   10/1
COMMERCIALLY [2]   36/10 37/19
COMMITMENT [5]   34/21 35/6 37/24 37/24 47/11
COMMITMENTS [3]   35/1 35/2 43/19
COMPANIES [6]   17/6 27/20 34/22 36/12 37/22 40/2
COMPANIES' [1]   35/18
COMPANY [22]   6/3 7/16 10/23 11/12 11/13 11/15 11/21 14/14 26/14 26/15 26/17 27/18 28/2 28/6 28/8 28/23 35/24 40/14 40/18 49/6 49/14 49/16
COMPLAINING [1]   8/25
COMPLAINT [27]   4/6 4/20 6/11 7/5 10/14 11/3 13/1 13/11 13/22 14/2 15/3 15/6 16/12 30/11 32/25 33/19 33/22 33/23 36/19 41/19 42/8 46/5 46/22 50/3 51/18 52/21 53/4
COMPLETE [1]   37/16
COMPLETED [1]   41/9
COMPLETEED [1]   30/25
COMPLETELY [2]   45/13 51/6
COMPLETING [1]   30/23
COMPLIANCE [1]   27/6
COMPUTER [1]   26/4
CONCEAL [1]   40/20
CONCEALED [1]   42/1
CONCEDE [1]   17/25
CONCERN [2]   26/11 47/23
CONCERNS [3]   28/10 28/13 29/22
CONCISE [1]   42/16
CONCLUDED [1]   57/11
CONCLUSION [2]   33/6 33/7
CONCRETE [1]   11/4
CONCRETES [1]   49/15
CONDUCT [3]   33/9 38/25 39/7
CONFERENCE [5]   34/5 43/17 43/18 43/22 58/9
CONFIDENCE [1]   45/25
CONFIDENTIAL [1]   22/3
CONFIRMED [3]   28/14 28/16 37/11
CONFORMANCE [1]   58/8

**C**

CONFUSED [1]   45/23
CONFUSION [1]   25/23
CONNECTION [2]   29/22 30/3
CONSERVATIVELY [1]   35/9
CONSIDER [2]   6/7 43/3
CONSIDERED [1]   7/8
CONSIDERING [1]   51/11
CONSISTENT [1]   51/19
CONSUMER [26]   19/12 34/12 35/14 35/16 35/17 36/1 36/3 36/6 36/11 36/12 36/17 36/24 37/9 37/22 39/14 40/23 41/8 41/21 43/20 44/14 44/20 44/25 45/7 45/24 46/11 56/4
CONSUMER-SPECIFIC [1]   19/12
CONTAIN [1]   51/22
CONTEND [2]   24/23 49/9
CONTEXT [10]   17/2 18/16 20/16 21/3 21/19 24/22 33/3 33/16 33/18 52/24
CONTINUE [6]   39/23 46/17 46/18 46/25 47/7 47/13
CONTINUED [6]   24/11 27/16 40/20 41/24 42/1 47/1
CONTINUES [2]   47/14 47/15
CONTRACT [1]   23/17
CONTRACTS [2]   55/1 55/5
CONTRADICTED [1]   38/5
CONTRARY [1]   33/13
CONTROL [2]   17/13 17/14
COPIES [1]   51/25
COPY [3]   32/1 42/14 52/6
CORE [6]   13/25 24/13 24/13 24/16 24/19 41/4
CORES [1]   3/16
CORPORATE [1]   27/9
CORRECT [2]   13/6 58/5
COST [1]   37/3
COULD [15]   10/22 17/14 18/23 19/2 19/19 20/3 31/18 36/11 36/23 38/20 40/11 42/11 43/4 50/15 56/13
COULDN'T [4]   10/17 10/19 29/5 53/12
COUNSEL [23]   2/1 3/8 16/13 24/25 26/12 32/4 32/21 34/25 38/10 39/4 42/15 48/2 50/23 51/20 52/1 52/4 52/14 54/18 54/21 55/11 55/25 56/2 57/3
COUNSEL'S [1]   57/2
COUPLE [7]   6/13 13/4 31/6 38/2 40/4 54/19 55/10
COURSE [3]   7/2 11/7 14/16
COURT [22]   1/1 1/19 5/4 5/20 6/7 6/25 7/8 7/10 7/13 10/9 11/7 12/14 12/17 12/25 25/12 29/4 29/17 42/23 48/3 52/1 52/5 53/20
COURT'S [1]   25/16
COURTROOM [2]   26/5 52/9
COVERED [2]   49/1 49/2
COWAN [1]   2/19
CREATE [2]   36/10 36/23
CREATING [2]   19/11 36/21
CRITICAL [2]   44/7 45/15
CRR [1]   58/12
CRYSTALLIZE [1]   25/6
CSR [2]   1/19 58/12
CURRENT [1]   49/19
CURRENTLY [1]   37/1
CUSTOMER [5]   9/4 9/10 9/19 12/19 41/12
CUSTOMERS [10]   9/12 19/14 33/12 34/9 34/17 36/7 37/10 39/21 43/20 43/23
CV [2]   1/8 3/7

**D**

DATA [1]   12/1
DATE [11]   8/4 8/5 8/6 10/15 16/3 19/11 30/5 30/7 30/10 53/12 58/10
DAVID [2]   1/9 3/8
DAY [3]   8/8 19/3 31/20
DAYS [1]   4/5
DE [2]   14/18 15/19
DE-SPAC [2]   14/18 15/19
DEAL [6]   12/21 30/18 31/6 31/19 38/13 55/23
DEBATE [1]   15/1
DECEIVE [2]   43/6 43/15
DECEMBER [5]   1/15 3/1 26/15 42/5 47/16
DECEMBER 17TH [1]   26/15
DECEPTIONS [2]   4/9 4/12
DECIDE [2]   4/2 15/25
DECIDED [2]   4/1 5/13
DECISION [1]   4/4
DECLARED [1]   44/11
DEEP [2]   43/19 44/5
DEEPER [1]   5/23
DEFENDANT [19]   1/9 2/18 3/22 3/25 7/2 7/2 17/25 25/23 26/24 27/3 31/11 31/24 31/25 32/4 33/3 33/13 34/6 37/11 44/23
DEFENDANT'S [3]   3/24 25/15 31/4
DEFENDANTS [22]   2/11 3/20 4/25 5/8 10/17 16/19 18/3 21/8 25/20 26/25 28/22 28/25 29/7 29/18 30/6 30/21 31/5 31/16 31/20 34/9 43/6 48/6
DEFENDANTS' [1]   5/7
DEFENSE [5]   29/11 34/25 52/1 52/4 52/13
DEFINITION [1]   7/21
DEFRAUD [1]   43/7
DELIVERING [1]   39/13
DELTA [1]   14/10
DEPEND [2]   39/23 41/23
DEPENDED [1]   27/13
DEPENDENT [4]   17/10 26/18 29/13 41/25
DEPUTY [2]   26/5 52/10
DESCRIBED [1]   35/15

DESIGN [4]   43/19 44/5 45/11 55/17
DESIGNER [7]   37/14 42/6 42/7 42/9 44/8 50/14 50/20
DESIGNER'S [1]   36/20
DESIGNS [2]   19/13 37/10
DESPERATELY [1]   31/8
DETAIL [8]   13/2 23/9 35/15 36/18 37/5 40/12 41/19 51/17
DETAILED [6]   42/8 43/13 46/5 50/3 50/17 56/21
DETERMINE [2]   38/18 39/2
DEVELOP [3]   22/24 37/7 44/3
DEVELOPED [5]   9/7 19/21 21/8 22/1 51/5
DEVELOPING [6]   22/13 26/17 35/16 36/8 40/7 44/16
DEVELOPMENT [20]   4/12 12/19 19/12 19/19 19/21 21/18 21/21 36/16 37/6 37/13 40/21 41/5 43/11 43/25 44/18 50/5 50/12 50/19 50/21 54/24
DEVELOPMENTS [2]   44/9 48/23
DEVICES [2]   35/18 36/12
DIAL [1]   45/25
DID [17]   14/8 14/9 15/16 15/18 17/8 18/16 23/5 23/16 28/3 33/5 33/17 35/5 49/9 53/20 53/22 56/21 57/1
DIDN'T [21]   13/12 13/13 23/21 24/15 24/16 28/2 28/7 30/13 36/4 37/23 38/3 40/18 40/22 40/24 42/2 44/15 50/14 51/5 52/23 55/12 55/24
DIEGO [1]   2/9
DIFFER [1]   48/24
DIFFERENT [3]   12/16 15/13 16/12
DIG [1]   5/22
DIGEST [1]   56/20
DIGESTED [1]   5/18
DILIGENCE [6]   11/16 11/18 12/20 15/11 39/1 39/8
DIRECT [2]   50/20 51/14
DIRECTOR [2]   11/10 14/18
DIRECTORS [2]   14/14 27/8
DISCLOSE [6]   37/23 38/3 40/18 40/23 40/24 44/13
DISCLOSED [8]   19/4 23/14 26/16 29/2 35/8 37/25 41/22 55/23
DISCLOSURE [5]   35/2 35/5 38/1 40/6 51/2
DISCLOSURES [10]   17/11 17/12 20/9 30/1 30/8 35/1 55/11 55/14 56/6 56/12
DISCONTINUE [1]   18/23
DISCOVERY [1]   10/25
DISCUSSION [1]   21/20
DISMISS [4]   3/24 4/1 4/2 29/18
DISPLAYS [1]   20/7
DISPUTE [1]   29/13
DISTRICT [5]   1/1 1/2 1/4 14/11 24/4

