UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:23-cv-09501-MRA-MAA | Date | March 31, 2025 |
|---|---|---|---|
| Title | Kenneth S. Grossman, et al. v. David Sin, et al. | | |

| Present: The Honorable | MONICA RAMIREZ ALMADANI, UNITED STATES DISTRICT JUDGE |
|---|---|

| Gabriela Garcia | None Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None Present | None Present |

**Proceedings:** **(IN CHAMBERS) ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS ANDREW RICKMAN, MAHESH KARANTH, AND RICHARD MEIER'S MOTION TO DISMISS THE AMENDED COMPLAINT [ECF 64] AND GRANTING DEFENDANT ANGELO COLOMA'S MOTION TO DISMISS THE AMENDED COMPLAINT [ECF 84]**

Before the Court are Defendants Andrew Rickman, Mahesh Karanth, and Richard Meier's Motion to Dismiss the Amended Complaint (the "Rockley Motion") and Defendant Angelo Coloma's Motions to Dismiss the Amended Complaint (the "Coloma Motion") (collectively, the "Motions"). ECF 64, 84. The Court read and considered the moving, opposing, and reply papers and held a hearing on both Motions on December 16, 2024. ECF 91. For the reasons stated herein, the Court **GRANTS IN PART AND DENIES IN PART** the Rockley Motion and **GRANTS** the Coloma Motion, finding as follows:

- **Rockley Motion**: Plaintiffs have plausibly stated a claim against Rockley Defendants based on materially false or misleading statements made about Rockley's product development and commercialization, but not based on allegedly false or misleading statements and omissions related to the HRT and Apple NREs. At this stage, the Court does not find that Rockley Defendants' forward-looking statements are protected by the safe harbor. Because Plaintiffs have plausibly alleged primary violations by Rockley Defendants, they have plausibly stated a claim for control person liability.

- **Coloma Motion**: Plaintiffs have failed to plausibly state a claim against Coloma. The sole statement explicitly attributed to Coloma in the First Amended Complaint ("FAC") is non-actionable puffery. The statements attributed to Coloma in the Opposition are not alleged with particularity and are otherwise not actionable against Coloma. The facts alleged against Coloma also do not give rise to a strong inference of scienter. Plaintiffs' claim for control personal liability fails as a result.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:23-cv-09501-MRA-MAA | Date | March 31, 2025 |
|---|---|---|---|
| Title | Kenneth S. Grossman, et al. v. David Sin, et al. | | |

## I.    BACKGROUND[1]

### A.    Plaintiffs

Lead Plaintiffs Jonathan Lottner, individually and as owner of Munsel Limited and indirect beneficial owner of Cosmos Investments Assets Limited, and Federico Huergo, individually and as owner of Lenis Group Limited and Zenalia Investment Corp., (collectively, "Plaintiffs") filed this putative federal securities class action on November 9, 2023.   ECF 1.   The operative FAC was filed on February 28, 2024.   ECF 56 (FAC).

Plaintiffs seek to represent entities that purchased or otherwise acquired publicly traded warrants or Class A ordinary shares of SC Health Corporation ("SC Health"), ordinary shares of Rockley Photonics Holdings Limited ("Rockley"), or publicly traded Rockley warrants (collectively, the "Covered Securities"), between March 19, 2021, and January 23, 2023, when SC Health and Rockley agreed to enter into a business combination (the "Merger") and Rockley filed for Chapter 11 bankruptcy, respectively (hereinafter, the "Class Period").   *Id.* ¶¶ 1-2, 5, 18, 23-25, 243.

Plaintiffs generally allege that Defendants made materially false and misleading statements or omissions during the Class Period, including in the Merger period and in quarterly and year-end reporting in 2021 and 2022.   *Id.* ¶¶ 122-198.   The statements or omissions pertain to three subjects: (1) risks impacting revenue generated through a non-recurring engineering request for development ("NRE") from a joint venture, Hengtong Rockley Technology Co. ("HRT"); (2) risks impacting revenues generated through a NRE from Apple; and (3) development and commercialization of Rockley's products.   *Id.* ¶¶ 71-116.   On these alleged facts, Plaintiffs bring two causes of action: (1) violation of Section 10(b) of the Securities and Exchange Act of 1934 ("Exchange Act") and Securities and Exchange Commission ("SEC") Rule 10b-5 and (2) violation of Section 20(a) of the Exchange Act.   *Id.* ¶¶ 255-264.

### B.    Sponsor Defendants

Defendant SIN Capital Group Pte. Ltd. ("SINCap") is a multi-asset investment group based in Singapore and focused on real estate and private investments across Asia.   *Id.* ¶¶ 26, 34. SINCap controlled SC Health Holdings Limited and SC Health Group Limited during the Class Period.   *Id.* ¶ 34.   SC Health Holdings Limited (the "Sponsor") served as the sponsor of SC

---

[1] The factual background is described as alleged in Plaintiffs' FAC, as well as documents incorporated by reference into the FAC and facts subject to judicial notice.   *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).   Any emphasis in the FAC is omitted.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:23-cv-09501-MRA-MAA | Date | March 31, 2025 |
|---|---|---|---|
| Title | Kenneth S. Grossman, et al. v. David Sin, et al. | | |

Health, and SC Health Group Limited owned the Sponsor.  *Id.* ¶ 26.  Defendant David Sin ("Sin") served as SC Health's Chairman since its inception and a director of both the Sponsor and SC Health Group Limited.  *Id.*  Sin also served as the Chief Executive Officer ("CEO") of SINCap.  *Id.*  Sin was a co-founder, deputy chairman, and group president of Fullerton Healthcare Company ("FHC") as well.  *Id.*

Defendant Angelo John "AJ" Coloma ("Coloma") served as the CEO and Director of SC Health during the Class Period.  *Id.* ¶ 27.  Coloma also served in various executive positions at SC Health Group Limited and FHC.  *Id.*  Sin, Coloma, and SINCap are collectively referred to as "Sponsor Defendants."  SC Health was a blank check company or Special Purpose Acquisition Company ("SPAC").  *Id.* ¶¶ 1, 41.  It had no business operations of its own upon inception but was formed to generate funds from an initial public offering ("IPO") to acquire a business or operational asset, typically from a private company, that it could then take public through a de-SPAC transaction.  *Id.*

In July 2019, Sponsor Defendants took SC Health public via an IPO.  *Id.* ¶¶ 1, 42.  The IPO offering materials represented that SC Health "intend[s] to maintain our Investor-Operator model by developing a business utilizing a hands-on approach to all aspects of strategy and operations," and that it "expect[ed] to capitalize on SINCap's experience and network, along with the experience and networks of [its] management team, which is led by our Chairman David Sin, Angelo John (AJ) Coloma and Hwei Lynn Lau."  *Id.* ¶ 42.  The IPO offering materials stated that SC Health intended to pursue an acquisition focused on the healthcare sector in the Asia-Pacific region.  *Id.*  The IPO materials included various "Business Combination Criteria" for evaluating potential target companies, including "[a]n industry-leading healthcare or healthcare-related platform in the Asia-Pacific region, or a global platform with a meaningful Asia Pacific growth thesis, in the area of high-end healthcare or healthcare delivery assets" and "a history of free cash flow generation and profitability."  *Id.* ¶ 43.  The IPO registration statement provided that SC Health was required to acquire a target business with an aggregate fair market value of at least 80% of the net assets held in trust from the IPO proceeds within 18 months of the July 2019 IPO.  *Id.* ¶ 44.  If it failed to do so, it was obligated to redeem all outstanding public shares equal to the aggregate trust proceeds plus interest.  *Id.*

SC Health was unable to find a suitable target within the initially allotted 18-month period.  *Id.* ¶ 46.  As of December 22, 2020, they had not publicly identified an acquisition target.  This prompted Sponsor Defendants and SC Health's Board of Directors to schedule a January 12, 2021, proxy vote requesting SC Health shareholders to approve a three-month extension of the de-SPAC period.  *Id.*  Prior to the proxy vote, SC Health announced a "non-binding letter of intent . . . with a next generation technology developer (the 'Target') for an initial business combination."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:23-cv-09501-MRA-MAA | Date | March 31, 2025 |
|---|---|---|---|
| Title | Kenneth S. Grossman, et al. v. David Sin, et al. | | |

*Id.* ¶ 47.   On January 12, 2021, SC Health shareholders voted to approve the three-month extension to April 16, 2021.   *Id.* ¶ 48.

### C.    Rockley Defendants

SC Health's acquisition target, Rockley Photonics Limited ("Rockley Private"), is a private company purportedly developing integrated silicon photonics chipsets and chipset modules for sensory communications products such as health monitoring platforms.   *Id.* ¶¶ 39, 59.   It was headquartered in the United Kingdom and had operations in California.   *Id.*   Rockley Private was an acquisition target of SC Health during the Class Period.   *Id.* ¶ 40.   Rockley was a Cayman Islands exempt company created to effectuate the Merger.   After the Merger, Rockley and Rockley Private's operations became essentially the same.   *Id.*

Defendants Andrew Rickman ("Rickman"), Mahesh Karanth ("Karanth"), and Richard "Randy" Meier ("Meier") (collectively, "Rockley Defendants") were officers of Rockley.   *Id.* ¶¶ 28-30.   Rickman founded Rockley in 2013 and served as its CEO during the Class Period until his resignation on December 12, 2022.   *Id.* ¶ 28.   He briefly served as Executive Chairman of Rockley and then was reappointed CEO on May 10, 2023, following its restructuring in bankruptcy.   *Id.*   Karanth was Chief Financial Officer ("CFO") of Rockley during the Class Period until he resigned effective June 13, 2022.   *Id.* ¶ 29.   Meier became the CFO of Rockley on October 20, 2022, and then served as its CEO from December 12, 2022, until Rickman's reinstatement.   *Id.* ¶ 30; Rockley RJN Ex. 23.   With its history of recurring losses, significant accumulated deficit, and lack of any specific commitment to the Asia Pacific region, Rockley did not meet SC Health's stated criteria.   *Id.* ¶ 49.   Prior to the Merger, Rockley's primary revenue streams were derived from NRE requests for development services for customer-specific designs of silicon photonic chipsets to be incorporated into the customers' end products.   *Id.* ¶¶ 6, 66. Rockley's two largest customers, Apple and HRT, collectively accounted for 99.6% and 100% of Rockley's revenues in 2019 and 2020, respectively.   *Id.* ¶ 66.

During the Class Period, Rockley claimed to have developed a health monitoring platform that enabled non-invasive monitoring of several biomarkers.   *Id.* ¶ 59.   This so-called "clinic-on-the-wrist" technology purportedly relied on the integration of optical and electronic components into high performance, compact photonic sensors and processing chipsets manufactured by outsourced semiconductor wafer foundries.   *Id.*   Specifically, Rockley was working on two different product lines, each for different markets: (1) its VitalSpex line for the consumer health and wellness markets and (2) its Bioptx line of medical devices for the healthcare and med-tech markets.   *Id.* ¶ 60.   Both lines rely on the same silicon photonics technology.   *Id.* ¶ 61.   With VitalSpex, Rockley's initial plan was to target the consumer wearable market by

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:23-cv-09501-MRA-MAA | Date | March 31, 2025 |
|---|---|---|---|
| Title | Kenneth S. Grossman, et al. v. David Sin, et al. | | |

offering a biosensing module that could be incorporated into a wearable device.   *Id.* ¶ 62. Rockley had developed a general proof of concept prototype wristband for its VitalSpex line, but Rockley did not intend to develop and market its own consumer wearable device.   *Id.* ¶ 63. Instead, it intended to sell or license its chipsets to original equipment manufacturers ("OEMs") of consumer wearable devices, such as Apple, Fitbit, and Samsung, for incorporation into their end product offerings.   *Id.*   This required Rockley to "miniaturize" its prototype technology modules to fit into existing consumer devices.   *Id.*

### D.    SC Health-Rockley Merger

On March 19, 2021, SC Health and Rockley entered into a business combination agreement.   *Id.*   Under the agreement, SC Health would merge with and into a subsidiary of Rockley, the Cayman Islands holding company.   *Id.*   Rockley would simultaneously become the parent company of Rockley.   *Id.*   Upon the completion of the combination, all founder shares (*i.e.*, Class B shares) of SC Health were to be converted into Class A shares of SC Health, after which each Class A share and warrant to purchase the stock of SC Health were to be exchanged for one Rockley share and warrant, respectively.   *Id.*   Investors in the private investment in public equity also received Rockley ordinary shares and SC Health warrants in exchange for Rockley warrants (the "PIPE Offering").   *Id.* ¶ 40.   Prior to executing the initial business combination, Sponsor Defendants entered into subscription agreements with various investors in the PIPE Offering through which investors purchased 15 million Rockley shares at $10 per share. *Id.* ¶ 49.   Within 30 days of the Merger, Rockley was obligated to file a registration statement with the SEC regarding the PIPE Offering.   *Id.*   Rickman and Karanth stood to gain financially from the Merger, including salary raises, bonuses, and consideration for their Rockley shares.   *Id.* ¶¶ 50-52.

SC Health and Rockley announced the initial business combination agreement in a press release (the "**March 2021 Press Release**").   *Id.* ¶ 122-23; Rockley RJN Ex. 3; Coloma RJN Ex. 1.   The March 2021 Press Release quoted Rickman and Coloma, stating in pertinent part that the merger "will accelerate the commercial launch of Rockley's unique sensing platform, which is positioned to revolutionize consumer health and wellness by enabling continuous, non-invasive monitoring of multi-modal biomarkers[.]"   FAC ¶ 122.   It also stated that "Rockley is working closely and deeply with some of the world's largest consumer electronics and wearables companies to provide them with a full-stack solution."   *Id.*   The March 2021 Press Release was filed as an exhibit to a Form 8-K signed by Coloma.   *Id.*

That same day, SC Health and Rockley held a joint conference call to discuss the Merger (the "**March 2021 Merger Call**"), at which a slide presentation (the "**March 2021**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:23-cv-09501-MRA-MAA | Date | March 31, 2025 |
|---|---|---|---|
| Title | Kenneth S. Grossman, et al. v. David Sin, et al. | | |

**Presentation**") was used, and Coloma, Rickman, and Karanth all made presentations. *Id.* ¶ 123; Rockley RJN Ex. 3; Coloma RJN Ex. 2. The March 2021 Presentation included revenue projections for Rockley as follows: $40 million in 2021, $79 million in 2022, $426 million in 2023, and $1.125 billion in 2024. FAC ¶ 124. It also broke down the sources of Rockley's expected revenue as "NRE-driven revenue" and "Chipset and Module ramp-up," with the latter expected to comprise nearly all revenue in 2023 and 2024. *Id.* ¶ 125. During the March 2021 Merger Call, Rickman "confirmed that the NRE revenue was intended to be used to 'develop and commercialize Rockley's technology and modules.'" *Id.* A transcript of the March 2021 Merger Call and a copy of the March 2021 Presentation was filed as exhibits to Form 8-K. *Id.* ¶ 122.

On March 30, 2021, SC Health filed with the SEC a Form 10-K for Fiscal Year ("FY") 2020 (the "**March 2021 10-K**"), signed by Sin, Coloma, and others. *Id.* ¶ 53; Rockley RJN Ex. 4. SC Health was unable to close on the Merger before the April 16, 2021, deadline. FAC ¶ 54. Sponsor Defendants and SC Health solicited SC Health shareholders for a second proxy vote extending the deadline to August 16, 2021. *Id.*; Rockley RJN Ex. 5. Although the extension was approved, SC Health shareholders had redeemed 46.23% of the initial outstanding shares, reducing the available funds for the acquisition and putting added pressure on Sponsor Defendants to complete the Merger. *Id.* On April 2, 2021, Rockley filed registration statement with the SEC on a Form S-4 (the "**April 2021 S-4")**. Rockley RJN Ex. 5; Coloma RJN Ex. 4.

On July 22, 2021, SC Health and Rockley filed a joint prospectus and proxy statement with the SEC (the "**July 2021 Proxy**"), providing information about Rockley, including revenue projections, and requesting shareholders to approve the Merger. *Id.* ¶¶ 55, 132; Rockley RJN Ex. 7; Coloma RJN Ex. 6. The Merger was approved by SC Health shareholders on August 6, 2021, and the High Court of Justice of England and Wales approved the Scheme of Arrangement for the Merger on August 9, 2021. FAC ¶ 56. SC Health acquired Rockley Private via a de-SPAC transaction. *Id.* ¶ 57. Rockley Private became a subsidiary of Rockley and another subsidiary of Rockley was folded into SC Health. *Id.* ¶ 57. On August 11, 2021, Defendants announced the completion of the Merger. *Id.* ¶ 57. Rockley securities began trading on the New York Stock Exchange (the "NYSE") the next day. *Id.* ¶¶ 58, 139.

### E.    HRT NRE

HRT was a joint venture formed by Rockley in 2017 with Jiangsu Hengtong Optic-Electric Co. ("Hengtong"), a subsidiary of a Chinese power and fiber optics cable manufacturer, Hengtong Group, Co., Ltd. ("Hengtong Group"). *Id.* ¶¶ 6, 68. Rockley established HRT to monetize patents and other intellectual property ("IP") rights it owned for certain optical data

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:23-cv-09501-MRA-MAA | Date | March 31, 2025 |
|---|---|---|---|
| Title | Kenneth S. Grossman, et al. v. David Sin, et al. | | |

communications chipsets that Rockley had developed before shifting its focus to consumer wearable health monitors. *Id.* ¶ 68. Under the agreements governing the joint venture (collectively, the "HRT Agreement"), HRT was required to procure chipsets from Rockley for use in manufacturing optical transceiver modules for hyperscale datacenters. *Id.* ¶ 69. HRT owned the copyright in the final product designs and licensed the underlying IP in the referenced designs from Rockley. *Id.* The HRT Agreement required HRT to "actively monitor and ensure the compliance of all applicable export control law requirements" and "employ a suitably qualified compliance officer who shall be responsible for actively managing ongoing export control compliance." *Id.* Rockley owned 24.9% of HRT's ordinary shares and appointed two of its five board members and one of its two supervisors. *Id.* ¶ 70. Hengtong owned 5.5% of Rockley's outstanding shares at the consummation of the Merger. *Id.*

In November 2020, Hengtong Group acquired a majority ownership interest in an optical undersea cable business, Huawei Marine Networks Co., Ltd. ("Huawei Marine"), from Huawei Technologies, Co., Ltd. ("Huawei"). *Id.* ¶ 74; *see also* Rockley RJN Ex. 2. Prior to the acquisition, the U.S. Bureau of Industry and Security (the "BIS") added Huawei and 68 of its non-U.S. affiliates, including Huawei Marine, to its banned "Entity List," effective May 16, 2019. FAC ¶ 73; Rockley RJN Ex. 1. United States-based companies were prohibited from providing products or technologies to entities on the Entity List without prior governmental authorization based on national security concerns. FAC ¶ 73. The ban prompted Huawei to sell its ownership stake in Huawei Marine. *Id.* ¶ 74. Following the acquisition, Hengtong Group renamed Huawei Marine to HMN Technologies Co., Ltd. ("HMN Tech"). *Id.* The BIS did not update the Entity List to reflect the new entity name until February 2022. *Id.* ¶ 75. In February 2021, a month prior to the Merger announcement, the World Bank invalidated a 2020 bid by HMN Tech on an undersea optical cable project in Micronesia based on security concerns voiced by the United States and others. *Id.* ¶ 76; *see also* Rockley RJN Ex. 6.

