ROBBINS GELLER RUDMAN
  & DOWD LLP
STEVEN W. PEPICH (116086)
THOMAS E. EGLER (189871)
NATHAN R. LINDELL (248668)
KEVIN S. SCIARANI (301411)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
stevep@rgrdlaw.com
tome@rgrdlaw.com
nlindell@rgrdlaw.com
ksciarani@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH S. GROSSMAN, Individually and on Behalf of All Others Similarly Situated,<br><br>                          Plaintiff,<br><br>   vs.<br><br>DAVID SIN, et al.,<br><br>                        Defendants. | Case No. 2:23-cv-09501-MRA-MAA<br><br>CLASS ACTION<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT<br><br>DATE:    February 17, 2026<br>TIME:     10:00 a.m.<br>CTRM:   9B<br>JUDGE:  Mónica Ramírez Almadani |

4917-8514-1892.v4

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................1

II.   OVERVIEW OF THE LITIGATION .................................................2

III.  THE SETTLEMENT TERMS .............................................................4

IV.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL ...........................................................................................6

    A.   Lead Plaintiffs and Their Counsel Have Adequately Represented the Class ...........................................................7

    B.   The Proposed Settlement Is the Result of Good Faith, Arm's-Length Negotiations by Informed, Experienced Counsel Who Were Aware of the Risks of the Litigation ..........................................8

    C.   The Relief Provided to the Class Is Adequate ...................................9

        1.   The Substantial Benefits for the Class, Weighed Against the Costs, Risks, and Delay of Trial and Appeal Support Preliminary Approval ........................................................9

        2.   The Proposed Method for Distributing Relief Is Effective ......12

        3.   Attorneys' Fees.........................................................................12

        4.   Other Agreements Made in Connection with the Global Resolution of the Case ............................................................13

        5.   The Proposed Plan of Allocation Is Designed to Treat Class Members Equitably and Does Not Provide Any Preferential Treatment ............................................................14

    D.   The Remaining Ninth Circuit Factor Is Satisfied: Experience and Views of Counsel...................................................14

V.    CERTIFICATION OF THE CLASS FOR PURPOSES OF THE SETTLEMENT IS APPROPRIATE ..................................................15

    A.   The Proposed Class Satisfies Rule 23(a) Requirements ...................16

        1.   The Class Is Sufficiently Numerous.........................................16

        2.   Common Questions of Law and Fact Exist ..............................16

        3.   The Proposed Class Representatives' Claims Are Typical of the Class ..............................................................................17

        4.   The Proposed Class Representatives Will Fairly and Adequately Protect the Interests of the Class .........................18

- i -

4917-8514-1892.v4

|  |  | **Page** |
|---|---|---|
| B. | The Proposed Class Satisfies Rule 23(b)(3)'s Requirements | 19 |
| VI. | THE PROPOSED FORM AND METHOD OF PROVIDING NOTICE TO THE CLASS ARE APPROPRIATE AND SATISFY RULE 23, THE PSLRA, AND DUE PROCESS | 20 |
| VII. | PROPOSED SETTLEMENT SCHEDULE | 22 |
| VIII. | CONCLUSION | 22 |

- ii -

# TABLE OF AUTHORITIES

**Page**

## CASES

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)................................................................................16, 19

*Cheng Jiangchen v. Rentech, Inc.*,
2019 WL 5173771 (C.D. Cal. Oct. 10, 2019)......................................................13

*Ciuffitelli v. Deloitte & Touche LLP*,
2019 WL 1441634 (D. Or. Mar. 19, 2019)......................................................14

*Del. Cnty. Emps. Ret. Sys. v. AdaptHealth Corp.*,
739 F. Supp. 3d 270 (E.D. Pa. 2024)..........................................................8

*Donley v. Live Nation Ent., Inc.*,
2025 WL 2490531 (C.D. Cal. Aug. 28, 2025)....................................................13

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974)......................................................................21

*Fleming v. Impax Lab'ys Inc.*,
2021 WL 5447008 (N.D. Cal. Nov. 22, 2021) ....................................................19

*Ford v. CEC Ent., Inc.*,
(July 7, 2015)...............................................................................20

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998)......................................................... 7, 8, 17, 18

*Hatamian v. Advanced Micro Devices, Inc.*,
2016 WL 1042502 (N.D. Cal. Mar. 16, 2016).....................................................19

*Hefler v. Wells Fargo & Co.*,
2018 WL 6619983 (N.D. Cal. Dec. 18, 2018),
*aff'd sub nom.*, *Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020) .... 8, 9, 13, 14

*HsingChing Hsu v. Puma Biotech., Inc.*,
2017 WL 6210803 (C.D. Cal. Dec. 8, 2017)....................................................17

*In re Banc of Cal. Sec. Litig.*,
2020 WL 1283486 (C.D. Cal. Mar. 16, 2020)...................................................12

- iii -

**Page**

*In re Banc of Cal. Sec. Litig.*,
326 F.R.D. 640 (C.D. Cal. 2018) ........................................................................19

*In re Celera Corp. Sec. Litig.*,
2014 WL 722408 (N.D. Cal. Feb. 25, 2014) ......................................................17

*In re Cooper Cos. Inc. Sec. Litig.*,
254 F.R.D. 628 (C.D. Cal. 2009) ........................................................ 16, 18, 20

*In re: Genworth Fin. Sec. Litig.*,
2016 WL 7187290 (E.D. Va. Sep. 26, 2016).......................................................13

*In re Heritage Bond Litig.*,
2005 WL 1594389 (C.D. Cal. June 10, 2005) ....................................................13

*In re Honest Co., Inc. Sec. Litig.*,
2025 WL 2205810 (C.D. Cal. July 29, 2025)......................................................13

*In re Hyundai & Kia Fuel Econ. Litig.*,
926 F.3d 539 (9th Cir. 2019)..........................................................................6, 20

*In re LinkedIn User Priv. Litig.*,
309 F.R.D. 573 (N.D. Cal. 2015) ........................................................................20

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2007)................................................................15

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015)................................................................................13

*In re Oracle Corp. Sec. Litig.*,
627 F.3d 376 (9th Cir. 2010)................................................................................10

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995)..................................................................................13

*In re VeriSign, Inc. Sec. Litig.*,
2005 WL 7877645 (N.D. Cal. Jan. 13, 2005)......................................................20