**D**

DIVISION [1]   1/2
DO [28]   4/4 7/14 9/19 10/4 10/9 11/1 15/25 18/8 18/10 18/10 21/11 22/19 23/22 24/5 25/12 25/16 26/7 30/13 31/18 32/21 32/23 36/15 42/12 42/14 42/16 46/23 48/8 52/2
DOCTRINE [3]   13/17 24/14 24/19
DOCUMENT [4]   13/10 13/18 15/16 39/3
DOCUMENTS [5]   8/13 32/4 32/5 32/7 32/14
DOES [10]   13/1 18/21 20/10 21/14 22/5 22/16 23/11 51/22 51/24 55/2
DOESN'T [5]   14/12 16/12 18/10 45/20 51/15
DOING [6]   10/5 10/20 12/20 23/19 47/21 51/7
DON'T [24]   5/14 12/13 13/2 14/2 15/23 16/2 16/15 21/22 21/22 23/16 23/17 23/17 24/18 24/21 24/23 29/3 40/12 40/13 44/13 45/25 46/9 50/24 52/18 54/12
DONE [3]   45/13 57/3 57/5
DOOR [1]   53/17
DOWD [4]   2/4 3/11 3/14 25/3
DOWN [9]   5/23 6/5 9/3 9/9 10/19 16/4 18/5 24/10 55/20
DRAW [2]   56/6 56/7
DRAWN [4]   24/12 56/5 56/10 56/11
DROPPED [1]   20/3
DUE [5]   12/20 15/11 28/11 38/25 39/7
DURING [14]   32/1 32/18 32/22 34/5 34/11 34/15 34/20 35/8 35/15 36/4 41/6 41/14 53/21 54/23

**E**

E-MAIL [1]   22/17
EACH [3]   5/10 16/25 24/20
EARLY [1]   53/16
EARNEST [1]   44/2
EARNINGS [3]   7/25 41/4 41/7
ECONOMIC [2]   7/22 7/24
EFFICIENT [1]   4/2
EFFORT [2]   13/11 13/21
EFFORTS [2]   19/21 36/10
EIGHT [2]   44/12 45/3
EITHER [2]   6/12 24/24
ELECT [1]   18/23
ELECTRONIC [1]   35/17
ELECTRONICS [1]   36/24
ELEMENTS [1]   27/16
ELIGIBLE [1]   24/2
ELSE [3]   15/14 16/11 56/21
EMBARCADERO [1]   2/14
EMERGE [1]   47/22
EMPLOYEE [1]   11/10

ENABLE [1]   22/19
END [5]   21/10 43/11 46/1 54/20 54/15
ENGINEERING [4]   19/6 19/12 20/25 55/1
ENOUGH [6]   8/21 8/22 29/14 29/15 50/24 54/13
ENSURE [1]   31/19
ENTIRE [4]   11/23 12/20 35/19 48/4
ENTIRELY [2]   35/13 45/6
ENTITLED [2]   12/3 58/7
ENTITY [7]   15/21 17/5 17/18 27/20 28/4 28/20 40/15
ENTRUSTED [2]   32/7 33/8
ENTRY [1]   7/3
EQUITY [2]   38/24 47/24
ERICSON [9]   2/13 3/20 5/12 5/22 9/22 16/19 21/6 36/14 53/10
ERNST [1]   11/19
ESPECIALLY [2]   25/14 26/8
ESSENCE [1]   29/10
ESSENTIAL [4]   36/10 36/16 36/21 42/7
ESSENTIALLY [1]   16/21
ESTABLISH [3]   6/18 6/22 29/20
ESTABLISHED [2]   27/7 29/19
ESTABLISHING [1]   15/7
ESTIMATES [1]   4/11
ET [2]   1/9 3/8
EVALUATE [1]   7/1
EVASIVE [1]   46/8
EVEN [13]   9/25 10/4 14/23 19/21 22/20 28/6 29/23 36/8 40/7 47/1 49/13 51/5 54/9
EVER [3]   35/3 45/8 46/20
EVERYBODY [2]   16/11 29/6
EVERYONE [3]   3/23 18/2 56/19
EVERYONE'S [1]   57/6
EVERYTHING [13]   13/14 14/13 14/22 15/10 43/23 44/6 45/20 47/4 47/8 47/14 47/15 47/20 53/18
EVIDENCE [3]   51/7 53/8 54/8
EVOLVED [1]   46/24
EXACT [1]   16/2
EXACTLY [3]   14/10 48/8 53/2
EXAMPLE [3]   21/9 43/15 51/3
EXCEED [1]   35/10
EXCITED [2]   33/25 34/1
EXHIBITS [2]   5/16 33/21
EXIST [1]   22/5
EXISTED [1]   28/10
EXISTING [3]   28/10 36/12 36/24
EXPECT [2]   40/23 42/3
EXPECTED [7]   34/12 35/13 35/18 35/25 38/4 38/7 39/15
EXPIRE [1]   31/1
EXPLAIN [2]   20/18 25/11
EXPLAINED [5]   20/17 21/2 21/4 55/18 55/19
EXPLAINING [1]   37/5

EXPLAINS [1]   36/20
EXPLICIT [1]   20/8
EXPORT [6]   17/13 17/14 27/6 40/10 40/11 40/16
EXPORT-RELATED [1]   27/6
EXPRESSING [1]   20/12
EXPRESSIONS [1]   20/14
EXTENSION [1]   30/17
EXTREMELY [4]   26/18 27/1 27/11 30/20

**F**

FACING [1]   28/3
FACT [16]   6/25 8/16 10/15 21/7 21/23 27/12 28/3 32/17 36/17 37/23 38/1 45/20 50/2 50/17 50/21 53/12
FACTORS [2]   8/18 8/21
FACTS [23]   4/24 10/11 11/4 22/8 22/11 26/10 26/23 29/13 30/9 33/9 36/15 42/1 42/8 43/5 44/7 48/10 49/15 49/25 50/13 50/25 56/5 56/8 56/12
FACTUAL [3]   29/13 50/3 56/24
FAILURE [1]   18/10
FAIR [1]   4/15
FALL [1]   4/8
FALSE [6]   4/7 6/17 16/22 43/14 50/13 51/8
FALSITIES [1]   43/2
FALSITY [4]   18/12 24/24 45/15 56/13
FAR [1]   45/15
FAST [1]   25/10
FATE [1]   38/18
FAULT [1]   53/19
FEBRUARY [2]   28/5 28/14
FEDERAL [2]   6/12 17/19
FELL [1]   30/18
FEW [7]   26/20 30/7 38/8 40/9 47/2 47/16 51/4
FIGURING [1]   10/22
FILE [2]   47/22 52/4
FILED [3]   8/9 31/23 32/6
FILES [1]   38/9
FILING [3]   3/25 21/24 42/20
FILINGS [9]   8/8 11/14 11/25 12/6 17/17 18/19 19/18 21/4 21/19
FINAL [2]   39/13 39/17
FINALLY [3]   42/6 46/8 55/25
FINANCIAL [4]   30/19 30/20 30/23 38/14
FIND [1]   20/16
FINDING [1]   29/17
FINE [4]   47/4 47/8 47/15 47/21
FINGERS [1]   12/12
FIRM [1]   11/15
FIRST [20]   4/6 5/13 5/25 6/10 18/13 24/18 27/2 30/9 30/11 30/21 35/2 38/1 39/14 41/6 42/9 43/13 48/11 49/8 50/2 52/20

## F

**FIT [3]**   23/7 36/11 36/24
**FIVE [2]**   8/13 27/8
**FIX [1]**   26/5
**FLIPPED [2]**   5/12 15/22
**FLOOR [1]**   2/15
**FOCUS [8]**   16/23 17/2 18/15 21/7 42/11 43/4 45/6 46/12
**FOCUSED [1]**   28/17
**FOCUSING [2]**   24/22 45/9
**FOLKS [2]**   13/17 19/9
**FOLLOWING [2]**   28/17 31/10
**FORCE [1]**   29/14
**FORECASTED [1]**   48/24
**FOREGOING [1]**   58/5
**FORESEEABLE [1]**   39/22
**FOREVER [3]**   19/9 19/15 19/25
**FORGET [1]**   53/14
**FORM [3]**   31/23 31/24 32/14
**FORMAT [1]**   58/8
**FORMED [2]**   26/14 26/15
**FORMER [5]**   17/21 36/19 37/14 42/6 42/7
**FORWARD [21]**   3/9 7/15 7/21 8/1 8/16 8/17 10/8 43/2 43/12 46/22 47/8 48/14 48/20 49/1 49/2 49/10 49/13 49/24 54/2 54/7 54/11
**FORWARD-LOOKING [14]**   7/15 7/21 8/1 8/16 8/17 10/8 48/14 48/20 49/2 49/10 49/13 54/2 54/7 54/11
**FOUND [1]**   33/14
**FOUNDERS' [1]**   28/11
**FOUR [3]**   5/21 12/24 53/21
**FOUR-MONTH [1]**   53/21
**FOURTH [1]**   11/6
**FOX [1]**   17/23
**FRAMED [1]**   39/23
**FRANCISCO [1]**   2/16
**FRAUD [2]**   4/21 10/22
**FRONT [2]**   16/3 53/1
**FULL [1]**   41/7
**FUNDAMENTAL [1]**   6/8
**FUNDS [1]**   31/2
**FUNNEL [1]**   7/3
**FURTHER [1]**   16/4
**FUTURE [9]**   7/20 7/22 7/24 7/25 12/5 34/6 39/22 48/20 48/22

## G

**GAIN [1]**   30/22
**GAVE [3]**   23/23 43/16 50/17
**GELLER [5]**   2/4 3/11 3/14 3/16 25/3
**GENERATE [1]**   9/6
**GENERATED [2]**   19/11 35/13
**GENERIC [1]**   21/14
**GET [10]**   9/2 22/1 26/16 30/15 30/17 31/6 39/6 52/17 54/9 54/12
**GIVE [5]**   4/24 5/10 33/16 48/7 52/9