On December 17, 2021, the BIS placed Hengtong and HMN Tech on the Entity List. FAC ¶ 81; Rockley RJN Ex. 15. On December 21, 2021, Rockley issued a press release (the "**December 2021 Press Release**") announcing that it no longer intended to proceed with its data-communications-related technical sale to HRT because Hengtong and its affiliates had been placed on the Entity List. FAC ¶¶ 81, 158; Rockley RJN Ex. 16. It further disclosed that Rockley was lowering its revenue guidance for 2021 and 2022 from $27.5 million and $79 million, respectively, to $7-8 million and $25-30 million, respectively. FAC ¶¶ 81, 158. Rockley filed the press release with the SEC as an exhibit to a Form 8-K the following day. *Id.*; Rockley RJN Ex. 16. One analyst commented that Rockley's decision to pull out "enhances the risks in [Rockley's] core operations, while potentially increasing the need for some additional financing in CY22 to meet product ramp requirements for CY23/24." FAC ¶ 82. On December 22, 2021,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:23-cv-09501-MRA-MAA | Date | March 31, 2025 |
|---|---|---|---|
| Title | Kenneth S. Grossman, et al. v. David Sin, et al. | | |

following the announcement, the price of Rockley securities plummeted by $0.75 per share, or 14%. *Id.*

Plaintiffs allege that Defendants were "well aware" of the risk that Hengtong would be added to the Entity List because of (a) Rockley's "close relationship" with Hengtong, (b) the terms of the HRT Agreement requiring it to monitor export controls, (c) the "critical importance" of the HRT NRE revenues to Rockley, and (d) Rockley's attempt to shift from licensing to selling its IP in data communications outright to HRT. *Id.* ¶ 79. Defendants did not disclose these material risks to the HRT NRE in public filings, failing to mention Hengtong's connection to HMN Tech or Huawei. *Id.* ¶ 80.

### F.     Apple NRE

Apple was Rockley's sole paying consumer wearables customer at the beginning of the Class Period. *Id.* ¶ 83. At the time, Defendants claimed that Apple had committed $70 million in NRE to be realized in the next 18 months. *Id.* Under the NRE agreement, Rockley was working to supplement the Apple Watch suite of features with photonic technology aimed at monitoring core body temperature, blood pressure, and glucose. *Id.* The NRE did not assure that Apple would commit to licensing Rockley's technology or purchasing Rockley's yet-to-be-developed chipsets. *Id.* It was also conditioned upon Rockley meeting certain milestones and qualifications and did not contractually obligate Apple to pay if it were to become dissatisfied with Rockley's performance. *Id.* ¶ 85.

Defendants knew at the start of the Class Period that the product Rockley was developing for Apple was not expected to hit the market until approximately 2026. *Id.* ¶ 84. A former Rockley Process Engineer working on the Apple and Hengtong accounts between January 2021 and August 2022 learned of this from the Process Engineer overseeing the Apple account during orientation. *Id.* ¶ 86. Despite this, Defendants told investors that they expected to generate hundreds of millions of dollars in consumer wearables revenue from Apple in 2023 and 2024. *Id.* ¶ 84.

Apple increasingly became dissatisfied with Rockley's performance during the Class Period. *Id.* ¶ 85. The relationship became strained for two reasons: (1) Apple, notoriously secretive with the development of new technology, was displeased that Rockley had revealed Apple to be the company's primary customer in public statements in 2021, including the July 2021 Proxy, *id.* ¶ 88; and (2) Apple was not satisfied with the yield rates for the chips Rockley was

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:23-cv-09501-MRA-MAA | Date | March 31, 2025 |
|---|---|---|---|
| Title | Kenneth S. Grossman, et al. v. David Sin, et al. | | |

producing for Apple in 2021.[2]   *Id.* ¶ 89.

Rockley's quarterly Apple NRE revenue never exceeded $2.5 million during the Class Period.   *Id.* ¶ 85.   By mid-2022, Apple NRE revenue had effectively stopped.   *Id.* ¶ 90.   By the fourth quarter of 2022, Apple-derived revenues had fallen to just $200,000.   *Id.* ¶ 85.   By January 2023, Apple had extricated itself from its NRE commitment to Rockley, and by February 2023, it had replaced Rockley with Taiwan Semiconductor Manufacturing Co. to manufacture Apple's homegrown photonic chipset.   *Id.* ¶¶ 91, 118.

Plaintiffs allege that during the Class Period, Defendants misrepresented in public filings the strength of Apple's "commitment" to Rockley, as well as the realistic timeline in which any NRE revenue could be realized.   *Id.* ¶ 84.   Defendants also did not disclose to its investors Apple's growing dissatisfaction with Rockley's performance and its decreasing NRE commitment.   *Id.* ¶ 85.

### G.    Product Development and Commercialization

At the start of the Class Period, Rockley Defendants told investors that Rockley would experience a "[s]ignificant revenue increase from 2023 onwards," on the back of commercial adoption of its consumer wearables technology by OEMs.   *Id.* ¶ 93.   Throughout the Class Period, Rockley Defendants repeatedly told investors that their plan to develop consumer wearables was "on track."   *Id.*   Yet at the beginning of the Class Period, Rockley had yet to even begin developing its new ASIC chipset, which required at least 12-18 months of development, and another 3-6 months to incorporate into a module.   *Id.*   The employee responsible for designing the new chipset was not hired until December 2021.   *Id.* ¶ 94.

By May 2022, the development phase for the new chipset was only approximately 25% completed.   *Id.* ¶ 101.   At no point during the Class Period did Rockley ever have a commercially viable consumer wearables product for its "blue chip customers" to "validate."   *Id.* ¶ 96.   Despite claiming it had secured "deep design wins and commitments" from its consumer wearables customers and was negotiating "volume [purchase orders]" with such customers, Rockley was never in a position to do so because it never finished development on its new chipset.   *Id.*   As a result, Rockley was unable to secure any binding orders for its consumer wearables products.   *Id.*   A year after Rockley Defendants told investors that they "very conservatively" expected Rockley to recognize $426 million in revenue from the commercialization of its consumer wearables technology in 2023 and over $1.1 billion in 2024, Rockley abruptly withdrew its 2023 revenue

---

[2] The yield rate refers to the percentage of chipsets produced that meet quality control standards.   FAC ¶ 89.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:23-cv-09501-MRA-MAA | Date | March 31, 2025 |
|---|---|---|---|
| Title | Kenneth S. Grossman, et al. v. David Sin, et al. | | |

projections and announced that it would be shifting from consumer wearables to med-tech.  *Id.* ¶ 97.

### H.      Rockley's Bankruptcy

By spring 2022, Rockley was on the brink of a liquidity crisis.  *Id.* ¶ 104.  On May 12, 2022, Rockley issued a press release "announcing a $81.5 million private placement of convertible senior secured notes and warrants."  *Id.* ¶¶ 105, 172-73.  Rockley also lowered its 2023 revenue projections from $426 million to $300-320 million.  *Id*.  On May 12, 2022, the price of Rockley's stock fell $0.47 per share, or 17%, to close at $2.33 per share.  *Id.* ¶ 106.  On June 15, 2022, Rockley issued a press release announcing that Karanth had resigned as CFO, effective June 13, 2022.  *Id.* ¶ 107; Rockley RJN Ex. 20.

On November 9, 2022, Rockley issued a press release announcing its financial results for the third quarter of 2022 (the "3Q22 Press Release"), which was filed with the SEC as an attachment to a Form 8-K signed by Meier.  *Id.* ¶ 190; Rockley RJN Ex. 24.  The 3Q22 Press Release reported revenue of just $0.6 million for the quarter and once more lowered Rockley's 2022 revenue guidance to a range of just $3.2-3.6 million.  FAC ¶ 190.  It did not provide any revenue guidance for 2023, stating instead that Rockley "plans to provide its outlook for 2023 in the first quarter of 2023."  *Id*.  A month later, the NYSE sent Rockley a notice that it was noncompliant with its rules and risked being delisted.  *Id.* ¶ 114.  The price of Rockley's stock fell $0.15 per share, or 37.5%, to close at $0.25 per share on December 12, 2022.  *Id.* ¶ 115.  Rickman resigned as CEO that day.  *Id.*  Rockley filed for Chapter 11 bankruptcy on January 23, 2023.  *Id.* ¶ 117.  Following the bankruptcy filing, the price of Rockley securities collapsed, causing Rockley and SC Health investors to "effectively wipe[ ] out" and "suffer substantial losses."  *Id.*  When Rockley emerged from Chapter 11 reorganization on March 10, 2023, shares held by Rockley shareholders were cancelled, but Rickman was reappointed as CEO.  *Id.* ¶ 121.

### I.      Procedural History

On March 20, 2024, Rockley Defendants filed their Motion to Dismiss and a Request for Judicial Notice (the "Rockley RJN").  ECF 64, 65.  Plaintiffs filed Oppositions to the Rockley Motion and Rockley RJN.  ECF 67, 68.  Rockley Defendants filed Replies in support of the Motion and RJN.  ECF 69, 70.

On August 26, 2024, Coloma filed his Motion to Dismiss and a Request for Judicial Notice (the "Coloma RJN").  ECF 84, 85.  Plaintiffs filed an Opposition to the Coloma Motion and a Response to the Coloma RJN.  ECF 86, 88.  Coloma filed Replies in support of the Motion and RJN.  ECF 89, 90.  The Court held an hour-long hearing on both Motions on December 16, 2024.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:23-cv-09501-MRA-MAA | Date | March 31, 2025 |
|---|---|---|---|
| Title | Kenneth S. Grossman, et al. v. David Sin, et al. | | |

ECF 91.

## II.    LEGAL STANDARDS

### A.    Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for failure to state a claim upon which relief can be granted.  "On a motion to dismiss, all material facts are accepted as true and are construed in the light most favorable to the plaintiff."  *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012) (citing *Coal. for ICANN Transparency, Inc. v. VeriSign, Inc.*, 611 F.3d 495, 501 (9th Cir. 2010)); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Dismissal is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.  *See Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008).  In other words, a complaint must "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (per curiam).  This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.

Securities fraud claims are subject to the heightened pleading requirements of Federal Rule of Civil Procedure Rule 9(b) and the Private Securities Litigation Reform Act ("PSLRA").  Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud[.]"  Fed. R. Civ. P. 9(b).  To satisfy Rule 9(b), "[b]road allegations that include no particularized supporting detail do not suffice, but statements of the time, place and nature of the alleged fraudulent activities are sufficient."  *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016) (internal citations and quotation marks omitted).  The PSLRA further imposes "formidable pleading requirements to properly state a claim and avoid dismissal" under Rule 12(b)(6).  *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1055 (9th Cir. 2008).  These requirements, however, "vary depending on the element of the claim at issue."  *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 765 (9th Cir. 2023).

### B.    Securities Fraud under Section 10(a) and Rule 10b-5

To state a claim for securities fraud under Section 10(a) of the Exchange Act and SEC Rule 10b-5, a plaintiff must allege the following elements: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."  *Matrixx Initiatives, Inc. v. Siracusano*, 563

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:23-cv-09501-MRA-MAA | Date | March 31, 2025 |
|---|---|---|---|
| Title | Kenneth S. Grossman, et al. v. David Sin, et al. | | |

U.S. 27, 37-38 (2011) (quoting *Stoneridge Inv. Partners, LLC v. Sci.–Atlanta, Inc.*, 552 U.S. 148, 157 (2008)). Defendants challenge the sufficiency of the Complaint only as to the first two elements.

### 1. *Use of Confidential Witnesses*

"[T]o comply with the PSLRA's particularity requirement, plaintiffs must 'reveal with particularity the source of their information.'" *Glazer*, 63 F.4th at 766 (quoting *In re Daou Sys., Inc.*, 411 F.3d 1006, 1015 (9th Cir. 2005)). When relying on confidential witness statements, a complaint must describe the confidential witness "with sufficient particularity to establish their reliability and personal knowledge." *Zucco Partners, LLC v. Digimarc Corp.* 552 F.3d 981, 995 (9th Cir. 2009). Confidential witnesses may be used in two situations:

> First, if a complaint relies on a confidential witness and other factual information, the confidential witness need not reveal his sources provided the other facts provide an adequate basis for believing the defendant's statements were false. Second, if the complaint relies on a confidential witness and no other information, the complaint must describe the confidential witness with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged.

*Glazer*, 63 F.4th at 767 (internal citations and quotation marks omitted). In determining whether the complaint has described the confidential witness with sufficient particularity, the court considers "the level of detail provided by the confidential witnesses, the plausibility of the allegations, the number of sources, the reliability of the sources, corroborating facts, and similar indicia of reliability." *Id.* (citation omitted).

### 2. *Falsity and Materiality*

A statement is false or misleading if it "directly contradict[s] what the defendant knew at that time" or "omits material information." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008-09 (9th Cir. 2018). In determining whether a statement is misleading, the court applies the objective standard of a "reasonable investor." *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 699 (9th Cir. 2021). "[A] statement is misleading if it would give a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists." *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985 (9th Cir. 2008) (internal citation and quotation marks omitted). "Often, a statement will not mislead even if it is incomplete or does not include all relevant facts." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:23-cv-09501-MRA-MAA | Date | March 31, 2025 |
|----------|----------------------|------|----------------|
| Title | Kenneth S. Grossman, et al. v. David Sin, et al. | | |

"Central to a 10b-5 claim is the requirement that a misrepresentation or omission of fact must be material." *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010). "[A] misrepresentation or omission is material if there is a substantial likelihood that a reasonable investor would have acted differently if the misrepresentation had not been made or the truth had been disclosed." *Khoja*, 899 F.3d at 1009 (quoting *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005)). This inquiry into materiality is "fact-specific" and "requires delicate assessments of the inferences a reasonable shareholder would draw from a given set of facts and the significance of those inferences to him." *In re Alphabet*, 1 F.4th at 700 (citations omitted). As such, "resolving materiality as a matter of law is generally appropriate 'only if the adequacy of the disclosure or the materiality of the statement is so obvious that reasonable minds could not differ.'" *Id.* (quoting *Fecht v. Price Co.*, 70 F.3d 1078, 1080 (9th Cir. 1995)).

Thus, to satisfy this element, a complaint must "(1) specify each allegedly misleading statement or omission, (2) explain why the statement is misleading, and (3) if the allegation 'regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.'" *In re Cutera*, 610 F.3d at 1109 (quoting 15 U.S.C. § 78u–4(b)(1)).

### 3.    *Scienter*

Scienter is a mental state that covers "intent to deceive, manipulate, or defraud," and "deliberate recklessness." *Schueneman v. Arenna Pharms., Inc.*, 840 F.3d 698, 705 (9th Cir. 2016) (internal citations and quotation marks omitted). "To adequately demonstrate that the defendant acted with the required state of mind, a complaint must allege that the defendants made false or misleading statements either intentionally or with deliberate recklessness." *Zucco*, 552 F.3d at 991 (citations and quotation marks omitted). "Facts showing mere recklessness or a motive to commit fraud and opportunity to do so provide some reasonable inference of intent, but are not sufficient to establish a strong inference of deliberate recklessness." *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012) (citation omitted). Thus, "a court must consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff." *Tellabs, Inc., v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324 (2007).

To plead scienter under the PSLRA, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). A "strong inference" exists "if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:23-cv-09501-MRA-MAA | Date | March 31, 2025 |
|---|---|---|---|
| Title | Kenneth S. Grossman, et al. v. David Sin, et al. | | |

from the facts alleged." *Tellabs*, 551 U.S. at 324. In assessing whether this standard is met, the court conducts a "dual inquiry" by first determining "whether any one of the plaintiff's allegations is alone sufficient to give rise to a strong inference of scienter," *Glazer*, 63 F.4th at 766, and then "if no individual allegations are sufficient, it conducts a 'holistic' review to determine whether the allegations combine to give rise to a strong inference of scienter," *id*.

### C.      Control Person Liability under Section 20(a)

Under Section 20(a) of the Exchange Act, "a defendant employee of a corporation who has violated the securities laws will be jointly and severally liable to the plaintiff, as long as the plaintiff demonstrates 'a primary violation of federal securities law' and that 'the defendant exercised actual power or control over the primary violator.'" *Zucco,* 552 F.3d at 990 (quoting *No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 945 (9th Cir. 2003)).

## III.     DISCUSSION

### A.      Rockley and Coloma RJNs

Rockley Defendants request that the Court consider the following documents: (1) documents referenced in the FAC, (2) SEC filings, (3) publications in the Federal Register, and (4) newspaper articles. ECF 65. Plaintiffs oppose the Rockley RJN, asserting that Rockley Defendants' "en masse" use of judicial notice to "shoehorn" over 2,700 pages of evidence is improper, especially since the request does not identify the facts subject to judicial notice. ECF 68 at 2-3. Coloma also requests that the Court consider the following documents: (1) documents referenced in the FAC and (2) SEC filings. Plaintiffs agree that the exhibits to the Coloma RJN may be considered, but object to Coloma's attempts to use such documents to dispute facts alleged in the FAC or draw factual inferences in his favor. ECF 88 at 2.

In general, a district court may not consider materials outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) without converting the motion into a motion for summary judgment under Rule 56. *Khoja*, 899 F.3d at 998 (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)); *see also* Fed. R. Civ. P. 12(d). There are two exceptions to this general rule: the incorporation-by-reference doctrine and judicial notice under Federal Rule of Evidence 201. *Khoja*, 899 F.3d at 998. The Ninth Circuit has observed, however, "a concerning pattern in securities cases" of "exploiting these procedures improperly to defeat what would otherwise constitute adequately stated claims at the pleading stage." *Id.* The risk of "overuse and improper application of judicial notice and the incorporation-by-reference doctrine" is "especially significant" in securities fraud cases such as this one because "there is already a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:23-cv-09501-MRA-MAA | Date | March 31, 2025 |
|---|---|---|---|
| Title | Kenneth S. Grossman, et al. v. David Sin, et al. | | |

heightened pleading standard, and the defendants possess materials to which the plaintiffs do not yet have access." *Id.*

### 1. *Incorporation-by-Reference*

"[I]ncorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself." *Id.* at 1002. The doctrine "prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Id.* (citation omitted). A document is incorporated into a pleading "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Id.* (quoting *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003)). Yet "if the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint." *Id.*

"[W]hat inferences a court may draw from an incorporated document should also be approached with caution." *Id.* at 1003. Unlike judicial notice, a court may generally assume the contents of an incorporated document are true for purposes of a motion to dismiss under Rule 12(b)(6). *Id.* (citing *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)). However, consistent with the prohibition against resolving factual disputes at the pleading stage, it is still "improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Id.*

### a) *Rockley RJN*

Rockley Defendants argue that the FAC refers to and quotes portions of Exhibits 1, 3-5, 7, 9, 12-26 to the Rockley RJN. ECF 65 at 2. Plaintiffs concede that most of the documents are incorporated by reference, but contend that Exhibits 1, 4, 5, 15, and 23 are referred to only in passing or not mentioned at all, and therefore are not incorporated by reference. ECF 68 at 4-5. The Court finds as follows:

- Exhibit 1 is a published notice of the final rule adding Huawei and its affiliates to the Entity List. Rockley RJN Ex. 1. Although the FAC does not name the published notice explicitly, the fact that Huawei was added to the Entity List partly forms the basis of Plaintiffs' allegations that Hengtong was at risk of being added to the Entity List. FAC ¶ 73. Exhibit 1 is incorporated by reference.