*In re Zynga Sec. Litig.*,
2015 WL 6471171 (N.D. Cal. Oct. 27, 2015)......................................................14

- iv -

4917-8514-1892.v4

**Page**

*Jiangchen v. Rentech, Inc.*,
    2019 WL 13570065 (C.D. Cal. June 24, 2019) ...............................................21

*Kamakana v. City & Cnty. of Honolulu*,
    447 F.3d 1172 (9th Cir. 2006)...............................................................14

*Lillien v. Olaplex Holdings, Inc.*,
    2025 WL 3050229 (C.D. Cal. Aug. 8, 2025).........................................8

*Low v. Trump Univ., LLC*,
    246 F. Supp. 3d 1295 (S.D. Cal. 2017) ...............................................11

*Maiman v. Talbott*,
    2011 WL 13065750 (C.D. Cal. Aug. 29, 2011)..........................16, 18

*Morris v. Lifescan, Inc.*,
    54 F. App'x 663 (9th Cir. 2003).........................................................12

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
    339 U.S. 306 (1950)...........................................................................21

*Norris v. Mazzola*,
    2017 WL 6493091 (N.D. Cal. Dec. 19, 2017).....................................14

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014)......................................................16, 17

*Pataky v. Brigantine, Inc.*,
    2018 WL 3020159 (S.D. Cal. June 18, 2018)......................................9

*Redwen v. Sino Clean Energy, Inc.*,
    2013 WL 12129279 (C.D. Cal. Mar. 13, 2013).......................7, 10, 11

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009).....................................................6, 11, 20

*Salazar v. Midwest Servicing Grp., Inc.*,
    2018 WL 3031503 (C.D. Cal. June 4, 2018) ........................................9

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993)................................................................11

- v -

4917-8514-1892.v4

**Page**

*Vataj v. Johnson*,
2021 WL 1550478 (N.D. Cal. Apr. 20, 2021) ....................................................19

*Vinh Nguyen v. Radient Pharms. Corp.*,
287 F.R.D. 563 (C.D. Cal. 2012) ....................................................................16

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)........................................................................................16

*Wang v. Chinese Daily News, Inc.*,
737 F.3d 538 (9th Cir. 2013)..........................................................................16

*Weeks v. Kellogg Co.*,
2013 WL 6531177 (C.D. Cal. Nov. 23, 2013)................................................10

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
§78j(b) ..............................................................................................................2
§78t(a) ...............................................................................................................2
§78u-4................................................................................................*passim*
§78u-4(a)(4) ...........................................................................................5, 21, 22

17 C.F.R.
§240.10b-5.........................................................................................................2

- vi -

|                                | **Page** |
| ------------------------------ | -------- |
| Federal Rules of Civil Procedure | |
| Rule 23 | 20, 21 |
| Rule 23(a) | 15, 16 |
| Rule 23(a)(1) | 16 |
| Rule 23(a)(2) | 16 |
| Rule 23(a)(3) | 17 |
| Rule 23(a)(4) | 18 |
| Rule 23(b)(3) | 16, 19, 20 |
| Rule 23(c)(2)(B) | 20 |
| Rule 23(e) | 2, 6 |
| Rule 23(e)(1)(B) | 6, 15, 20 |
| Rule 23(e)(2) | 6, 7, 15 |
| Rule 23(e)(2)(A) | 7 |
| Rule 23(e)(2)(B) | 8 |
| Rule 23(e)(2)(C)(i) | 9 |
| Rule 23(e)(2)(C)(ii) | 12 |
| Rule 23(e)(2)(C)(iii) | 12 |
| Rule 23(e)(2)(D) | 14 |
| Rule 23(e)(3) | 7 |
| Rule 23(h)(1) | 21, 22 |

4917-8514-1892.v4

## I.  INTRODUCTION

Following significant merits discovery and extensive arm's-length negotiations, the Settling Parties have reached a proposed Settlement of this securities class action in exchange for $10,000,000 for the Class's benefit.[1]  Lead Plaintiffs now request the Court preliminarily approve the proposed Settlement.[2]  The Settlement is the product of good-faith, arm's-length negotiations between experienced counsel, under the supervision of David Murphy of Phillips ADR Enterprises ("Mr. Murphy" or the "mediator"), a highly respected mediation firm that has extensive experience in resolving complex securities litigation.  The Settlement represents a recovery that falls well within the range of possible approval and is a very good result for the Class.  As set forth below, the Settlement recovers an exceptional percentage of Lead Plaintiffs' estimated recoverable damages relative to the median recovery percentage in securities class actions in 2024.

Lead Plaintiffs reached the Settlement only after they had a thorough appreciation for the strengths and potential weaknesses of the case.  Lead Plaintiffs: (i) engaged in an extensive investigation; (ii) filed a detailed Amended Complaint for Violations of the Federal Securities Laws (ECF 56) ("Amended Complaint"); (iii) successfully defeated, in part, Defendants' motion to dismiss the Amended Complaint; (iv) conducted extensive fact discovery – which included the review and analysis of over 260,000 pages of responsive documents produced by Defendants and relevant third parties; and (v) participated in a full-day, in-person mediation session with Mr. Murphy.

---

[1]   The "Class" is defined in the Stipulation as "all persons or entities that, between August 11, 2021 and January 23, 2023, inclusive (the 'Class Period'), purchased or otherwise acquired Rockley common stock, and were harmed thereby."  Defendants and certain other related entities are excluded from the Class, as further detailed in footnote 8, *infra*.

[2]   Unless otherwise defined herein, all capitalized terms have the meanings ascribed to them in the Stipulation of Settlement, dated January 16, 2026 ("Stipulation"), submitted herewith.

- 1 -

4917-8514-1892.v4

Lead Plaintiffs also request approval of the form and substance of: the Notice of Pendency and Proposed Settlement of Class Action ("Notice"); the Proof of Claim and Release form ("Proof of Claim" or "Claim Form"); the Summary Notice; and the Postcard Notice, appended as Exhibits A-1, A-2, A-3, and A-4 to the Stipulation. Lead Plaintiffs also seek: the Court's approval of Verita Global as Claims Administrator and the means and methods for disseminating notice of the Settlement to the Class; and a finding that such notice comports with due process and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. §78u-4, *et seq.*[3]

The Settlement easily meets the standards for preliminary approval, in that it is likely this Court will be able to find that the Class can be properly certified for settlement purposes, and that the Settlement is fair, reasonable, and adequate under Rule 23(e).