**GIVEN [4]**   20/8 25/19 28/20 37/17
**GIVING [1]**   21/15
**GLAD [1]**   21/15
**GLUCOSE [1]**   22/20
**GO [8]**   5/13 7/12 15/23 20/23 25/18 35/17 51/4 52/3
**GOING [27]**   5/22 7/11 9/20 9/25 10/5 10/18 12/18 17/4 18/1 18/4 19/9 22/12 23/22 25/9 25/14 25/18 26/18 39/17 39/18 40/22 41/11 42/4 45/12 47/23 48/1 48/7 51/20
**GOOD [13]**   3/10 3/13 3/18 3/19 3/21 3/23 6/13 8/21 8/22 16/18 25/2 40/8 43/15
**GOT [3]**   16/11 40/2 52/22
**GOTTEN [1]**   30/16
**GOVERNMENT [12]**   9/15 17/4 17/19 18/1 18/2 18/4 18/8 23/12 23/13 23/22 27/22 28/12
**GRAPHS [1]**   13/4
**GRAY [2]**   11/16 16/11
**GREAT [3]**   36/18 46/18 51/17
**GROSSMAN [2]**   1/6 3/8
**GROUP [7]**   10/16 11/19 11/23 12/9 12/20 13/16 13/17
**GROWTH [6]**   6/5 7/17 32/20 49/17 54/1 54/2
**GUARANTEES [1]**   20/3
**GUESS [3]**   13/23 16/14 52/25
**GUIDANCE [6]**   41/16 41/23 44/25 45/23 46/11 56/3
**GUIDELINES [1]**   39/11

## H

**HAD [46]**
**HADN'T [3]**   40/21 42/2 44/2
**HALF [4]**   39/15 39/16 44/21 45/21
**HAND [5]**   29/4 47/6 47/12 47/21 52/8
**HAPPEN [3]**   12/4 34/12 39/15
**HAPPENED [7]**   7/20 26/21 44/9 46/13 47/9 47/13 53/18
**HAPPENING [4]**   20/14 34/7 49/20 49/21
**HAPPY [3]**   12/22 25/12 55/7
**HARBOR [5]**   4/17 48/14 49/3 49/11 53/23
**HAS [28]**   3/24 6/25 7/10 7/13 7/19 7/20 8/20 9/18 10/9 10/10 12/24 13/8 19/10 19/24 23/20 34/2 42/23 46/3 46/9 46/13 46/15 46/15 46/16 47/9 50/7 50/11 52/22 56/16
**HAVE [80]**
**HAVEN'T [5]**   9/7 29/6 29/19 47/12 53/14
**HAVING [2]**   50/16 52/5
**HE [77]**
**HE'S [1]**   9/23
**HEADS [1]**   53/17

**HEALTH [17]**   11/15 14/19 15/20 15/21 29/24 30/6 30/12 30/15 31/19 31/23 32/6 32/7 32/12 38/9 38/12 38/16 38/19
**HEALTH'S [4]**   15/24 32/11 38/17 38/23
**HEAR [2]**   4/2 24/25
**HEARING [5]**   25/17 42/12 42/24 52/23 53/2
**HEAVILY [1]**   26/25
**HELD [2]**   31/22 58/6
**HELPFUL [4]**   25/6 25/17 42/16 56/25
**HENGTONG [28]**   4/9 5/23 9/2 9/12 9/15 17/1 17/3 17/5 17/10 18/2 18/4 18/8 23/11 23/13 23/13 23/22 23/24 26/12 26/14 27/23 28/6 28/9 28/11 28/19 28/21 29/22 29/25 54/4
**HENGTONG'S [2]**   28/11 28/18
**HERE [22]**   5/13 13/21 13/24 17/2 18/18 23/3 23/7 23/16 24/18 29/20 32/17 41/4 43/4 43/6 46/17 51/12 52/24 53/1 53/15 54/14 56/13 56/14
**HEREBY [1]**   58/4
**HEY [2]**   16/5 40/10
**HIGH [1]**   6/16
**HIGHLIGHT [1]**   43/12
**HIGHLY [3]**   31/6 31/18 50/22
**HIM [5]**   13/15 25/24 33/24 38/11 46/13
**HIRE [1]**   42/5
**HIRED [4]**   11/15 11/16 21/10 43/25
**HIS [15]**   3/25 6/3 11/14 13/15 14/23 32/15 33/10 33/10 42/22 47/18 47/24 49/9 50/2 50/22 51/12
**HISTORICAL [2]**   8/16 12/1
**HISTORY [1]**   31/7
**HIT [1]**   38/4
**HMN [1]**   28/17
**HMT [3]**   27/25 28/5 28/15
**HOLD [1]**   41/3
**HOLISTICALLY [1]**   5/6
**HOLMES [1]**   2/19
**HONOR [50]**
**HONOR'S [2]**   26/1 56/23
**HONORABLE [1]**   1/3
**HOPE [1]**   22/19
**HOPED [1]**   22/1
**HOPEFUL [1]**   25/6
**HOPES [4]**   20/1 20/2 20/13 38/19
**HOW [10]**   5/4 6/22 9/13 16/6 21/11 23/11 25/8 45/11 46/25 56/18
**HRT [14]**   26/12 26/13 26/19 27/3 27/5 27/8 27/13 27/14 27/17 39/23 40/3 41/1 41/24 41/25
**HUAWEI [7]**   17/17 17/21 18/3

**H**

HUAWEI... [4]  27/18 27/24 28/9 29/25
HUGE [2]  15/11 38/14
HUMAN [1]  37/8
HURDLE [1]  46/4
HURDLES [5]  20/15 41/20 45/19 46/2 46/14
HWN [1]  17/21

**I**

I'M [1]  57/4
I'VE [1]  23/15
IDENTIFIED [7]  6/9 6/17 8/19 32/10 32/24 39/20 54/3
IDENTIFIES [1]  15/3
IDENTIFY [3]  4/23 30/13 38/20
IDENTIFYING [1]  6/20
IMMEDIATELY [1]  23/14
IMMIMENT [1]  32/19
IMMINENT [8]  6/5 7/17 7/18 49/7 49/17 49/20 53/25 54/1
IMPACT [1]  9/20
IMPLIES [2]  49/15 50/18
IMPORTANCE [1]  28/20
IMPORTANT [21]  9/12 15/2 17/2 18/15 25/10 25/13 25/21 26/1 26/7 26/11 26/22 27/1 27/10 27/11 27/16 28/1 30/8 30/9 30/14 30/24 46/23
IMPORTANTLY [4]  14/24 15/5 19/17 41/17
IMPOSED [1]  40/17
IMPOSSIBLE [1]  43/14
IMPROVE [1]  23/7
INACTIONABLE [1]  4/17
INCENTIVE [1]  38/15
INCENTIVES [2]  30/19 30/20
INCENTIVIZED [1]  50/22
INCLUDED [6]  8/14 11/19 21/23 33/23 40/9 51/17
INCLUDING [3]  8/14 14/16 31/15
INCONSISTENT [1]  44/7
INCORPORATE [1]  22/12
INCORPORATED [2]  37/9 37/21
INCORPORATION [1]  19/13
INCREASED [1]  28/18
INCREASES [1]  31/10
INCURRING [1]  31/7
INDICATE [2]  18/11 26/24
INDICATIVE [3]  18/11 18/12 48/19
INDUSTRY [1]  27/19
INFERENCE [10]  4/25 6/22 10/11 23/10 24/12 56/5 56/7 56/7 56/9 56/11
INFERENCES [1]  10/16
INFORMATION [26]  11/24 12/10 12/13 12/17 14/15 14/16 15/14 16/9 16/10 23/20 23/21 28/25 29/20 29/21 33/1 33/15 35/7 37/10 39/1 39/5 39/7 50/9 50/12 50/13 51/22 56/20

INITIAL [2]  36/4 56/24
INITIATE [1]  49/3
INSIDE [1]  6/16
INSIGHT [1]  25/16
INSTANCE [2]  20/18 22/20
INTEGRATE [1]  22/25
INTEGRATED [1]  21/13
INTEND [1]  4/4
INTENSIVE [1]  29/12
INTENT [1]  43/15
INTEREST [3]  31/3 46/21 49/24
INTERESTED [2]  20/20 55/21
INTERESTING [1]  15/1
INTERESTS [1]  42/10
INTERNATIONAL [1]  11/15
INVALIDATED [1]  28/15
INVALIDATING [1]  55/18
INVESTED [1]  38/19
INVESTIGATION [1]  33/8
INVESTING [2]  22/4 38/24
INVESTMENT [3]  8/10 11/17 11/21
INVESTOR [9]  6/3 8/6 8/12 8/14 13/2 13/15 13/25 29/15 43/17
INVESTORS [21]  15/24 28/7 31/3 31/19 31/22 32/8 32/17 33/7 34/6 35/8 38/16 38/17 38/22 38/23 39/9 39/25 40/6 44/4 47/4 47/7 47/20
INVESTORS' [1]  32/11
INVOLVED [1]  26/25
INVOLVEMENT [1]  28/21
IP [1]  27/4
IPO [3]  31/2 38/17 38/19
IS [252]
ISN'T [4]  8/22 19/9 19/25 56/14
ISOLATE [1]  13/11
ISOLATED [1]  33/5
ISOLATION [1]  21/3
ISSUE [7]  4/4 5/5 5/25 9/16 9/23 29/2 46/4
ISSUES [6]  5/24 9/24 17/13 25/7 27/6 54/3
IT [169]
IT'S [3]  17/7 19/15 24/16
ITS [6]  12/19 19/14 22/12 22/13 30/1 43/20
ITSELF [4]  6/11 7/14 28/19 34/14

**J**

JANUARY [3]  43/16 47/22 58/10
JANUARY 13TH [1]  43/16
JIVE [1]  51/15
JOEL [3]  2/20 3/21 5/11
JOINT [11]  4/10 26/11 26/13 26/22 27/2 27/23 28/21 31/21 31/22 40/3 40/13
JOINTLY [1]  30/6
JUDGE [1]  1/4
JUDICIAL [1]  58/9
JULY [6]  16/2 16/7 16/10 38/8

38/8 55/13
JUST [4]