- Exhibit 4 is an annual report on Form 10-K, filed by SC Health on March 30, 2021, for FY 2020. Rockley RJN Ex. 4. The FAC appears to cite the report in support of two

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:23-cv-09501-MRA-MAA | Date | March 31, 2025 |
|---|---|---|---|
| Title | Kenneth S. Grossman, et al. v. David Sin, et al. | | |

allegations: (1) that it was signed by Sin and Coloma and stated the proposed Merger had been "approved by [SC Health's] board of directors and the boards of directors of each of HoldCo, Merger Sub and Rockley," FAC ¶ 53; and (2) that Sponsor Defendants assured SC Health's investors that they would conduct due diligence in the acquisition process, *id.* ¶ 230 (quoting Rockley RJN Ex. 4 at 111). These attribution and due diligence allegations form the basis of Plaintiffs' claims against Sponsor Defendants. Exhibit 4 is incorporated by reference.

- Exhibit 5 is the July 2021 Proxy. Rockley RJN Ex. 5. There can be no real question that the FAC refers extensively to the July 2021 Proxy, and that allegedly false and misleading statements made in the document partly form the basis of Plaintiffs' claims. *See* FAC ¶¶ 132-38. Exhibit 5 is incorporated by reference.

- Exhibit 15 is the December 2021 Press Release. Rockley RJN Ex. 15. Again, allegedly false and misleading statements made in the December 2021 Press Release partly form the basis of Plaintiffs' claims. *See* FAC ¶¶ 158-61. Exhibit 15 is incorporated by reference.

- Exhibit 23 is a press release, dated October 20, 2022, announcing Meier's appointment as CFO of Rockley. Rockley RJN Ex. 23. The FAC refers to the press release in support of the allegation that Rockley was facing a liquidity crisis in 2022, and as such, "it is implausible that Rickman and Meier would not have been aware of the misrepresented and omitted facts regarding Rockley's financial viability in the second half of 2022." FAC ¶ 220. Again, these allegations partly form the basis of Plaintiffs' claims against Rockley Defendants. Exhibit 23 is incorporated by reference.

In sum, the Court finds that Exhibits 1, 3-5, 7, 9, 12-26 to the Rockley RJN are incorporated by reference in the FAC.

Plaintiffs argue that even if the documents are incorporated by reference, Rockley Defendants impermissibly attempt to exploit the doctrine to dispute factual assertions in the FAC. ECF 68 at 5-9 (providing a bulleted list of passages from the Rockley Motion). Rockley Defendants reply that these documents are generally not being offered for the truth of the matter asserted, but to show that certain cautionary disclosures were made. ECF 70 at 4-5. The Court agrees with Plaintiffs that, on occasion, Rockley Defendants impermissibly attempt to raise factual disputes and draw favorable factual inferences from incorporated documents. *See, e.g.*, ECF 64 at 15 (citing Rockley RJN Ex. 1 in support of the factual allegation that Huawei's addition to the Entity List was "widely publicized"). The Court declines to draw such inferences but takes as

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:23-cv-09501-MRA-MAA | Date | March 31, 2025 |
|---|---|---|---|
| Title | Kenneth S. Grossman, et al. v. David Sin, et al. | | |

true the contents of the incorporated documents—for instance, that certain disclosures were made in SEC filings.

### b)  *Coloma RJN*

Coloma argues that the FAC refers to and quotes portions of Exhibits 1, 2, 4, and 6 to the Coloma RJN, and as such, those documents are incorporated by reference.[3]  ECF 85 at 2. Plaintiffs do not dispute this but take issue with Coloma's use of the documents, particularly Exhibit 4, to dispute facts or draw favorable factual inferences.  ECF 88 at 4.

Plaintiffs assert that Coloma relies on Exhibit 4 to support his factual allegation that SC Health "was part of a working group of professionals who all received the same due diligence information" as part of the Merger process.  ECF 84 at 26, 29.  The Court agrees that this particular inference from Exhibit 4 would impermissibly raise a factual dispute as to whether SC Health's due diligence should have revealed any material facts about Rockley.  But Coloma primarily references Exhibits 1, 2, 4, and 6 to cite cautionary language included in SC Health's SEC filings.  *See id.* at 20-25.  That these disclosures were made is not an improper factual inference from the incorporated documents.

### 2.  *Judicial Notice*

"Judicial notice under Rule 201 permits a court to notice an adjudicative fact if it is 'not subject to reasonable dispute.'"  *Khoja*, 899 F.3d at 999 (quoting Fed. R. Evid. 201(b)).  "A fact is 'not subject to reasonable dispute' if it is 'generally known,' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'"  *Id.* (quoting Fed. R. Evid. 201(b)(1)-(2)).  "A court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment," *Lee*, 250 F.3d at 689, but it "cannot take judicial notice of disputed facts contained in such public records," *Khoja*, 899 F.3d at 999.

### a)  *Rockley RJN*

Rockley Defendants argue that SEC filings (Exs. 3-5, 7, 8, 10-13, 16, 18-21, 23, 24-26), publications in the Federal Register (Exs. 1, 15), and newspaper articles (Ex. 2, 6) are subject to judicial notice.  ECF 65 at 3-4.  Plaintiffs do not dispute that the existence of the documents may

---

[3] In his Reply, Coloma contends that because the FAC states that Plaintiffs reviewed all SC Health and Rockley SEC filings, all SEC filings should be considered incorporated by reference.  ECF 90 at 4.  That is not the law.  *See Ritchie*, 342 F.3d at 907.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:23-cv-09501-MRA-MAA | Date | March 31, 2025 |
|---|---|---|---|
| Title | Kenneth S. Grossman, et al. v. David Sin, et al. | | |

be judicially noticed, but they contend that Rockley Defendants fail to identify the specific facts for which they seek judicial notice.   ECF 2-3.   Rockley Defendants reply that their moving papers and reply specify the facts that they request the Court judicially notice and pin cite the exhibits to the Rockley RJN.   ECF 70 at 3.

A court must "consider—and identify—which fact or facts it is noticing . . . . Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth."   *Khoja*, 899 F.3d at 999.   It is clear that Rockley Defendants want the Court to take judicial notice of the contents of the exhibited documents, not just their mere existence.   Yet the Rockley RJN "lists, in chart form, dozens of documents spanning hundreds of pages," without identifying any particular facts.   *In re Green Dot Corp. Sec. Litig.*, No. CV 19-10701 DDP (EX), 2024 WL 1356253, at *3 (C.D. Cal. Mar. 29, 2024).   This greatly frustrates the Court's ability to conduct the analysis required under Rule 201. *See id.*

Rockley Defendants' inclusion of the purportedly noticeable facts in their briefing does not clarify the inquiry.   For instance, Rockley Defendants cite Exhibit 1 for the assertion that Huawei's addition to the Entity List was "publicly disclosed" and "widely publicized."   ECF 64 at 15.   This is not a judicially noticeable fact because it is "subject to reasonable dispute" and cannot be "accurately and readily determined."   Fed. R. Evid. 201(b).   On the other hand, that Huawei was added to the Entity List in May 2019 and that notice of its inclusion was published to the Federal Register are subject to judicial notice.   The Court makes similar observations with regard to Rockley Defendants' use of Exhibits 2, 6, and 10 in support of disputed facts or favorable factual inferences.   ECF 64 at 15-16 (citing Exhibits 2, 6, and 16 to assert that certain events were "publicly announced" and "widely known"), 22-23 (citing Exhibit 10 to draw favorable inferences about Rockley's representations regarding ASICs chipset and its relationship with Apple). Rockley Defendants were required to "clearly specify what fact or facts" they request to be judicially noticed.   *Khoja*, 899 F.3d at 999.   They failed to do so, and the Court declines to parse through their briefing to identify such facts.

Nevertheless, the existence and content of the documents at issue are judicially noticeable. SEC filings are generally matters of public record not subject to reasonable dispute of which the court may take judicial notice.   *See In re Extreme Networks, Inc. S'holder Derivative Litig.*, 573 F. Supp. 2d 1228, 1231 n.2 (N.D. Cal. 2008) (collecting cases); *In re New Century*, 588 F. Supp. 2d 1206, 1219 (C.D. Cal. 2008) ("It is well-established that courts may take judicial notice of SEC filings."); *see also Metzler*, 540 F.3d at 1064 n.7 (affirming district court's grant of request for judicial notice of SEC filings); *Dreiling v. Am. Exp. Co.*, 458 F.3d 942, 946 n.2 (9th Cir. 2006) (describing SEC filings as matters subject to judicial notice).   So too are publications in the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:23-cv-09501-MRA-MAA | Date | March 31, 2025 |
|---|---|---|---|
| Title | Kenneth S. Grossman, et al. v. David Sin, et al. | | |

Federal Register.   44 U.S.C. § 1507 ("[T]he contents of the Federal Register shall be judicially noticed.").   Publicly available newspapers, magazine articles, and web pages that "indicate what was in the public realm at the time" are also subject to judicial notice.   *Reynolds v. Binance Holdings Ltd.*, 481 F. Supp. 3d 997, 1002 (N.D. Cal. 2020).   Although the Court takes judicial notice of these materials and the information contained therein, it does not "draw inferences or take notice of facts that might reasonably be disputed."   *United States v. Corinthian Colls.*, 655 F.3d 984, 999 (9th Cir. 2011).

### b)   *Coloma RJN*

Coloma argues that various SEC filings (Exs. 1-7) are subject to judicial notice, but, like Rockley Defendants, he merely lists in chart-form documents that are "properly before this Court."   ECF 85 at 2-4.   Plaintiffs respond that as with incorporation-by-reference, Coloma uses judicial notice for impermissible purposes.   ECF 88 at 2-3.

Plaintiffs take particular issue with Coloma's citation to Exhibits 3 and 5 (in addition to Exhibit 4 discussed above) in support of his assertions that SC Health relied on Rockley to provide "both its historical revenue data and projected revenues" and "information about its customer relationships and how that factored into revenue projections."   *Id.* at 3 (citing ECF 84 at 16, 27). The Court agrees with Plaintiffs that the cited portions of Exhibits 3 and 5 do not support these factual assertions, and an inference that SC Health cannot be held responsible for representations made about Rockley's financials would contradict allegations in the FAC that SC Health assured investors that it would conduct its own due diligence of Rockley, including a "review of financial, operational, legal and other information."   FAC ¶ 230.

***

Accordingly, the Court **GRANTS IN PART AND DENIES IN PART** the Rockley and Coloma RJNs.

### B.   **Rockley Defendants' Motion to Dismiss**

Rockley Defendants argue that the FAC does not state with particularity falsity, materiality, and scienter as to the statements or omissions alleged in the FAC.   ECF 64 at 14-26.   Plaintiffs respond that Defendants concealed material risks impacting the viability of the HRT and Apple revenue streams and that statements about product development gave investors the false impression that Rockley was "close to completing its development of a commercially viable consumer wearables product during the Class Period."   ECF 67 at 13-20.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:23-cv-09501-MRA-MAA | Date | March 31, 2025 |
|---|---|---|---|
| Title | Kenneth S. Grossman, et al. v. David Sin, et al. | | |

### 1.    HRT NRE

Plaintiffs identify the following statements and omissions regarding the HRT NRE as materially false and misleading:

- **March 2021 Merger Call and Presentation:** Defendants shared revenue projections reflecting that Rockley's revenues would be "mostly driven by NRE," with $40 million and $63 million in expected NRE revenue for 2021 and 2022, respectively.  *Id.* ¶¶ 124-25.  Plaintiffs allege that the above statements were materially false and misleading when made because Rockley Defendants failed to disclose the known material risks that Hengtong would be added to the Entity List.   FAC ¶ 131(g).

- **July 2021 Proxy:** Defendants stated that "Rockley's [p]rojected revenue in 2021 and 2022 assumes that [its] existing [NRE] generating projects will be completed in the next 18 months."  *Id.* ¶ 134.  Under "Customer-Related Risks," the July 2021 Proxy disclosed Rockley's commercial arrangements and the importance of the revenue opportunities under the HRT NRE.  *Id.* ¶ 136.  Under "Legal and Regulatory Risk," the July 2021 Proxy stated in relevant part, "Rockley is subject to governmental export and import control laws and regulations.  Rockley's failure to comply with these laws and regulations could have an adverse effect on its business, prospects, financial condition, and results of operations."  *Id.* ¶ 137.  The July 2021 Proxy stated, "Rockley believes that its operating results for the foreseeable future will continue to depend to a significant extent on revenue attributable to a few large customers," including its second largest customer, HRT.  *Id.*  Plaintiffs allege that these statements and risk disclosures were materially false and misleading for the reasons stated above.  *Id.* ¶ 138(e).

- **2Q21 Earnings Call:** On August 16, 2021, Rockley held a call to discuss its Q2 2021 results (the "2Q21 Earnings Call").  *Id.* ¶ 140.  During the call, Karanth stated that Rockley's 2021 revenue guidance of $27.5 million remained "unchanged," and referenced a "significant technical sale" as the basis for its 2021 revenue projections.  *Id.* ¶ 143.  Plaintiffs allege that these statements were materially false and misleading for the reasons stated above.  *Id.* ¶ 144(d)-(e).

- **3Q21 10-Q:** On November 15, 2021, Rockley filed with the SEC a Form 10-Q discussing Rockley's financial results for the third quarter of 2021 (the "3Q21 10-Q"), which was signed by Rickman and Karanth.  *Id.* ¶ 145; Rockley RJN Ex. 12.  The 3Q21 10-Q contained the same disclaimer of "Legal and Regulatory Risks" contained

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:23-cv-09501-MRA-MAA | Date | March 31, 2025 |
|---|---|---|---|
| Title | Kenneth S. Grossman, et al. v. David Sin, et al. | | |

in the July 2021 Proxy.   FAC ¶ 145; Rockley RJN Ex. 12 at 2524.   Plaintiffs allege that these risk disclosures were materially false and misleading for the same reasons as above.   FAC ¶ 157(a).

### a)      *Falsity and Materiality*

Rockley Defendants argue that these statements and omissions are not actionable in relevant part because there are no allegations that Rockley Defendants had prior knowledge that Hengtong would be added to the Entity List.   ECF 64 at 15-16.   Plaintiffs respond that Rockley Defendants' "lack of certainty regarding the ultimate fate of HRT" is unavailing because even if Rockley Defendants were not certain that Hengtong would be added to the Entity List, they were "duty-bound" to "provide fulsome disclosure of known material facts concerning the positive information they chose to tout."   ECF 67 at 19-20.

The Court finds that Plaintiffs have not plausibly alleged falsity and materiality as to the purported statements and omissions regarding HRT.   Plaintiffs' essential position is that Rockley Defendants' failure to disclose "the *potential* for HMN Tech to significantly impact Rockley's financial viability through HMN Tech's ownership by Hengtong" was materially misleading. FAC ¶ 80 (emphasis added).   However, it is axiomatic that securities laws "do not create an affirmative duty to disclose any and all material information."   *Macomb Cnty. Emps.' Ret. Sys. v. Align Tech., Inc.*, 39 F.4th 1092, 1100 (9th Cir. 2022) (citation omitted).   "Silence, absent a duty to disclose, is not misleading."   *Basic Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988). Disclosure is required "only when necessary to make . . . statements made, in light of the circumstances under which they were made, not misleading."   *In re Alphabet*, 1 F.4th at 699 (quoting *Matrixx*, 563 U.S. at 44).

Non-disclosure of a potentiality does not form the basis of a securities fraud claim.   To be actionable as a misleading omission, there must have been "a substantial likelihood" that disclosure of the risk of Hengtong being added to the Entity List "would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available' for the purpose of decisionmaking by stockholders concerning their investments."   *Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1274 (9th Cir. 2017) (quoting *Basic*, 485 U.S. at 231-32).   This standard is not met where, as here, an "event is contingent or speculative in nature, [and] it is difficult to ascertain whether the 'reasonable investor' would have considered the omitted information significant at the time." *Basic*, 485 U.S. at 232; *see also Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 980 (9th Cir. 1999) (finding no duty to disclose internal financial projections regarding "the expected dollar values of tax costs and benefits, the date on which the tax-strategy benefits were expected to be

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:23-cv-09501-MRA-MAA | Date | March 31, 2025 |
|---|---|---|---|
| Title | Kenneth S. Grossman, et al. v. David Sin, et al. | | |

outweighed by its costs, or the date on which a merger was most likely"); *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1141-42 (9th Cir. 1996) (holding that "reliance on predictive statements in the context of regulatory proceedings is inherently unreasonable" and such context "does not ordinarily invoke a duty to disclose or provide a basis for a securities fraud claim").   The legal and regulatory risk posed by the Entity List falls into this speculative category of information for which there was no duty to disclose.

As to statements and revenue projections made in the March 2021 Merger Call and Presentation, July 2021 Proxy, and 2Q21 Earnings Call, the Court finds that Rockley Defendants' statements that Rockley's revenue will be "mostly driven by NRE," that its "operating results for the foreseeable future will continue to depend to a significant extent" on HRT NRE revenue, and that its revenue projections remain "unchanged" were not false or misleading at the time they were made.   These statements did not "give a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exist[ed]" at the time those statements were made.   *Berson*, 527 F.3d at 985.   Simply stated, it was true that Rockley's earnings results depended on HRT NRE revenue at the time.   As to the risk disclosures contained in the July 2021 Proxy and 3Q21 10-Q, "risk disclosures can be misleading to investors when they 'speak[] entirely of as-yet-unrealized risks and contingencies' and do not 'alert[] the reader that some of these risks may already have come to fruition.'"   *Glazer*, 63 F.4th at 781 (citing *Berson*, 527 F.3d at 985-87; *In re Alphabet*, 1 F. 4th at 703)).   Plaintiffs have not plausibly alleged that the risk Hengtong would be added to the Entity List had come to fruition at the time Rockley made its risk disclosures in the July 2021 Proxy or the 3Q21 10-Q.

Plaintiffs maintain that Rockley Defendants' statements regarding the HRT NRE amount to "positive information" for which disclosure of adverse information was required.   *See* ECF 67 at 19 (quoting *Khoja*, 899 F.3d at 1009).   Not so.   This case is distinguishable from instances where courts have found a duty to disclose in light of positive information affirmatively touted. In *Khoja*, the Ninth Circuit held that once a company chose to tout positive interim data results, it "had the obligation also to disclose that the[] [results] were likely unreliable," where it had been made aware that the results have "a high degree of uncertainty and were likely to change."   899 F.3d at 1010.   Similarly, in *Berson*, the Ninth Circuit held that once defendants chose to tout a company's anticipated revenues from its backlog of work, it had a duty to disclose that "what the company refers to as backlog includes work that is substantially delayed and at serious risk of being cancelled altogether."   527 F.3d at 986.   That is, "once defendants chose to tout the company's backlog, they were bound to do so in a manner that wouldn't mislead investors as to what the backlog consisted of."   *Id.* ¶ 987.   Lastly, in *Glazer*, the court found the defendants' statements that "[w]e looked forward to" and "[w]e currently expect" to close a merger created "an affirmative impression that there was an expectation the merger would close on time."   63

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:23-cv-09501-MRA-MAA | Date | March 31, 2025 |
|---|---|---|---|
| Title | Kenneth S. Grossman, et al. v. David Sin, et al. | | |

F.4th at 778-79.   Days prior, however, the counterparty had expressed concerns and advised that it was "considering not closing the merger and that [it] could not 'make the numbers work.'"   *Id.* at 779.   The Ninth Circuit concluded that, although the risk the merger proceedings would be terminated "had not yet become an absolute certainty," defendants were "aware of a significant likelihood that the risk would materialize and did not sufficiently apprise its investors of this development."   *Id.* at 781.