## II.   OVERVIEW OF THE LITIGATION

The initial complaint was filed on November 9, 2023. On February 13, 2024, the Court appointed Jonathan Lottner ("Lottner"), individually and as owner of Munsel Limited and indirect beneficial owner of Cosmos Investments Assets Limited, and Federico Huergo ("Huergo"), individually and as owner of Lensis Group Limited and Zenalia Investment Corp. and director of Fitz Investment Limited ("Lead Plaintiffs") as Lead Plaintiffs and Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as Lead Counsel. ECF 53. Lead Plaintiffs timely filed their Amended Complaint on February 28, 2024, asserting claims under: (i) §10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder, against Defendants and Angelo John Coloma ("Coloma"); and (ii) §20(a) of the Exchange Act against Defendants, Coloma, David Sin ("Sin"), and

---

[3]   Lead Plaintiffs further request certification for settlement purposes of a Class of all persons or entities that, between August 11, 2021 and January 23, 2023, inclusive (the "Class Period"), purchased or otherwise acquired Rockley common stock, and were harmed thereby. Defendants and certain other related entities are excluded from the Class, as further detailed in footnote 8, *infra*.

- 2 -

4917-8514-1892.v4

SIN Capital Group Pte. Ltd. ("SINCap"). The claims are based upon alleged material misrepresentations concerning the operations and financial prospects of Rockley Photonics Holdings Limited ("Rockley" or the "Company").

Defendants moved to dismiss the Amended Complaint on March 20, 2024 (ECF 64), and Coloma filed a separate motion to dismiss on August 26, 2024 (ECF 84). On December 16, 2024, after Lead Plaintiffs opposed both motions (ECF 67, 86), the Court heard oral argument on the motions to dismiss. On March 31, 2025, the Court granted Coloma's motion and denied in part and granted in part Defendants' motion. ECF 95.[4]

Defendants answered the Amended Complaint on May 12, 2025, and the parties promptly began formal discovery. ECF 101. Lead Plaintiffs' discovery efforts were significantly complicated by the fact that Rockley, which declared bankruptcy in January 2025, is not a defendant in the action and is no longer an operating entity. Through substantial investigatory efforts, Lead Plaintiffs were able to identify non-party Ripple Medical Inc. ("Ripple") as the appropriate successor entity that retained access to Rockley's documents and records pertaining to the time period at issue in the case. After serving a document subpoena on this non-party, Lead Plaintiffs and Ripple engaged in extensive negotiations, which included multiple meet and confer calls and numerous email exchanges, concerning the existence of relevant documents, the state of applicable back-up tapes, and legal access to those materials, before ultimately reaching an agreement to secure the production of such documents in this case.

In addition to their extensive discovery efforts regarding Ripple, Lead Plaintiffs also served 12 document subpoenas on other relevant non-parties and 78 requests for production of documents on Defendants. In connection with these discovery requests, Lead Plaintiffs held exhaustive discussions with Defendants and

---

[4] The claims against Sin and SINCap were voluntarily dismissed on April 11, 2025, ECF 97.

4917-8514-1892.v4

the subpoenaed non-parties regarding the types and volumes of responsive materials, and the method and form of such productions, including the search terms and techniques to be employed in responding to Lead Plaintiffs' discovery requests.

In total, Defendants and the subpoenaed non-parties produced approximately 62,000 documents totaling more than 262,000 pages, which were thoroughly reviewed and analyzed by Lead Plaintiffs. Lead Plaintiffs also produced 231 documents totaling nearly 1,500 pages in response to Defendants' 32 requests for production.

On August 29, 2025, Lead Plaintiffs filed their motion for class certification. ECF 116-118. In support of the motion, Lead Plaintiffs submitted declarations on behalf of both Lead Plaintiffs, and a report prepared by Lead Plaintiffs' finance expert. ECF 117-118. Defendants' opposition to Lead Plaintiffs' motion for class certification was due to be filed on October 28, 2025, but the Settling Parties stipulated to stay the remainder of the class certification briefing, along with certain ongoing discovery efforts, to engage in mediation.

On November 6, 2025, the Settling Parties attended an all-day, in-person mediation with Mr. Murphy. In connection with the mediation, the Settling Parties submitted confidential opening and reply mediation statements, which were accompanied by a combined total of 48 exhibits. Although the parties were unable to reach an agreement to resolve the case during the November 6, 2025 mediation, the session was productive and brought the parties closer to resolution. Following the conclusion of the November 6, 2025 mediation, Mr. Murphy made a mediator's recommendation to settle the case for $10 million, which the Settling Parties mutually accepted on November 11, 2025.

## III.   THE SETTLEMENT TERMS

This Settlement requires Defendants to pay, or cause to be paid, $10 million into the Escrow Account, which amount comprises the Settlement Fund.

- 4 -

4917-8514-1892.v4

Notice to the Class and the cost of settlement administration ("Notice and Administration Expenses") will be funded by the Settlement Fund. Stipulation, ¶2.8. Lead Plaintiffs propose a nationally recognized class action settlement administrator, Verita Global, to be retained subject to the Court's approval. The proposed notice plan and plan for claims processing is discussed below in §VI and in the Declaration of Ross D. Murray Regarding Notice and Administration ("Murray Declaration"), submitted herewith.

The Postcard Notice and Notice provide that Lead Counsel will move for final approval of the Settlement and: (a) an award of attorneys' fees of up to 30% of the Settlement Amount; (b) payment of expenses or charges resulting from the prosecution of the Litigation in an amount not to exceed $450,000; and (c) any interest on such amounts at the same rate and for the same period as earned by the Settlement Fund. The Notice explains that such fees and expenses shall be paid from the Settlement Fund. Further, as explained in the Notice, each Lead Plaintiff intends to request an award not to exceed $8,500 pursuant to 15 U.S.C. §78u-4(a)(4) in connection with their representation of the Class.