**K**

KARANTH [8]  2/11 3/20 16/19 31/5 31/9 31/12 31/17 44/23
KATIE [2]  1/19 58/12
KENNETH [2]  1/6 3/7
KEPT [1]  36/22
KEVIN [2]  2/6 3/13
KEY [5]  14/17 42/8 42/17 43/2 43/4
KICKED [1]  23/5
KIND [8]  25/6 26/10 29/1 29/9 30/9 43/12 46/23 47/25
KNEW [23]  6/23 10/4 10/12 10/15 11/4 13/23 15/7 16/8 17/9 17/11 17/17 17/20 18/2 19/1 19/25 21/8 29/3 29/6 29/7 30/16 44/2 50/18 53/11
KNOW [21]  4/23 7/18 12/13 13/8 15/23 16/15 17/8 18/16 21/9 22/18 24/15 24/16 28/8 30/12 39/5 49/25 52/14 52/18 53/21 55/17 56/22
KNOWING [1]  53/2
KNOWLEDGE [3]  18/1 18/3 33/10
KNOWN [8]  9/14 10/19 10/24 16/7 29/1 29/14 40/18 51/8
KNOWS [1]  50/12

**L**

LACK [1]  12/8
LANGUAGE [16]  8/3 8/3 8/15 8/22 8/23 9/9 9/17 14/5 48/12 48/15 48/25 54/8 54/12 54/21 54/23 55/9
LARGELY [1]  17/9
LARGEST [2]  34/21 39/21
LAST [3]  11/6 21/17 53/22
LATE [4]  42/20 55/12 55/14 55/15
LATER [9]  10/25 13/20 24/8 34/23 38/8 44/11 44/13 47/16 51/6
LAUNCH [5]  34/12 37/18 37/19 41/12 41/16
LAUNCHES [1]  37/21
LAW [5]  6/24 7/23 11/15 18/10 24/3
LAWS [2]  40/11 40/16
LAWYERS [1]  11/20
LAY [1]  24/21
LEAD [2]  3/12 25/3
LEADING [3]  32/12 34/16 43/23
LEARNED [1]  8/24
LEAST [6]  7/1 37/6 37/14 40/22 44/3 53/7
LEAVE [9]  5/20 7/13 10/9 11/7 12/14 12/22 12/25 52/19 53/9
LEGAL [1]  18/9
LENGTH [1]  11/12
LESS [1]  47/11

**L**

**LET [5]**   5/8 5/10 48/11 51/21 52/13
**LET'S [6]**   4/18 8/24 14/24 17/1 53/14 56/1
**LEVEL [3]**   6/16 22/20 27/9
**LIABILITY [1]**   27/17
**LIABLE [1]**   14/22
**LICENSE [1]**   27/4
**LIE [2]**   24/15 24/15
**LIES [2]**   24/18 46/17
**LIFE [1]**   36/25
**LIKE [20]**   5/20 7/12 7/24 10/9 11/7 12/2 12/14 12/25 16/23 18/20 20/4 20/14 23/25 25/13 43/1 44/10 45/25 49/23 52/7 52/19
**LIKELY [4]**   22/21 30/17 30/19 44/3
**LINDELL [3]**   2/5 3/11 25/3
**LINE [1]**   53/16
**LIST [8]**   17/5 17/5 17/18 27/20 28/4 28/8 28/20 40/15
**LITERALLY [1]**   12/2
**LITTLE [7]**   5/17 5/23 16/24 18/24 23/23 38/10 39/24
**LLP [3]**   2/4 2/12 2/19
**LONG [2]**   25/8 48/2
**LONGER [3]**   10/21 22/3 44/3
**LOOK [10]**   5/15 8/25 9/8 20/15 21/18 24/20 25/21 50/2 51/11 56/1
**LOOKED [1]**   54/3
**LOOKING [18]**   5/3 5/5 7/15 7/21 8/1 8/16 8/17 10/8 46/18 48/14 48/20 49/2 49/2 49/10 49/13 54/2 54/7 54/11
**LOS [4]**   1/14 1/20 2/23 3/1
**LOSE [1]**   30/19
**LOSSES [1]**   31/8
**LOST [1]**   15/22
**LOT [9]**   9/23 23/3 41/4 48/12 52/14 52/17 52/18 53/9 56/20
**LYING [1]**   56/10

**M**

**M. [1]**   39/4
**M. COLOMA'S [1]**   39/4
**MACHINE [1]**   15/11
**MADE [44]**
**MAIL [1]**   22/17
**MAIN [2]**   4/8 25/15
**MAINLY [1]**   28/11
**MAKE [12]**   11/14 22/7 25/9 25/20 26/6 29/3 29/15 29/18 30/2 33/17 45/16 45/20
**MAKES [3]**   9/17 24/5 44/14
**MAKING [6]**   12/2 14/21 18/24 20/2 34/2 45/10
**MANAGEMENT [4]**   11/24 12/5 27/8 28/23
**MANIPULATE [1]**   43/6
**MANY [3]**   4/17 17/24 20/19

**MARCH [10]**   8/5 10/3 10/3 16/5 16/8 16/10 30/3 35/4 43/16 44/17
**MARCH 19TH [2]**   8/5 30/5
**MARINE [5]**   17/21 27/19 27/24 28/9 29/25
**MARKET [10]**   17/17 17/20 18/16 18/17 19/1 19/22 19/24 19/25 29/11 38/4
**MARKETPLACE [2]**   17/8 17/9
**MATERIALS [1]**   34/14
**MATTER [3]**   50/8 50/9 58/7
**MATTERS [1]**   50/4
**MAY [8]**   11/8 16/17 18/11 44/19 44/22 48/24 51/3 56/2
**MAYBE [8]**   15/22 16/3 18/7 19/9 19/15 22/2 23/10 26/5
**ME [12]**   4/24 5/10 9/24 12/12 16/3 16/23 25/11 42/11 48/11 51/21 52/7 52/13
**MEAN [5]**   14/12 15/20 20/19 22/15 52/23
**MEANING [3]**   41/9 41/10 49/20
**MEANINGFUL [7]**   20/14 41/19 45/18 46/2 48/25 54/22 55/9
**MEANINGLESS [2]**   55/4 55/7
**MEANS [2]**   7/20 21/15
**MEANT [1]**   55/19
**MED [2]**   45/9 46/18
**MEDIA [1]**   17/23
**MEDTECH [2]**   56/4 56/9
**MEIER [2]**   2/11 3/20
**MEIR [1]**   16/19
**MENTION [1]**   24/1
**MENTIONED [9]**   27/11 29/23 30/4 30/11 34/25 36/14 38/13 39/4 49/25
**MERGE [1]**   6/4
**MERGER [14]**   30/7 30/24 30/25 31/11 31/20 32/16 32/18 34/9 38/18 38/23 39/2 39/9 41/2 45/8
**MERGING [1]**   11/13
**MERMELSTEIN [1]**   2/19
**MICHAEL [1]**   3/16
**MIDDLE [2]**   41/9 41/10
**MIGHT [6]**   9/2 9/4 9/5 13/25 21/3 24/1
**MILLION [11]**   30/22 31/8 31/15 31/15 34/20 35/10 36/1 36/2 45/23 47/10 47/12
**MIND [1]**   5/1
**MINIMUM [3]**   9/18 18/22 55/3
**MINUTE [1]**   12/2
**MINUTES [4]**   5/10 5/14 48/7 48/8
**MISLEAD [2]**   29/5 29/16
**MISLEADING [3]**   4/7 21/3 21/5
**MISREPRESENTATIONS [5]**   4/10 41/5 43/9 46/24 51/2
**MISREPRESENTED [1]**   50/5
**MISSTATEMENT [3]**   17/7 20/6 33/16

**MISSTATEMENTS [3]**   25/24 32/25 51/15
**MODEL [1]**   34/16
**MODULE [9]**   10/1 35/14 35/17 36/17 39/14 41/8 41/21 44/20 45/7
**MOMENT [2]**   11/5 14/25
**MONDAY [2]**   1/15 3/1
**MONICA [1]**   1/3
**MONITOR [1]**   27/5
**MONTH [2]**   44/1 53/21
**MONTHS [13]**   3/25 9/14 24/9 37/6 37/15 39/17 40/22 41/10 44/12 44/24 45/2 45/3 51/6
**MORE [11]**   4/2 14/23 15/2 15/5 16/17 22/20 31/8 48/16 52/18 52/22 55/6
**MOST [2]**   9/12 19/16
**MOTION [6]**   3/24 4/1 5/7 5/21 29/18 33/22
**MOTIONS [3]**   4/2 31/5 57/6
**MOTIVATED [2]**   31/6 31/18
**MOTIVE [1]**   24/3
**MOUTH [1]**   29/2
**MOVE [3]**   24/5 24/21 47/8
**MR [1]**   38/25
**MR. [56]**
**MR. CAR [1]**   31/13
**MR. COLOMA [25]**   5/22 6/2 6/8 9/13 11/3 11/9 12/2 12/8 12/15 13/5 13/12 13/22 14/6 14/17 15/4 15/7 15/11 31/17 32/13 32/21 32/22 33/16 49/4 49/8 53/5
**MR. COLOMA'S [3]**   38/10 38/22 57/2
**MR. ERICSON [6]**   5/12 5/22 9/22 21/6 36/14 53/10
**MR. KARANTH [2]**   31/12 31/17
**MR. RICKMAN [17]**   31/14 31/17 34/10 34/15 35/8 35/15 41/6 41/14 43/10 43/16 46/7 47/14 48/10 50/1 50/20 53/9 56/1
**MR. RICKMAN'S [1]**   51/16
**MR. SILVERSTEIN [1]**   46/6
**MRA [1]**   1/8
**MUCH [5]**   9/5 16/4 52/12 56/23 56/24
**MULTIPLE [2]**   17/23 37/8
**MUST [1]**   10/24
**MY [27]**   4/16 6/1 7/12 7/18 8/23 9/22 10/2 10/11 14/1 18/6 18/9 19/4 19/18 20/11 22/22 23/15 23/20 24/1 26/4 26/12 52/21 53/4 53/7 53/17 54/14 54/23 55/14
**MYSELF [1]**   13/24