Here, there are no allegations that Rockley Defendants affirmatively touted that the HRT NRE was guaranteed or without risk.[4]   Nor are there any well-pleaded allegations that Rockley Defendants had been made aware that the government would amend the Entity List to add Hengtong or that such a risk was substantially likely to materialize when the statements were made.   Even assuming Rockley Defendants were aware of such a risk, Plaintiffs have not plausibly alleged that Rockley Defendants' representations at the time were "certainly inconsistent" with or did not "fairly align" with this information.   *Glazer*, 63 F.4th at 781 (citation omitted).

Accordingly, the Court finds that Plaintiffs have not plausibly alleged falsity and materiality as to the allegedly false and misleading statements or omissions related to the HRT NRE.

### 2.    *Apple NRE*

Plaintiffs identify the following statements and omissions regarding the Apple NRE revenue as materially false and misleading:

- **March 2021 Merger Call and Presentation:** Rockley Defendants purportedly disclosed a "US$70 million of NRE commitment to date by one of the largest technology companies in the world [Apple]."   *Id.* ¶¶ 127-28.   Plaintiffs allege that these statements were materially misleading because the commitment was "not an actual 'commitment' at all, because it was contingent upon Rockley satisfying certain achievement milestones and customer acceptance criteria in order to recognize any

---

[4] To the contrary, Rockley repeatedly disclosed that export restrictions, if imposed, may adversely impact its business.   *See* Rockley RJN Ex. 5 at 223, 278-79, 413; Ex. 7 at 1052, 1201; Ex. 8 at 1873-74; Ex. 10 at 1942, 2011; Ex. 11 at 2221, 2292; Ex. 12 at 2524; *see also* FAC ¶ 137. "[W]here a company's filings contain abundant and specific disclosures regarding the risks facing the company, as opposed to terse, generic statements, the investing public is on notice of these risks and cannot be heard to complain that the risks were masked as mere contingencies."   *Plevy v. Haggerty*, 38 F. Supp. 2d 816, 832 (C.D. Cal. 1998).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:23-cv-09501-MRA-MAA | Date | March 31, 2025 |
|---|---|---|---|
| Title | Kenneth S. Grossman, et al. v. David Sin, et al. | | |

revenue, and it allowed Apple to withdraw from the deal at any time if it became dissatisfied with Rockley's performance." *Id.* ¶ 133(e).

- **July 2021 Proxy:** Apple was identified as Rockley's largest NRE customer. *Id.* ¶ 136. As with HRT, the statement disclosed that "Rockley believes that its operating results for the foreseeable future will continue to depend to a significant extent" on Apple NRE revenue. *Id.*; Rockley RJN Ex. 7 at 1049. Plaintiffs allege that this statement was materially false and misleading because Rockley failed to disclose that its future Apple NRE revenue were "at risk of not materializing due to Rockley's public disclosure of Apple as its 'largest customer' and Apple's dissatisfaction with Rockley's chip yield rates." *Id.* ¶ 138(d).

- **2Q21 Earnings Call:** Karanth stated that Rockley's 2021 revenue guidance of $27.5 million remained "unchanged." *Id.* ¶ 143. Plaintiffs allege that this statement was misleading for the same reasons as above. *Id.* ¶ 144(d)

- **3Q21 Press Release and Earnings Call:** Rockley issued a press release discussing its financial and operational results for the third quarter of 2021 (the "3Q21 Press Release"), which was also filed with the SEC as an exhibit to a Form 8-K signed by Karanth. *Id.* ¶ 146. That day, Rockley also conducted an earnings call to discuss the quarterly results (the "3Q21 Earnings Call"). On the call, Rickman reiterated Rockley's 2023 revenue guidance, which was premised on generating $124 million in revenue from the Apple NRE. *Id.* ¶ 157(f). Plaintiffs allege that this guidance was materially false and misleading because the product Rockley was developing for Apple was not expected to be released until sometime in 2026 and the relationship with Apple was strained. *Id.*

- **December 2021 Press Release:** In addition to announcing that Rockley was not moving forward with its technical sale to HRT, the press release also disclosed that Rockley was lowering its revenue guidance for FY 2021 and 2022 to a range of $7-8 million and $25-30 million, respectively. *Id.* ¶ 158. Plaintiffs allege that these revenue projections were materially false and misleading for the same reasons as above. *Id.* ¶ 161.

- **FY2021 Press Release and 1Q22 Press Release:** On March 8, 2022, Rockley issued a press release announcing its financial results for the fourth quarter and year end 2021 (the "FY2021 Press Release"). *Id.* ¶ 167. The FY2021 Press Release updated Rockley's revenue outlook for FY 2022 to a range of $20-30 million. *Id.* ¶ 168. On

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:23-cv-09501-MRA-MAA | Date | March 31, 2025 |
|---|---|---|---|
| Title | Kenneth S. Grossman, et al. v. David Sin, et al. | | |

May 12, 2022, Rockley issued a press release announcing its financial results for the first quarter of 2022 (the "1Q22 Press Release), which was also filed with the SEC as an exhibit to a Form 8-K signed by Karanth. *Id.* ¶ 173. The press release reiterated Rockley's FY 2022 revenue outlook of $20-30 million. *Id.* Plaintiffs allege that this revenue guidance was materially false and misleading for the same reasons as above. *Id.* ¶¶ 171(c), 175(c).

- **2Q22 Press Release and Earnings Call:** On August 11, 2022, Rockley issued a press release, which was filed with the SEC as an exhibit to a Form 8-K, announcing its financial results for the second quarter of 2022 (the "2Q22 Press Release"). *Id.* ¶ 177; Rockley RJN Ex. 20. Rockley stated that it was lowering its 2022 revenue guidance and withdrawing its 2023 revenue guidance entirely. Specifically, it "expects to generate core product revenue" of $5-10 million, after "remov[ing] all revenue from datacom platform monetization in its revised guidance for 2022." FAC ¶ 177. As to the revised 2023 revenue guidance, Rockley stated, "[p]revious information provided for 2023 is not reflective of management's current views of 2023 as [Rockley] continues to evolve its business and financial model." *Id.* On that day, Rockley conducted an earnings call to discuss Rockley's financial results for the second quarter of 2022 ("2Q22 Earnings Call"). *Id.* ¶ 179. During the call, an analyst asked Rickman whether "something has changed with consumer wearable companies where they're not moving forward consistent with what your original expectations were." *Id.* ¶ 186; Rockley RJN Ex. 20. Rickman responded, "I don't think anything has changed" and that "[t]he opportunity . . . in the consumer device area[] is still there, but we are in the hands of those [consumer device] companies in terms of their own launch programs." FAC ¶ 187. Rickman was also asked whether there was "[a]nything notable to discuss in terms of new customer additions," to which he responded that Rockley has "more than enough customers." *Id.* ¶ 188. Plaintiffs allege that these were materially false and misleading statements because Rockley Defendants did not disclose that at the time "Apple had effectively stopped committing NRE revenue to Rockley," leaving it with few, if any, remaining revenue streams in 2022. *Id.* ¶ 189(g).

- **3Q22 Earnings Call:** During the call, Rockley Defendants were asked to explain the discrepancy between prior representations of "committed" NRE revenue in the tens of millions and the current projections of less than $4 million in revenue. *Id.* ¶¶ 193, 95. Rickman answered that "we continue to be engaged with those customers, and we continue to work with those customers, and we continue to invoice those customers." *Id.* ¶ 196. Meier also responded that "most of the NREs . . . generate revenue based on a meeting of certain milestones and certain qualifications. . . . [W]e continue to work

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:23-cv-09501-MRA-MAA | Date | March 31, 2025 |
|---|---|---|---|
| Title | Kenneth S. Grossman, et al. v. David Sin, et al. | | |

on a number of the attributes and the technology and the additional biomarkers. . . . [T]he opportunities haven't necessarily gone away." *Id.* ¶ 197. Plaintiffs allege that these statements were materially false and misleading for the reasons stated above. *Id.* ¶ 198(c).

### a)  *Use of Confidential Witness*

Plaintiffs rely on the statements of the former Process Engineer to support two allegations: (1) Apple was not expected to launch the product developed through the NRE until 2026, and (2) the relationship with Apple deteriorated because it was displeased at being identified as Rockley's customer and not satisfied with Rockley's yield rates. FAC ¶¶ 86-88. The former Process Engineer worked in Rockley's facility in the United Kingdom and specialized in silicon bonding of photonic chips on the Apple and Hengtong accounts between January 2021 and August 2022. FAC ¶ 86. He learned from the Process Engineer overseeing the development work for Apple that the Apple NRE was to develop a product that was not expected to hit the market until 2026. *Id.* Plaintiffs claim this information was corroborated in April 2022, when Apple confirmed to Bloomberg that it would not be incorporating a blood pressure monitor in the 2023 edition of its smartwatch and that incorporation of non-invasive glucose monitoring was "still several years away." *Id.* ¶ 87. He also states that Rockley's relationship had become strained during 2021 because it was displeased that Rockley revealed Apple to be one of its primary customers and that it was not satisfied with its yield rates. *Id.* ¶ 88.

The Court finds that the former Process Engineer is described with sufficient particularity to establish his reliability and personal knowledge that the product developed through the Apple NRE was expected to launch in 2026 and that Apple was not satisfied with Rockley's yield rates. It is reasonable to conclude that the Process Engineer had personal knowledge of these details because, as an engineer on the Apple account, he was informed about the project timeline and made aware of technical concerns raised by Apple. However, the Court agrees with Rockley Defendants that the FAC does not demonstrate that the Process Engineer was able to personally know that the relationship with Apple was strained because of the yield rates or Rockley's public disclosure of Apple as its customer. While matters of product design and development fall within the purview of an engineer, customer relations do not. The only bases for the Process Engineer's belief that Apple was displeased at being named publicly is that it was referred to internally as the "Secret Customer" and that it is notoriously secretive. *Id.* ¶ 88. These details are inadequate to establish the witness's reliability and personal knowledge of Apple's displeasure. Still, the Court finds that it is plausible for the Process Engineer to know of the deteriorating relationship with Rockley's customer based on the technical concerns it raised about Rockley's products.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:23-cv-09501-MRA-MAA | Date | March 31, 2025 |
|---|---|---|---|
| Title | Kenneth S. Grossman, et al. v. David Sin, et al. | | |

### b)      *Falsity and Materiality*

Rockley Defendants argue that their statements about Apple are not actionable because they disclosed that the $70 million commitment was contingent on Rockley meeting certain milestones and it had no duty to disclose that its relationship with Apple was deteriorating.[5]   ECF 64 at 22-24.   Plaintiffs respond that Rockley Defendants misled investors about the significance of the $70 million NRE commitment and subsequently failed to disclose materially adverse facts that Rockley's relationship with Apple was steadily deteriorating   ECF 67 at 18-20.

The Court finds that Plaintiffs have plausibly alleged that Rockley Defendants' statements about the $70 million NRE "commitment" in the March 2021 Merger Call and Presentation were misleading because they "omit[ted] material information."   *Khoja*, 899 F.3d at 1008-09 (citation omitted).   Unlike the statements regarding the HRT NRE, Rockley Defendants "tout[ed] positive information to the market" about the Apple NRE commitment.   *Glazer*, 63 F.4th at 764 (citation omitted).   In doing so, Rockley Defendants had an obligation to "do so in a manner that wouldn't mislead investors, including disclosing adverse information that cuts against the positive information."   *Id.* (citation omitted).   That the Apple NRE revenue was contingent on the achievement of certain milestones falls within the ambit of adverse information for which disclosure was required at the time the statements were made.   There is "a substantial likelihood that a reasonable investor would have acted differently" had this information been disclosed. *Khoja*, 899 F.3d at 1009 (citation omitted).

Rockley Defendants point out that they did disclose that the NRE payments were contingent on Rockley meeting certain milestones.   ECF 64 at 22-23.   Specifically, Rockley Defendants stated as early as April 2, 2021, that Apple "does not have any minimum or binding purchase obligations to Rockley . . . and could elect to discontinue or reduce making purchases from Rockley with little or no notice."   Rockley RJN Ex. 5 at 276; Ex. 7 at 1049; Ex. 8 at 1871; Ex. 10 at 1939; Ex. 11 at 2218; Ex. 12 at 2521.   However, as Plaintiffs note, the earliest of these

---

[5] Rockley Defendants make other passing arguments challenging the falsity and materiality of statements related to the Apple NRE.   This includes arguments challenging Plaintiffs' reliance on confidential sources and that their Apple NRE revenue projections in the July 2021 Proxy and 3Q22 Earnings Call are protected by the PSLRA's safe harbor.   *Id.*   None of these arguments are adequately briefed where raised, and as such the Court declines to consider them.   *See Rivera v. E. Bay. Mun. Util. Dist.*, C 15-00380 SBA, 2017 WL 3593113, at *17 (N.D. Cal. Aug. 21, 2017) (citing *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:23-cv-09501-MRA-MAA | Date | March 31, 2025 |
|---|---|---|---|
| Title | Kenneth S. Grossman, et al. v. David Sin, et al. | | |

disclosures still came "weeks after" the initial representation made on the March 2021 Merger Call and Presentation.   ECF 67 at 20 (emphasis omitted).   Rockley Defendants reply that these disclosures were still made "many months" before the Merger closed, and public trading of Rockley securities began.   ECF 69 at 89.   That may be, but this is no cure: having touted the $70 million Apple NRE commitment, Rockley Defendants had a duty to disclose at that time the contingencies attached to the commitment.

Rockley Defendants observe that their other purportedly false and misleading statements or omissions regarding the Apple NRE revenue all occurred *after* the April 2021 disclosure.   ECF 69 at 8.   This argument is unavailing.   As explained above, "risk disclosures can be misleading to investors when they 'speak[] entirely of as-yet-unrealized risks and contingencies' and do not 'alert[] the reader that some of these risks may already have come to fruition.'"   *Glazer*, 63 F.4th at 781 (citations omitted).   Plaintiffs plausibly allege that the risks and contingencies attached to the $70 million Apple NRE commitment had come to fruition at the time these later risk disclosures were made.   For instance, Rockley's quarterly revenues purportedly never came close to the nearly $12 million average quarterly revenue expected from the Apple NRE, FAC ¶ 85, and by mid-2022, Apple NRE revenue had effectively stopped, *id.* ¶ 90.   Further, Rockley was allegedly not meeting Apple's benchmarks, such as yield rate requirements, *id.* ¶ 89.   Rockley's advisal that Apple "*could elect to* discontinue or reduce making purchases from Rockley with little or no notice" thus did not apprise investors that this risk had already or was likely to materialize.

Rockley Defendants next challenge Plaintiffs' allegations that Rockley's relationship was deteriorating.   ECF 64 at 23-24.   Yet in arguing that these claims are not factually supported, Rockley Defendants impermissibly attempt to raise factual disputes and ignore the well-pleaded allegations in the FAC.   For instance, Rockley Defendants assert that they named Apple in "highly-vetted" documents and "[n]o well-pleaded facts suggest that these documents were filed over Apple's objections or without Apple's approval."   ECF 64 at 23.   This argument requires the Court to improperly draw factual inferences (*i.e.*, that Apple vetted and approved of the documents) that plainly contradict the factually supported allegation in the FAC that Apple was "displeased" by these disclosures.   FAC ¶ 88 (citing statements made by former Process Engineer working on Apple account).   Similarly, Rockley Defendants contend that "[t]here are no well-pleaded allegations that the NRE was contingent on Rockley meeting yield rates, as opposed to milestones."   ECF 64 at 23.   But the FAC alleges that "Apple felt that [the] yield rate for [Rockley's] products . . . was unacceptably low" and that Apple could "withdraw from the [NRE] at any time if it became dissatisfied with Rockley's performance."   FAC ¶¶ 89, 131(e); *see also* Rockley RJN Ex. 5 at 276 (disclosing that Apple "could elect to discontinue or reduce making purchases from Rockley with little or no notice").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:23-cv-09501-MRA-MAA | Date | March 31, 2025 |
|---|---|---|---|
| Title | Kenneth S. Grossman, et al. v. David Sin, et al. | | |

Lastly, Rockley Defendants contend that even if the relationship was deteriorating, it was not required to disclose "its own speculation about a customer's mood." ECF 64 at 24. But Plaintiffs' allegations do not call for such speculation. While it is true that the securities laws "do not require an issuer of stock to disclose every bit of information that has some bearing on the issuer's future earnings," *In re Verifone Sec. Litig.*, 784 F. Supp. 1471, 1480 (N.D. Cal. 1992), "a duty to provide information exists . . . where statements were made which were misleading in light of the context surrounding the statements," *Retail Wholesale*, 845 F.3d at 1278. Here, as with its initial statement about the $70 million commitment, Rockley Defendants touted positive information to the market about its customer base, and in doing so, it had to disclose adverse information cutting against these representations. *See Glazer*, 63 F.4th at 764. In the 2Q22 Earnings Call, for instance, Rickman represented that "nothing has changed" with regard to Rockley's consumer wearables customers and that Rockley has "more than enough customers," even though Apple, its primary consumer wearables customer, had effectively stopped committing NRE revenue at the time those statements were made. FAC ¶ 139(g). Likewise, when asked point blank about the $70 Apple NRE on the 3Q22 Earnings Call, Rickman stated, "we continue to be engaged with those customers, and we continue to work with those customers, and we continue to invoice those customers." *Id.* ¶ 196. Meier similarly responded on the same call that "we continue to work on a number of the attributes and the technology and the additional biomarkers. . . . [T]he opportunities haven't necessarily gone away." *Id.* ¶ 197. Neither Rickman nor Meier disclosed, however, that the Apple NRE had effectively ceased. *Id.* ¶¶ 90, 198(c). Plaintiffs have plausibly alleged that, absent disclosure that revenue from the Apple NRE was at risk, these statements were misleading.

### c) Scienter

Rockley Defendants argue that Plaintiffs fail to allege scienter regarding the Apple NRE statements and omissions. ECF 64 at 26-27. Plaintiffs respond that scienter can be strongly inferred from Rockley Defendants' numerous "detailed factual statements" regarding Rockley's relationship with Apple and their knowledge and access to information concerning that relationship. ECF 67 at 22 & n.3.