Once Notice and Administration Expenses, Taxes, Tax Expenses, and Court-approved attorneys' fees and expenses and any awards to Lead Plaintiffs pursuant to 15 U.S.C. §78u-4(a)(4) have been paid from the Settlement Fund, the remaining amount, the Net Settlement Fund, shall be distributed pursuant to the Court-approved Plan of Allocation to Authorized Claimants who are entitled to a distribution of at least $10.00. Any amount remaining following the distribution shall be redistributed in an economically feasible manner. The Plan of Allocation treats all Class Members equitably based on the timing of their Rockley common stock purchases, acquisitions, and sales.

The Settling Parties have entered into a confidential Supplemental Agreement, which provides that if, prior to the Settlement Hearing, the number of shares of Rockley common stock purchased or acquired during the Class Period,

- 5 -

4917-8514-1892.v4

represented by valid claims by Persons who would otherwise be Members of the Class, but who request exclusion from the Class, exceeds a certain amount, Defendants shall have the option to terminate the Stipulation.  Stipulation, ¶7.3. Last, in exchange for the benefits provided under the Stipulation, Class Members will release all claims and causes of action that arise out of or are based upon: (a) the allegations, transactions, facts, matters or occurrences, representations or omissions referred to in the original complaint or the operative complaint; and (b) the purchase or acquisition of Rockley common stock during the Class Period.  *See* Stipulation, ¶1.31.

## IV.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Courts recognize that public policy strongly favors settlements to resolve disputes, "'particularly where complex class action litigation is concerned.'"  *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019).[5]  As such, courts are encouraged to defer to "the private consensual decision of the parties" to settle and advance the "'overriding public interest in settling and quieting litigation.'"  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

Federal Rule of Civil Procedure 23(e) requires judicial approval for a settlement of claims brought as a class action.  Pursuant to Rule 23(e)(1)(B), the issue at preliminary approval turns on whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."  Fed. R. Civ. P. 23 (e)(1)(B).

Rule 23(e)(2) provides:

(2)    ***Approval of the Proposal***.  If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

> (A)    the class representatives and class counsel have adequately represented the class;

---

[5]    All citations are omitted and emphasis is added unless otherwise noted.

- 6 -

4917-8514-1892.v4

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account:

(i)    the costs, risks, and delay of trial and appeal;

(ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

In addition, the Ninth Circuit uses the following factors for preliminary approval, some of which overlap with Rule 23(e)(2):

the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

As discussed below, the proposed Settlement here easily satisfies each of the factors identified under Rule 23(e)(2), as well as the applicable Ninth Circuit factors, such that notice of the proposed Settlement should be sent to the Class in advance of the final Settlement Hearing.[6]

**A.    Lead Plaintiffs and Their Counsel Have Adequately Represented the Class**

As explained above, Lead Plaintiffs and their counsel have adequately represented the Class, as required by Rule 23(e)(2)(A) and *Hanlon* ("the extent of

---

[6]    Because notice of the Settlement has not yet been provided to the Class, the Court does not yet have the benefit of the Class's reaction. *See Redwen v. Sino Clean Energy, Inc.*, 2013 WL 12129279, at *5 (C.D. Cal. Mar. 13, 2013).

- 7 -

4917-8514-1892.v4

discovery completed and the stage of the proceedings"[7]), by diligently prosecuting this Litigation.  Among other things, Lead Plaintiffs have investigated and drafted the complaints; successfully opposed Defendants' motion to dismiss; engaged in exhaustive and uniquely complicated discovery practice, which included the collection, review, and analysis of more than 260,000 pages of responsive documents; filed a motion for class certification; and engaged in mediation with Mr. Murphy and Phillips ADR Enterprises to resolve the Litigation.  Thus, it is without question that Lead Plaintiffs and Lead Counsel have adequately represented the Class.  *See Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at \*6 (N.D. Cal. Dec. 18, 2018) (finding, in finally approving settlement, that "Class Counsel had vigorously prosecuted this action through dispositive motion practice, extensive initial discovery, and formal mediation"), *aff'd sub nom.*, *Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020).

### B. The Proposed Settlement Is the Result of Good Faith, Arm's-Length Negotiations by Informed, Experienced Counsel Who Were Aware of the Risks of the Litigation

The Rule 23(e)(2)(B) factor is a procedural one, asking whether "the [settlement] proposal was negotiated at arm's length."  Fed. R. Civ. P. 23(e)(2)(B). The use of experienced mediators, such as Mr. Murphy, weighs in favor of finding this factor to be supportive of approval.  *See Lillien v. Olaplex Holdings, Inc.*, 2025 WL 3050229, at \*3 (C.D. Cal. Aug. 8, 2025) ("Settlement was negotiated at arm's length and in good faith.  It was achieved only after the parties engaged in a full-day mediation under the guidance of an experienced mediator [David Murphy]."); *Del. Cnty. Emps. Ret. Sys. v. AdaptHealth Corp.*, 739 F. Supp. 3d 270, 280 (E.D. Pa. 2024) ("The parties engaged in two mediation sessions with David Murphy, a mediator with experience in securities class actions.  The involvement of a neutral mediator and multiple mediation sessions demonstrates that these negotiations were

---

[7]   *Hanlon*, 150 F.3d at 1026.

4917-8514-1892.v4

conducted at arm's length."). In addition, "[a] settlement is presumed to be fair if reached in arms-length negotiations after relevant discovery has taken place." *Pataky v. Brigantine, Inc.*, 2018 WL 3020159, at *3 (S.D. Cal. June 18, 2018).

As noted above, the proposed Settlement follows extensive document discovery, which allowed for informed arm's-length negotiations. The Settlement was achieved only after an all-day, in-person mediation with Mr. Murphy. The negotiations were at all times adversarial and at arm's length, and produced a result that is in the Class's best interests. As part of the settlement discussions, Lead Counsel and Defendants' Counsel prepared and presented submissions concerning, among other things, their respective views on the merits of the Litigation, including Defendants' defenses and issues relating to causation and damages, along with supporting evidence obtained through discovery. The parties' vigorous advocacy provided a solid foundation for Mr. Murphy's mediator's proposal to settle the litigation for $10 million, which was accepted by all parties.

### C.     The Relief Provided to the Class Is Adequate

#### 1.     The Substantial Benefits for the Class, Weighed Against the Costs, Risks, and Delay of Trial and Appeal Support Preliminary Approval

Rule 23(e)(2)(C)(i) and the Ninth Circuit's factors concerning "(1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation"; and "[(3)] the amount offered in settlement," are also satisfied by the proposed $10 million recovery here, which provides a significant and immediate benefit to the Class, especially in light of the costs, risks, and delay posed by continued litigation. *Hefler*, 2018 WL 6619983, at *3. "'[S]ecurities actions are highly complex and . . . securities class litigation is notably difficult and notoriously uncertain.'" *Id.* at *13.