**N**

**NAME [8]**   19/8 26/14 27/18 27/25 28/2 28/4 28/7 32/15
**NATHAN [3]**   2/5 3/10 25/2
**NATURE [4]**   19/5 25/19 29/9

## N

NATURE... [1]   43/9
NEAR [2]   40/25 42/3
NEARLY [1]   31/11
NECESSARY [1]   22/9
NEED [6]   8/18 22/13 23/6 37/7
 43/3 52/18
NEEDED [3]   31/8 37/15 38/23
NEEDLE [2]   24/6 24/21
NEGATIVE [1]   56/6
NEGOTIATING [4]   43/21 44/5
 45/4 47/18
NEVER [2]   49/11 53/6
NEW [3]   28/4 33/14 47/24
NEWS [1]   17/23
NEXT [4]   4/5 19/3 40/9 41/9
NINE [1]   41/10
NINTH [5]   6/24 7/23 24/4 49/1
 50/7
NO [45]
NON [4]   19/11 46/8 55/1 55/2
NON-RECURRING [3]   19/11 55/1
 55/2
NON-RESPONSIVE [1]   46/8
NONCOMPLIANCE [1]   47/17
NONE [5]   23/6 23/7 24/12 29/20
 29/25
NONRECURRING [3]   19/6 19/8
 20/25
NORTH [1]   1/20
NORTHERN [1]   14/11
NOT [83]
NOTE [3]   26/22 27/10 30/24
NOTED [1]   34/18
NOTHING [9]   15/2 23/12 24/19
 44/10 46/7 46/15 48/16 55/5
 55/21
NOTICE [2]   18/24 47/17
NOTION [2]   22/24 24/13
NOVEMBER [4]   41/3 45/18 47/2
 51/13
NOW [31]
NRE [5]   34/21 35/1 37/24 40/25
 47/9
NUMBER [12]   6/6 6/15 6/18 8/4
 9/2 9/3 9/5 9/21 12/7 29/24
 48/21 53/6
NUMBERS [1]   34/8
NUMEROUS [2]   46/6 50/3

## O

OBFUSCATE [1]   28/3
OBJECT [2]   42/18 52/4
OBLIGATIONS [2]   18/22 55/3
OBVIOUSLY [2]   28/22 42/25
OEMS [1]   37/9
OFF [4]   6/19 23/5 33/5 54/19
OFFER [1]   23/3
OFFERING [1]   20/21
OFFICER [3]   11/9 14/17 14/18
OFFICIAL [2]   1/19 24/17
OKAY [6]   39/25 47/21 48/9
 48/10 52/16 57/4

OMISSION [4]   17/3 17/4 17/6
 17/7
ONE [37]
ONE 8K [1]   8/9
ONE-OFF [1]   33/5
ONES [6]   25/15 32/9 32/9 38/13
 38/17 38/24
ONGOING [2]   27/1 28/13
ONLY [9]   6/1 15/21 16/9 20/24
 24/9 49/5 53/25 54/16 56/11
OPENING [3]   49/9 49/12 53/23
OPERATING [2]   28/7 39/22
OPERATIONS [6]   9/20 24/13
 24/14 24/16 24/19 27/1
OPINION [3]   4/18 49/23 50/2
OPPORTUNITY [1]   52/15
OPPOSED [2]   22/13 56/4
OPPOSING [1]   26/12
OPPOSITION [7]   6/6 6/10 7/7
 7/9 32/20 33/2 52/22
OPTICAL [1]   28/16
ORDER [2]   9/18 15/24
ORDERS [6]   23/18 43/21 44/6
 44/10 44/13 45/4
ORGANIZATIONS [1]   27/22
OTHER [21]   6/7 7/6 7/18 8/8
 11/11 20/20 21/21 22/7 26/10
 26/24 32/22 32/24 36/24 37/15
 37/23 38/25 40/3 43/15 43/18
 46/9 55/10
OTHERS [1]   22/3
OUR [25]   5/21 7/11 7/16 9/19
 9/20 12/7 30/11 32/20 33/2
 34/8 34/8 34/9 36/19 39/19
 40/3 40/11 40/17 41/19 45/5
 45/6 46/6 46/19 51/17 54/25
 55/21
OUT [16]   5/4 8/8 9/4 9/18
 10/25 13/20 15/23 24/21 29/1
 30/19 32/21 45/23 46/22 49/9
 50/23 53/18
OUTCOMES [1]   48/20
OUTLINED [1]   54/6
OUTSET [1]   25/17
OUTSIDE [1]   14/13
OVER [20]   12/6 17/16 17/16
 18/18 18/18 19/4 19/4 19/17
 19/17 19/24 19/25 21/2 21/2
 23/16 23/16 30/22 40/8 46/23
 50/11 50/11
OVERALL [2]   46/19 50/25
OVERCOME [2]   45/19 46/3
OWN [1]   22/14

## P

P.M [1]   3/2
PACIFIC [1]   17/22
PAGE [1]   58/7
PAGES [2]   5/15 5/16
PAPER [1]   32/20
PAPERS [2]   29/19 33/14
PARADIGM [1]   10/7
PARADOXICAL [1]   29/9

PARAGRAPHS [3]   36/18 42/11
 51/11
PART [8]   10/23 11/19 13/5 23/2
 43/8 45/15 50/25 56/24
PARTICIPATED [1]   38/17
PARTICULAR [6]   4/24 9/24 11/5
 11/5 21/15 22/9
PARTIES [1]   4/5
PARTNER [4]   14/19 15/20 27/24
 40/14
PARTNERSHIP [2]   34/1 34/8
PARTS [1]   13/11
PARTY [1]   22/11
PAST [2]   40/4 45/21
PAUL [2]   41/18 45/17
PAYING [1]   20/25
PENDING [1]   3/24
PEOPLE [11]   10/22 11/23 12/9
 12/20 15/22 20/1 20/20 21/12
 22/2 55/7 55/20
PER [1]   19/13
PERCENT [4]   27/13 27/14 31/11
 31/12
PERFORMANCE [2]   7/22 7/24
PERFORMING [1]   12/21
PERHAPS [3]   5/7 12/23 19/16
PERIOD [9]   26/11 26/20 27/15
 28/14 30/4 36/5 37/11 43/10
 46/25
PERMEATES [1]   53/4
PERSON [2]   6/22 44/1
PERTAINED [1]   14/13
PERTAINS [2]   5/21 14/1
PHARMACEUTICALS [1]   24/4
PHOTONIC [1]   19/13
PHOTONICS [1]   22/12
PHRASES [1]   55/18
PICKS [1]   45/19
PICTURE [1]   13/15
PILLSBURY [2]   2/12 11/20
PITTMAN [1]   2/12
PIVOTING [2]   56/4 56/9
PLACE [2]   24/18 27/16
PLACED [4]   26/21 27/16 29/22
 30/14
PLACES [1]   8/4
PLAINTIFF [7]   1/7 2/3 5/9 8/20
 12/23 13/8 20/10
PLAINTIFF'S [1]   18/5
PLAINTIFFS [8]   3/12 3/15 4/7
 4/23 17/25 21/6 25/1 25/4
PLAN [2]   47/19 47/25
PLANNED [1]   39/13
PLEAD [1]   5/25
PLEADING [1]   13/16
PLEADS [1]   4/20
PLEASE [2]   3/8 52/3
PLED [1]   10/10
PLSRA [1]   48/14
PLUS [1]   34/21
POILSED [1]   32/19
POINT [24]   6/19 7/3 7/12 11/2
 11/6 15/2 19/6 20/6 20/10

Case 2:23-cv-09501-MRA-MAA    Document 93    Filed 01/21/25    Page 68 of 72    Page ID #:9285

**P**

POINT... [15]  20/11 22/7 23/6 25/11 26/2 35/25 37/18 37/24 43/5 43/24 46/10 46/17 48/15 49/8 57/2
POINTED [4]  32/21 46/6 50/23 51/14
POINTING [1]  12/12
POINTS [8]  25/15 25/19 25/20 26/8 42/17 48/6 54/20 55/10
POISED [6]  6/5 7/17 7/17 49/6 49/14 49/20
POLICY [1]  6/14
POSITION [5]  10/23 18/5 47/7 47/18 47/24
POSITIONS [1]  24/10
POSSIBILITY [1]  40/19
POSSIBLE [5]  13/19 26/7 37/18 37/19 37/20
POSSIBLY [4]  10/17 10/19 29/16 53/13
POWERPOINT [1]  53/15
PREDATE [1]  26/10
PREDICTING [1]  46/14
PREPACKAGED [1]  47/19
PREPARATION [1]  57/6
PREPARED [3]  25/5 42/23 56/19
PREPLANNED [1]  47/19
PRESENCE [1]  27/8
PRESENT [4]  13/7 13/13 39/8 49/15
PRESENTATION [21]  8/12 13/2 13/6 13/15 13/25 25/5 25/8 25/25 26/4 32/1 32/15 32/16 32/18 34/10 34/14 34/19 42/22 43/17 48/2 51/21 52/6
PRESENTED [4]  8/12 13/12 33/7 52/14
PRESENTERS [1]  13/9
PRESIDING [1]  1/4
PRESS [4]  8/13 31/21 31/25 32/14
PRESSED [1]  26/4
PRESSURE [2]  22/18 30/15
PRESUMED [1]  50/8
PRETTY [1]  53/15
PREVIOUSLY [2]  30/4 41/15
PRIMARILY [2]  14/16 19/11
PRINCIPAL [1]  54/23
PRIOR [2]  26/20 44/1
PROBABLY [1]  5/17
PROBLEM [6]  6/8 14/1 22/22 52/5 53/3 54/14
PROBLEMATIC [1]  40/17
PROBLEMS [1]  17/13
PROCEDURALLY [1]  53/3
PROCEDURE [1]  6/12
PROCEEDINGS [4]  1/13 47/3 57/11 58/6
PROCESS [3]  36/8 42/2 44/2
PROCESSES [1]  37/12
PRODUCE [1]  51/4
PRODUCING [2]  37/3 45/12