The FAC does not satisfy the strong inference standard as it relates to the Apple NRE statements and omissions. The facts alleged must show a strong inference that Rockley Defendants acted with "the intent to mislead investors or deliberate recklessness to an obvious danger of misleading investors." *Glazer*, 63 F.4th at 765 (citation and internal quotation marks omitted). This is "a higher standard than mere recklessness and requires more than a motive to commit fraud." *Id.* (citing *Schueneman*, 840 F.3d at 705); *see also In re Silicon Graphics, Inc. Sec. Litig.*, 970 F. Supp. 746, 774 (N.D. Cal. 1997).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:23-cv-09501-MRA-MAA | Date | March 31, 2025 |
|---|---|---|---|
| Title | Kenneth S. Grossman, et al. v. David Sin, et al. | | |

Plaintiffs' allegations do not rise above mere recklessness, motive, and opportunity. As to Rockley Defendants' purported knowledge and access, Plaintiffs argue that "it is *implausible to think* that Defendants were *unaware* that Rockley's disclosure of Apple as a customer would jeopardize the relationship," FAC ¶ 213 (emphases added), and that Defendants were "*on notice* that Rockley was *unlikely* to achieve the milestones and qualifications needed to realize" the $70 million commitment in NRE revenue, *id.* ¶ 214 (emphases added). Implausibility, unawareness, and notice, however, fall short of indicating the danger of misleading investors was "either known to the defendant or [wa]s so *obvious* that the actor must have been aware of it." *Zucco*, 552 F.3d at 991. It does not reflect "some degree of intentional or conscious misconduct." *In re Silicon*, 183 F.3d at 977.

As for the "detailed factual statements" about Rockley's relationship with Apple, the Court is not persuaded that these support a strong inference of scienter. *See* ECF 67 at 22 n.3 (citing, *inter alia*, FAC ¶¶ 128, 136). In the March 2021 Merger Call, Rickman stated Rockley's belief that its technology had made it "invaluable to one of the largest technology companies in the world [presumably, Apple]." FAC ¶ 128. In the July 2021 Proxy, Rockley Defendants disclosed that Rockley's "operating results for the foreseeable future will continue to depend to a significant extent" on revenue from, among others, Apple. *Id.* ¶ 136. Neither of these statements amounts to a detailed representation of the nature of Rockley's relationship with Apple. Nor were the statements "completely at odds with reality" when made to give rise to a strong inference of scienter. *See In re QuantumScape Sec. Class Action Litig.*, 580 F. Supp. 3d 714, 741 (N.D. Cal. 2022) (finding scienter was plausibly alleged where, for instance, defendants personally reported "verifiable falsehoods" about a company that contradicted its own SEC disclosures).

\*\*\*

Accordingly, the Court finds that Plaintiffs have plausibly alleged falsity and materiality, but not scienter as to the allegedly false and misleading statements or omissions related to the Apple NRE.

### 3. *Product Development and Commercialization*

Plaintiffs allege that the following statements and omission regarding Rockley's product development and commercialization were materially false and misleading:

- **March 2021 Merger Call and Presentation:** Rockley Defendants stated that they expected the "commercial launch" of Rockley's consumer wearables products "to be in 2022" and a "[s]ignificant revenue increase from 2023 onwards, on the back of commercial adoption by consumer technology manufacturers." *Id.* ¶ 125.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:23-cv-09501-MRA-MAA | Date | March 31, 2025 |
|---|---|---|---|
| Title | Kenneth S. Grossman, et al. v. David Sin, et al. | | |

Specifically, with respect to Company A consumer (Apple), Defendants represented that they expected to realize $124 million and $307 million in consumer wearables revenue in 2023 and 2024, respectively. *Id.* The presentation slides also claimed that "leading blue-chip customers" had "[v]alidated" Rockley's technology and that Rockley was "[e]ngaged or contracted with 4 customers collectively holding >55% of smartphone and >50% of wearables market." *Id.* ¶ 127. During the call, Rickman stated that Rockley was "invaluable to one of the largest technology companies in the world" and that it had engaged or contracted six customers. *Id.* ¶ 128. Defendants also claimed that commercialization of Rockley's consumer wearables products was "imminent." *Id.* ¶ 129. Coloma specifically stated, "We [SC Health] believe the company [Rockley] is poised for substantial and imminent commercial growth." *Id.* Rickman echoed Coloma, stating, "You could see this revolutionary technology on your wrist as soon as next year, followed by a significant [revenue] ramp in 2023. . . . [T]his is not a future story—this is happening now, and we have strong visibility on our numbers in close partnership with our customers." *Id.* ¶ 130.

Plaintiffs allege that these statements were materially false and misleading because "there was no realistic possibility that Rockley would have been able to launch a commercially viable consumer wearables product in 2022, and the commercialization of such products was certainly not 'imminent' or 'happening now.'" *Id.* ¶ 131(a). Rockley had not yet begun the 12-18-month process of developing its new ASIC chipset, which would require an additional 3-6 months to be incorporated into a complete device followed by additional human studies and incorporation into OEMs' end products. *Id.* And because Rockley had not yet begun developing its new ASIC chipset, "it was impossible for [Rockley]'s consumer wearables customers to have 'validated' the actual technology or products" that would be purchased from Rockley. *Id.* ¶ 131(c). Further, because Rockley had no binding contracts with any consumer wearables customers at the time, Rockley Defendants' statement that Rockley was "engaged or contracted" with blue-chip customers was materially false or misleading. *Id.* ¶ 131(d). Defendants also had "no basis to project consumer wearables revenues from Apple in 2023 and 2024" because the product Rockley was developing for Apple was not expected to hit the market until 2026. *Id.* ¶ 131(f).

- **July 2021 Proxy:** The July 2021 Proxy stated that Rockley "plan[s] to start delivering final samples to customers in the first half of 2022 with production ramp of these products commencing in the second half of 2022." *Id.* ¶ 135. Plaintiffs allege that this statement was materially false and misleading for the reasons stated above. *Id.* ¶ 138(a)-(b).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:23-cv-09501-MRA-MAA | Date | March 31, 2025 |
|---|---|---|---|
| Title | Kenneth S. Grossman, et al. v. David Sin, et al. | | |

- **2Q21 Earnings Call:** Rickman reiterated that Rockley was "on track with our product development schedule," which would have Rockley's ASIC chipset "being designed into the 2023 generation of [OEM] products and involves us shipping the course of next year tens of thousands of units to support our customers qualification processes." *Id.* ¶ 140. During the question-and-answer portion of the call, Rickman stated that Rockley's consumer wearables products were in "the pre-alpha stage . . . where we are optimizing the algorithms through human trials," and that the "pre-alpha devices from a physical hardware perspective will be the devices to go-to-market for our customers." *Id.* ¶ 141. Karanth reiterated that "we believe that we remain on track with the production rollout plans of our announced customers" and that Rockley's "immediate business plan remains sufficiently funded." *Id.* ¶ 142. Plaintiffs allege that these statements were materially false and misleading because Rockley "was not 'on track' to ship commercially viable consumer wearables products to [its] OEM customers 'in the course of next year'" and included in the OEMs' 2023 product launches. *Id.* ¶ 144(a)-(b). Further, Plaintiffs allege that because Rockley had not begun developing its new ASIC chipset, the "'pre-alpha devices' . . . were not 'from a physical hardware perspective' the devices that would 'go-to-market[.]'" *Id.* ¶ 144(c).

- **3Q21 10-Q, Press Release, and Earnings Call:** The 3Q21 Press Release stated that Rockley had "[e]xtended the Company's leadership in providing biosensing solutions for the consumer electronics market with the addition of five global consumer electronics companies, bringing its total to six of the top ten consumer wearables manufacturers, and reducing the Company's exposure to any single customer." *Id.* ¶ 147. Rickman was also quoted in the press release noting the additions to Rockley's consumer base and stating that "our product development and commercial activities exceeded internal expectations" and "we continue to make substantial progress with our ongoing human studies." *Id.* On the earnings call, Rickman described the development process as beginning with work on "physical designing activities" with OEMs in the near term, and "that is what we're doing with all of these customers." *Id.* ¶ 148. Rickman continued by stating that in the following year (2022), Rockley would be in "the process of providing a significant number of units for [OEMs'] qualification process . . . , which then prepares them for the launch of their products into the consumer market in 2023." *Id.* Rickman elaborated that the "alpha" models would be supplied to OEMs "starting in the first half of next year" and then "by the middle of next year, the full production version," such that in the fourth quarter of 2022, Rockley would basically be in "the design cycle for the products launching in 2023." *Id.* ¶ 149. Rickman confirmed that as to its consumer wearables products, "there is no change to the guidance" previously provided. *Id.* ¶ 150. During the question-and-answer

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:23-cv-09501-MRA-MAA | Date | March 31, 2025 |
|---|---|---|---|
| Title | Kenneth S. Grossman, et al. v. David Sin, et al. | | |

portion of the call, Rickman stated that Rockley has "agreements in place" with these customers and that the design in process "will just continue" as "all customers are very, very, very keen to have . . . the biomarkers that we're able to deliver with the platform in the products as soon as possible[.]" *Id.* ¶ 151. In response to another question, Rickman clarified the level of commitment from OEMs, stating that there has been a financial commitment in a number of those relationships. *Id.* ¶ 152. When asked explicitly about any "meaningful hurdles . . . from a technology standpoint," Rickman said, "Things have rolled out extremely well in terms of the technology. . . . And so what's been critical here is the delivery of that benchtop performance in the miniaturized spectrophotometer chip format[.]" *Id.* ¶ 153. Rickman denied that "technological risk" would affect the timeline for commercial volume shipment. *Id.* ¶ 154. When asked whether Rockley's customer engagements were "exclusive," Rickman stated that "our customers are telling us explicitly that they do not have an alternative to this." *Id.* ¶ 155.

Plaintiffs allege that the above statements are materially false and misleading because Rockley was not in a position to ship commercially viable consumer wearable products to OEMs in 2022, and there were "meaningful [technological] hurdles" to commercialization. *Id.* ¶ 157(b)-(e). Further, Plaintiffs allege that Rickman's representations regarding Rockley's consumer commitments were materially misleading because they implied that such customers were committed to including Rockley's consumer wearable products in their 2023 product offerings, without any meaningful hurdles to commercialization when in fact there were no binding commitments. *Id.* ¶ 157(g). As for the statements regarding human trials, Plaintiffs contend that these statements were materially misleading because Rockley did not disclose that such studies were not being conducted on a commercially viable consumer wearables product with the new ASIC chipset. *Id.* ¶ 157(i).

- **December 2021 Press Release:** Rockley reiterated that its "primary focus has been and continued to be on the development and commercialization of [its] sensing platform in the health monitoring space." *Id.* ¶ 159. Rickman was quoted as stating, "We continue to make outstanding progress in this arena . . . and our outlook for this business continues to show momentum." *Id.* Plaintiffs allege that this statement was materially false and misleading because "Rockley was not making 'outstanding progress' towards its previously announced plans" to ship commercially viable products to OEM customers in 2022 to be included in their 2023 product offerings. *Id.* ¶¶ 160-61.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:23-cv-09501-MRA-MAA | Date | March 31, 2025 |
|---|---|---|---|
| Title | Kenneth S. Grossman, et al. v. David Sin, et al. | | |

- **Needham Conference:** On January 13, 2022, Rickman gave a presentation at the annual Needham Virtual Growth Conference (the "Needham Conference"). *Id.* ¶ 162. During his presentation, Rickman represented that Rockley had "12 of the consumer electronics customers," whereas it had only four the previous year. *Id.* Rickman further stated that Rockley had secured "deep design wins and commitments" and was "negotiating, volume [purchase orders] at this time" with its customers, with "[e]verything . . . validated by leading blue-chip customers." *Id.* Rickman also represented that Rockley had begun human trials of its "miniaturization technology," and that Rockley has "been astounded and extremely excited about [its] human trial[] results so far." *Id.* ¶ 163. Plaintiffs allege that Rickman's statements at the Needham Conference were materially false and misleading because "Rockley did not have a commercially viable consumer wearables product capable of securing 'deep design wins and commitments' from its OEM customers," and was not in a position to negotiate volume purchase orders or to have its technology validated. *Id.* ¶ 164(a). Further, because Rockley was not in a position to negotiate binding purchase orders, Plaintiffs allege that it was materially misleading for Rickman to state that Rockley was "contracted with" a dozen consumer electronics companies, that Rockley had secured "commitments" from such customers, and that 60% of the wearables market was "signed up as customers." *Id.* ¶ 164(b). As to the "human trials" on Rockley's "miniaturized technology," Plaintiffs allege that Rickman "failed to disclose that such trials were not being conducted on a commercially viable consumer wearables product incorporating the new ASIC chipset solution, which was still more than a year away from being completed." *Id.* ¶ 164(c).

- **January 2022 Press Release:** On January 20, 2022, Rockley issued a press release (the "January 2022 Press Release"), which announced that Rockley "has successfully completed the first stage of its human studies examining the measurement of blood pressure using Rockley's biomarker sensing platform." *Id.* ¶ 165. Rockley further represented that in addition to blood pressure monitoring, "the study showed that Rockley's wrist-based sensing platform produces a strong correlation of heart rate (HR) and heart rate variability (HRV) measurement with results from commonly used . . . equipment." *Id.* Rockley averred that the in-house blood pressure studies are "part of a continuing slate of human studies designed to evaluate and refine the performance of Rockley's biomarker sensing platform in measuring a wide range of biomarkers." *Id.* Rickman was quoted as saying in pertinent part that "the results from this study have demonstrated a quality of both signal and measurement techniques that have the potential to enable a new class of cardiovascular health monitoring." *Id.* Plaintiffs allege that these statements were materially false and misleading because "they failed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:23-cv-09501-MRA-MAA | Date | March 31, 2025 |
|---|---|---|---|
| Title | Kenneth S. Grossman, et al. v. David Sin, et al. | | |

to disclose that Rockley's 'continuing slate of human studies' were not being conducted on commercially viable consumer wearables products incorporating the new ASIC chipset solution." *Id.* ¶ 166.

- **FY2021 Press Release and Earnings Call:** Rickman was quoted as claiming that "[t]hroughout 2021, we made tremendous progress in product development and with our customers, exceeding many of our goals for the year." *Id.* ¶ 167. The press release also claimed that Rockley was "actively working with 12 consumer electronics customers . . . to design its chipsets and modules into consumer products" and reiterated the commercialization timeline: "First Commercial Products Expected to Be Available as Early as Second Half 2022 and Volume Ramp Expected in 2023." *Id.* That day, Rockley also conducted an earnings call (the "FY2021 Earnings Call"), during which Rickman was asked whether the timeline for commercial production has "slipped" or is "on track." *Id.* ¶ 169. Rickman answered, "It's on track. Yes. Same position as before." *Id.* Rickman was also asked, "But from a core technology standpoint, it sounds like you have pretty decent visibility into getting into real full production mode and the technology being stable and ramping." *Id.* ¶ 170. Rickman responded, "Absolutely. Our customers are at the commitment stage and we are working extremely hard on the volume ramp-up." *Id.* Plaintiffs allege that these statements were materially false and misleading because Rockley was still at least nine months away from developing the essential component of its new ASIC chipset. *Id.* ¶ 171(a). As such, "Rockley was not 'on track' to achieve its previously announced plans," and "it was not in a position to be 'actively working with 12 consumer electronic customers . . . to design its chipsets and modules into consumer products.'" *Id.* ¶ 171(a)-(b). Further, because Rockley had not yet developed a commercially viable product, its consumers were not "at the commitment stage." *Id.* ¶ 171(b).

- **2Q22 Press Release and Earnings Call:** The 2Q22 Press Release reported that Rockley "received its first commercial purchase order from a top 10, global medtech company" and expected "to ship the bands to the customer in the fourth quarter 2022, with volume productions ramping in 2023." *Id.* ¶ 178. It further disclosed that Rockley had entered an "evaluation phase" of VitalSpex Pro with "one of its tier-1 consumer wearables customers." *Id.* During the 2Q22 Earnings Call, Rockley indicated that in addition to revising its 2022 revenue guidance and withdrawing its 2023 revenue guidance, it was affirmatively shifting its focus from the consumer wearables market to the med-tech market in 2023. *Id.* Rickman stated, "there really has been a shift around in terms of the timing that our own [wristband] and the Bioptx [wristband] that you now see has really accelerated ahead of everything else and is our

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:23-cv-09501-MRA-MAA | Date | March 31, 2025 |
|---|---|---|---|
| Title | Kenneth S. Grossman, et al. v. David Sin, et al. | | |

focus in terms of revenue for next year." *Id.* Rickman clarified that Rockley's "confidence in the mix has definitely moved towards the med tech area." And that "the emphasis has moved towards the medical device companies." *Id.* Rickman also stated that Rockley is "at an extraordinary point . . . as [it] move[s] from R&D to starting production of a solution[.]" *Id.* ¶ 180. During the call, an analyst pressed Rickman to reconcile Rockley's current disclosures with its previous representations regarding the commercial prospects of the consumer wearables products. *Id.* ¶¶ 181-88. Rickman generally responded that the med-tech opportunity has "manifested itself faster" than the consumer wearables market and that "the fundamental point is that [Rockley's] overall business prospects in our view are actually stronger than they have been before." *Id.* ¶¶ 184-85.

Plaintiffs allege that these statements were materially false and misleading because Rockley failed to disclose the "real reason" for withdrawing its entire 2023 revenue guidance, which was that Rockley "was still at least many months away from developing its essential new ASIC chipset." *Id.* ¶ 189(a). The 2Q22 Press Release's reference to a "first commercial purchase order" was in fact "a small, qualification-level order of 'hundreds of thousands' of 'samples,' which provided no basis for believing that it would lead to 'volume production ramping in 2023.'" *Id.* ¶ 189(b). Further, Plaintiffs allege that Rockley was "not positioned to 'move from R&D' given that [it] was still in the process of attempting to develop the essential new ASIC chipset for its consumer wearables product." *Id.* ¶ 189(c). Rickman's statements about Rockley's "overall business prospects" also concealed that Rockley was facing a "worsening liquidity crisis," which was exacerbated by the revised revenue projections. *Id.* ¶ 189(d). As for Rockley's statements about the med-tech opportunity, Plaintiffs allege that they were also misleading because they "failed to disclose that Rockley had no hope of recognizing any meaningful revenue from its medtech devices unless and until such products received FDA approval," which could be many months, if not years, away. *Id.* ¶ 189(e).

- **3Q22 Earnings Call:** On November 9, 2022, Rockley conducted an earnings call to discuss its financial results for the third quarter of 2022 (the "3Q22 Earnings Call"). *Id.* ¶ 191; Rockley RJN Ex. 25. During the call, Rickman stated that Rockley was in receipt of the "near-final version" of its Bioptx bands and that Rockley is "at the point where we will soon have commercial products in our customers' hands." *Id.* ¶ 191. When asked about Rockley's cash flow and balance sheet, Meier stated that Rockley was "certainly in a position to move forward in an aggressive fashion" and that Rockley had "taken dramatic action to manage ourselves so that we can position ourselves to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:23-cv-09501-MRA-MAA | Date | March 31, 2025 |
|---|---|---|---|
| Title | Kenneth S. Grossman, et al. v. David Sin, et al. | | |

effectively continue to deliver on our technology processes." *Id.* ¶ 192. Plaintiffs allege that these statements were materially false and misleading because Rockley "was not 'at the point where we will soon have commercial products in our customers' hands.'" *Id.* ¶ 198(a). Further, Meier's statements about "cash flow" and the "balance sheet" were also misleading because they concealed that Rockley was "facing a liquidity crisis, had not identified a potential buyer or alternative financing," and had no significant revenue streams. *Id.* ¶ 198(b).