While Lead Plaintiffs remain confident in their ability to ultimately prove their claims, further litigation – including a trial – is always a risky proposition. *See, e.g., Salazar v. Midwest Servicing Grp., Inc.*, 2018 WL 3031503, at *6 (C.D. Cal. June 4,

- 9 -

4917-8514-1892.v4

2018) (a settlement agreement's elimination of risk, delay, and further expenses weighs in favor of approval).  Further, complex securities fraud class actions such as this one present a myriad of risks that a plaintiff must overcome in order to ultimately secure a recovery.  *See, e.g.*, *Redwen*, 2013 WL 12129279, at *5 ("Various issues would require extensive discovery and motion and trial practice, including proof of material misrepresentations, scienter and loss causation.  Courts experienced with securities fraud litigation routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear.") (cleaned up); *see also, e.g.*, *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 395 (9th Cir. 2010) (affirming summary judgment in favor of defendants where plaintiff failed to establish a triable issue on loss causation).  While Lead Plaintiffs would be required to prove all elements of their claims to prevail, Defendants would need only to succeed on one defense to potentially defeat the entire action.

Here, Defendants advanced several arguments disputing both liability and damages.  For instance, among other things, Defendants raised numerous challenges disputing the falsity of their alleged misstatements and their scienter.  Each of these issues would present significant obstacles to Lead Plaintiffs' success at summary judgment or trial.  *See, e.g.*, *Weeks v. Kellogg Co.*, 2013 WL 6531177, at *13 (C.D. Cal. Nov. 23, 2013) ("The fact that this issue, which is at the heart of plaintiffs' case, would have been the subject of competing expert testimony suggests that plaintiffs' ability to prove liability was somewhat unclear; this favors a finding that the settlement is fair.").

The parties also had very different views regarding loss causation and damages.  Indeed, Defendants asserted that the alleged declines in Rockley's stock price were unrelated to the alleged misrepresentations, arguing that Lead Plaintiffs and the Class suffered **no** recoverable damages at all as a result of Defendants' alleged misrepresentations.

- 10 -

4917-8514-1892.v4

Moreover, Lead Plaintiffs would need to prevail at summary judgment, pretrial motions, trial, and subsequent appeals, a process that could possibly extend for years. Further compounding the expense of litigating this case is the potential for discovery in foreign jurisdictions, given that defendant Rickman and other relevant fact witnesses reside outside of the United States and certain non-party documents may exist outside of the Court's subpoena power. *Redwen*, 2013 WL 12129279, at *6 (foreign defendants support approval of settlement). Settlement is favored where, as here, the case is "'complex and likely to be expensive and lengthy to try,'" and presents numerous risks beyond the "'inherent risks of litigation.'" *Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1301 (S.D. Cal. 2017) (quoting *Rodriguez*, 563 F.3d at 966; *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993)), *aff'd*, 881 F.3d 1111 (9th Cir. 2018).

The Settlement benefits, weighed against the risks, costs, and delay inherent in complex cases, heavily tilt in favor of granting the motion for preliminary approval. Indeed, the Settlement recovers over 30% of the Class's estimated recoverable damages. This result is ***more than triple*** the median percentage recovery for cases with a damages range similar to the one here, and ***25 times*** the median ratio of settlements to investor losses in 2024. *See* Laarni T. Bulan and Eric Tam, *Securities Class Action Settlements – 2024 Review & Analysis* at 7, Figure 5 (Cornerstone Research 2025) (median settlements as a percentage of estimated damages was 8.4% in 2024 for cases with similar damages range); Edward Flores & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review* at 27, Figure 24 (NERA 2025) (median ratio of settlement to investor losses was 1.2% in 2024).

Considering the risks of continued litigation and the time and expense that would be incurred to prosecute the Litigation through trial, the $10 million Settlement is a meaningful recovery that is in the Class's best interests.

- 11 -

4917-8514-1892.v4

### 2. The Proposed Method for Distributing Relief Is Effective

As demonstrated below in §VI and in the Murray Declaration submitted herewith, the method of the proposed notice and claims administration process (Rule 23(e)(2)(C)(ii)) are effective. The notice plan includes direct mail notice to all potential Class Members who can be identified with reasonable effort, supplemented by publication of the Summary Notice in *The Wall Street Journal* and over *Business Wire*. In addition, a settlement-specific website will be created where key documents will be posted, including the Stipulation, Notice, Proof of Claim, and Preliminary Approval Order. Murray Decl., ¶¶13, 17.

The claims process is also effective and includes a standard claim form that requests the information necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation ("Plan"). The Plan will govern how Class Members' claims will be calculated and, ultimately, how money will be distributed to Authorized Claimants. The Plan was prepared with the assistance of Lead Plaintiffs' damages expert and is based primarily on the expert's event study and analysis estimating the amount of artificial inflation in the price of Rockley common stock during the Class Period. A thorough claim review process, including how deficiencies will be addressed, is also explained in the Murray Declaration. *Id.*, ¶¶24-25.

### 3. Attorneys' Fees

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). As discussed above (*supra* §III), Lead Counsel intends to seek an award of attorneys' fees of up to 30% of the Settlement Amount and expenses in an amount not to exceed $450,000, plus interest on both amounts. This fee request is in line with other settlements approved in the Ninth Circuit. *See, e.g.*, *In re Banc of Cal. Sec. Litig.*, 2020 WL 1283486, at *1 (C.D. Cal. Mar. 16, 2020) (approving a fee award of 33% of the settlement amount); *Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir.