PRODUCT [33]
PRODUCTION [3]  39/15 39/19 41/7 44/20
PRODUCTS [17]  16/6 19/14 19/19 19/22 21/18 22/12 22/25 26/17 27/21 34/12 36/25 40/7 40/11 41/12 50/11 54/24 55/5
PROGRESS [2]  21/9 45/10
PROHIBITIVE [1]  37/3
PROHIBITS [1]  27/20
PROJECT [1]  17/22
PROJECTED [3]  35/9 38/6 45/1
PROJECTION [1]  7/25
PROJECTIONS [10]  12/4 12/6 14/3 14/5 14/17 20/2 35/20 44/12 45/6 54/4
PROPER [3]  6/11 6/13 29/12
PROPOSING [1]  6/4
PROPOSITION [1]  18/6
PROSPECTIVE [1]  48/19
PROSPECTS [3]  4/11 4/13 46/19
PROTECTED [2]  48/13 49/10
PROTONIC [1]  22/9
PROTOTYPE [1]  37/3
PROVEN [1]  44/8
PROVIDE [7]  33/3 33/15 35/19 39/1 42/15 51/25 52/3
PROVIDED [8]  12/5 14/5 25/16 29/21 33/1 33/2 42/8 44/8
PROVIDES [2]  24/2 46/7
PROVIDING [2]  27/21 33/24
PROXIMITY [2]  24/7 51/1
PROXY [12]  14/7 14/9 14/15 15/4 15/9 15/25 18/19 19/23 38/9 38/10 39/10 39/12
PSLRA [3]  6/13 10/21 54/10
PUBLIC [7]  22/5 29/5 29/20 29/25 30/2 38/14 38/21
PUBLICATIONS [1]  17/24
PUBLICITY [1]  29/15
PUBLICIZED [1]  17/18
PUBLICLY [4]  28/3 29/1 29/14 55/13
PUFFERY [3]  4/17 34/3 49/18
PUFFIER [1]  20/11
PULL [2]  9/4 9/18
PURCHASE [9]  6/4 18/22 23/18 27/4 43/21 44/6 44/10 45/4 55/3
PURCHASES [1]  18/24
PURPORTED [2]  48/11 48/15
PURPOSE [4]  15/21 39/6 39/24 40/6
PURSUANT [1]  58/4
PUT [3]  13/17 17/4 52/22
PUTTING [1]  12/16

**Q**

Q4 [1]  41/12
QUALIFIED [1]  37/8
QUARTERLY [1]  18/20
QUESTION [7]  8/5 14/14 18/14 41/18 43/4 46/3 53/7

QUESTIONS [8]  11/8 12/23 16/17 46/7 49/5 49/15 51/19 56/16
QUICK [1]  34/24
QUICKLY [5]  9/8 23/5 54/20 55/10 55/17
QUOTE [5]  18/21 18/25 19/10 19/14 19/18
QUOTES [4]  12/17 13/3 15/14 21/17

**R**

RAISED [1]  31/2
RAISES [1]  23/10
RAMIREZ [1]  1/3
RAMP [2]  39/15 39/19
RAMPED [1]  41/12
RATHER [1]  6/10
RATIONALIZE [1]  43/14
RE [2]  14/10 24/4
READ [7]  4/6 8/18 21/3 21/17 51/16 51/18 54/23
READS [1]  22/17
READY [5]  10/6 16/6 20/23 22/22 39/18
REAL [7]  9/8 11/4 13/24 16/9 34/24 40/19 54/20
REALLY [21]  5/20 6/1 10/20 16/4 23/7 24/5 24/21 24/23 25/20 39/24 40/1 40/10 41/4 45/14 51/11 52/23 53/6 53/20 54/9 54/15
REAPPOINTED [1]  47/24
REASON [8]  19/3 19/3 30/13 32/3 32/6 38/12 50/6 51/18
REASONS [2]  6/14 31/7
REBRANDED [1]  27/25
REBRANDING [1]  28/1
RECALL [1]  54/22
RECEIVE [5]  24/2 31/10 31/13 31/14 47/17
RECEIVED [4]  15/12 16/9 34/20 50/20
RECEIVING [2]  11/24 12/10
RECKLESSNESS [1]  20/7
RECOGNIZED [1]  50/7
RECURRING [3]  19/11 55/1 55/2
REDUCE [1]  18/23
REFERENCE [3]  32/21 34/1 34/22
REFERENCED [1]  33/21
REFLECT [1]  28/4
REGARD [3]  30/21 43/11 50/1
REGARDING [3]  28/11 33/10 50/21
REGISTER [1]  17/19
REGISTRATION [2]  18/19 19/24
REGULATIONS [2]  40/10 58/8
REGULATORS [1]  9/3
REGULATORY [1]  9/11
REHASH [1]  15/9
REITERATE [2]  44/17 44/19
REITERATED [2]  34/14 39/10
RELATED [2]  27/6 41/21
RELATIONS [1]  18/14

**R**

RELATIONSHIP [2]  19/2 19/5
RELATIONSHIPS [2]  9/11 12/19
RELEASE [4]  8/13 31/22 31/25 32/15
RELEASED [1]  31/21
RELIABLE [3]  40/1 40/3 40/8
RELY [1]  12/3
REMAINED [1]  28/17
REMAINING [2]  41/20 46/3
REMARKS [1]  55/4
REMEMBER [1]  13/2
REORGANIZATION [1]  47/19
REPEAT [1]  7/11
REPEATED [3]  17/11 17/12 46/7
REPEATING [1]  13/24
REPLY [2]  23/6 49/12
REPORTED [1]  58/6
REPORTER [2]  1/19 12/17
REPORTER'S [1]  1/13
REPORTS [2]  18/20 50/20
REPRESENT [3]  6/16 11/16 11/18
REPRESENTATION [5]  34/13 34/19 35/4 38/5 44/22
REPRESENTATIONS [2]  29/16 31/21
REQUIRE [1]  18/10
REQUIRED [4]  5/1 27/3 27/5 30/12
REQUIRES [1]  49/1
RESEARCHER [1]  11/11
RESIGNATION [1]  44/23
RESIGNATIONS [1]  51/9
RESIGNED [4]  24/8 24/8 24/9 24/9
RESIGNS [1]  47/17
RESPECT [5]  11/3 16/25 20/8 52/20 53/4
RESPECTED [1]  11/17
RESPOND [5]  5/9 12/23 16/17 25/14 52/15
RESPONSE [3]  33/2 41/17 57/1
RESPONSES [2]  51/12 51/17
RESPONSIBLE [2]  14/12 44/1
RESPONSIVE [1]  46/8
REST [1]  54/5
RESULT [1]  31/16
RESULTS [3]  39/22 48/19 48/24
RETURN [1]  31/2
REVEALED [1]  34/23
REVENUE [22]  4/10 14/3 14/5 19/11 26/18 27/13 35/20 36/1 39/11 40/1 40/4 40/8 40/24 41/16 41/22 44/12 44/25 45/5 45/23 46/10 46/15 47/10
REVENUES [20]  7/25 9/6 9/17 9/20 17/10 26/18 26/21 27/11 27/17 28/20 30/1 35/9 35/12 35/23 38/6 41/1 41/25 42/3 42/4 54/25
REVIEW [1]  4/16
REVOLVING [1]  52/20
RICKMAN [30]

RICKMAN'S [1]  51/16
RIGEL [1]  21/4
RIGHT [7]  10/24 14/13 14/10 21/20 49/16 49/20 49/21
RISE [1]  4/25
RISK [12]  8/18 8/20 9/11 13/24 26/21 27/17 28/19 30/1 40/12 42/4 55/8 55/8
RISKS [6]  8/11 40/13 40/18 40/25 48/16 48/21
ROAD [4]  6/5 9/3 10/19 16/4
ROBBINS [5]  2/4 3/11 3/14 3/16 25/3
ROCK [1]  20/4
ROCKLEY [51]
ROCKLEY'S [12]  4/12 11/20 12/5 12/18 14/16 27/12 27/23 28/21 29/21 33/10 36/6 36/10
ROPES [2]  11/16 16/11
ROUNDS [1]  37/8
RPR [1]  58/12
RUDMAN [4]  2/4 3/11 3/14 25/3
RULE [1]  6/12
RULES [1]  6/12
RUNNING [3]  3/17 32/9 32/13

**S**

S4 [1]  55/11
SAFE [5]  4/17 48/14 49/2 49/10 53/23
SAID [46]
SALARY [1]  31/10
SALE [2]  41/24 41/24
SAM [1]  23/23
SAME [7]  12/10 12/10 16/10 34/5 42/1 45/17 46/16
SAMPLES [2]  39/13 39/17
SAN [2]  2/9 2/16
SAY [36]
SAYING [9]  8/15 10/3 10/14 20/16 33/24 39/16 47/11 51/3 53/19
SAYS [7]  9/9 9/24 12/6 24/14 45/22 46/15 56/2
SC [21]  11/15 14/19 15/20 15/21 15/24 15/24 30/6 30/12 30/15 31/19 31/22 32/6 32/7 32/11 32/12 38/9 38/12 38/16 38/17 38/19 38/22
SCHECTER [1]  24/3
SCIARANI [1]  2/6
SCIARINI [1]  3/14
SCIENTER [26]  4/20 5/6 6/18 7/1 10/10 15/7 16/23 16/25 18/11 18/12 20/5 23/4 23/8 24/6 24/24 26/2 45/15 48/10 49/24 50/6 50/22 51/1 53/8 54/9 54/10 56/14
SCRUTINY [1]  28/2
SEC [2]  21/24 31/23
SECOND [3]  7/12 39/16 44/21
SECONDLY [1]  18/14
SECTION [2]  53/24 58/4