### a) *Use of Confidential Witness*

Rockley Defendants argue that Plaintiffs have not described the Chip Designer with sufficient particularity to establish their reliability and personal knowledge. ECF 69 at 15. Plaintiffs rely on the statements of the former Chip Designer to establish that (a) the ASIC chipset was essential to product development and commercialization, and (b) that the timeline for development and commercialized disclosed publicly was unrealistic. FAC ¶¶ 90, 98-101.

Rockley hired the former Chip Designer in December 2021 for the purpose of architecting an ASIC chipset. FAC ¶ 98. He describes specific reasons why the ASIC chipset he was hired to design was essential to developing a commercially viable consumer wearables product: (1) the existing chipset was too bulky to fit within OEM's existing consumer wearables; (2) the existing prototype had a battery life of only 2-3 hours; and (3) the production costs were prohibitive. *Id.* The Chip Designer states that during the hiring process, he was informed by Rockley's Vice President of Integrated Circuit Design that the goal at the time was to complete the development phase of the ASIC chipset by January 2023, which the Chip Designer viewed as "an unrealistic and overly aggressive timeline." *Id.* ¶ 99. He states that Rockley's senior management was aware of the ASIC chipset and kept apprised of developments regarding the project. *Id.* ¶ 100. In early 2022, he personally gave a presentation to Rickman for why the ASIC chipset was necessary. He was aware that the Vice President of Integrated Circuit Design provided regular progress reports to Rickman. *Id.* He also attended a meeting in mid-2022 with other Rockley employees and executives, including Rickman, at which a Senior Product Manager gave a presentation emphasizing that Rockley's consumer wearables OEM customers needed smaller, cheaper products, requiring successful implementation of the new ASIC chipset. *Id.* By May 2022, the Chip Designer stated that the development phase for the new chipset was only approximately 25% completed, and it was apparent by that time that Rockley would not have the new ASIC chipset developed and incorporated into its consumer wearables products in time for it to be included in OEMs' 2023 product offerings. *Id.* ¶ 101.

The Court finds that the former Chip Designer is described with sufficient particularity to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:23-cv-09501-MRA-MAA | Date | March 31, 2025 |
|---|---|---|---|
| Title | Kenneth S. Grossman, et al. v. David Sin, et al. | | |

establish their reliability and personal knowledge. Plaintiffs provide the witness' job title, description, and responsibilities. *See Zucco*, 552 F.3d at 996 (finding that confidential witnesses were described "with a large degree of specificity" where their job descriptions and responsibilities were listed (citation omitted)); *Police Ret. Sys. of St. Louis v. Granite Constr. Inc.*, No. 3:19-CV-04744-WHA, 2020 WL 2559939, at *4 (N.D. Cal. May 20, 2020) (finding that providing each witness' job title, description, and responsibilities meets the PSLRA's requirements for confidential witnesses). Rockley Defendants argue that Plaintiffs have not explained how the Chip Designer was able to have personal knowledge of how and in which products Rockley would use the ASIC chipset or when the ASIC chipset would be completed. ECF 64 at 25. Not so. The Chip Designer's statements are based on conversations with management during hiring, his experiences as the person responsible for designing the ASIC chipset, and the presentation he personally gave and meetings he personally attended. *See Roberts v. Zuora, Inc.*, No. 19-CV-03422-SI, 2020 WL 2042244, at *11 (N.D. Cal. Apr. 28, 2020) (finding the PSLRA's requirements satisfied where the confidential witness' personal knowledge came "as a direct result of their positions").

### b)      *Falsity and Materiality*

Rockley Defendants argue that the alleged statements about product development and commercialization are not actionable because they are puffery, statements of opinion, or statements of present fact. ECF 64 at 17-22. Plaintiffs respond that these statements were materially false or misleading because "Rockley was never close to completing its development of a commercially viable consumer wearables product at any time during the Class Period" and do not constitute statements of opinion or puffery. ECF 67 at 14-18.

**Puffery.** Rockley Defendants contend that many of the alleged statements were puffery, such as representations that Rockley was "working closely and deeply" with customers, that it was making "substantial progress" with its human studies and "outstanding progress" in the health monitoring space, and that the medical device market was a "very big opportunity." ECF 64 at 19-20 (citing, *e.g.*, FAC ¶¶ 122, 147, 159, 167, 179). Plaintiffs respond that certain of Rockley Defendants' statements of optimism conveyed a "concrete state of affairs that materially differed from the one that actually existed," and as such, are actionable. ECF 67 at 17-18.

"Statements of mere corporate puffery, vague statements of optimism like 'good,' 'well-regarded,' or other feel good monikers, are not actionable because professional investors, and most amateur investors as well, know how to devalue the optimism of corporate executives." *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1060 (9th Cir. 2014) (internal quotation marks omitted) (quoting *In re Cutera*, 610 F.3d at 1111). "Corporate

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:23-cv-09501-MRA-MAA | Date | March 31, 2025 |
|---|---|---|---|
| Title | Kenneth S. Grossman, et al. v. David Sin, et al. | | |

'puffing' involves 'expressing an opinion' that is not 'capable of objective verification.'" *Macomb Cnty.*, 39 F.4th at 1097-98 (quoting *Retail Wholesale*, 845 F.3d at 1275).

While the Court agrees with Rockley Defendants that certain of its statements "merely reflect corporate optimism," *Roberti v. OSI Sys., Inc*., No. CV 13-9174-MWF VBKX, 2015 WL 1985562, at *9 (C.D. Cal. Feb. 27, 2015), Rockley Defendants are mistaken in believing that any and all puffing about "progress and opportunities" is not actionable, ECF 64 at 20. "[E]ven 'general statements of optimism, when taken in context, may form a basis for a securities fraud claim' when those statements address specific aspects of a company's operation that the speaker knows to be performing poorly." *In re Quality Sys.*, 865 F.3d 1130, 1143 (9th Cir. 2017) (quoting *Warshaw v. Xoma Corp.*, 74 F.3d 955, 959 (9th Cir. 1996)). For example, Rockley Defendants' statements that the timeline for commercial production was "on track" when it knew that that production had derailed was materially misleading. FAC ¶¶ 140, 142, 169; *cf. Warshaw*, 74 F.3d at 959 (finding that reassuring investors that "everything [was] going fine" with FDA approval when the company new that approval would never come was materially misleading); *Fecht*, 70 F.3d at 1081 (finding that a company's statement that it "anticipates a continuation of its accelerated expansion schedule" when the expansion had already failed was materially misleading). Relatedly, Rockley Defendants' statement in the December 2021 Press Release that it "continue[s] to make outstanding progress" in the health monitoring space, though not necessarily capable of objective verification, may nevertheless be materially misleading if they knew at the time that it was impossible to meet their goal of commercializing its consumer wearable technology by 2023. *Id.* Rickman's statement in the March 2021 Merger Call that "[y]ou could see this revolutionary technology on your wrist as soon as next year, followed by a significant [revenue] ramp in 2023" is also not puffery because it conveys a "'concrete description of the past and present' that affirmatively create[d] a plausibly misleading impression of a 'state of affairs that differed in a material way from the one that actually existed.'" *In re Alphabet*, 1 F.4th at 700 (quoting *In re Quality Sys.*, 865 F.3d at 1144). At a minimum, the Court cannot say that such statements are "so exaggerated or vague that no reasonable investor would rely on [them] when considering the total mix of available information." *In re Impac Mortg. Holdings, Inc. Sec. Litig.*, 554 F. Supp. 2d 1083, 1096 (C.D. Cal. 2008).

**Statements of Opinion.** Rockley Defendants argue that several of the alleged statements about product development and commercialization prospects are statements of opinion. ECF 64 at 20 (citing FAC ¶¶ 128, 136, 142, 173, 192). Plaintiffs respond that Rockley Defendants' statements of opinion are in fact allegedly false and misleading statements of fact and incompatible with undisclosed material information in their possession. ECF 67 at 18.

"The falsity analysis is slightly different when the challenged statements contain opinions."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:23-cv-09501-MRA-MAA | Date | March 31, 2025 |
|---|---|---|---|
| Title | Kenneth S. Grossman, et al. v. David Sin, et al. | | |

*Glazer*, 63 F.4th at 764.   "A statement of opinion, even if literally accurate, may be rendered misleading by the omission of a material fact."   *Id.* (citing *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 183 (2015)).   "A statement of opinion is not misleading just because external facts show the opinion to be incorrect" or the "issuer knows, but fails to disclose, some fact cutting the other way."   *Omnicare*, 575 U.S. at 188-89.   Statements that do not use opinion-qualifying language such as "I think" or "I believe," but rather express "certainty" about an existing thing or occurrence are not opinions.   *See id.*, 575 U.S. at 183.   At the same time, "[s]imply inserting the word 'believe' in front of a statement of fact does not . . . immunize [d]efendants from liability."   *Todd v. STAAR Surgical Co.*, No. CV–14–05263–MWF–RZ, 2016 WL 6699284, at *9 (C.D. Cal. Apr. 12, 2016).   A reasonable investor can expect that the issuer's opinion "fairly aligns with the information in the issuer's possession at the time."   *Id.* at 189.   There are three different standards for pleading falsity of opinion:

> First, when a plaintiff relies on a theory of material misrepresentation, the plaintiff must allege both that the speaker did not hold the belief she professed and that the belief is objectively untrue.   Second, when a plaintiff relies on a theory that a statement of fact contained within an opinion statement is materially misleading, the plaintiff must allege that the supporting fact the speaker supplied is untrue.   Third, when a plaintiff relies on a theory of omission, the plaintiff must allege facts going to the basis for the issuer's opinion whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context.

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615-16 (9th Cir. 2017) (cleaned up).

The parties' briefing is inadequate on this issue.   Plaintiffs posit the second and third theory but fail to analyze Rockley Defendants' statements under any standard.   ECF 67 at 18. Rockley Defendants address only the first standard.   ECF 69 at 15-16.   In any event, the Court finds that some, but not all, of the statements of opinion identified in Rockley Defendants' Motion are actionable:

- **March 2021 Merger Call:** Rickman's statement that "[i]t is the power of this technology that we believe has made us invaluable to one of the largest technology companies in the world" is not actionable under a theory of material misrepresentation. FAC ¶ 128.   Plaintiffs have not alleged that Rickman did not hold the professed belief, and that the belief was objectively untrue.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:23-cv-09501-MRA-MAA | Date | March 31, 2025 |
|---|---|---|---|
| Title | Kenneth S. Grossman, et al. v. David Sin, et al. | | |

- **July 2021 Proxy**: The statement that "Rockley believes that its operating results for the foreseeable future will continue to depend to a significant extent on revenue attributable to a few large customers" is not actionable on a theory of omission.  *Id.* ¶ 136. Plaintiffs have not alleged facts going to the basis of the opinion whose omission makes the statement misleading.

- **2Q21 Earnings Call:** Karanth's statement that "we believe that we remain on track with the production rollout plans for our announced customers" is actionable under a theory of omission or material misrepresentation.  *Id.* ¶ 142.  Plaintiffs have plausibly alleged that either Karanth did not hold the professed belief, and the statement is objectively untrue, or Karanth was aware of facts whose omission made the statement misleading, *i.e.,* that development of the ASIC chipset was behind schedule.

- **1Q22 Press Release**: Rickman's statement that "I believe our product development programs remain on track" is actionable for the same reasons as Karanth's statement above.  *Id.* ¶ 173.

- **3Q22 Earnings Call**: Meier's statement that "I think the company is certainly in a position to move forward in an aggressive fashion" is actionable on theories of material misrepresentation and omission.  FAC ¶ 192.  Plaintiffs have plausibly alleged that Meier did not hold the professed belief and that the statement was objectively untrue considering that Rockley was experiencing a liquidity crisis and was not generating significant revenue.

**Statements of Present Fact.**   Rockley Defendants argue that Plaintiffs fail to allege how Rockley's statements about its customer relationships were false or misleading when made.[6] ECF 64 at 21 (citing FAC ¶¶ 122, 127, 128, 147, 162, 167, 178).   The Court agrees with Rockley Defendants that Plaintiffs have not adequately alleged as false or misleading their statements that Rockley is "working closely and deeply" with OEMs, "add[ing] five global consumer electronics companies" to its customer base, and "actively working with 12 consumer electronics customers . . . to design its chipsets and modules into consumer products."  FAC ¶¶ 122, 147, 167.  But, overall, the Court finds Plaintiffs have plausibly stated their claims that Rockley Defendants

---

[6] Rockley Defendants raise the same argument as to other statements about the results of Rockley's human studies and its shift from consumer wearables to prioritizing medical devices. ECF 64 at 23 (citing FAC ¶¶ 165, 179, 183, 185).   The Court is not persuaded and finds that the FAC clearly identifies why these statements were misleading when made.  *See* FAC ¶ 166, 189.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:23-cv-09501-MRA-MAA | Date | March 31, 2025 |
|---|---|---|---|
| Title | Kenneth S. Grossman, et al. v. David Sin, et al. | | |

misrepresented their consumer commitments.   *Id.* ¶¶ 127, 128, 147, 162, 167, 178

As to this remainder, Rockley Defendants argue in part that these statements could not have been false when made because Rockley explicitly disclosed the nature of these commitments.[7] The July 2021 Proxy, the 3Q21 10-Q, and documents filed in September 2021 all contained the following statement under "Customer-Related Risks":

> Rockley does not currently have any products in commercial production. Accordingly, Rockley views its current customer relationships in the following stages: (a) customers with whom it is "engaged," or in discussions with, regarding potential product features for incorporation into such customer's end products or (b) customers with whom it is "contracted" where Rockley has non-binding MOUs or development and supply agreements.   These non-binding MOUs and development and supply agreements provide a general framework for Rockley's transactions with the customer and typically provide that Rockley will develop and deliver new products meeting the customer's specifications.   These agreements do not contain any minimum or binding purchase obligations.   If Rockley is unable to transition customers with whom it is engaged in discussions to contracted customers or if Rockley fails to otherwise attract new customers, it would negatively impact Rockley's ability to grow its business and gain market share, which in turn would harm Rockley's financial condition and results of operations.

Rockley RJN Ex. 7 at 1050; Ex. 8 at 1872; Ex. 10 at 1940; Ex. 11 at 2219; Ex. 12 at 2522.

The Court is not convinced that this risk disclosure renders Rockley Defendants' alleged statements true.   As explained above, "risk disclosures can be misleading to investors when they speak entirely of as-yet-unrealized risks and contingencies and do not alert the reader that some of these risks may already have come to fruition."   *Glazer*, 63 F.4th at 781 (cleaned up).   Here, the risk disclosure speaks of a hypothetical risk that if Rockley is unable to transition customers,

---

[7] Rockley Defendants also argue that Plaintiffs' allegations about commercialization rest on the unsupported assumption that Rockley intended to create its own customer wearables product.   ECF 64 at 22.   Although the FAC uses the phrase "customer wearables product" liberally, the Court understood Plaintiffs to be alleging that Rockley intended to sell its silicon photonic chip to OEMs to incorporate into their own consumer wearable products, and that the ASIC chipset was a critical component of Rockley's deliverable.   FAC ¶¶ 63; 93-103, 153, 163, 208; *see also* ECF 67 at 14.   Disputes about whether Rockley needed to develop an ASIC chipset to sell its silicon photonic chips to OEMs raises a factual dispute to be resolved at a later stage.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:23-cv-09501-MRA-MAA | Date | March 31, 2025 |
|---|---|---|---|
| Title | Kenneth S. Grossman, et al. v. David Sin, et al. | | |

it would negatively impact Rockley's financial health without disclosing that this risk may have already materialized at the time those statements were made. Further, Plaintiffs allege (1) Rockley falsely claimed its technology was "validated by leading blue-chip customers," FAC ¶¶ 127-28; (2) Rockley falsely stated it had secured "deep design wins and commitments" and was "negotiating" volume purchase orders when it was not in a position to do either, *id.* ¶ 162; and (3) Rockley misled investors when it stated it had received its "first commercial purchase order," when it was in fact a small, qualification-level order for samples, not commercially viable products, *id.* ¶ 178. Plaintiffs have plausibly alleged that each of these statements gave investors "the 'impression of a state of affairs that differ[ed] in a material way from the one that actually exist[ed].'" *Berson*, 527 F.3d at 985 (citation omitted).

### c)      Scienter

Rockley Defendants argue that Plaintiffs fail to sufficiently plead scienter as to the product development and commercialization statements. ECF 64 at 25-26. Plaintiffs primarily contend that there is strong evidence of scienter because Rockley Defendants (namely, Rickman) made numerous detailed factual statements about the precise matter misrepresented and omitted. ECF 67 at 21. The "most direct way" to show that "the party making the statement knew that it was false is via contemporaneous reports or data, available to the party, which contradict the statement." *Nursing Home Pension Fund, Loc. 144 v. Oracle Corp.*, 380 F.3d 1226, 1230 (9th Cir. 2004). "Allegations regarding management's role in a corporate structure and the importance of the corporate information about which management made false or misleading statements may . . . create a strong inference of scienter when made in conjunction with detailed and specific allegations about management's exposure to factual information within the company." *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 785 (9th Cir. 2008).

Here, Plaintiffs claim that Rickman was specifically aware of (a) the need for Rockley to develop its new ASIC chipset to have a commercially viable consumer wearables product and (b) the timeline for its development. FAC ¶¶ 210-11. These assertions are supported by several statements made by the former Chip Designer that the Vice President of Integrated Circuit Design provided Rickman with regular progress reports on the ASIC chipset; the Chip Designer personally gave Rickman a presentation about the need to complete the ASIC chipset to make the technology commercially viable; and Rickman attended a meeting at which a Senior Product Manager emphasized the need to create a smaller, cheaper products requiring the ASIC chipset.[8] *Id.* ¶ 211. Rickman made statements about the development processes for its consumer

---

[8] For the reasons explained above, the Court finds that Plaintiffs have sufficiently met the PSLRA's particularity requirement for confidential witnesses as to the Chip Designer.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:23-cv-09501-MRA-MAA | Date | March 31, 2025 |
|---|---|---|---|
| Title | Kenneth S. Grossman, et al. v. David Sin, et al. | | |

wearables products on the 2Q21 Earnings Call and 3Q21 Earnings Call, specifically that Rockley's "pre-alpha devices from a physical hardware perspective will be the devices to go-to-market" and that "[t]hings have rolled out extremely well in terms of the technology." FAC ¶¶ 207-08.