- 12 -

2003) (affirming fee award of 33% of $14.8 million settlement); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (approving fee award of one-third of $12 million settlement); *In re Heritage Bond Litig.*, 2005 WL 1594389, at *9 (C.D. Cal. June 10, 2005) (awarding fee award of one-third of $27.78 million settlement); *Donley v. Live Nation Ent., Inc.*, 2025 WL 2490531, at *1 (C.D. Cal. Aug. 28, 2025) (awarding fee award of 30% of $20 million settlement); *In re Honest Co., Inc. Sec. Litig.*, 2025 WL 2205810, at *2 (C.D. Cal. July 29, 2025) (awarding fee award of 30% of $27.5 million settlement).  In addition, Lead Counsel will request that any award of fees and expenses be paid at the time the Court makes its award.  *See, e.g.*, *In re: Genworth Fin. Sec. Litig.*, 2016 WL 7187290, at *2 (E.D. Va. Sep. 26, 2016) (ordering that "attorneys' fees and [l]itigation [e]xpenses awarded above may be paid to [l]ead [c]ounsel immediately upon entry of this [o]rder").

### 4. Other Agreements Made in Connection with the Global Resolution of the Case

Defendants and Lead Plaintiffs have entered into a standard supplemental agreement which provides that, if Class Members opt out of the Settlement such that the number of shares of Rockley common stock represented by such opt outs equals or exceeds a certain amount, Defendants shall have the option to terminate the Settlement.  Stipulation, ¶7.3.  Such agreements are common and do not undermine the propriety of the Settlement.  *See, e.g.*, *Hefler*, 2018 WL 6619983, at *7 ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair.") (citing *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 948 (9th Cir. 2015)); *see also Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *7 (C.D. Cal. Oct. 10, 2019) ("This type of agreement is common in securities fraud actions and does not weigh against preliminary approval.").  While the existence of the Supplemental Agreement is identified in the Stipulation (Stipulation, ¶7.3), the terms of the agreement, itself, are confidential to avoid enabling one or more stockholders to

- 13 -

selfishly use this knowledge to insist on a higher payout for themselves by threatening to eviscerate the Settlement, which would be detrimental to the interests of the Class. *See Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (noting that there are "compelling reasons" for keeping the terms of such agreements confidential).

> **5.    The Proposed Plan of Allocation Is Designed to Treat Class Members Equitably and Does Not Provide Any Preferential Treatment**

Rule 23(e)(2)(D) asks whether the proposal, here the Plan, which explains how the Settlement proceeds will be distributed among Authorized Claimants, treats Class Members equitably relative to each other.  The Plan is fair, reasonable, and adequate because it does not treat the Lead Plaintiffs or any other Class Member preferentially. *See In re Zynga Sec. Litig.*, 2015 WL 6471171, at *10 (N.D. Cal. Oct. 27, 2015).  Lead Plaintiffs, just like all other Class Members, will be subject to the same formula for calculating any distribution. *See Ciuffitelli v. Deloitte & Touche LLP*, 2019 WL 1441634, at *18 (D. Or. Mar. 19, 2019) (finding "[t]he Proposed Settlement does not provide preferential treatment to Plaintiffs or segments of the class" where "the proposed Plan of Allocation compensates all Class Members and Class Representatives equally in that they will receive a *pro rata* distribution based of the Settlement Fund based on their net losses").

> **D.    The Remaining Ninth Circuit Factor Is Satisfied: Experience and Views of Counsel**

The opinion of experienced counsel supporting a class settlement after arm's-length negotiations is entitled to considerable weight. *See Norris v. Mazzola*, 2017 WL 6493091, at *8 (N.D. Cal. Dec. 19, 2017); *see also Hefler*, 2018 WL 6619983, at *9 ("That counsel advocate in favor of this Settlement weighs in favor of its approval.").  Lead Counsel has significant experience in securities and other complex class action litigation and has negotiated numerous other substantial class action settlements throughout the country. *See* www.rgrdlaw.com.  Here, "[t]here is

- 14 -

4917-8514-1892.v4

nothing to counter the presumption that Lead Counsel's recommendation is reasonable." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007).

Further supporting the weight of Lead Counsel's view of the Settlement, it actively litigated this case since being appointed by this Court. By the time settlement discussions began, Lead Counsel had a firm understanding of the strengths and potential weaknesses of the claims, both factually and legally.

In sum, each factor identified under Rule 23(e)(2) and by the Ninth Circuit is satisfied.

## V.   CERTIFICATION OF THE CLASS FOR PURPOSES OF THE SETTLEMENT IS APPROPRIATE

Under the terms of the Settlement, Defendants have agreed, for purposes of settlement, to certification of the following Class: "all persons or entities that, between August 11, 2021 and January 23, 2023, inclusive (the "Class Period"), purchased or otherwise acquired Rockley common stock, and were harmed thereby."[8]

At this stage, the Court should determine whether it "will likely be able" to grant certification to the proposed Class at final approval. Fed. R. Civ. P. 23(e)(1)(B). As set forth below, the Class satisfies the requirements of Rule 23(a) (numerosity, commonality, typicality, and adequacy of representation), as well as

---

[8]   Excluded from the Class are: (i) Defendants; (ii) the former officers and directors of Rockley, Rockley Photonics Limited, SINCap, SC Health Corporation, SC Health Holdings Limited, and SC Health Group Limited; (iii) any persons or entities that automatically acquired Rockley common stock in exchange for securities of Rockley Photonics Limited in connection with the Merger (with such exclusion limited to their Rockley common stock exchanged for securities of Rockley Photonics Limited, and not Rockley common stock purchased or otherwise acquired during the Class Period); (iv) the immediate family members of any of the foregoing; (v) the legal representatives, heirs, successors, or assigns of any of the foregoing; (vi) any entity in which any of the foregoing have or had a controlling interest; and (vii) any Persons who properly exclude themselves by submitting a valid and timely request for exclusion.

- 15 -

4917-8514-1892.v4

the requirements of Rule 23(b)(3). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).

### A. The Proposed Class Satisfies Rule 23(a) Requirements

#### 1. The Class Is Sufficiently Numerous

Rule 23(a)(1) permits class certification if "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). While no "specific minimum number" of potential class members is required, "a proposed class of at least forty members presumptively satisfies the numerosity requirement." *Vinh Nguyen v. Radient Pharms. Corp.*, 287 F.R.D. 563, 569 (C.D. Cal. 2012). Moreover, a court "certainly may infer that, when a corporation has millions of shares trading on a national exchange, more than 40 individuals purchased stock over the course of more than a year." *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009).

Numerosity is easily satisfied here, as there was an average of 129.2 million shares of Rockley common stock outstanding, and an average of approximately 4.8 million shares of Rockley stock were traded on a weekly basis during the Class Period. *See* ECF 118-3 (Expert Report of Luke Stein, Ph.D.), ¶¶38, 66; *see also Maiman v. Talbott*, 2011 WL 13065750, at *3 (C.D. Cal. Aug. 29, 2011) (weekly trading volume of 1.32 million shares supported finding of numerosity).