SECURE [1]  40/1
SECURED [3]  43/19 44/9 45/11
SECURITIES [10]  4/20 10/22 11/14 12/6 17/17 18/18 19/17 21/4 21/19 29/22
SECURITY [2]  28/10 28/13
SEE [4]  12/20 24/12 46/23 52/5
SEEM [2]  4/17 21/3
SEEMED [1]  21/6
SEEMS [1]  4/8
SEEN [2]  47/12 53/14
SELLING [1]  20/24
SENIOR [1]  24/17
SENSE [6]  20/21 20/22 20/23 20/24 44/14 45/20
SEPARATELY [1]  6/20
SERIES [1]  31/21
SERIOUSLY [1]  54/22
SERVICES [1]  19/12
SET [29]  10/1 14/24 21/7 26/10 30/10 35/14 35/17 36/9 36/15 36/17 36/21 36/25 37/2 37/4 37/6 39/14 40/21 41/8 41/21 42/7 43/25 44/14 44/15 44/20 45/7 46/11 46/12 50/21 51/5
SETS [2]  16/21 37/13
SETTING [3]  9/13 9/16 29/9
SEVERAL [5]  3/25 4/7 5/16 26/23 42/8
SHAW [1]  2/12
SHEET [1]  47/6
SHIFTED [1]  46/12
SHIFTING [1]  45/6
SHORTLY [4]  28/14 39/18 44/21 47/23
SHOULD [8]  6/7 7/7 10/19 14/21 18/6 18/7 39/2 53/24
SHOULDN'T [3]  52/25 53/1 54/9
SHOW [3]  26/3 33/4 43/5
SHOWS [1]  34/2
SIDE [3]  7/19 11/11 53/17
SIDES [1]  29/1
SIGN [5]  14/8 14/9 15/16 15/18 15/20
SIGNATURE [1]  14/23
SIGNED [12]  14/12 15/23 16/1 27/3 31/23 31/24 32/13 32/14 32/14 38/11 38/12 39/3
SIGNIFICANCE [1]  7/19
SIGNIFICANT [10]  26/21 27/17 30/20 31/10 35/22 38/6 40/4 40/25 41/23 42/4
SILICON [1]  19/13
SILVERSTEIN [3]  41/18 45/17 46/6
SIMPLY [3]  13/14 18/8 20/9
SIN [2]  1/9 3/8
SINCE [1]  45/8
SITUATION [1]  23/7
SIX [2]  9/14 24/8
SKIP [4]  25/11 43/11 46/22 49/24
SLIPPING [1]  56/8

Case 2:23-cv-09501-MRA-MAA   Document 93   Filed 01/21/25   Page 70 of 72   Page ID #:9287

**S**

**SMARTER [2]** 9/23 9/23
**SMORGASBORD [1]** 23/4
**SO [79]**
**SOLICIT [1]** 15/24
**SOME [24]** 4/18 7/19 10/16 13/3 20/11 22/1 22/2 23/21 25/6 25/19 25/22 26/8 26/9 27/15 28/16 30/9 32/21 40/8 40/9 40/10 42/20 42/21 43/12 48/5
**SOMEBODY [3]** 15/20 24/14 56/10
**SOMEONE [1]** 51/19
**SOMETHING [16]** 8/15 10/2 10/4 10/17 11/4 20/7 21/14 21/25 22/1 22/5 24/14 26/5 28/22 30/2 52/5 56/21
**SOMEWHERE [2]** 6/5 9/3
**SOON [1]** 28/19
**SORRY [2]** 49/23 57/4
**SORT [6]** 7/19 10/25 13/20 22/16 42/21 42/21
**SORTS [1]** 20/11
**SOUNDS [1]** 45/25
**SOUTH [1]** 17/22
**SPAC [2]** 14/18 15/19
**SPEAK [1]** 26/1
**SPEARHEAD [1]** 32/8
**SPEARHEADING [1]** 38/13
**SPECIAL [2]** 7/19 15/21
**SPECIFIC [21]** 5/3 10/14 15/3 15/6 19/12 21/13 25/15 25/24 30/25 33/9 35/4 35/5 35/19 35/22 40/13 41/17 43/9 47/5 49/5 50/8 51/14
**SPECIFICALLY [11]** 6/20 10/10 27/18 31/17 32/24 34/11 35/12 35/23 36/9 36/20 37/12
**SPECULATED [3]** 18/6 18/7 18/9
**SPECULATING [1]** 10/20
**SPELLED [1]** 46/22
**SPOKE [2]** 32/16 33/6
**SPONSOR [2]** 30/21 31/4
**SPONSORS [1]** 38/25
**SPRING [1]** 1/20
**STAGE [1]** 29/12
**STAND [3]** 5/4 55/24 57/6
**STANDARDS [1]** 27/20
**STANDING [1]** 53/1
**STANDPOINT [2]** 41/20 46/2
**START [11]** 5/8 9/25 10/5 10/18 17/1 27/15 36/5 37/22 39/13 41/5 55/12
**STARTED [7]** 6/19 39/13 40/21 42/2 44/2 44/16 55/15
**STARTING [1]** 43/25
**STARTS [1]** 30/5
**STATE [4]** 3/9 5/1 46/16 49/19
**STATED [3]** 17/16 39/12 46/1
**STATEMENT [51]**
**STATEMENTS [34]**
**STATES [4]** 1/1 1/4 58/5 58/9
**STENOGRAPHICALLY [1]** 58/6
**STEP [6]** 3/8 43/2 54/13 54/13

54/13 54/14
**STEPPED [1]** 24/10
**STEPS [1]** 3/7
**STICK [1]** 13/14
**STILL [7]** 19/19 21/18 47/3 47/21 51/3 53/2 54/24
**STOCK [2]** 55/12 55/15
**STOOD [5]** 30/22 31/9 31/13 31/14 55/23
**STORY [5]** 34/7 46/25 47/1 47/25 48/4
**STREAMS [1]** 40/1
**STREET [1]** 1/20
**STRONG [5]** 4/25 6/22 10/11 34/7 56/14
**STRONGER [1]** 46/19
**STUDIES [1]** 37/8
**STUFF [1]** 55/22
**SUB [1]** 54/3
**SUB-ISSUES [1]** 54/3
**SUBJECT [5]** 4/17 9/11 37/7 40/11 48/21
**SUBMITTED [2]** 5/15 57/7
**SUBSEQUENTLY [1]** 27/24
**SUBSTANTIAL [4]** 27/7 32/19 49/7 49/17
**SUBSTANTIALLY [1]** 28/18
**SUCCESS [1]** 49/7
**SUCCESSFUL [2]** 19/20 54/25
**SUCCESSFULLY [1]** 30/23
**SUCH [9]** 19/21 22/3 27/21 36/12 48/18 53/12 53/12 53/12 53/12
**SUDDEN [2]** 45/5 45/13
**SUE [2]** 10/22 13/19
**SUED [1]** 10/2
**SUFFICIENT [2]** 8/23 37/2
**SUFFICIENTLY [1]** 4/20
**SUGGEST [1]** 24/2
**SUGGESTED [3]** 6/6 8/20 13/8
**SUITABLE [1]** 38/20
**SUITE [2]** 2/8 2/22
**SUMMARIZE [2]** 4/24 42/11
**SUMMARIZED [1]** 48/10
**SUMMARY [2]** 8/11 42/17
**SUPERVISORS [1]** 27/10
**SUPPLEMENTAL [1]** 42/21
**SUPPORTED [1]** 33/9
**SUPPORTING [3]** 5/6 50/9 50/25
**SUPPORTIVE [1]** 50/6
**SUPPORTS [3]** 50/2 50/22 51/2
**SUPPOSED [1]** 5/4
**SURE [2]** 4/19 8/22
**SUSPECT [1]** 24/17
**SUSPICIOUSLY [1]** 51/9

**T**

**TAKE [8]** 5/13 22/2 37/14 38/14 38/20 40/22 44/3 51/11
**TAKEN [1]** 56/22
**TAKES [1]** 37/6
**TAKING [2]** 45/24 52/12
**TALK [7]** 16/24 30/9 34/24

48/11 49/4 53/10 55/7
**TALKED [2]** 26/13 48/22
**TALKING [14]** 17/3 20/19 20/22 21/1 23/18 23/18 36/22 37/12 45/8 47/10 49/19 50/7 50/10 55/22
**TALKS [1]** 22/17
**TARGET [2]** 38/20 38/21
**TECH [7]** 3/17 27/25 28/5 28/15 28/17 45/9 46/18
**TECHNICAL [2]** 33/11 41/23
**TECHNOLOGY [9]** 17/21 27/21 33/25 34/15 34/21 41/20 45/19 46/2 46/4
**TELL [2]** 39/25 47/7
**TELLING [7]** 20/3 44/4 45/21 47/4 51/16 51/19 55/7
**TELLS [2]** 19/8 22/16
**TEMPORAL [2]** 24/7 51/1
**TEMPORARILY [1]** 24/10
**TENSE [1]** 49/15
**TERM [2]** 40/25 42/3
**TERMS [2]** 20/13 23/8
**THAN [14]** 6/10 9/24 12/19 15/14 16/4 16/8 22/3 31/8 32/24 43/15 46/19 47/11 48/16 55/6
**THANK [9]** 16/13 16/14 24/25 54/18 56/17 56/18 57/8 57/9 57/10
**THANKS [1]** 54/17
**THAT [428]**
**THEIR [41]**
**THEM [20]** 7/11 9/5 11/16 11/18 13/19 20/21 23/5 23/6 23/7 23/8 23/23 23/23 24/22 29/4 35/6 39/1 40/4 45/21 51/9 51/18
**THEMSELVES [2]** 29/7 30/22
**THEN [22]** 5/8 8/16 10/24 11/6 11/7 16/25 19/16 23/14 30/18 35/7 37/7 37/9 39/8 39/18 44/21 45/4 45/12 47/16 47/21 51/6 52/22 56/3
**THEORIES [3]** 23/4 23/4 24/21
**THEORY [1]** 13/19
**THERE [68]**
**THEREFORE [1]** 56/13
**THESE [22]** 19/18 19/20 20/1 20/8 21/4 25/7 27/11 28/13 30/10 32/4 32/5 32/6 37/12 37/21 40/7 40/16 44/5 45/9 50/11 50/17 51/11 55/3
**THEY [195]**
**THIBODEAUX [2]** 1/19 58/12
**THING [8]** 10/8 17/2 30/11 30/24 52/25 53/22 54/1 54/2
**THINGS [16]** 8/25 12/24 18/20 21/21 22/16 22/18 22/20 23/9 26/20 28/24 43/18 49/19 54/16 55/23 56/1 56/2
**THINK [39]**
**THINKING [1]** 11/12