These allegations alone are sufficiently detailed and specific to create a strong inference of scienter under the PSLRA. The Ninth Circuit has made clear that "[g]eneral allegations of defendants' 'hands-on' management style, their interaction with other officers and employees, their attendance at meetings, and their receipt of unspecified weekly or monthly reports are insufficient." *In re Daou*, 411 F.3d at 1022; *see also Metzler*, 540 F.3d at 1068 ("[C]orporate management's general awareness of the day-to-day workings of the company's business does not establish scienter—at least absent some additional allegation of specific information conveyed to management and related to the fraud."). But Plaintiffs' allegations "go beyond a mere inference of management knowledge of all 'core operations'" and [are] sufficient under the PSLRA because they include[] details about the defendants' access to information within the company" about product development and commercialization prospects. *S. Ferry*, 542 F.3d at 785; *see also Reese v. Malone*, 747 F.3d 557, 572 (9th Cir. 2014) (holding that a defendant's "detailed factual statement, contradicting important data to which she had access [supports] a strong inference . . . that she knowingly misled the public as to its clear meaning"), *overruled on other grounds, City of Dearborn Heights*, 856 F.3d at 605. As alleged, Rickman had access to specific information reflecting the need to develop the ASIC chipset and the development timeline, and his public statements contradicted this reality. Such allegations "independently satisfy the PSLRA [because] they are particular and suggest that [Rickman] had actual access to the disputed information." *S. Ferry*, 542 F.3d at 786. "It is unclear what further facts plaintiffs would need to plead to create a stronger inference that [Rickman] had access to information [he] discussed publicly." *Reese*, 747 F.3d at 572.

### 4. *Safe Harbor*

Even where a plaintiff has properly pleaded the elements of a § 10(b) violation, "[f]orward-looking statements like the earnings projections are further insulated from liability" under the PSLRA's safe harbor provision. *In re Cutera*, 610 F.3d at 1108. "This safe harbor 'is designed to protect companies and their officials' when they merely fall short of their 'optimistic projections.'" *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1189 (9th Cir. 2021) (quoting *In re Quality Sys.*, 865 F.3d at 1142). As such, "[e]arnings projections identified as forward-looking statements and accompanied by adequate cautionary language fall within the PSLRA safe harbor, as do other forward-looking statements not identified and not accompanied by cautionary language, unless they were 'made with actual knowledge . . . that [they were] false or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:23-cv-09501-MRA-MAA | Date | March 31, 2025 |
|---|---|---|---|
| Title | Kenneth S. Grossman, et al. v. David Sin, et al. | | |

misleading.'"   *In re Cutera*, 610 F.3d at 1108 (citations omitted).   Put simply, "a defendant will not be liable for a false or misleading statement if it is forward-looking and *either* is accompanied by cautionary language *or* is made without actual knowledge that it is false or misleading."   *In re Quality Sys.*, 865 F.3d at 1141 (citing *In re Cutera*, 610 F.3d at 1112-13).

### a)      *Forward-Looking Statements*

A forward-looking statement is, *inter alia*, (A) "a statement containing a projection of revenues, income (including income loss), earnings (including earnings loss) per share, capital expenditures, dividends, capital structure, or other financial items," (B) "a statement of the plans and objectives of management for future operations, including plans or objectives relating to the products or services of the issuer," or (C) "a statement of future economic performance, including any such statement contained in a discussion and analysis of financial condition by the management or in the results of operations[.]"   15 U.S.C. § 78u-5(i)(1)(A)-(C).

Rockley Defendants argue that many of the alleged statements are forward-looking statements about revenue projections and product development and commercialization.   ECF 64 at 17 (citing FAC ¶¶ 124, 125, 133, 135, 148-49, 156, 167, 173, 177-78).   Plaintiffs first respond that the safe harbor does not shield these statements because they are "mixed statements, containing non-forward-looking statements as well as forward-looking statements."   ECF 67 at 15 (quoting *In re Quality Sys.*, 865 F.3d at 1141).   "[A] defendant may not transform non-forward-looking statements into forward-looking statements that are protected by the safe harbor provisions of the PSLRA by combining non-forward-looking statements about past or current facts with forward-looking statements about projected revenues and earnings."   *In re Quality Sys.*, 865 F.3d at 1141.   The Court agrees with Plaintiffs that certain of the statements identified as forward-looking are in fact non-forward-looking statements combined with forward-looking statements.[9]   This includes:

- **FY2021 Press Release:** Rockley Defendants' statement in "[t]hroughout 2021, we made tremendous progress in product development and with our customers" and that Rockley was "actively working with 12 consumer electronics customers . . . to design its chipsets and modules into consumer products."   FAC ¶ 167.

- **1Q22 Press Release:** Rockley Defendants' statement that Rockley's product

---

[9] Plaintiffs allege that other statements made by Rockley Defendants are also "mixed statements."   ECF 67 at 15-16 (citing, *inter alia*, FAC ¶¶ 128, 140).   But these statements are not identified as forward-looking by Rockley Defendants.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:23-cv-09501-MRA-MAA | Date | March 31, 2025 |
|---|---|---|---|
| Title | Kenneth S. Grossman, et al. v. David Sin, et al. | | |

development "remains on track" and that its "ongoing human studies are going well, achieving very compelling results[.]"  *Id.* ¶ 173.

There is no dispute that the non-forward-looking portions of the above statements are not protected by the safe harbor.  ECF 69 at 11-12 (contending that the above statements are not actionable for other reasons); *see In re Quality Sys.*, 865 F.3d at 1142.  Notably, however, there is also no argument that most statements identified by Rockley Defendants as forward looking are in fact purely forward looking in nature.  Some are revenue projections.  *See* FAC ¶¶ 124-25, 133; *see In re Cutera*, 610 F.3d at 1111 ("[An] earnings projection is by definition a forward-looking statement.").  Others are plans and objectives of future operations.  *See* FAC ¶¶ 135, 148-49, 156, 177-78.

### b)   *Meaningful Cautionary Language*

Plaintiffs argue that the forward-looking portions of mixed statements and the purely forward-looking statements are not protected under the safe harbor because they lack sufficient cautionary language.  ECF 67 at 15-16.  "Adequate cautionary language under the PSLRA must identify 'important factors that could cause actual results to differ materially from those in the forward-looking statement.'"  *In re Quality Sys.*, 865 F.3d at 1148 (quoting 15 U.S.C. § 78u-5(c)(1)(A)(i)).  Further, "cautionary language is not 'meaningful' if it discusses as a mere *possibility* a risk that has already materialized."  *Glazer*, 63 F.4th at 781.  As explained above, Rockley Defendants' forward-looking statements may be divided into two groups: (1) forward-looking statements made as part of mixed statements in which the non-forward-looking statements are allegedly false or misleading; and (2) free-standing forward looking statements.

Where the cautionary language accompanies a forward-looking portion of a mixed statement, "that language must accurately convey appropriate, meaningful information about not only the forward-looking statement but also the non-forward-looking statement."[10]  *Id.*   That is, "that the non-forward-looking statements are, or may be, untrue is clearly an 'important factor' of which investors should be made aware."  *Id.*   Neither Plaintiffs nor the Rockley Defendants

---

[10] Plaintiffs cite *In re Quality Systems* for the proposition that for mixed statements, "virtually no cautionary language short of an outright admission that the non-forward-looking statements were materially false or misleading would have been adequate."  ECF 67 at 16 (quoting *In re Quality Sys.*, 865 F.3d at 1148).  This misstates the law.  The particular holding cited by Plaintiffs was cabined to the facts presented in that case.  *See In re Quality Sys.*, 865 F.3d at 1148 ("We need not delve deeply into what might, in other cases, constitute adequate cautionary language for mixed statements, for the answer is clear in the case now before us.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:23-cv-09501-MRA-MAA | Date | March 31, 2025 |
|---|---|---|---|
| Title | Kenneth S. Grossman, et al. v. David Sin, et al. | | |

specify which forward-looking portions of the mixed statements above were not accompanied by cautionary language.  *See* ECF 67 at 15-16; ECF 69 at 12-13.

The Court turns to Rockley Defendants' free-standing forward-looking statements. Rockley Defendants contend that their forward-looking statements were accompanied by cautionary language disclosing "many of the exact risks that Plaintiffs allege ultimately came to fruition."   ECF 64 at 18.   Specifically, Rockley Defendants cite the following cautionary language contained in the April 2021 S-4, the July 2021 Proxy, the 3Q21 10-Q, as well as two other SEC filings:

- Rockley's "[m]arket opportunity estimates and growth forecasts are subject to significant uncertainty and are based on assumptions and estimates that may not prove to be accurate."   Rockley RJN Ex. 5 at 222; Ex. 7 at 995; Ex. 8 at 1810; Ex. 10 at 1914; Ex. 11 at 2191; Ex. 12 at 2462.

- "[C]ommercialization of [Rockley's] silicon photonics chipsets . . . is not currently expected to begin until 2022; provided that any such commercialization may occur later than 2022 or not at all.   Even if Rockley is able to successfully develop and sell its products, there can be no guarantee that it will do so within its anticipated timeframe or that its products will be commercially successful."   Rockley RJN Ex. 5 at 258; Ex. 7 at 1031; Ex. 8 at 1856; Ex. 10 at 1921; Ex. 11 at 2200; Ex. 12 at 2506.

- "Rockley's customers may be unable to fully develop and commercialize, or achieve widespread market acceptance for, their end products that incorporate Rockley's products."   Rockley RJN Ex. 5 at 259; Ex. 7 at 1032; Ex. 8 at 1857; Ex. 10 at 1922; Ex. 11 at 2201; Ex. 12 at 2507.

- Rockley is currently developing products for use in its customers' end products, which are in varying stages of development.   Many of these products . . . require extensive testing or qualification processes . . . . These qualification processes may continue for several months or longer. However, qualification of any of Rockley's products by a customer does not assure any sales of such product by Rockley to that customer. . . . [F]orecasts of Rockley's future results contained in this [filing] assume that Rockley will successfully commercialize its products and achieve significant market penetration in these sectors."   RJN Ex. 5 at 259-60; Ex. 7 at 1032-33; Ex. 8 at 1857; Ex. 10 at 1922-23; Ex. 11 at 2201-02; Ex. 12 at 2507.

Plaintiffs respond that this cautionary language is vague or boilerplate.   ECF 67 at 16

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:23-cv-09501-MRA-MAA | Date | March 31, 2025 |
|---|---|---|---|
| Title | Kenneth S. Grossman, et al. v. David Sin, et al. | | |

(quoting *In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 1035 (S.D. Cal. 2005)). The Court is not persuaded. As required, these disclaimers identify "important factors that could cause actual results to differ materially from those in the forward-looking statement," such as the impact of delayed development and commercialization of OEMs' end products on Rockley's commercialization efforts. 15 U.S.C. § 78u-5(c)(1)(A)(i). These disclaimers are *not* "[b]lanket warnings that securities involve a high degree of risk." *Provenz v. Miller*, 102 F.3d 1478, 1493 (9th Cir. 1996) (citation omitted). They do more than caution investors that "the future is unknowable" or that "success is uncertain," as Plaintiffs suggest. ECF 67 at 16.

Plaintiffs maintain that the cautionary language was inadequate because it still never warned investors of the particular risk that Rockley would not develop its ASIC chipset in time for commercialization in 2023. ECF 67 at 16. Rockley Defendants appears to concede this argument, contending that even if some cautionary statements were inadequate, Plaintiffs fail to show that the statements were made with actual knowledge. ECF 69 at 13. The Court agrees with Plaintiffs that this cautionary language may still mislead investors because it does not alert them to the risk that Rockley's product was not likely to be commercially viable by 2023. *See In re Alphabet*, 1 F.4th at 703 (explaining that a risk disclosure may be misleading if it does not alert the reader that some of the risks "may already have come to fruition" (citation omitted)).

Lastly, Plaintiffs argue that Rockley Defendants do not cite any cautionary language accompanying several of the forward-looking statements made before April 2, 2021, or after November 15, 2021, or during investor calls and presentations. ECF 67 at 17. In their Reply, Rockley Defendants point to cautionary language contained in the March 2021 Presentation and Merger Call and subsequent earnings calls. ECF 69 at 13 (citing Rockley RJN Ex. 3 at 32, 77; Ex. 9 at 1890; Ex. 14 at 2562; Ex. 17 at 2609; Ex. 19 at 2641; Ex. 22 at 2680; Ex. 25 at 2714). Indeed, the March 2021 Presentation specifically disclosed that it may contain forward-looking statements and a number of factors that may affect actual future performance. Rockley RJN Ex. 3 at 32. At the beginning of the Merger Call, a presenter disclaimed that the "[s]tatements we make during the call that are not statements of historical facts constitute forward-looking statements that are subject to risks, uncertainties and other factors," and directed investors to review the "risks, uncertainties and other factors discussed in the SEC filings." *Id.* at 77. The subsequent earnings calls, including those held after November 15, 2021, also disclosed in varying degrees of detail that forward-looking statements would be made on the call and that these statements are subject to certain risks and uncertainties. *E.g.*, Rockley RJN Ex. 14 at 2562 (noting that forward-looking statements are "based on assumptions as of today"); Ex. 17 at 2609 (disclosing that the forward-looking statements are subject to "risks and uncertainties," including those "discussed in our earnings press release and in our filings with the SEC").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:23-cv-09501-MRA-MAA | Date | March 31, 2025 |
|---|---|---|---|
| Title | Kenneth S. Grossman, et al. v. David Sin, et al. | | |

### c)   *Actual Knowledge*

Rockley Defendants argue that those statements which were not accompanied by cautionary language or not identified as forward-looking statements are still protected by the safe harbor because Plaintiffs have not adequately alleged that Rockley Defendants had "actual knowledge" that those statements were false.   ECF 69 at 13.   Here, the FAC states that the development and commercialization of Rockley's "core" consumer wearables products provided the "sole basis" for its growth prospects.   FAC ¶¶ 200, 217-18.   Because Plaintiffs have plausibly alleged that Rockley Defendants actually knew that product development and commercialization would not be realized when publicly stated, the Court finds that Plaintiffs have also plausibly alleged that Rockley Defendants had actual knowledge that their revenue projections were false or misleading.   Based on the foregoing, the Court does not find at this stage that Rockley Defendants' forward-looking statements are protected by the safe harbor.

***

Accordingly, the Court finds that Plaintiffs have plausibly alleged a Section 10(b) claim against Rockley Defendants based on allegedly false and misleading statements or omissions related to product development and commercialization, but not related to the HRT NRE or Apple NRE.   Rockley Defendants argue that Plaintiffs' control person liability claim should be dismissed against all Rockley Defendants because they have failed to state a claim for primary liability.   ECF 64 at 28.   They do not challenge the adequacy of Plaintiffs' control person allegations.   Because the Court finds that Plaintiffs have plausibly stated a primary violation of federal securities law, and no other challenges are raised, Plaintiffs' control person liability claim survives dismissal.   Accordingly, the Court **GRANTS IN PART AND DENIES IN PART** Rockley Defendants' Motion to Dismiss.

### C.   Coloma Motion

Coloma argues that the FAC fails to identify all but a single affirmative statement made by him, and that statement is not actionable because it was a statement of optimism or statement of opinion.   ECF 84 at 12-15.   Further, to the extent that the March 2021 Press Release and July 2021 Proxy or any other statements made by Rockley and Rockley Defendants are attributed to Coloma, he contends that he is impermissibly being held personally responsible "not for *SCH's projections* but rather for the accuracy of *Rockley's projections*" even though he made no affirmative statements about the projections and SC Health relied on Rockley to provide them. *Id.* at 15-16.   Lastly, to the extent Plaintiffs imply that Coloma knew enough to realize that Rockley's revenue projections were unachievable, Coloma argues that such a theory fail because of the safe harbor.   *Id.* at 16-30.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:23-cv-09501-MRA-MAA | Date | March 31, 2025 |
|---|---|---|---|
| Title | Kenneth S. Grossman, et al. v. David Sin, et al. | | |

Plaintiffs respond that in addition to the statement identified by Coloma, Coloma is liable for statements made in the March 2021 Merger Call and Presentation, as well as the July 2021 Proxy. ECF 86 at 15. Plaintiffs contend that Coloma's affirmative statement is not puffery and does not constitute a statement of opinion, and that the statements made regarding Rockley's revenue projections in the March 2021 Merger Call and the July 2021 Proxy are not protected by the safe harbor. *Id.* at 17-22.

### 1. *Falsity and Materiality*

### a) *March 2021 Merger Call*

Coloma argues that Plaintiffs only attribute to him a single affirmative statement—that SC Health "believe[s] [Rockley] is poised for substantial and imminent commercial growth"—made during the March 2021 Merger Call. ECF 84 at 12 (citing FAC ¶ 129). He contends that this statement is not actionable because (a) it is puffery, a general statement of optimism, or a statement of opinion, and (b) there are no specific allegations of scienter. *Id.* at 13-14. Plaintiffs respond that this statement was not puffery or opinion, and that they have alleged a strong inference of scienter against Coloma. ECF 86 at 17-20, 22-26.

The Court agrees with Coloma that the challenged statement "plainly fit[s] beneath the umbrella of puffery" because it "use[s] vague, generally positive terms." *Macomb Cnty.*, 39 F.4th at 1099; *see also In re Eargo, Inc. Sec. Litig.*, 656 F. Supp. 3d 928, 943 (N.D. Cal. 2023) (defining puffery as "generalized, vague, nonquantifiable statements of corporate optimism"). It does not present "the kind of precise information on which investors rely '[w]hen valuing corporations.'" *Id.* (quoting *In re Cutera*, 610 F.3d at 1111). Coloma's statement is not unlike other general, forward-looking statements of corporate optimism found by courts to be non-actionable puffery. *See, e.g.*, *In re Eargo*, 656 F. Supp. 3d at 943 (holding that statements touting "huge opportunity long term to expand" and "enormous head room and long-term grow[th]" are non-actionable puffery "simply convey[ing] optimism of business growth); *Reckstin Fam. Tr. v. C3.ai, Inc.*, 718 F. Supp. 3d 949, 972 (N.D. Cal. 2024) (statements that a company's strategic alliances "vastly extend" its global reach and that a partnership strategy has established a "significant use case" and proved "the value of our AI Suite" are "too vague for a reasonable investor to rely upon in assessing" the company); *In re Mellanox Techs., Ltd. Sec. Litig.*, No. 13-CV-04909-JD, 2014 WL 7204864, at *2-3 (N.D. Cal. Dec. 17, 2014) (holding that statements of continued growth "can only be characterized as puffery").

Plaintiffs contend that the inclusion of the words "substantial and imminent" "conveyed a high level of certainty about the present state of affairs at Rockley." ECF 86 at 18. But the descriptors here are not "objectively verifiable," and as a consequence, they are not the sort of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:23-cv-09501-MRA-MAA | Date | March 31, 2025 |
|---|---|---|---|
| Title | Kenneth S. Grossman, et al. v. David Sin, et al. | | |

statement that a reasonable investor would rely upon in assessing Rockley. *Retail Wholesale*, 845 F.3d at 1276. Both "substantial" and "inherent" are inherently unexacting. *See Reckstin*, 718 F. Supp. 3d at 972. They "lack a standard against which a reasonable investor could expect them to be pegged." *Oh v. Hanmi Fin. Corp.*, 621 F. Supp. 3d 1075, 1086 (C.D. Cal. 2022) (citation and internal quotation marks omitted).