#### 2. Common Questions of Law and Fact Exist

Rule 23(a)(2) requires a showing that "questions of law or fact" are common to the Class. Fed. R. Civ. P. 23(a)(2). It does not require, however, that "'every question in the case, or even a preponderance of questions, is capable of class wide resolution.'" *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014) (quoting *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013)). "'So long as there is "even a single common question," a would-be class can satisfy the commonality requirement of Rule 23(a)(2).'" *Id.* (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 358-59 (2011)).

- 16 -

4917-8514-1892.v4

Here, Lead Plaintiffs raise numerous questions common to Class Members, including whether: (1) Defendants made materially false or misleading statements or omissions to investors; (2) Defendants knowingly or recklessly disregarded that their public statements were false and/or misleading; (3) the price of Rockley's common stock was and remained artificially inflated as a result of Defendants' fraudulent conduct; (4) Defendants' false and misleading representations caused the putative Class damages; and (5) Defendants violated the federal securities laws.

### 3. The Proposed Class Representatives' Claims Are Typical of the Class

Rule 23(a)(3) requires that the class representative's claims or defenses be "typical" of the claims or defenses of the prospective class. Fed. R. Civ. P. 23(a)(3). "'The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *HsingChing Hsu v. Puma Biotech., Inc.*, 2017 WL 6210803, at *2 (C.D. Cal. Dec. 8, 2017) (quoting *Parsons*, 754 F.3d at 685). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Where a "[p]laintiff's claims are based upon the same course of events as the claims of all class members, and all claims are based on the same theories and will be proven by the same evidence," they are typical of other class members. *In re Celera Corp. Sec. Litig.*, 2014 WL 722408, at *3 (N.D. Cal. Feb. 25, 2014).

Here, Lead Plaintiffs' and the proposed Class Members' claims are typical as they arise out of the same course of conduct: specifically, the artificial inflation of Rockley's stock price by Defendants' misrepresentations concerning, among other things, the Company's "product development and commercialization," as well as its "revenue projections," during the Class Period. *See* ECF 95 at 49 (denying

- 17 -

4917-8514-1892.v4

Defendants' motion to dismiss).  Lead Plaintiffs' allegations, and the injuries of the putative Class, all flow directly from this common course of conduct.

### 4. The Proposed Class Representatives Will Fairly and Adequately Protect the Interests of the Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  In the Ninth Circuit, "'[r]esolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Maiman*, 2011 WL 13065750, at *5 (quoting *Hanlon*, 150 F.3d at 1020).

Both prongs of Rule 23(a)(4)'s adequacy test are easily satisfied here.  The interests of Lead Plaintiffs and Lead Counsel are clearly aligned with, not antagonistic to, those of other Class Members, and Lead Plaintiffs, with Lead Counsel, have vigorously and capably prosecuted this action on behalf of the Class. ECF 118, Exs. A-B.

More specifically, Lead Plaintiffs purchased and/or acquired Rockley stock at artificially inflated market prices during the Class Period and were injured by the same fraudulent conduct that injured all proposed Class Members. *See* ECF 40, Exs. A-B.

Lead Plaintiffs have also demonstrated their adequacy by retaining qualified and experienced counsel, Robbins Geller, to represent them and the Class in this action.  District courts throughout the country, including courts within this District, have routinely found that Robbins Geller will fairly and adequately represent investor classes, recognizing Robbins Geller's expertise in litigating securities class actions and reputation for excellence. *See, e.g.*, *Cooper*, 254 F.R.D. at 636 ("[Robbins Geller] specializes in securities fraud actions and achieved success as lead counsel in one of the largest and highest-profile securities cases of the last

- 18 -

decade, the *Enron* case."); *In re Banc of Cal. Sec. Litig.*, 326 F.R.D. 640, 652 (C.D. Cal. 2018) ("[T]he work of Robbins Geller lawyers in this case so far indicates that the Court can again expect that Robbins Geller lawyers will effectively help the class representative vigorously prosecute this case.  In short, the Court concludes that [Robbins Geller] will 'fairly and adequately represent the interests of the class.'").

### B.     The Proposed Class Satisfies Rule 23(b)(3)'s Requirements

The proposed Class also satisfies Rule 23(b)(3)'s requirements, as common questions predominate over individual ones and a class action is superior to alternative methods of litigating this case.  *See Amchem*, 521 U.S. at 615.

The predominance inquiry of Rule 23(b)(3) asks whether "'proposed classes are sufficiently cohesive to warrant adjudication by representation.'"  *Hatamian v. Advanced Micro Devices, Inc.*, 2016 WL 1042502, at *3 (N.D. Cal. Mar. 16, 2016). As the Supreme Court has explained, "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem*, 521 U.S. at 625.

Here, the common questions identified above clearly predominate over individual questions because Defendants' alleged fraudulent statements and omissions affected all Class Members in the same manner (*i.e.*, through public statements made to the market and documents publicly filed with the U.S. Securities and Exchange Commission).  *See Vataj v. Johnson*, 2021 WL 1550478, at *6 (N.D. Cal. Apr. 20, 2021) (finding common questions predominate where same operative facts apply to each class member. *Fleming v. Impax Lab'ys Inc.*, 2021 WL 5447008, at *6 (N.D. Cal. Nov. 22, 2021).

Finally, the superiority element of Rule 23(b)(3) tests whether class treatment is "superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  In cases like this one, where "'recovery on an individual basis would be dwarfed by the cost of litigating on an individual

- 19 -

4917-8514-1892.v4

basis,'" a class action is the superior method of adjudication.[9]  *In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 585 (N.D. Cal. 2015); *see also In re VeriSign, Inc. Sec. Litig.*, 2005 WL 7877645, at *9 (N.D. Cal. Jan. 13, 2005) ("Class actions are particularly well-suited in the context of securities litigation, wherein geographically dispersed shareholders with relatively small holdings would otherwise have difficulty in challenging wealthy corporate defendants."); *Cooper*, 254 F.R.D. at 632 ("As the Ninth Circuit has so aptly stated, securities fraud cases fit Rule 23 'like a glove.'").  Moreover, Lead Plaintiffs are not aware of any other pending actions seeking similar relief.