**T**

THIRD [4]   4/11 10/8 11/2 22/11
THIRDLY [1]   19/16
THIS [124]
THOSE [35]
THOUGH [3]   5/7 28/6 40/7
THOUGHT [5]   5/18 10/17 22/2
 53/25 56/25
THOUGHTS [1]   5/21
THOUSAND [1]   5/16
THREATENING [1]   40/25
THREE [11]   4/8 9/5 9/21 16/21
 16/24 45/2 48/7 48/8 51/6
 52/19 53/21
THROUGH [3]   25/18 36/18 54/1
THROUGHOUT [4]   37/11 43/10
 46/24 47/2
TICK [1]   54/19
TIED [1]   30/1
TIES [1]   28/12
TIME [30]
TIMED [1]   51/9
TIMEFRAME [1]   22/2
TIMELINE [5]   9/21 37/17 41/16
 50/10 53/15
TIMING [1]   56/8
TIP [1]   23/24
TITLE [1]   58/4
TODAY [3]   7/13 52/12 56/19
TODAY'S [1]   42/23
TOGETHER [5]   4/3 8/9 13/17
 22/23 55/22
TOLD [7]   18/17 19/15 19/24
 32/17 34/6 46/13 47/20
TOMORROW [3]   19/2 19/10 20/4
TOO [6]   52/12 55/12 55/14
 55/15 56/23 56/24
TOOK [1]   27/16
TOPIC [2]   15/8 15/8
TRACK [5]   44/18 44/19 45/3
 51/4 56/2
TRADE [1]   55/15
TRADING [1]   55/13
TRANSACTION [6]   10/24 11/12
 32/8 32/9 32/12 39/6
TRANSCRIPT [6]   1/13 8/10 8/14
 31/25 58/6 58/7
TRUE [12]   6/21 6/23 10/13
 10/15 10/18 11/5 11/5 13/23
 15/8 16/7 53/13 58/5
TRUER [2]   12/17 15/13
TRUSTING [1]   38/24
TRUTH [3]   20/8 29/11 51/19
TRY [5]   10/5 25/9 25/14 26/6
 43/11
TRYING [5]   9/25 13/14 26/3
 45/22 48/3
TURN [1]   52/13
TWO [11]   6/18 9/3 15/21 24/10
 27/8 27/9 40/1 44/24 53/6
 54/13 54/14

**U**

U.S [3]   1/19 8/3 9/15
UNCERTAINTY [1]   48/21
UNCLE [1]   23/23
UNDER [11]   6/11 15/24 18/22
 19/19 21/18 21/21 28/7 38/19
 48/13 54/10 54/24
UNDERLYING [1]   27/4
UNDERSEA [1]   28/16
UNDERSTAND [3]   5/2 16/22 42/14
UNEXPECTEDLY [1]   44/22
UNITED [4]   1/1 1/4 58/5 58/9
UNLESS [1]   56/16
UNSIGNED [1]   13/10
UNSUPPORTED [1]   34/3
UNTIL [10]   6/17 10/1 10/5 10/6
 21/10 23/13 28/5 38/2 38/4
 55/13
UNTRUE [2]   23/10 24/16
UP [9]   9/9 21/16 23/3 23/23
 41/12 45/19 52/7 52/12 56/23
UPDATED [1]   28/4
UPDATES [1]   50/18
UPON [3]   3/25 29/13 41/25
US [10]   6/19 19/24 20/25 21/1
 27/19 27/20 28/17 40/17 46/13
 51/16
USE [2]   22/9 49/16
USED [5]   10/21 13/16 20/13
 32/1 55/19

**V**

VAGUE [1]   34/3
VALIDATE [1]   36/7
VALIDATED [8]   20/14 20/18
 20/21 20/24 34/16 43/23 44/6
 50/15
VALUE [1]   31/15
VARIOUS [2]   20/13 24/20
VENTURE [9]   4/10 26/12 26/13
 26/23 26/25 27/2 27/23 28/21
 40/3
VERSION [1]   41/8
VERSUS [1]   3/8
VERY [26]   5/17 6/2 6/25 7/1
 7/23 9/17 10/10 14/4 17/10
 19/8 20/8 20/8 22/4 24/3 24/5
 25/17 35/9 40/17 48/2 50/4
 51/13 51/14 53/21 55/8 55/9
 55/19
VET [1]   39/7
VIABLE [2]   36/11 37/19
VIEW [1]   20/6
VISIBILITY [1]   34/8
VOLUME [3]   43/21 44/6 45/4
VS [1]   1/8
VULNERABLE [1]   17/12

**W**

WALK [3]   19/2 52/7 55/6
WANT [9]   5/2 25/11 29/4 32/23
 34/24 42/11 49/4 54/19 57/1
WANTED [4]   7/13 15/25 54/16

56/22
WANTS [1]   32/4
WARNING [1]   39/24
WARNINGS [1]   48/18
WAS [149]
WASN'T [8]   6/21 6/23 10/12
 13/9 13/23 16/7 21/9 37/13
WASTING [1]   56/24
WATCH [1]   22/15
WAY [6]   5/2 16/20 16/24 18/11
 43/15 46/24
WE [99]
WEARABLE [5]   35/14 35/16 35/18
 36/17 44/14
WEARABLES [16]   36/1 36/3 36/6
 36/11 36/12 37/9 39/14 40/23
 41/8 41/21 43/20 44/20 44/25
 45/7 45/24 46/11
WEEKS [6]   38/2 38/8 47/2 47/16
 47/20 51/4
WELL [22]   9/23 11/17 13/7
 15/19 16/6 21/15 23/9 23/10
 24/7 24/8 24/15 39/5 39/11
 42/22 43/1 43/8 48/9 52/17
 55/12 55/25 56/2 56/19
WELL-RESPECTED [1]   11/17
WENT [1]   54/1
WERE [61]
WEREN'T [5]   9/25 10/5 30/17
 35/1 50/15
WEST [1]   2/7
WESTERN [1]   1/2
WHAT [70]
WHATEVER [3]   12/23 25/12 31/18
WHEN [24]   8/7 10/13 10/18 13/7
 16/1 21/18 22/21 24/9 24/20
 25/21 28/15 30/5 42/5 44/11
 44/11 45/16 46/10 46/11 47/2
 51/5 51/8 53/17 54/2 56/5
WHERE [17]   9/22 11/12 13/17
 20/6 20/6 20/7 20/12 41/4 41/7
 43/16 49/15 53/7 53/10 54/23
 55/2 55/23 55/23
WHETHER [5]   12/13 32/4 39/2
 43/3 45/18
WHICH [34]
WHILE [1]   26/16
WHO [14]   6/20 10/25 10/25
 11/19 11/20 11/21 11/24 12/9
 25/22 32/13 38/17 40/14 51/19
 55/20
WHOLE [1]   53/14
WHY [15]   6/21 15/16 15/18
 17/18 30/13 32/3 32/6 36/20
 37/5 38/11 38/12 39/3 50/6
 54/1 54/6
WIDESPREAD [1]   19/22
WILL [28]   5/8 5/8 7/3 12/22
 13/9 13/19 16/15 16/16 19/1
 19/20 19/22 24/25 25/6 25/12
 25/25 26/6 26/16 43/3 43/11
 46/22 48/9 48/19 48/23 49/24
 52/15 53/9 54/22 54/25

**W**

**WILSHIRE [1]**  2/21
**WINDOW [1]**  53/21
**WINS [4]**  43/19 44/5 45/11 55/17
**WINTHROP [1]**  2/12
**WISHES [1]**  25/12
**WITHDRAW [3]**  44/12 44/24 51/6
**WITHDRAWING [1]**  45/5
**WITHDRAWN [1]**  46/10
**WITHDREW [1]**  56/3
**WITHIN [3]**  4/4 27/8 39/17
**WITHOUT [6]**  6/19 22/7 27/22 36/25 37/2 37/4
**WITNESS [1]**  22/4
**WON'T [2]**  5/13 16/6
**WORD [3]**  7/17 7/17 12/9
**WORDS [5]**  20/19 21/2 46/9 49/16 49/17
**WORK [1]**  22/23
**WORKED [2]**  11/11 21/25
**WORKING [8]**  11/19 11/23 12/9 20/1 22/6 37/1 38/4 55/22
**WORLD [3]**  17/20 28/15 34/22
**WORTH [1]**  36/1
**WORTHLESS [1]**  31/1
**WOULD [51]**
**WOULDN'T [2]**  10/4 10/6
**WRAP [1]**  23/3
**WRITE [1]**  13/12
**WRONG [5]**  11/1 12/14 15/5 21/5 54/4
**WROTE [3]**  13/12 13/22 53/24

**Y**

**YEAR [4]**  41/9 44/3 44/11 45/21
**YEARS [5]**  27/12 35/21 35/22 40/5 40/9
**YES [5]**  14/9 16/16 20/13 21/12 24/8
**YET [8]**  7/20 9/7 21/22 21/23 22/5 36/7 40/21 51/6
**YOU [89]**
**YOUNG [1]**  11/19
**YOUR [64]**
**YOURSELF [1]**  42/15