Plaintiffs rebut that the context surrounding Coloma's statement indicates "the concrete nature of the message it conveyed to investors." ECF 86 at 18. They note that the statement was preceded by other statements made by Coloma about Rockley's technology at the outset of the March 2021 Merger Call that included detailed financial projections and product development timelines.[11] *Id.* at 19 (citing FAC ¶¶ 41-42, 123-25; Rockley RJN Ex. 3 at 78). The Court agrees that "the context in which the statements were made is key." *Police Ret. Sys.*, 759 F.3d at 1060; *see also Glazer*, 63 F.4th at 770. But here, the context does not make Coloma's statement any more objectively verifiable. "[G]eneral statements of optimism, when taken in context, may form a basis for a securities fraud claim," *Warshaw*, 74 F.3d at 959, but only when "those statements address specific aspects of a company's operation that the speaker knows to be performing poorly," *In re Quality Sys.*, 865 F.3d at 1143. In *Warshaw*, for instance, the Ninth Circuit held that a company's statements that FDA approval of its drug was "imminent" and reassuring investors that "everything [was] going fine" with FDA approval was not a statement of corporate optimism or mere puffery because the company knew at the time that FDA approval was unlikely. 74 F.3d at 958. Although Coloma used the same descriptor here, his statement did not concern a specific aspect of Rockley's operation comparable to FDA approval. As such, the Court finds that Coloma's statement is non-actionable puffery.

### 2. Other Statements

Coloma argues that apart from this lone statement in the March 2021 Merger Call, the FAC does not provide him with sufficient notice of his purported wrongdoing. ECF 84 at 15. To the extent Plaintiffs attribute statements made in SC Health's pre-Merger securities filings to him, he contends that these statements are not actionable because the PSLRA's safe harbor applies. *Id.* at 15-28. Plaintiffs respond that the FAC identifies additional misrepresentations made in

---

[11] During the March 2021 Merger Call, Coloma also stated Rockley had developed technology that "we believe is transformational versus existing technology in terms of its range, accuracy, and efficiency, among other things, but its application in health and wellness." Rockley RJN Ex. 3 at 78. Although this alleged statement does not appear in the FAC, a transcript of the March 2021 Merger Call, filed with the Rockley RJN, is incorporated by reference in the FAC.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:23-cv-09501-MRA-MAA | Date | March 31, 2025 |
|---|---|---|---|
| Title | Kenneth S. Grossman, et al. v. David Sin, et al. | | |

documents attached to SEC filings signed by Coloma, including the March 2021 Press Release, March 2021 Presentation, and July 2021 Proxy.   ECF 86 at 9-13.   These statements are:

- **Merger Call:** Coloma stated on the call that Rockley had developed technology that "we believe is transformational versus existing technology in terms of its range, accuracy, and efficiency, among other things, but its applications in health and wellness[.]"   Rockley RJN Ex. 3 at 78.   Coloma also stated that Rockley's "strategic partnerships" included "one of the largest technology companies in the world, that [has] stated that it views health and wellness as critical to their product offerings."   *Id*.

- **March 2021 Presentation:** The presentation represented that the "commercial launch" of Rockley's consumer wearable chipset module was expected in 2022.   Coloma RJN Ex. 2 at 36, 46; *see also* FAC ¶ 125.   It also projected Rockley's revenues, shared illustrations of the chipset module's components, represented that Rockley's technology had been validated by leading blue-chip customers, and highlighted the $70 million Apple NRE commitment.   FAC ¶¶ 124-25, 127; Coloma RJN Ex. 2 at 20, 26.   The March 2021 Presentation was also filed as an exhibit to a Form 8-K signed by Coloma.   FAC ¶ 122.

- **March 2021 Press Release:** Coloma is quoted as stating SC Health "very quickly understood the transformational nature of Rockley's technology" and viewed Rockley as "one of the most compelling opportunities in the entire healthcare space."   Coloma RJN Ex. 1 at 7.   The March 2021 Press Release was filed as an exhibit to a Form 8-K signed by Coloma.   FAC ¶ 122.

- **July 2021 Proxy:** The July Proxy reiterated Rockley's revenue projections and told investors that Rockley planned to "start delivering final samples to customers in the first half of 2022 with production ramp of these products commencing in the second half of 2022."   *Id.* ¶¶ 133, 135.

Coloma first argues that he should not have to learn for the first time in an opposition brief what misleading statements he allegedly made, and that these newly identified statements fail to satisfy the particularity requirement under the PSLRA.   ECF 89 at 11.

### a)   *March 2021 Merger Call*

The Court agrees with Coloma that the FAC fails to satisfy the particularity requirement with respect to the additional statements purportedly made by Coloma in the Merger Call.   As explained above, to satisfy the element of pleading a false or misleading statement, a securities

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:23-cv-09501-MRA-MAA | Date | March 31, 2025 |
|---|---|---|---|
| Title | Kenneth S. Grossman, et al. v. David Sin, et al. | | |

fraud complaint must "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading." *Zucco*, 552 F.3d at 990 (citation omitted). In order words, the plaintiff "must allege facts tying each of the alleged misstatements and omissions to each of the [d]efendants." *In re Lockheed Martin Corp. Sec. Litig.*, 272 F. Supp. 2d 928, 936 (C.D. Cal. 2002); *see also In re Silicon Graphics*, 970 F. Supp. at 752 ("[T]he plaintiff is obligated to distinguish among those they sue and enlighten each defendant as to his or her part in the alleged fraud."). Further, to adequately plead scienter, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Zucco*, 552 F.3d at 991 (citation omitted). Like falsity and materiality, scienter too is analyzed "separately for each alleged misrepresentation and each defendant." *In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1157 (C.D. Cal. 2007).

The FAC fails to identify these statements as materially false and misleading ones against Coloma. Indeed, that Plaintiffs identify these statements through extrinsic materials, *not* the FAC, is telling. *See* ECF 86 at 9. Although the Court finds that the transcript of the Merger Call is incorporated in the FAC by reference, it does not follow that Plaintiffs have specified each alleged false or misleading statement, in satisfaction of the pleading requirements. Because Plaintiffs did not clearly identify these statements in the FAC, the Court declines to evaluate whether they are actionable.

### b)    *March 2021 Presentation*

Coloma argues that Plaintiffs impermissibly attempt to hold him liable for statements made in the March 2021 Presentation that he did not personally make by relying on the "group pleading" or "group published" doctrine. ECF 89 at 13-15. "A judicially-created way of satisfying the particularity requirement of Rule 9(b), the group pleading doctrine establishes a presumption, for purposes of drafting a complaint, that statements in 'group-published information' such as prospectuses, registration statements, annual reports, or press releases are 'the collective work of those individuals with direct involvement in the day-to-day affairs of the company.'" *In re New Century*, 588 F. Supp. 2d at 1223 (quoting *In re Silicon Graphics,* 970 F. Supp. at 759 (quotations and citation omitted); *In re GlenFed, Inc. Sec. Litig.,* 60 F.3d 591, 593 (9th Cir. 1995)); *see also Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 363 (5th Cir. 2004) ("[T]he 'group pleading' doctrine in its broadest form allows unattributed corporate statements to be charged to one or more individual defendants based solely on their corporate titles.").

Courts have generally concluded that the group pleading doctrine did not survive the PSLRA. Although the Ninth Circuit has not expressly rejected it, all of the circuit courts that have considered the issue have concluded that group pleading is not compatible with the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:23-cv-09501-MRA-MAA | Date | March 31, 2025 |
|---|---|---|---|
| Title | Kenneth S. Grossman, et al. v. David Sin, et al. | | |

particularity requirements of the PSLRA.   *See Southland*, 365 F.3d at 364-65; *Makor Issues & Rts. v. Tellabs, Inc.*, 437 F.3ed 588, 603 (7th Cir. 2006), *vacated on other grounds*, *Tellabs*, 551 U.S. 308; *Winer Fam. Tr. v. Queen*, 503 F.3d 319, 337 (3d Cir. 2007).   District courts within the Ninth Circuit have resoundingly held the same.   *See, e.g.*, *In re New Century*, 588 F. Supp. 2d at 1223-24 (holding that the group pleading doctrine is "no longer viable under the PSLRA"); *In re Am. Apparel, Inc. v. S'holder Litig.*, No. CV 10-06352 MMM JCGX, 2013 WL 174119, at *25 (C.D. Cal. Jan. 16, 2013) (collecting additional cases); *Laborers Dist. Council Constr. Indus. Pension Fund v. Sea Ltd.*, 743 F. Supp. 3d 1083, 1111 (D. Ariz. 2024) (same).

Here, Plaintiffs attribute statements made in the March 2021 Presentation to Coloma because it contained SC Health's logo, identified Coloma as one of the presenters, and was attached to a Form 8-K signed by Coloma.   ECF 86 at 15; *see also* FAC ¶ 123.   These allegations do not satisfy the particularity requirement under the PSLRA.   As to the logo, it is clear that Plaintiffs seek to hold Coloma liable based on his officer status at SC Health.   But in attempting to attribute information published by an organization to an individual defendant, Plaintiffs must state, and have not "state[d], with particularity, facts indicating that the individual defendant was *directly involved in the preparation of the allegedly misleading statements*," not the document as a whole.   *In re Lockheed Martin Corp. Sec. Litig.*, 272 F. Supp. 2d 928, 936 (C.D. Cal. 2002); *see also Southland*, 365 F.3d at 365 (explaining that even within a document, unattributed statements may be charged to different individuals).

That Coloma presented on the merger call at which the March 2021 Presentation was shown is also of no moment.   For purposes of Section 10(b) liability, the "maker" of a statement is "the person with ultimate authority over the statement, including its content and whether and how to communicate it."   *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011).   "Without control, a person or entity can merely suggest what to say, not 'make' a statement in its own right."   *Id.*   Plaintiffs have not plausibly alleged that Coloma, who was not an officer or director of Rockley, had ultimate authority over *Rockley*'s representations of its revenue projections or commercialization prospects in the March 2021 Presentation (or, for that matter, the Merger Call).

That the March 2021 Presentation was subsequently included as an exhibit to a Form 8-K signed by Coloma is also unavailing for separate reasons.   In general, an officer who signs an SEC filing has himself "made" the statement.   *See Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1061 (9th Cir. 2000).   Even so, the mere signing of the filing does not give rise to a strong inference of scienter absent allegations the the defendant knew of alleged misstatements contained within the SEC filing.   *United Ass'n Nat'l Pension Fund v. Carvana Co.*, No. CV-22-02126-PHX-MTL, 2024 WL 5153343, at *25 (D. Ariz. Dec. 16, 2024).   As explained below, Plaintiffs have

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:23-cv-09501-MRA-MAA | Date | March 31, 2025 |
|---|---|---|---|
| Title | Kenneth S. Grossman, et al. v. David Sin, et al. | | |

not alleged sufficient facts to show a strong inference of scienter.

### c)      *March 2021 Press Release*

Coloma argues that in addition to being newly alleged in the Opposition, his statements in the March 2021 Press Release—that SC Health viewed Rockley as a "compelling" opportunity and its technology as "transformational"—are statements of opinion or mere puffery.   ECF 89 at 12.   The Court agrees.   Plaintiffs did not expressly identify these statements in the FAC as materially false and misleading ones made by Coloma, and as such, they are not properly before the Court.   Even so, the Opposition does not explain why these statements are misleading, and the Court strains to see how they are anything more than a vague statement of corporate optimism that a reasonable investor would know how to devalue in making an investment decision.   *See Police Ret. Sys.*, 759 F.3d at 1060.

### d)      *July 2021 Proxy*

Coloma first argues that the alleged statements made in the July 2021 Proxy about Rockley's revenue projections and commercialization prospects are not attributable to him.   ECF 89 at 24-25.   Plaintiffs argue that Coloma is liable for the statements because he signed the Form 10-K.   ECF 86 at 15.

As previously noted, a defendant can generally be held liable for materially false or misleading statements in an SEC filing that he signed.   *See In re Am. Apparel, Inc. S'holder Litig.*, No. CV1006352MMMRCX, 2013 WL 10914316, at *16 (C.D. Cal. Aug. 8, 2013) ("[A]n individual defendant's signature on a document containing actionable misrepresentations is a sufficient basis upon which to hold that defendant liable.").   However, Coloma argues that this rule does not hold for outside directors of a group published document.   ECF 89 at 25.

In so arguing, Coloma appears to avail himself of an outdated exception to the group pleading doctrine, which, as explained above, itself is no longer viable.   It is true that several courts in this district once held that "the mere fact that an outside director signed a group published document does not make the outside director liable for the contents of the document."   *In re Gupta Corp. Sec. Litig.*, 900 F. Supp. 1217, 1241 (N.D. Cal. 1994) (citing *In re Ross Sys. Sec. Litig.*, No. C-94-0017-DLJ, 1994 WL 583114, at *6 (N.D. Cal. July 21, 1994)); *see also Stack v. Lobo*, 903 F. Supp. 1361, 1376-77 (N.D. Cal. 1995) (rejecting argument that the signing of an allegedly false Form 10-K subjects an outside director to liability).   This was so because ordinarily, "outside directors are not involved in a corporation's day-to-day affairs."   *Stack*, 903 F. Supp. at 1376.   This rule has no application here for the simple reason that Coloma, as CEO, was not an inside director of SC Health, and the July 2021 Proxy was signed by him and addressed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:23-cv-09501-MRA-MAA | Date | March 31, 2025 |
|---|---|---|---|
| Title | Kenneth S. Grossman, et al. v. David Sin, et al. | | |

to SC Health shareholders. FAC ¶ 22; Coloma RJN Ex. 6. Coloma suggests that he was neither a director nor officer of Rockley and therefore cannot be held liable for statements provided by Rockley's management, but that goes to scienter, not whether the statements were "made" by him in the first instance.

Coloma argues that even if the statements can be attributed to him, Rockley's revenue projections and commercialization plans stated in the July 2021 Proxy are protected under the safe harbor. ECF 84 at 18-25. Plaintiff argues that the statements are not protected by the safe harbor because they were false or misleading, were not accompanied by cautionary language, and were made with actual knowledge of their false or misleading nature. ECF 86 at 20-22.

The Court agrees with Coloma that these statements are protected under the safe harbor as alleged against him. Although Plaintiffs have plausibly alleged that Rockley Defendants had actual knowledge that such projections were false when made because they had access to information about the status of Rockley's product development and commercialization efforts, the same cannot be said of Coloma, who was not a Rockley officer. Absent actual knowledge, Coloma cannot be held liable for the allegedly false or misleading revenue projections and commercialization plans. *See In re Quality Sys.*, 865 F.3d at 1141.

### 3.   *Scienter*

Coloma also argues that the FAC does not allege with specificity that Coloma received information that would have led him to believe that Rockley was not poised for growth when he made the purported statements in March to July 2021. ECF 84 at 14-15. Plaintiffs respond that Coloma had access to, and direct knowledge of, the purportedly misrepresented and omitted facts through his due diligence of Rockley, and the perverse incentive structure of the de-SPAC transaction "created an all-or-nothing proposition that highly incentivized Coloma to do whatever it took to ensure that shareholders approved the Merger." ECF 86 at 23-26.

To determine whether scienter is sufficiently pled, the relevant inquiry is "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolated meets that standard." *Tellabs*, 551 U.S. at 323. At the same time, the court must "analyze scienter separately *for each alleged misrepresentation and each defendant*." *In re Wet Seal*, 518 F. Supp. 2d at 1157 (emphasis added).

Here, the Court finds that Plaintiffs have not alleged scienter with sufficient particularity as to Coloma. The FAC alleges only that *Sponsor Defendants*—not Coloma in particular—undertook due diligence prior to the Merger. FAC ¶ 230. Apart from stating in conclusory terms that "any due diligence regarding Rockley's operations prior to the Merger . . . would have

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:23-cv-09501-MRA-MAA | Date | March 31, 2025 |
|---|---|---|---|
| Title | Kenneth S. Grossman, et al. v. David Sin, et al. | | |

[revealed] that it was not possible to complete [product development] by 2023," *id.*, the FAC is silent on what information *Coloma* was made aware of at the time in the Merger period, when the alleged statement was made.   Further, Plaintiffs' allegations of pecuniary motive, without more, do not raise a strong inference of scienter.   *See In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 884 (9th Cir. 2012) (declining to find that there is fraudulent intent "merely because a defendant's compensation was based in part on such successes") (citing *Rubke v. Capitol Bancorp Ltd*, 551 F.3d 1156, 1166 (9th Cir. 2009)).   Even if SC Health insiders, including Coloma, received valuable equity as a result of the successful Merger, *see* FAC ¶ 226, there are no allegations that Coloma acted upon any adverse insider information and sold his stock for capital gain, *see In re Rigel Pharms.*, 697 F.3d at 884-85 ("[B]ecause none of the defendants sold stock [in] the period during which they would have benefitted from any allegedly fraudulent statements, the value of the stock and stock options does not support an inference of scienter."); *see also Metzler*, 540 F.3d at 1067; *Ronconi v. Larkin*, 253 F.3d 423, 436 (9th Cir. 2001).   The absence of such allegations, in fact, supports the opposite inference.   *In re Rigel Pharms.*, 697 F.3d at 884.

\*\*\*

Accordingly, for the reasons stated above, the Court finds that Plaintiffs have failed to plausibly allege a materially false or misleading statement against Coloma.   Because Plaintiffs have not stated a primary securities violation against Coloma, their claim for control person liability also fails.   The Court **GRANTS** Coloma's Motion to Dismiss as to Claims 1 and 2.

### D.      Leave to Amend

Federal Rule of Civil Procedure 15(a) provides that once the time for amending a pleading as a matter of course has expired, "a party may amend its pleading only with the opposing party's written consent or the court's leave."   Fed. R. Civ. P. 15(a)(2).   In general, "[t]he court should freely give leave when justice so requires."   *Id.*; *Owens v. Kaiser Found. Health Plan, Inc.,* 244 F.3d 708, 712 (9th Cir. 2001) (quoting *Morongo Band of Mission Indians v. Rose,* 893 F.2d 1074, 1079 (9th Cir. 1990)).   In *Foman v. Davis*, the Supreme Court set forth the following factors a district court should consider in deciding whether to grant leave to amend:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962).   "Not all of the factors merit equal weight."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:23-cv-09501-MRA-MAA | Date | March 31, 2025 |
|---|---|---|---|
| Title | Kenneth S. Grossman, et al. v. David Sin, et al. | | |

*Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Id.* It must be clear that the complaint could not be saved by amendment for dismissal with prejudice and without leave to amend to be appropriate. *Id.*

The Court finds that Defendants will not be prejudiced by further amendment and the deficiencies identified herein "can be cured with additional allegations that are 'consistent with the challenged pleading' and that do not contradict the allegations in the original complaint." *Corinthian Colls.*, 655 F.3d at 995 (quoting *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296-97 (9th Cir. 1990)). Accordingly, the Court **GRANTS** Plaintiffs leave to amend the pleading, correcting the deficiencies identified herein in a manner consistent with all Rule 11 obligations.

## IV.    CONCLUSION

For the foregoing reasons, Rockley Defendants' Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART** and Coloma's Motion to Dismiss is **GRANTED**. Any amended complaint shall be filed within **28 days** of the date of this Order. Plaintiff shall attach to the amended complaint a redline copy reflecting all additions and deletions of material from the First Amended Complaint. Any claim not included in a timely-filed amended complaint will be deemed dismissed without leave to amend.

**IT IS SO ORDERED.**

-    :    -

Initials of Deputy Clerk        gga