In sum, all of the requirements of Rules 23(a) and (b)(3) are satisfied.

## VI.    THE PROPOSED FORM AND METHOD OF PROVIDING NOTICE TO THE CLASS ARE APPROPRIATE AND SATISFY RULE 23, THE PSLRA, AND DUE PROCESS

Rule 23(c)(2)(B) requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B); *see also* Fed. R. Civ. P. 23(e)(1)(B) ("The court must direct notice in a reasonable manner to all class members who would be bound by the propos[ed settlement].").  Courts evaluating proposed notice documents have held that "notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Rodriguez*, 563 F.3d at 962 (cleaned up).

Here, Lead Plaintiffs propose to email, or mail where no email is available, individual copies of the Postcard Notice to all potential Class Members who can

---

[9]    When a class is seeking certification for purposes of settlement, "the superiority inquiry focuses 'on the efficiency and economy elements of the class action so that cases allowed under Rule 23(b)(3) are those that can be adjudicated most profitably on a representative basis." *Ford v. CEC Ent., Inc.*, 2015 WL 11439032, at *4 (S.D. Cal. July 7, 2015) (cleaned up); *Hyundai*, 926 F.3d at 556-57 ("The criteria for class certification are applied differently in litigation classes and settlement classes" and "manageability is not a concern in certifying a settlement class.").

- 20 -

4917-8514-1892.v4

reasonably be identified and located. Murray Decl., ¶¶8-12. In addition, the Postcard Notice will direct Class Members to the Settlement Website, where the full Notice and Proof of Claim will be posted. Further, the Summary Notice will be published in *The Wall Street Journal* and over *Business Wire*. *Id.*, ¶13. The proposed methods of providing notice satisfy the requirements of Rule 23, the PSLRA, and due process. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *Jiangchen v. Rentech, Inc.*, 2019 WL 13570065, at *13 (C.D. Cal. June 24, 2019).[10]

The proposed Notice describes the proposed Settlement and sets forth, among other things: (1) the nature, history, and status of the Litigation; (2) the definition of the Class and who is excluded; (3) the reasons the parties have proposed the Settlement; (4) the amount of the Settlement Fund; (5) the estimated average distribution per damaged share; (6) the Class's claims and issues; (7) the parties' disagreement over damages and liability; (8) the maximum amount of attorneys' fees and expenses that Lead Counsel intends to seek in connection with final Settlement approval; (9) the maximum amount Lead Plaintiffs will request pursuant to 15 U.S.C. §78u-4(a)(4) in connection with their representation of the Class; (10) the plan for allocating the Settlement proceeds to the Class; and (11) the date, time, and place of the Settlement Hearing. The content of the proposed Notice and Summary Notice are "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

In addition, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Fed. R. Civ. P. 23(h)(1). The proposed notices

---

[10] The Notice, Proof of Claim, Summary Notice, and Postcard Notice are appended as Exhibits A-1, A-2, A-3, and A-4 to the Stipulation.

- 21 -

satisfy the requirements of Rule 23(h)(1), as they collectively notify Class Members that Lead Counsel will apply to the Court for an award of attorneys' fees in an amount not to exceed 30% of the Settlement Amount and litigation expenses not to exceed $450,000, to be paid from the Settlement Fund.  The Notice also notes the application for an award of no more than $8,500 to each Lead Plaintiff pursuant to 15 U.S.C. §78u-4(a)(4) in connection with their representation of the Class.

In sum, the notice program proposed in connection with the Settlement and the form and content of the notices satisfies all applicable requirements of both the Federal Rules of Civil Procedure and the PSLRA.

## VII.   PROPOSED SETTLEMENT SCHEDULE

In Appendix A hereto, Lead Plaintiffs propose a schedule for notice, the Settlement Hearing, and related dates.

## VIII.  CONCLUSION

For each of the foregoing reasons, the Court should enter the [Proposed] Order Preliminarily Approving Settlement and Providing for Notice, which will: (a) preliminarily approve the Settlement; (b) preliminarily certify a class for settlement purposes; (c) approve the form and manner of providing notice of pendency and Settlement to the Class; and (d) set a Settlement Hearing date to consider final approval of the Settlement and related matters.

DATED:  January 20, 2026                  Respectfully submitted,

ROBBINS GELLER RUDMAN
 & DOWD LLP
STEVEN W. PEPICH
THOMAS E. EGLER
NATHAN R. LINDELL
KEVIN S. SCIARANI


                                          s/ Nathan R. Lindell
                                          NATHAN R. LINDELL

- 22 -

4917-8514-1892.v4

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
stevep@rgrdlaw.com
tome@rgrdlaw.com
nlindell@rgrdlaw.com
ksciarani@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

## LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Lead Plaintiffs, certifies that this brief contains 6,978 words, which complies with the word limit of L.R. 11-6.1.

DATED:  January 20, 2026

s/ Nathan R. Lindell
NATHAN R. LINDELL

- 23 -

4917-8514-1892.v4

**APPENDIX A**

| Event | Deadline for Compliance |
|---|---|
| Deadline to commence emailing (and mailing) the Postcard Notice to potential Class Members (the "Notice Date") | No later than 21 calendar days following entry of the Preliminary Approval Order (Preliminary Approval Order, ¶10) |
| Publication of the Summary Notice | No later than 7 calendar days following the Notice Date (Preliminary Approval Order, ¶11) |
| Deadline for filing papers in support of the Settlement, the Plan, and application for attorneys' fees and expenses | No later than 35 calendar days prior to the Settlement Hearing (Preliminary Approval Order, ¶22) |
| Deadline for requests for exclusion or objections | No later than 21 calendar days prior to the Settlement Hearing (Preliminary Approval Order, ¶¶18, 20) |
| Deadline for submission of reply papers in support of the Settlement, the Plan, and application for attorneys' fees and expenses | No later than 7 calendar days prior to the Settlement Hearing (Preliminary Approval Order, ¶22) |
| Proof of Claim submission deadline | No later than 90 calendar days after the Notice Date (Preliminary Approval Order, ¶15) |
| Date for the Settlement Hearing | At least 100 calendar days after entry of the Preliminary Approval Order (Preliminary Approval Order, ¶2) |

- 1 -

4917-8514-1892.v4